# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Civil Action No. 04-407 (GMS) |
| BROADBAND OFFICE, INC., | Bankruptcy Case No. 01-1720 (GMS) |
| Debtor. | Chapter 11 |
| BROADBAND OFFICE, INC., | |
| Plaintiff, | |
| vs. | |
| TECHNOLOGY CREDIT CORPORATION D/B/A EXTREME NETWORKS CREDIT CORPORATION, | |
| Defendant | |

## PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT AND BRIEF IN SUPPORT OF MOTION

Comes Now Plaintiff Broadband Office, Inc., through counsel, with this Motion for Leave to File Amended Complaint. Plaintiff seeks leave of the Court to file the *Amended Complaint For Avoidance of Prepetition Transfers* in the form attached hereto as Exhibit "1" (the "Amended Complaint"). A blacklined copy of the Amended Complaint (without exhibits) is attached hereto as Exhibit "2". In its Amended Complaint, Plaintiff adds no new claims but clarifies the real parties in interest in the underlying transaction to seek recovery from those parties who benefited from the patently preferential transfers Plaintiff seeks to avoid and recover.

## I.      FACTUAL BACKGROUND

On September 12, 2005, the Court entered an Order Confirming the First Amended Joint
Liquidating Plan of the Debtor and the Official Committee of Unsecured Creditors,
which had the effect of reserving this action for the Plaintiff.

1. On May 9, 2001 (the "Petition Date"), Broadband Office, Inc. ("Broadband"
or "Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy
Code, 11 U.S.C. Sections 101 et seq.

2. Broadband was in the business of providing communications infrastructures
and delivery systems for office buildings.  As part of that business, Broadband was
interested in using networking equipment manufactured and sold by Extreme Networks,
Inc.  The resulting transaction was structured as a lease, with Broadband agreeing to
make monthly lease payments for the use of the networking equipment (the
"Equipment").

3. On or about March 9, 2000, and as part of its transaction with Broadband,
Extreme Networks, Inc. sold the Equipment to Technology Credit Corporation, which,
under the name of "Extreme Networks Credit Corporation" immediately entered into a
Master Lease Agreement with Broadband. That Master Lease Agreement shows
"Extreme Networks Credit Corporation" as lessor, and Broadband as lessee. On the
same day it purchased the Equipment, Technology Credit Corporation resold the
Equipment to Leasetec Corporation and assigned at least a portion of Extreme Networks
Credit Corporation's rights under the Master Lease Agreement to Leasetec Corporation.

4. The effective result of the transactions described above was that Extreme
Networks, Inc. and Leasetec Corporation (now Key Equipment Finance, Inc.) acting by
and through Technology Credit Corporation, financed the Equipment for Broadband to

use. To facilitate this transaction and induce Leasetec Corporation and Technology Credit Corporation to enter into the financing arrangement, Extreme Networks, Inc. guaranteed Broadband's lease payment obligations to both Leasetec Corporation and Extreme Networks Credit Corporation. Any amounts Broadband paid under the Master Lease Agreement benefited, inter alia, both Leasetec and Extreme Networks, Inc.

5. The original Complaint asserted that two payments totaling $771,875.07 that Broadband made shortly before the Petition Date were avoidable and recoverable under Section 5 of the Bankruptcy Code. The Complaint asserted avoidance counts against Technology Credit Corporation d/b/a Extreme Networks Credit Corporation. It is now clear that Defendant Technology Credit Corporation and proposed defendants Extreme Networks, Inc., and Key Equipment Finance, Inc. were involved in a corporate shell game with regard to the Broadband lease. Each of them was intimately involved in the lease transaction through a series of guarantees, purported corporate affiliations and transfers, "d/b/a's" and interlocking relationships. As examples, Extreme Networks, Inc. allowed Technology Credit Corporation to hold itself out as "Extreme Networks Credit Corporation", enter into agreements with Broadband under that name, and use Extreme Networks, Inc.'s business address and corporate logo. Extreme Networks Inc. also allowed Leasetec Corporation to hold itself out as "Extreme Networks Credit Corporation" and use Extreme Networks, Inc.'s corporate logo in dealing with Broadband. Employees of Leasetec Corporation contacted Broadband purporting to act as either "Extreme Networks Credit Corporation" or "Technology Credit Corporation."

6. Accordingly, Broadband seeks to amend the Complaint to address this convoluted series of relationships, and based upon those facts add Extreme Networks,

Inc. and Key Equipment Finance, Inc. (as corporate successor to Leasetec Corporation) as defendants. The proposed amendment will aid the Court in determining which parties are truly responsible for the clear liability on the substantial avoidable payments in this case.

## II.    BROADBAND'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT SHOULD BE GRANTED

Under Federal Rule of Civil Procedure 15(a), a plaintiff's request for leave to amend a complaint should be liberally granted.  Foman v. Davis, 371 U.S. 178, 182 (1962); Adams v. Gould Inc., 739 F.2d 858, 867-68 (3d Cir. 1984); Coventry v. U.S. Steel Corp., 856 F.2d 514, 519 (3d Cir. 1988) (citing Heyl & Patterson Int'l, Inc. v. F.D. Rich, Inc., 663 F.2d 419, 425 (3d Cir. 1981) for the proposition that "[c]ourts have shown a strong liberality…in allowing amendments under Rule 15(a)"); See also Boleau v. Bethlehem Steel Corp., 730 F.2d 929, 938 (3d Cir. 1984).  Denial of leave to amend a complaint is only appropriate if it is motivated by bad faith, if there is undue delay, if it is prejudicial to the opposing party, or if the amendment would be futile.  See, e.g., Adams, 739 F.2d at 867-868; U.S. v. Donald Lane Constr., 19 F. Supp. 2d 217, 221 (D. Del. 1998). As explained below, Extreme Networks, Inc. and Key Equipment Finance, Inc. as defendants  (the "Related Defendants") will not be prejudiced. The delay in prosecution is not undue, the proposed amendment is not futile, and Broadband is not motivated by bad faith.

