UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>BROADBAND OFFICE, INC.,<br><br>               Debtor. | Civil Action No. 04-407 (GMS)<br><br>Bankruptcy Case No. 01-1720 (GMS)<br><br>Chapter 11 |
| BROADBAND OFFICE, INC.,<br><br>               Plaintiff,<br><br>vs.<br><br>TECHNOLOGY CREDIT CORPORATION d/b/a EXTREME NETWORKS CREDIT CORPORATION, and<br>EXTREME NETWORKS, INC.,<br>and<br>KEY EQUIPMENT FINANCE, INC. f/k/a KEY CORPORATE CAPITAL, INC. f/k/a LEASTEC CORPORATION<br>               Defendants. | |

**AMENDED COMPLAINT FOR AVOIDANCE OF PREPETITION TRANSFERS**

Broadband Office, Inc. (the "Debtor" or "Broadband"), by its undersigned attorneys, files this Amended Complaint for avoidance and recovery of pre-petition transfers (the "Complaint") against Technology Credit Corporation d/b/a Extreme Networks Credit Corporation, and Extreme Networks, Inc. and Key Equipment Finance, Inc, f/k/a Key Corporate Capital, Inc. f/k/a Leasetec Corporation (collectively "Defendants"), and in support hereof alleges as follows:

JURISDICTION, VENUE, AND PARTIES

1. This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a) because this adversary proceeding arises in and relates to a bankruptcy case pending in this district.

2. The Debtor is a domestic corporation organized under the laws of the State of Delaware.

3. Defendants are corporations subject to service of process pursuant to Federal Rule of Bankruptcy Procedure 7004(b) anywhere in the United States.

4. Defendant Technology Credit Corporation is a California corporation that, according to the records of the California Secretary of State, has a principal place of business at "919 The Alameda, San Jose, California". It did business with the Debtor as "Extreme Networks Credit Corporation" and "Extreme Networks" at a business address of "3585 Monroe Street, Santa Clara, California". Many of the documents underlying the transfers at issue in this proceeding were signed by James F. Hartigan, who signed on behalf of both "Technology Credit Corporation" and "Extreme Networks Credit Corporation". Technology Credit Corporation filed UCC-1 Financing Statements in the name of "Extreme Networks Credit Corporation" showing a business address of "3585 Monroe Street, Santa Clara, California" bearing the signature of James F. Hartigan. Technology Credit Corporation also required that Broadband purchase insurance in favor of "Extreme Networks Credit Corporation" at "3585 Monroe Street, Santa Clara, California".

5. Defendant Extreme Networks, Inc. is a Delaware corporation. According to the records of the California Secretary of State, Extreme Networks, Inc. has a principal place of business at 3585 Monroe Street, Santa Clara, California. Documents underlying the transfers at

issue in this proceeding identify that same Santa Clara, California address for "Extreme Networks Credit Corporation". Extreme Networks, Inc., agreed to or condoned Technology Credit Corporation's actions in doing business as "Extreme Networks Credit Corporation". As examples, Extreme Networks, Inc. allowed Technology Credit Corporation to hold itself out as "Extreme Networks Credit Corporation", enter into agreements with Broadband under that name, and use Extreme Networks, Inc.'s business address and corporate logo.

6. Key Equipment Finance Inc. is a Michigan corporation with a principal place of business in Colorado. Until March 1, 2005 it was known as "Key Corporate Capital", and was a successor by merger to "Leasetec Corporation".

7. Leasetec Corporation and Technology Credit Corporation were parties to a contract that, inter alia, allowed Leasetec Corporation to act in the name of Technology Credit Corporation in its dealings with Broadband. Leasetec Corporation also did business with the Debtor as "Extreme Networks" and also used business stationery bearing that name and logo.

## FACTS COMMON TO ALL COUNTS

8. On May 9, 2001 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On September 12, 2005, the Court entered an Order Confirming the First Amended Joint Liquidating Plan of the Debtor and the Official Committee of Unsecured Creditors, which had the effect of reserving this action for the Plaintiff.

9. Broadband was in the business of providing communications infrastructures and delivery systems for office buildings. As part of that business, Broadband was interested in using networking equipment manufactured and sold by Extreme Networks, Inc. The resulting

transaction was structured as a lease, with Broadband agreeing to make monthly lease payments for the use of the networking equipment (the "Equipment").

10. On or about March 9, 2000 and shortly thereafter, and as part of its transaction with Broadband, Extreme Networks, Inc. sold the Equipment to Technology Credit Corporation, which, under the name of "Extreme Networks Credit Corporation" immediately entered into a Master Lease Agreement with Broadband. That Master Lease Agreement shows "Extreme Networks Credit Corporation" as lessor, and Broadband as lessee. On the same day it purchased the Equipment, Technology Credit Corporation resold the Equipment to Leasetec Corporation and assigned at least a portion of Extreme Networks Credit Corporation's rights under the Master Lease Agreement to Leasetec Corporation.