A defendant is prejudiced if it is "unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the…

amendments been timely." <u>Cuffy v. Getty Ref. & Mktg. Co.</u>, 648 F. Supp. 802, 806 (D. Del. 1986) (quoting <u>Heyl & Patterson Intern.</u>, 663 F.2d at 426). This Court itself has ruled that "[u]ndue prejudice is more than mere inconvenience: it is found only where the party must overhaul its entire litigation strategy." <u>In re Fleming Cos., Inc. (CHEP USA v. Fleming Co., Inc., Adv. Pro. No. 04-52368)</u>, 319 B.R. 359, 362 (Bankr. D. Del. 2005); <u>see also Post Confirmation Trust of Fleming Co., Inc. v. Target Corp.</u>, Adv. Pro. No. 04-52747 (Bankr. D. Del. Apr. 19, 2005). In <u>Fleming</u>, this Court allowed the plaintiff to amend its complaint to add an additional cause of action even though discovery was nearly complete.

The Related Defendants have not been deprived of the opportunity to present facts or evidence relevant to any defenses they may assert to the proposed First Amended Complaint. Although the factual situation underlying the relationships among Technology Credit Corporation and the Related Defendants is extremely complex, the avoidance causes of action asserted are relatively simple and clear cut. On the preference claim, the straightforward elements are (a) the existence of a preexisting debt (b) transfers made by a debtor on account of that debt to or for the benefit of a creditor (c) the insolvency of the debtor, which in this case is presumed, and (d) that the transfers allowed the recipients to receive more than they would have in the debtor's liquidation. <u>See</u>, 11 U.S.C. Section 547(b). On the fraudulent conveyance claim, the elements are that (a) a transfer by the debtor within a year of its bankruptcy filing (b) for which the debtor did not receive "reasonably equivalent value" or benefit and (c) the debtor's balance sheet insolvency at the time of the transfers. <u>See</u>, 11 U.S.C. Section 548. Defendants cannot claim to have suffered any prejudice, much less the type of "undue

prejudice" necessary to warrant denial of Broadband's motion to amend. Most of the elements are undisputable or subject to simple proof.

Nor has Broadband unduly delayed its motion to amend. It is only the because of the convoluted construct of the defendants' relationships that all of them were not originally named as defendants. The Third Circuit has liberally granted leave to amend even after discovery has closed and scheduling deadlines have expired. See, e.g., Cuffy, 648 F. Supp. At 805-807 (granting leave to amend even though scheduling deadline to file motion to amend pleadings had passed); Coventry, 856 F.2d at 519 (reversible error for district court to deny leave to amend complaint even though discovery had closed eight months earlier); In re Worldwide Direct, Inc., 2003 WL 22000600 (Bankr. D. Del. 2003) (granting leave to amend preference complaint even though discovery deadline had passed).

Broadband's proposed *Amended Complaint For Avoidance of Prepetition Transfers* is not futile or motivated by bad faith. As a debtor, Broadband has a duty to its creditors to investigate and pursue avoidance claims. A claim is futile only if it "fail[s] to state a claim upon which relief could be granted." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). Broadband's proposed First Amended Complaint clearly states a viable cause of action for recovery of overpayments. Under Rule 15(c)(3) of the Federal Rules of Civil Procedure, an amended pleading relates back to the date of the original pleading when:

> the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by *Rule 4(m)* for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party

> will not be prejudiced in maintaining a defense on the
> merits, and (B) knew or should have known that,
> but for a mistake concerning the identity of the proper
> party, the action would have been brought against the
> party.  Fed. R. Civ. P. 15(c)

In this case, there is no doubt that both Extreme Networks, Inc. and Key Equipment Finance, Inc. knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against them.  Plaintiff believes it can prove the facts necessary for relation back under Rule 15(c).

The amendment of the lawsuit will undoubtedly further the presentation of the case on its merits. If, as Plaintiff alleges, one or more of the Related Defendants received the benefit of $771,875.07 in avoidable payments that should have benefited all of Broadband's creditors, then those defendants should not benefit from the corporate shell game that they created.

### Notice

Notice of this Motion has been given to counsel for Technology Credit Corporation.

### No Prior Request

No previous request for this relief has been made to this Court or to any other court.

### Certification of Conference with Counsel

Prior to filing this Motion, Broadband's counsel conferred with Technology Credit Corporation's counsel in an attempt to seek a stipulation concerning this motion, but Defendant did not consent to the relief sought herein.

For the reasons set forth herein, Plaintiff Broadband Office, Inc. requests that this Court grant it leave to file the *Amended Complaint For Avoidance of Prepetition Transfers* attached to this Motion.