11. The effective result of the transactions described above was that Extreme Networks Inc. and Leasetec Corporation (now Defendant Key Equipment Finance, Inc.) acting by and through Technology Credit Corporation financed the Equipment for Broadband to use. To facilitate this transaction and induce Leasetec and Technology Credit Corporation to enter into the financing arrangement, Extreme Networks, Inc. guaranteed Broadband's lease payment obligations to both Leasetec Corporation and Extreme Networks Credit Corporation. Any amounts Broadband paid under the Master Lease Agreement benefited, inter alia, both Leasetec Corporation and Extreme Networks, Inc.

12. Following the initial transaction, Technology Credit Corporation, again acting as "Extreme Networks" continued as the servicing agent on the lease.

13. Within the ninety (90) day period before the Petition Date, the Debtor made one or more transfers of property to or for the benefit of each of the Defendants in the aggregate amount of $771,875.07 (each a "Transfer," and collectively, the "Transfers"). A description of

each of the Transfers is attached hereto as **Exhibit A**. The Transfers were in payment of past due amounts under the Master Lease Agreement and related leases.

14. At the time the Debtor made each Transfer, (i) Defendants were creditors of the Debtor and such Transfer was made on account of an antecedent debt and by the Debtor on account of the leasing transaction. Alternatively, the Debtor did not receive fair or reasonably equivalent value in exchange for the making of such Transfer.

15. At the time the Debtor made each Transfer, the Debtor was insolvent or was rendered insolvent by making such Transfer.

16. With respect to each Transfer, if the Debtor had not made such Transfer and filed a case under Chapter 7 of the Bankruptcy Code, each Defendant would have received less than the amount of such Transfer from the Debtor's estate.

17. After it filed its Chapter 11 case, Broadband rejected the lease on the Equipment. On June 29, 2001, Defendant Key Equipment Finance, Inc filed a Proof of Claim in Debtor's case in the amount of $6,066,838.91, under the name "Key Equipment Finance, a division of Key Corporate Capital, Inc., f/k/a Leasetec Corporation".

18. Key Equipment Finance, Inc. then made demand upon Defendant Extreme Networks, Inc. under its guaranty of Broadband's obligations, and received in excess of at least $2,000,000.00 on that guaranty.

19. The Debtor and Defendant, Technology Credit Corporation, entered into a Stipulation Tolling Statute of Limitations dated as of April 10, 2003, ("Tolling Agreement"), in which Technology Credit Corporation and the Debtor agreed to toll and extend the deadline for the Debtor to file Avoidance Actions through and including December 31, 2003. A copy of the Tolling Agreement is attached hereto as **Exhibit B**.

COUNT ONE
AVOIDANCE OF PREFERENTIAL TRANSFER PURSUANT TO 11 U.S.C. §§544 AND 547

20. The Debtor incorporates the allegations set forth in paragraphs 1 through 19 above as if fully set forth herein at length.

21. Each of the Transfers represents a transfer to or for the benefit of the Defendants by the Debtor. Technology Credit Corporation and Key Equipment Finance, Inc. each benefited directly from the Transfers. Extreme Networks, Inc. also benefited because each lease payment made by Broadband served to reduce commensurably Extreme Network, Inc.'s obligations under its guaranty.

22. Each of the Transfers was made within ninety (90) days before the Petition Date.

23. Each of the Transfers was made for, or on account of, an antecedent debt owed by the Debtor at the time such Transfer was made.

24. Each of the Transfers was made while the Debtor was insolvent.

25. As a result of each of the Transfers the Defendants received more than they would have received if (i) this were a case under Chapter 7 of the Bankruptcy Code; (ii) such Transfer had not been made; and (iii) Defendants received payment on account of the claim arising from any indebtedness to which the Transfer related.

WHEREFORE, the Debtor respectfully requests that this Court avoid each of the Transfers, and grant such further relief as this Court deems just and proper.

COUNT TWO
AVOIDANCE OF FRAUDULENT CONVEYANCES UNDER 11 U.S.C. § 548

26. The Debtor incorporates the allegations set forth in paragraphs 1 through 25 above as if fully set forth herein at length.

27. Each of the Transfers represents a transfer for the benefit of one of more of the Defendants by the Debtor.

28. Each of the Transfers was made within ninety (90) days before the Petition Date.

29. The Debtor received less than a reasonably equivalent value in exchange for each of the Transfers.

30. The Debtor was insolvent on the date each of the Transfers was made or became insolvent as a result of each of the Transfers.

31. At the time Defendants received each of the Transfers, the Debtor was engaged in a business or transaction for which any property remaining with the Debtor was an unreasonably small capital.

WHEREFORE, the Debtor respectfully requests that this Court avoid each of the Transfers, and grant such further relief as this Court deems just and proper.

COUNT THREE
RECOVERY OF TRANSFERS UNDER 11 U.S.C. § 550

32. The Debtor incorporates the allegations set forth in paragraphs 1 through 31 above as if fully set forth herein at length.

33. To the extent that they are avoided pursuant to 11 U.S.C. §§ 544, 545, 547, and/or 548, the Debtor may recover the Transfers, or the value of the Transfers, pursuant to 11 U.S.C. § 550(a).