Dated:   November 1, 2005                    WERB & SULLIVAN
         Wilmington, Delaware

                                            /s/ Brian A. Sullivan
                                            Brian A. Sullivan  (DE No. 2098)
                                            Robert D. Wilcox  (DE No. 4321)
                                            Amy D. Brown      (DE No. 4077)
                                            300 Delaware Avenue, 13th Floor
                                            P. O. Box 25046
                                            Wilmington, DE  19899
                                            Telephone:  (302) 652-1100
                                            Facsimile:  (302) 652-1111

                                            Attorneys for Broadband Office, Inc.

**EXHIBIT 1**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>BROADBAND OFFICE, INC.,<br><br>           Debtor. | Civil Action  No. 04-407 (GMS)<br><br><br>Bankruptcy Case No. 01-1720 (GMS)<br><br>Chapter 11 |
| BROADBAND OFFICE, INC.,<br><br>           Plaintiff,<br><br>vs.<br><br>TECHNOLOGY CREDIT CORPORATION<br>d/b/a EXTREME NETWORKS CREDIT<br>CORPORATION,  and<br>EXTREME NETWORKS, INC.,<br>and<br>KEY EQUIPMENT FINANCE, INC. f/k/a<br>KEY CORPORATE CAPITAL, INC. f/k/a<br>LEASTEC CORPORATION<br>           Defendants. | |

## AMENDED COMPLAINT FOR AVOIDANCE OF PREPETITION TRANSFERS

      Broadband Office, Inc. (the "Debtor" or "Broadband"), by its undersigned attorneys, files this Amended Complaint for avoidance and recovery of pre-petition transfers (the "Complaint") against Technology Credit Corporation d/b/a Extreme Networks Credit Corporation, and Extreme  Networks, Inc. and Key Equipment Finance, Inc, f/k/a Key Corporate Capital, Inc. f/k/a Leasetec Corporation  (collectively "Defendants"), and in support hereof alleges as follows:

JURISDICTION, VENUE, AND PARTIES

1.    This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a) because this adversary proceeding arises in and relates to a bankruptcy case pending in this district.

2.    The Debtor is a domestic corporation organized under the laws of the State of Delaware.

3.    Defendants are corporations subject to service of process pursuant to Federal Rule of Bankruptcy Procedure 7004(b) anywhere in the United States.

4.    Defendant Technology Credit Corporation is a California corporation that, according to the records of the California Secretary of State, has a principal place of business at "919 The Alameda, San Jose, California". It did business with the Debtor as "Extreme Networks Credit Corporation" and "Extreme Networks" at a business address of "3585 Monroe Street, Santa Clara, California".   Many of the documents underlying the transfers at issue in this proceeding were signed by James F. Hartigan, who signed on behalf of both "Technology Credit Corporation" and "Extreme Networks Credit Corporation". Technology Credit Corporation filed UCC-1 Financing Statements in the name of "Extreme Networks Credit Corporation" showing  a business address of "3585 Monroe Street, Santa Clara, California" bearing the signature of James F. Hartigan. Technology Credit Corporation also required that Broadband purchase insurance in favor of "Extreme Networks Credit Corporation" at "3585 Monroe Street, Santa Clara, California".

5.    Defendant Extreme Networks, Inc. is a Delaware corporation. According to the records of the California Secretary of State, Extreme Networks, Inc. has a principal place of business at 3585 Monroe Street, Santa Clara, California. Documents underlying the transfers at

2

issue in this proceeding identify that same Santa Clara, California address for "Extreme Networks Credit Corporation". Extreme Networks, Inc., agreed to or condoned Technology Credit Corporation's actions in doing business as "Extreme Networks Credit Corporation". As examples, Extreme Networks, Inc. allowed Technology Credit Corporation to hold itself out as "Extreme Networks Credit Corporation", enter into agreements with Broadband under that name, and use Extreme Networks, Inc.'s business address and corporate logo.

6.    Key Equipment Finance Inc. is a Michigan corporation with a principal place of business in Colorado. Until March 1, 2005 it was known as "Key Corporate Capital", and was a successor by merger to "Leasetec Corporation".

7.    Leasetec Corporation and Technology Credit Corporation were parties to a contract that, inter alia, allowed Leasetec Corporation to act in the name of Technology Credit Corporation in its dealings with Broadband.  Leasetec Corporation also did business with the Debtor as "Extreme Networks" and also used business stationery bearing that name and logo.

<u>FACTS COMMON TO ALL COUNTS</u>

8.    On May 9, 2001 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  On September 12, 2005, the Court entered an Order Confirming the First Amended Joint Liquidating Plan of the Debtor and the Official Committee of Unsecured Creditors, which had the effect of reserving this action for the Plaintiff.

9. Broadband was in the business of providing communications infrastructures and delivery systems for office buildings.  As part of that business, Broadband was interested in using networking equipment manufactured and sold by Extreme Networks, Inc.  The resulting

transaction was structured as a lease, with Broadband agreeing to make monthly lease payments for the use of the networking equipment (the "Equipment").

10.    On or about March 9, 2000 and shortly thereafter, and as part of its transaction with Broadband, Extreme Networks, Inc. sold the Equipment to Technology Credit Corporation, which, under the name of "Extreme Networks Credit Corporation" immediately entered into a Master Lease Agreement with Broadband. That Master Lease Agreement shows "Extreme Networks Credit Corporation" as lessor, and Broadband as lessee. On the same day it purchased the Equipment, Technology Credit Corporation resold the Equipment to Leasetec Corporation and assigned at least a portion of Extreme Networks Credit Corporation's rights under the Master Lease Agreement to Leasetec Corporation.