WHEREFORE, the Debtor respectfully requests that this Court enter a Money Judgment in the Debtor's favor against each of the Defendants in the amount of $771,875.07 plus interest, costs of suit, and such further relief as this Court deems just and proper.

Dated: 12/23/05
Wilmington, Delaware

Respectfully submitted,

WERB & SULLIVAN

/s/Brian A. Sullivan
| | |
|---|---|
| Brian A. Sullivan | (DE #2098) |
| Robert D. Wilcox | (DE #4321) |
| Amy D. Brown | (DE #4077) |

300 Delaware Avenue, 13th Floor
P. O. Box 25046
Wilmington, DE  19899
Telephone: (302) 652-1100

Attorneys for Broadband Office, Inc., Plaintiff

## EXHIBIT A
*In re BroadBand Office, Inc., Case No. 01-1720 (GMS)*

The Transfers include, but may not be limited to, the following payment(s):

| Amount | Type | Check No. | Date Posted |
| --- | --- | --- | --- |
| $276,164.63 | CHECK | 107738 | 3/14/01 |
| $495,710.44 | CHECK | 107737 | 3/14/01 |

# EXHIBIT B
*In re Broadband Office, Inc., Case No. 01-1720 (GMS)*

EXHIBIT B
*In re Broadband Office, Inc., Case No. 01-1720 (GMS)*

*[handwritten: Technologies Management Credit Corporation d/b/a]*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| BROADBAND OFFICE, INC., | Case No. 01-1720 (GMS) |
| Debtor. | |

## STIPULATION TOLLING STATUTE OF LIMITATIONS

THIS STIPULATION TOLLING STATUTE OF LIMITATIONS (the "Stipulation"), dated as of April 10, 2003 by and between BroadBand Office, Inc. (the "Debtor") and Extreme Networks Credit Co ("Alleged Transferee") (collectively, the Debtor and Respondent constitute the "Parties").

WHEREAS, on May 9, 2001 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware, and since the Petition Date has managed its affairs and remained in possession of its assets as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108; and

WHEREAS, pursuant to §§ 108 and 546(a)(1)(A) of the Bankruptcy Code, the time by which the Debtor must commence actions, if any, arising under sections 544, 555, 547, 548, 550, and/or 553 of the Bankruptcy Code ("Avoidance Actions") was originally due to expire on May 9, 2003; and

WHEREAS, the Parties have agreed to the tolling and extension of the deadline to file Avoidance Actions, subject to the terms and conditions set forth below,

NOW, THEREFORE, in consideration of the mutual covenants and promises herein contained, the Parties hereby agree as follows:

WI-#126224 v1 (2P#801!.DOC)

1. The Parties hereby agree to toll the running of the statute of limitations period prescribed by sections 108 and 546(a)(1)(A) of the Bankruptcy Code and irrevocably extend the deadline by which the Debtor, or any party acting on behalf of the Debtor or its estate, must commence any Avoidance Action against Alleged Transferee under sections 544, 555, 547, 548, 550, and/or 553 of the Bankruptcy Code (including but not limited to related actions under state law) through and including the later of (A) December 31, 2003, and (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 302 of the Bankruptcy Code in the Debtor's case, *but only if such appointment or election occurs prior to May 9, 2003*; provided, however, that (i) nothing herein shall prejudice, or be deemed to constitute a waiver of, the right of Alleged Transferee to assert any and all defenses Alleged Transferee may have with respect to any Avoidance Actions filed by or on behalf of the Debtor or its estate, except that Alleged Transferee shall not be entitled to assert a defense based upon the statute of limitations set forth in sections 108 and/or 546(a)(1)(A) of the Bankruptcy Code, or the doctrine of laches, if any such Avoidance Action is commenced on or before the above-described deadline, and (ii) this Stipulation shall not be construed in any way as an admission or denial by either of the Parties regarding any fact or circumstance.

2. This Stipulation contains the entire agreement of the Parties with respect to the subject matter hereof and there are no representations or agreements other than those expressly set forth herein. This Stipulation may not be modified or amended except by a writing signed by each of the Parties hereto.

3. This Stipulation shall be subject to and governed by the laws of the State of Delaware.

4. The terms of this Stipulation shall be binding upon the Parties and their respective successors and assigns. Each person signing this Stipulation represents that such person has the

power and authority to execute this Stipulation on behalf of, and bind, the party such person purports to represent.

5. This Stipulation may be executed in multiple counterparts as if the Parties hereto had signed a single instrument, all of which together shall constitute one agreement. Facsimile signatures will be treated as original for purposes of this Stipulation.

IN WITNESS WHEREOF, the parties hereto have caused this Stipulation to be executed as of the date first written above.

BROADBAND OFFICE, INC.

by: _____

David M. Fournier (DE No. 2812)
Adam Hiller (DE No. 4105)
PEPPER HAMILTON LLP
Suite 1600
1201 Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
(302) 777-6500

Subject to addition in paragraph 1

EXTREME NETWORKS CREDIT CO

by: _____

Print Name: JEFFRY A. DAVIS
Title: ATTORNEY
Address: 4365 EXECUTIVE DRIVE, SUITE 1100
          SAN DIEGO, CA 92121
Phone Number: (858) 638-6810

-3-