11.    The effective result of the transactions described above was that Extreme Networks Inc. and Leasetec Corporation (now Defendant Key Equipment Finance, Inc.) acting by and through Technology Credit Corporation financed the Equipment for Broadband to use. To facilitate this transaction and induce Leasetec and Technology Credit Corporation to enter into the financing arrangement, Extreme Networks, Inc. guaranteed Broadband's lease payment obligations to both Leasetec Corporation and Extreme Networks Credit Corporation. Any amounts Broadband paid under the Master Lease Agreement benefited, inter alia, both Leasetec Corporation and Extreme Networks, Inc.

12.    Following the initial transaction, Technology Credit Corporation, again acting as "Extreme Networks" continued as the servicing agent on the lease.

13.    Within the ninety (90) day period before the Petition Date, the Debtor made one or more transfers of property to or for the benefit of each of the Defendants in the aggregate amount of $771,875.07 (each a "Transfer," and collectively, the "Transfers"). A description of

4

each of the Transfers is attached hereto as **Exhibit A**. The Transfers were in payment of past due amounts under the Master Lease Agreement and related leases.

14.    At the time the Debtor made each Transfer, (i) Defendants were creditors of the Debtor and such Transfer was made on account of an antecedent debt and by the Debtor on account of the leasing transaction. Alternatively, the Debtor did not receive fair or reasonably equivalent value in exchange for the making of such Transfer.

15.    At the time the Debtor made each Transfer, the Debtor was insolvent or was rendered insolvent by making such Transfer.

16.    With respect to each Transfer, if the Debtor had not made such Transfer and filed a case under Chapter 7 of the Bankruptcy Code, each Defendant would have received less than the amount of such Transfer from the Debtor's estate.

17.    After it filed its Chapter 11 case, Broadband rejected the lease on the Equipment. On June 29, 2001, Defendant Key Equipment Finance, Inc filed a Proof of Claim in Debtor's case in the amount of $6,066,838.91, under the name "Key Equipment Finance, a division of Key Corporate Capital, Inc., f/k/a Leasetec Corporation".

18.    Key Equipment Finance, Inc. then made demand upon Defendant Extreme Networks, Inc. under its guaranty of Broadband's obligations, and received in excess of at least $2,000,000.00 on that guaranty.

19.    The Debtor and Defendant, Technology Credit Corporation, entered into a Stipulation Tolling Statute of Limitations dated as of April 10, 2003, ("Tolling Agreement"), in which Technology Credit Corporation and the Debtor agreed to toll and extend the deadline for the Debtor to file Avoidance Actions through and including December 31, 2003. A copy of the Tolling Agreement is attached hereto as **Exhibit B**.

COUNT ONE
AVOIDANCE OF PREFERENTIAL TRANSFER PURSUANT TO 11 U.S.C. §§544
AND 547

20.    The Debtor incorporates the allegations set forth in paragraphs 1 through 19 above as if fully set forth herein at length.

21.    Each of the Transfers represents a transfer to or for the benefit of the Defendants by the Debtor. Technology Credit Corporation and Key Equipment Finance, Inc. each benefited directly from the Transfers. Extreme Networks, Inc. also benefited because each lease payment made by Broadband served to reduce commensurably Extreme Network, Inc.'s obligations under its guaranty.

22.    Each of the Transfers was made within ninety (90) days before the Petition Date.

23.    Each of the Transfers was made for, or on account of, an antecedent debt owed by the Debtor at the time such Transfer was made.

24.    Each of the Transfers was made while the Debtor was insolvent.

25.    As a result of each of the Transfers the Defendants received more than they would have received if (i) this were a case under Chapter 7 of the Bankruptcy Code; (ii) such Transfer had not been made; and (iii) Defendants received payment on account of the claim arising from any indebtedness to which the Transfer related.

WHEREFORE, the Debtor respectfully requests that this Court avoid each of the Transfers, and grant such further relief as this Court deems just and proper.

COUNT TWO
AVOIDANCE OF FRAUDULENT CONVEYANCES UNDER 11 U.S.C. § 548

26.     The Debtor incorporates the allegations set forth in paragraphs 1 through 25 above as if fully set forth herein at length.

27.     Each of the Transfers represents a transfer for the benefit of one of more of the Defendants by the Debtor.

28.     Each of the Transfers was made within ninety (90) days before the Petition Date.

29.     The Debtor received less than a reasonably equivalent value in exchange for each of the Transfers.

30.     The Debtor was insolvent on the date each of the Transfers was made or became insolvent as a result of each of the Transfers.

31.     At the time Defendants received each of the Transfers, the Debtor was engaged in a business or transaction for which any property remaining with the Debtor was an unreasonably small capital.

WHEREFORE, the Debtor respectfully requests that this Court avoid each of the Transfers, and grant such further relief as this Court deems just and proper.

COUNT THREE
RECOVERY OF TRANSFERS UNDER 11 U.S.C. § 550

32.     The Debtor incorporates the allegations set forth in paragraphs 1 through 31 above as if fully set forth herein at length.

33.     To the extent that they are avoided pursuant to 11 U.S.C. §§ 544, 545, 547, and/or 548, the Debtor may recover the Transfers, or the value of the Transfers, pursuant to 11 U.S.C. § 550(a).

WHEREFORE, the Debtor respectfully requests that this Court enter a Money Judgment in the Debtor's favor against each of the Defendants in the amount of $771,875.07 plus interest, costs of suit, and such further relief as this Court deems just and proper.

Dated: _____
      Wilmington, Delaware

Respectfully submitted,

WERB & SULLIVAN

_____

Brian A. Sullivan    (DE #2098)
Robert D. Wilcox    (DE #4321)
Amy D. Brown    (DE #4077)
300 Delaware Avenue, 13th Floor
P. O. Box 25046
Wilmington, DE  19899
Telephone: (302) 652-1100

Attorneys for Broadband Office, Inc., Plaintiff

# EXHIBIT A

*In re BroadBand Office, Inc., Case No. 01-1720 (GMS)*

The Transfers include, but may not be limited to, the following payment(s):

| Amount | Type | Check No. | Date Posted |
|---|---|---|---|
| $276,164.63 | CHECK | 107738 | 3/14/01 |
| $495,710.44 | CHECK | 107737 | 3/14/01 |

# EXHIBIT B

*In re Broadband Office, Inc., Case No. 01-1720 (GMS)*

Technologies
Management Credit
Corporation d/b/a

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
| BROADBAND OFFICE, INC., | : | Case No. 01-1720 (GMS) |
| Debtor. | : |  |

### STIPULATION TOLLING STATUTE OF LIMITATIONS

THIS STIPULATION TOLLING STATUTE OF LIMITATIONS (the "Stipulation"), dated as of April 10, 2003 by and between BroadBand Office, Inc. (the "Debtor") and Extreme Networks Credit Co ("Alleged Transferee") (collectively, the Debtor and Respondent constitute the "Parties").

WHEREAS, on May 9, 2001 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware, and since the Petition Date has managed its affairs and remained in possession of its assets as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108; and

WHEREAS, pursuant to §§ 108 and 546(a)(1)(A) of the Bankruptcy Code, the time by which the Debtor must commence actions, if any, arising under sections 544, 555, 547, 548, 550, and/or 553 of the Bankruptcy Code ("Avoidance Actions") was originally due to expire on May 9, 2003; and

WHEREAS, the Parties have agreed to the tolling and extension of the deadline to file Avoidance Actions, subject to the terms and conditions set forth below,

NOW, THEREFORE, in consideration of the mutual covenants and promises herein contained, the Parties hereby agree as follows:

WI : 0136024 v1 (2P*8011.DOC)

1.      The Parties hereby agree to toll the running of the statute of limitations period prescribed by sections 108 and 546(a)(1)(A) of the Bankruptcy Code and irrevocably extend the deadline by which the Debtor, or any party acting on behalf of the Debtor or its estate, must commence any Avoidance Action against Alleged Transferee under sections 544, 555, 547, 548, 550, and/or 553 of the Bankruptcy Code (including but not limited to related actions under state law) through and including the later of (A) December 31, 2003, and (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 302 of the

*but only if such appointment or election occurs prior to May 9, 2003*

Bankruptcy Code in the Debtor's case; provided, however, that (i) nothing herein shall prejudice or be deemed to constitute a waiver of, the right of Alleged Transferee to assert any and all defenses Alleged Transferee may have with respect to any Avoidance Actions filed by or on behalf of the Debtor or its estate, except that Alleged Transferee shall not be entitled to assert a defense based upon the statute of limitations set forth in sections 108 and/or 546(a)(1)(A) of the Bankruptcy Code, or the doctrine of laches, if any such Avoidance Action is commenced on or before the above-described deadline, and (ii) this Stipulation shall not be construed in any way as an admission or denial by either of the Parties regarding any fact or circumstance.

2.      This Stipulation contains the entire agreement of the Parties with respect to the subject matter hereof and there are no representations or agreements other than those expressly set forth herein. This Stipulation may not be modified or amended except by a writing signed by each of the Parties hereto.

3.      This Stipulation shall be subject to and governed by the laws of the State of Delaware.

4.      The terms of this Stipulation shall be binding upon the Parties and their respective successors and assigns. Each person signing this Stipulation represents that such person has the

power and authority to execute this Stipulation on behalf of, and bind, the party such person

purports to represent.

     5.    This Stipulation may be executed in multiple counterparts as if the Parties hereto

had signed a single instrument, all of which together shall constitute one agreement.  Facsimile

signatures will be treated as original for purposes of this Stipulation.

     IN WITNESS WHEREOF, the parties hereto have caused this Stipulation to be executed

as of the date first written above.

BROADBAND OFFICE, INC.

by: _____

David M. Fournier (DE 2812)
Adam Hiller (DE No. 4105)
PEPPER HAMILTON LLP
Suite 1600
1201 Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
(302) 777-6500

*Subject to addition in paragraph 1*

EXTREME NETWORKS CREDIT CO

by: _____

Print Name: *JEFFRY A. DAVIS*
Title: *ATTORNEY*
Address: *4365 EXECUTIVE DRIVE, SUITE 1100*
Phone Number: *SAN DIEGO, CA 92121*
         *(858) 638-6810*

-3-

W13 #128224 v1 (2P#B01LDOC)

# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re <br><br> BROADBAND OFFICE, INC., <br><br>                       Debtor. | Civil Action  No. 04-407 (GMS) <br><br><br> Bankruptcy Case No. 01-1720 (GMS) <br><br> Chapter 11 |
| BROADBAND OFFICE, INC., <br><br>                       Plaintiff, <br><br> vs. <br><br> TECHNOLOGY CREDIT CORPORATION ~~D/B/A~~d/b/a EXTREME NETWORKS CREDIT CORPORATION, and <br><br> ~~——————————— Defendant.~~ <br> EXTREME NETWORKS, INC., <br> and <br> KEY EQUIPMENT FINANCE, INC. f/k/a KEY CORPORATE CAPITAL, INC. f/k/a LEASTEC CORPORATION <br>                       Defendants. | ~~Adversary No. 03———————~~ |

**AMENDED COMPLAINT FOR AVOIDANCE OF PREPETITION TRANSFERS**

Broadband Office, Inc. (the "Debtor" or "Broadband"), by its undersigned attorneys, files this ~~complaint~~Amended Complaint for avoidance and recovery of pre-petition transfers (the "Complaint") against ~~TECHNOLOGY CREDIT CORPORATION D/B/A EXTREME NETWORKS CREDIT CORPORATION ("Defendant~~Technology Credit Corporation d/b/a Extreme Networks Credit Corporation, and Extreme Networks, Inc. and Key Equipment

Finance, Inc, f/k/a Key Corporate Capital, Inc. f/k/a Leasetec Corporation (collectively "Defendants"), and in support hereof alleges as follows:

JURISDICTION, VENUE, AND PARTIES

1. This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a) because this adversary proceeding arises in and relates to a bankruptcy case pending in this district.

2. The Debtor is a domestic corporation organized under the laws of the State of Delaware.

3. ~~Upon information and belief, Defendant is a corporation or other entity~~  Defendants are corporations subject to service of process pursuant to Federal Rule of Bankruptcy Procedure 7004(b) anywhere in the United States.

4. ~~On May 9, 2001 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The Debtor is managing its property as a Debtor in Possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.~~

4. Defendant Technology Credit Corporation is a California corporation that, according to the records of the California Secretary of State, has a principal place of business at "919 The Alameda, San Jose, California". It did business with the Debtor as "Extreme Networks Credit Corporation" and "Extreme Networks" at a business address of "3585 Monroe Street, Santa Clara, California".  Many of the documents underlying the transfers at issue in this proceeding were signed by James F. Hartigan, who signed on behalf of both "Technology Credit Corporation" and "Extreme Networks Credit Corporation". Technology Credit Corporation filed UCC-1 Financing Statements in the name of "Extreme Networks Credit

Corporation" showing a business address of "3585 Monroe Street, Santa Clara, California" bearing the signature of James F. Hartigan. Technology Credit Corporation also required that Broadband purchase insurance in favor of "Extreme Networks Credit Corporation" at "3585 Monroe Street, Santa Clara, California".

5.   Defendant Extreme Networks, Inc. is a Delaware corporation. According to the records of the California Secretary of State, Extreme Networks, Inc. has a principal place of business at 3585 Monroe Street, Santa Clara, California. Documents underlying the transfers at issue in this proceeding identify that same Santa Clara, California address for "Extreme Networks Credit Corporation". Extreme Networks, Inc., agreed to or condoned Technology Credit Corporation's actions in doing business as "Extreme Networks Credit Corporation". As examples, Extreme Networks, Inc. allowed Technology Credit Corporation to hold itself out as "Extreme Networks Credit Corporation", enter into agreements with Broadband under that name, and use Extreme Networks, Inc.'s business address and corporate logo.

6.   Key Equipment Finance Inc. is a Michigan corporation with a principal place of business in Colorado. Until March 1, 2005 it was known as "Key Corporate Capital", and was a successor by merger to "Leasetec Corporation".

7.   Leasetec Corporation and Technology Credit Corporation were parties to a contract that, inter alia, allowed Leasetec Corporation to act in the name of Technology Credit Corporation in its dealings with Broadband.  Leasetec Corporation also did business with the Debtor as "Extreme Networks" and also used business stationery bearing that name and logo.

FACTS COMMON TO ALL COUNTS

5.  Within the ninety (90) day period before the Petition Date, the Debtor made one or more transfers of property to Defendant, in the aggregate amount of at least $771,875.07 (each a

~~"Transfer," and collectively, the "Transfers"). A description of each of the Transfers is attached hereto as **Exhibit A**.~~

~~6. At the time the Debtor made each Transfer, either (i) Defendant was a creditor of the Debtor and such Transfer was made on account of an antecedent debt of the Debtor, or (ii) the Debtor did not receive fair or reasonably equivalent value in exchange for the making of such Transfer.~~

~~7. At the time the Debtor made each Transfer, the Debtor was insolvent or was rendered insolvent by making such Transfer.~~

~~8. With respect to each Transfer, if the Debtor had not made such Transfer and filed a case under Chapter 7 of the Bankruptcy Code, Defendant would have received less than the amount of such Transfer.~~

~~9. The Debtor and Defendant entered into a Stipulation Tolling Statute of Limitations dated as of April 10, 2003, ("Tolling Agreement"), in which the parties agreed to toll and extend the deadline for the Debtor to file Avoidance Actions through and including December 31, 2003. A copy of the Tolling Agreement is attached hereto as **Exhibit B**.~~

~~COUNT ONE~~
~~AVOIDANCE OF PREFERENTIAL TRANSFER PURSUANT TO 11 U.S.C. § 547~~
~~10. The Debtor incorporates the allegations set forth in paragraphs 1 through 8 above as if fully set forth herein at length.~~

~~11. Each of the Transfers represents a transfer to Defendant by or on behalf of the Debtor.~~

~~12. Each of the Transfers was made within ninety (90) days before the Petition Date.~~

~~13. Each of the Transfers was made to Defendant for, or on account of, an antecedent debt owed by the Debtor at the time such Transfer was made.~~

~~14. Each of the Transfers was made while the Debtor was insolvent.~~

8. ~~As a result of each of the Transfers, Defendant~~ <u>On May 9, 2001 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On</u>

September 12, 2005, the Court entered an Order Confirming the First Amended Joint Liquidating Plan of the Debtor and the Official Committee of Unsecured Creditors, which had the effect of reserving this action for the Plaintiff.

9.   Broadband was in the business of providing communications infrastructures and delivery systems for office buildings.  As part of that business, Broadband was interested in using networking equipment manufactured and sold by Extreme Networks, Inc.  The resulting transaction was structured as a lease, with Broadband agreeing to make monthly lease payments for the use of the networking equipment (the "Equipment").

10.   On or about March 9, 2000 and shortly thereafter, and as part of its transaction with Broadband, Extreme Networks, Inc. sold the Equipment to Technology Credit Corporation, which, under the name of "Extreme Networks Credit Corporation" immediately entered into a Master Lease Agreement with Broadband. That Master Lease Agreement shows "Extreme Networks Credit Corporation" as lessor, and Broadband as lessee. On the same day it purchased the Equipment, Technology Credit Corporation resold the Equipment to Leasetec Corporation and assigned at least a portion of Extreme Networks Credit Corporation's rights under the Master Lease Agreement to Leasetec Corporation.

11.   The effective result of the transactions described above was that Extreme Networks Inc. and Leasetec Corporation (now Defendant Key Equipment Finance, Inc.) acting by and through Technology Credit Corporation financed the Equipment for Broadband to use. To facilitate this transaction and induce Leasetec and Technology Credit Corporation to enter into the financing arrangement, Extreme Networks, Inc. guaranteed Broadband's lease payment obligations to both Leasetec Corporation and Extreme Networks Credit Corporation. Any

amounts Broadband paid under the Master Lease Agreement benefited, inter alia, both Leasetec Corporation and Extreme Networks, Inc.

12.   Following the initial transaction, Technology Credit Corporation, again acting as "Extreme Networks" continued as the servicing agent on the lease.

13.   Within the ninety (90) day period before the Petition Date, the Debtor made one or more transfers of property to or for the benefit of each of the Defendants in the aggregate amount of $771,875.07 (each a "Transfer," and collectively, the "Transfers"). A description of each of the Transfers is attached hereto as **Exhibit A**. The Transfers were in payment of past due amounts under the Master Lease Agreement and related leases.

14.  At the time the Debtor made each Transfer, (i) Defendants were creditors of the Debtor and such Transfer was made on account of an antecedent debt and by the Debtor on account of the leasing transaction. Alternatively, the Debtor did not receive fair or reasonably equivalent value in exchange for the making of such Transfer.

15.  At the time the Debtor made each Transfer, the Debtor was insolvent or was rendered insolvent by making such Transfer.

16.   With respect to each Transfer, if the Debtor had not made such Transfer and filed a case under Chapter 7 of the Bankruptcy Code, each Defendant would have received less than the amount of such Transfer from the Debtor's estate.

17.   After it filed its Chapter 11 case, Broadband rejected the lease on the Equipment. On June 29, 2001, Defendant Key Equipment Finance, Inc filed a Proof of Claim in Debtor's case in the amount of $6,066,838.91, under the name "Key Equipment Finance, a division of Key Corporate Capital, Inc., f/k/a Leasetec Corporation".

18.   Key Equipment Finance, Inc. then made demand upon Defendant Extreme Networks, Inc. under its guaranty of Broadband's obligations, and received in excess of at least $2,000,000.00 on that guaranty.

19.   The Debtor and Defendant, Technology Credit Corporation, entered into a Stipulation Tolling Statute of Limitations dated as of April 10, 2003, ("Tolling Agreement"), in which Technology Credit Corporation and the Debtor agreed to toll and extend the deadline for the Debtor to file Avoidance Actions through and including December 31, 2003. A copy of the Tolling Agreement is attached hereto as **Exhibit B**.

COUNT ONE
AVOIDANCE OF PREFERENTIAL TRANSFER PURSUANT TO 11 U.S.C. §§544
AND 547

20.   The Debtor incorporates the allegations set forth in paragraphs 1 through 19 above as if fully set forth herein at length.

21.   Each of the Transfers represents a transfer to or for the benefit of the Defendants by the Debtor. Technology Credit Corporation and Key Equipment Finance, Inc. each benefited directly from the Transfers. Extreme Networks, Inc. also benefited because each lease payment made by Broadband served to reduce commensurably Extreme Network, Inc.'s obligations under its guaranty.

22.   Each of the Transfers was made within ninety (90) days before the Petition Date.

23.   Each of the Transfers was made for, or on account of, an antecedent debt owed by the Debtor at the time such Transfer was made.

24.   Each of the Transfers was made while the Debtor was insolvent.

~~15.~~25.          As a result of each of the Transfers the Defendants received more than ~~it~~ they would have received if (i) this were a case under Chapter 7 of the Bankruptcy Code; (ii) such Transfer had not been made; and (iii) ~~Defendant~~Defendants received payment on account of the claim arising from any indebtedness to which the Transfer related.

WHEREFORE, the Debtor respectfully requests that this Court avoid each of the Transfers, and grant such further relief as this Court deems just and proper.

COUNT TWO
AVOIDANCE OF FRAUDULENT CONVEYANCES UNDER 11 U.S.C. § 548

~~16.~~26.          The Debtor incorporates the allegations set forth in paragraphs 1 through ~~15~~25 above as if fully set forth herein at length.

~~17.~~27.          Each of the Transfers represents a transfer ~~to Defendant by or on behalf~~for the benefit of one of more of the Defendants by the Debtor.

~~18.~~28.          Each of the Transfers was made within ninety (90) days before the Petition Date.

~~19.~~29.          The Debtor received less than a reasonably equivalent value in exchange for each of the Transfers.

30.          The Debtor was insolvent on the date each of the Transfers was made or became insolvent as a result of each of the Transfers.

31.          At the time ~~Defendant~~Defendants received each of the Transfers, the Debtor was engaged in a business or transaction for which any property remaining with the Debtor was an unreasonably small capital.

WHEREFORE, the Debtor respectfully requests that this Court avoid each of the Transfers, and grant such further relief as this Court deems just and proper.

COUNT THREE
~~AVOIDANCE~~RECOVERY OF TRANSFERS UNDER 11 U.S.C. § 550

~~22. The Debtor incorporates the allegations set forth in paragraphs 1 through 21 above as if fully set forth herein at length.~~

~~23. To the extent that they are avoided pursuant to 11 U.S.C. §§ 544, 545, 547, 548 and/or 549, the Debtor may recover the Transfers, or the value of the Transfers, pursuant to 11 U.S.C. § 550(a).~~

~~WHEREFORE, the Debtor respectfully requests that this Court enter a Money Judgment in the Debtor's favor against Defendant in the amount of $771,875.07 plus interest, costs of suit, and attorneys' fees, and grant such further relief as this Court deems just and proper.~~

~~Dated: 12/23/03~~                            ~~Respectfully submitted,~~
~~Wilmington, Delaware~~
                                         ~~PEPPER HAMILTON LLP~~

                                         ~~-/s/ **Adam Hiller**~~
                                         ~~David M. Fournier (DE No. 2812)~~
                                         ~~Adam Hiller (DE No. 4105)~~
                                         ~~John D. Wallen (DE No. 4319)~~
                                         ~~1201 Market Street, Suite 1600~~
                                         ~~P.O. Box 1709~~
                                         ~~Wilmington, DE 19899-1709~~
                                         ~~(302) 777-6500~~

                                         ~~*Attorneys for the Debtor, Broadband Office, Inc*~~

32.    The Debtor incorporates the allegations set forth in paragraphs 1 through 31 above as if fully set forth herein at length.

33.    To the extent that they are avoided pursuant to 11 U.S.C. §§ 544, 545, 547, and/or 548, the Debtor may recover the Transfers, or the value of the Transfers, pursuant to 11 U.S.C. § 550(a).

WHEREFORE, the Debtor respectfully requests that this Court enter a Money Judgment in the Debtor's favor against each of the Defendants in the amount of $771,875.07 plus interest, costs of suit, and such further relief as this Court deems just and proper.


Dated: _____     Respectfully submitted,
      Wilmington, Delaware
                                            WERB & SULLIVAN



                                            Brian A. Sullivan_____ (DE #2098)
                                            Robert D. Wilcox_____ (DE #4321)
                                            Amy D. Brown_____ (DE #4077)
                                            300 Delaware Avenue, 13th Floor
                                            P. O. Box 25046
                                            Wilmington, DE   19899
                                            Telephone: (302) 652-1100

                                            Attorneys for Broadband Office, Inc., Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re )<br>)<br>BROADBAND OFFICE, INC., )<br>)<br>)<br>Debtor. )<br>_____)<br>)<br>BROADBAND OFFICE, INC., )<br>)<br>)<br>Plaintiff, )<br>vs. )<br>)<br>TECHNOLOGY CREDIT CORPORATION )<br>d/b/a EXTREME NETWORKS CREDIT )<br>CORPORATION )<br>)<br>Defendant )<br>_____) | Civil Action No. 04-407 (GMS)<br><br>Bankruptcy Case # 01-1720 (GMS)<br><br>Chapter 11 |

### ORDER

Upon consideration of Plaintiff Broadband Office, Inc.'s  Motion for Leave to File its

Amended Complaint, (the "Motion") and any and all responses thereto, it is hereby

    ORDERED that the relief sought in the Motion is granted; and it is further

    ORDERED that Plaintiff is granted leave to file and serve the Amended

Complaint attached to the Motion as Exhibit "1"; and it is further

    ORDERED that pursuant to Federal Rule of Civil Procedure 15(c)(3),  the

Amended Complaint shall relate back to the date of filing the original Complaint.


    Dated:_____, 2005    _____

                                       Honorable Gregory M. Sleet<br>                                       United States District Court Judge

1

## CERTIFICATE OF SERVICE

I hereby certify that on  November 1, 2005,  I caused one copy of the foregoing document

to be served upon the persons listed below in the manner indicated:

**<u>VIA HAND DELIVERY</u>**

Thomas W. Briggs, Jr., Esq.
Morris, Nichols, Arsht & Tunnell
Chase Manhattan Center, 18th Floor
1201 North Market Street
Wilmington, DE 19801



   /s/ Brian A. Sullivan
    Brian A. Sullivan(#2098)