IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>BROADBAND OFFICE, INC.<br><br>Debtor. | C.A. No. 04-407 (GMS) |
| BROADBAND OFFICE, INC.,<br><br>Plaintiff,<br><br>v.<br><br>TECHNOLOGY CREDIT CORPORATION d/b/a EXTREME NETWORKS CREDIT CORPORATION, and EXTREME NETWORKS, INC., and KEY EQUIPMENT FINANCE, INC. f/k/a KEY CORPORATE CAPITAL, INC. f/k/a LEASETEC CORPORATION,<br><br>Defendants. | Bankruptcy C.A. No. 01-1720 (GMS)<br>Chapter 11 |

**DEFENDANT KEY EQUIPMENT FINANCE INC.'S BRIEF
IN SUPPORT OF ITS MOTION TO DISMISS**

BLANK ROME LLP
Steven L. Caponi (DE. I.D. 3484)
1201 N. Market Street, Suite 800
Wilmington, DE 19801
(302) 425-6408

and

Regina Stango Kelbon, Esquire
Blank Rome LLP
One Logan Square
130 N 18th St
Philadelphia, PA 19103
Phone: (215)569-5507

Attorneys for Defendant
Key Equipment Finance Inc.

Dated: January 31, 2005

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................................1

NATURE AND STAGE OF THE PROCEEDINGS .................................................................2

STATEMENT OF FACTS ..........................................................................................................3

ARGUMENT......................................................................................................................5, 13

I. COUNTS ONE AND TWO OF THE COMPLAINT WERE FILED OUTSIDE THE STATUTE OF LIMITATIONS PERIOD AND MUST BE DISMISSED .........................5

  A. The Amended Complaint Was Filed Outside Of The Limitations Period Of 11 U.S.C. § 546 ..................................................................................6

  B. The Amended Complaint Does Not Satisfy F.R.C.P. 15(c) And Cannot Relate Back To The Original Pleading ................................................................8

   1. Key Did Not Receive Notice Of The Original Complaint Within The 120 Period Required By F.R.C.P. 12(C)(3)............................10

   2. The Failure To Name Key As A Defendant In The Original Complaint Was Not A Mistake.................................................................11

II. COUNT THREE OF THE COMPLAINT FAILS TO ASSERT A CASE OR CONTROVERSY THAT IS RIPE FOR ADJUDICATION ............................................13

CONCLUSION.........................................................................................................................14

# TABLE OF AUTHORITIES

## CASES

*In re American Pad & Paper,*
    319 B.R. 791 (D. Del. 2005)..................................................................................................8

*Babbitt v. United Farm Workers National Union,*
    442 U.S. 289 (1979)............................................................................................................13

*Conley v. Gibson,*
    355 U.S. 41 (1957)................................................................................................................5

*Garvin v. City of Philadelphia Police Officer John Doe,*
    354 F.3d 215 (3d Cir. 2003).........................................................................................10, 11

*Langford v. Atlantic City,*
    235 F.3d 845 (3d Cir. 2000)..................................................................................................5

*Lehigh Cement Co. v. Steadfast Ins. Co.,*
    2006 U.S. Dist. LEXIS 429 (E.D.P.A. 2006) ....................................................................14

*Lenard v. Parry,*
    219 F.3d 25 (3d Cir. 2000)..................................................................................................12

*In re Merck Co.,*
    2006 U.S. Dist. LEXIS 2345 (D.N.J. 2006) ........................................................................4

*Nelson v. Adams,*
    529 U.S. 460 (2000)............................................................................................................12

*Nelson v. County of Allegheny,*
    60 F.3d 1010 (3d Cir. 1995)..................................................................................................8

*Oshiver v. Levin, Fishbein, Sedran & Berman,*
    38 F.3d 1380 (3d Cir. 1994)..................................................................................................6

*Peachlum v. City of York,*
    333 F.3d 429 (3d Cir. 2003)................................................................................................13

*Shea v. Esensten,*
    208 F.3d 712 (8th Cir. 2000) ..............................................................................................12

*Singletary v. Pennsylvania Department of Corrections,*
    266 F.3d 186 (3d Cir. 2001).....................................................................................9, 10, 11

*Urrutia v. Harrisburg County Police Department*,
    91 F.3d 451 (3d Cir. 1996)..................................................................................................9

*Varlack v. SWC Caribbean, Inc.*,
    550 F.2d 171 (3d Cir. 1977)................................................................................................10

*Watson v. Beneficial Delaware, Inc.*,
    2005 U.S. Dist. LEXIS 17482 (D. Del. 2005) .....................................................................5

*Wells v. HBO & Co.*,
    813 F. Supp. 1561 (N.D. Ga. 1992)....................................................................................12

## STATUTES

11 U.S.C. § 544........................................................................................................................1, 4, 6

11 U.S.C. § 546...........................................................................................................................1, 6

11 U.S.C. § 547........................................................................................................................1, 4, 6

11 U.S.C. § 548..............................................................................................................................6

11 U.S.C. § 550(a) ........................................................................................................................13

## RULES

F.R.C.P. 15(c) ............................................................................................................................8, 9

F.R.C.P. 12(b)(6) .......................................................................................................................1, 5

F.R.C.P. Rule 4(m) .......................................................................................................................10

## OTHER AUTHORITIES

6A Charles Alan Wright, et al.,
    *Federal Practice and Procedure* § 1498 (2d ed. 1990 & 2004 Pocket Part) .....................12

## PRELIMINARY STATEMENT

With respect to Key Equipment Finance Inc. ("Key"), Counts One and Two of the Amended Complaint must be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6), because the claims are time barred by the applicable statute of limitations. Count Three of the Amended Complaint must similarly be dismissed because the claim fails to present a case or controversy that is ripe for adjudication by this Court.

On December 23, 2003, Broadband Office, Inc. ("Broadband") filed the Original Complaint against Technology Credit Corporation seeking to avoid and recover certain pre-petition transfers using 11 U.S.C. §§ 547, 548 and 550 ("Original Complaint"). (Exhibit A hereto). The Amended Complaint, adding Key as a defendant, was filed two years later on December 23, 2005 and added for the first time a claim under 11 U.S.C. § 544. (Exhibit B hereto).

11 U.S.C. § 546 states in unambiguous terms that proceedings pursuant to Sections 544, 547 and 548 **"may not be commenced after ... 2 years after the entry of the order for relief."** Broadband filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on May 9, 2001. The statute of limitations period under Section 546 expired on May 9, 2003 – two years after the order for relief. Relying on the face of the Amended Complaint, it is undisputed that the Original Complaint was filed on December 23, 2003 - over eight months after the statute of limitations articulated in 11 U.S.C. § 546 had expired, and the Amended Complaint, adding Key as a defendant, was filed on December 23, 2005 - over two and one-half (2-1/2) years after expirations of the statute of limitations period. Accordingly, Broadband's claims under Sections 544, 547 and 548, as set forth in Counts One and Two, must be dismissed with prejudice.

## NATURE AND STAGE OF THE PROCEEDINGS

Broadband filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on May 9, 2001. The Original Complaint was filed on December 23, 2003 and the Amended Complaint, adding Key as a defendant, was filed on December 23, 2005.

This is Key's Brief In Support Of Its Motion To Dismiss, which was filed contemporaneously with Key's Motion to Dismiss.

## STATEMENT OF FACTS

On May 9, 2001 (the "Petition Date"), Broadband filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.[1] On September 12, 2005, the Court entered an Order Confirming the first Amended Joint Liquidating Plan of Broadband and the Official Committee of Unsecured Creditors. Prior to filing for bankruptcy, Broadband was in the business of providing communications infrastructures and delivery systems for office buildings. As part of that business, Broadband was interested in using networking equipment manufactured and sold by Extreme Networks, Inc. The resulting transaction was structured as a lease, with Broadband agreeing to make monthly lease payments for the use of the networking equipment (the "Equipment").

In early 2000, Extreme Networks, Inc., as part of the transaction with Broadband, sold the Equipment to Technology Credit Corporation ("TCC") which, under the name of "Extreme Networks Credit Corporation," entered into a Master Lease Agreement with Broadband. The Master Lease Agreement identifies "Extreme Networks Credit Corporation" as the lessor, and Broadband as the lessee. Pursuant to an express or implied agreement, Extreme Networks, Inc. permitted TCC to do business with Broadband as "Extreme Networks Credit Corporation" and "Extreme Networks." Many of the documents underlying the transfers at issue in this proceeding were signed by James F. Hartigan, who signed on behalf of both "Technology Credit Corporation" and "Extreme Networks Credit Corporation."

After completing the lease transaction with Broadband, TCC filed UCC-1 Financing Statements, with respect to the Lease and Equipment at issue in the name of "Extreme Networks

---

[1] For the limited purpose of the Motion to Dismiss, Key will presume that the allegations in the Amended Complaint are true. Unless otherwise specified, the facts discussed in this Memorandum, are taken directly from the Amended Complaint. Key disputes many of the allegations in the Amended Complaint and therefore reserves the right to contest the facts stated in the Amended Complaint in any subsequent submission or proceeding.

Credit Corporation" showing a business address of "3585 Monroe Street, Santa Clara, California" bearing the signature of James F. Hartigan. (Exhibit B at ¶ 4). On the same day it purchased the equipment, Technology Credit Corporation resold the Equipment to Leasetec Corporation ("Leasetec") and assigned a portion of its rights under the Master Lease Agreement to Leasetec. Leasetec was subsequently acquired by Key and hereinafter the term "Key" shall refer jointly to both Key and Leasetec. On March 17, 2000, Broadband signed and consented to the assignment of the TCC UCC-1 Financing Statements to Key (Exhibit C hereto)[2]. According to the Amended Complaint, Key was permitted to act in the name of TCC in its dealings with Broadband.

As a result of the transactions described above, Key, acting by and through Technology Credit Corporation, financed the Equipment for Broadband to use. Following the initial transaction, Technology Credit Corporation, acting as "Extreme Networks" continued as the servicing agent on the lease. Within the ninety (90) day period before the Petition Date, Broadband made lease payments totaling $771,875.07 to one or more of the Defendants (the "Transfers"). The Transfers were in payment of past due amounts under the Master Lease agreement and related leases. Broadband believes these payments are recoverable or avoidable as either preferences or fraudulent conveyances under 11 U.S.C. §§ 544, 547 and 548. On June 29, 2001, Key filed a Proof of Claim in Broadband's bankruptcy proceeding in the amount of $6,066,838.91, under the name "Key Equipment Finance, a division of Key Corporate Capital, Inc., f/k/a Leasetec Corporation." (Exhibit D hereto).

On April of 2003, Broadband and TCC entered into a Stipulation Tolling Statute of Limitations dated as of April 10, 2003 ("Tolling Agreement"). (Exhibit E hereto). Through the

---

[2] The Assignments of the UCC-1 financing statements to Key is not discussed in the amended Complaint. This Court may, however, take judicial notice of the UCC-1 Assignment under the public records exception of Federal Rule of Evidence 201(b)(2). *See In re Merck Co.* 2006 U.S. Dist. LEXIS 2345 (D.N.J. 2006).

Tolling Agreement, TCC and Broadband agreed to toll and extend until December 31, 2003, the Section 546 statute of limitations period within which Broadband was required to file an action against TCC to recover the Transfers. Neither Key nor its predecessor Leasetec entered into a Tolling Agreement with Broadband.

As noted in the Amended Complaint, Broadband and the Defendants are each distinct legal entities and are not members of the same corporate families (i.e. subsidiaries or affiliates). (Exhibit B). Broadband is a domestic corporation organized under the laws of the State of Delaware. Defendant TCC is a California corporation that maintains a principal place of business at 919 The Alameda, San Jose, California. Defendant Extreme Networks, Inc. is a Delaware corporation that maintains a principal place of business at 3585 Monroe Street, Santa Clara, California. Key Equipment Finance Inc. ("Key"), is a Michigan corporation with a principal place of business in Colorado. Until March 1, 2005, Key was known as "Key Corporate Capital" and was a successor by merger to "Leasetec Corporation".

## ARGUMENT

I. **COUNTS ONE AND TWO OF THE COMPLAINT WERE FILED OUTSIDE THE STATUTE OF LIMITATIONS PERIOD AND MUST BE DISMISSED**

A motion to dismiss tests the legal sufficiency of the complaint. *Conley v. Gibson*, 355 U.S. 41 (1957); *Watson v. Beneficial Delaware, Inc.*, 2005 U.S. Dist. LEXIS 17482 (D. Del. 2005). When reviewing a motion to dismiss pursuant to F.R.C.P. 12(b)(6), courts must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom. *Langford v. Atlantic City*, 235 F.3d 845, 847 (3d Cir. 2000). A court will grant a motion to dismiss only when it appears that the plaintiff can prove no set of facts that would entitle him to relief. *Id.* It is well settled that the failure to comply with the statute of limitations will justify granting a motion to dismiss "where the claim is facially non-compliant with the

5

limitations period... ." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 n.1 (3d Cir. 1994).

### A. The Amended Complaint was Filed Outside of the Limitations Period of 11 U.S.C. § 546

On December 23, 2003, Broadband filed the Original Complaint against TCC seeking to avoid and recover certain pre-petition transfers under 11 U.S.C. §§ 547, 548 and 550. The Amended Complaint, adding Key as a defendant, was filed two years later on December 23, 2005 and added a claim under 11 U.S.C. § 544. The applicable statute of limitations set forth in 11 U.S.C. § 546 states in pertinent part:

>(a) An action or proceeding under section 544, 545, 547, 548 or 553 of this title may not be commenced after...
>
>>(1) the later of—
>>
>>>(A) 2 years after entry of an order for relief.... .

It is undisputed that the "order for relief" stated in Section 546 (a)(1)(A) refers to the filing of Broadband's petition for bankruptcy protection. Broadband filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on May 9, 2001 and, as a result, the statute of limitations period under Section 546 expired on May 9, 2003.

Although the Original Complaint was filed outside of the Section 546 limitations period, Broadband and TCC had entered into the Tolling Agreement whereby TCC voluntarily agreed to extend the limitation period until December 31, 2003. (Exhibits B at ¶19 and E). Paragraph 19 of the Amended Complaint clearly reflects Broadband's understanding that Broadband and TCC were the only parties to the Tolling Agreement. Paragraph 19 states in relevant part:

>**Broadband and Defendant, Technology Credit Corporation,** entered into a Stipulation Tolling Statute of Limitations dated as of April 10, 2003, ("Tolling Agreement"), in which **Technology Credit Corporation and**

> **Broadband agreed** to toll and extend the deadline for Broadband to file Avoidance Actions through and including December 31, 2003... .

(emphasis added) (Exhibit B at ¶19). Because the Original Complaint was filed on December 23, 2003, within the tolling period, TCC was unable to raise a statute of limitations defense.

In contrast to TCC, neither the Original Complaint, the Amended Complaint nor the Tolling Agreement state or suggest that Key was a party to the Tolling Agreement or that the Tolling Agreement was binding upon anyone other than the signatories. Similarly, these documents do not state or suggest that TCC had authority to bind Key to the Tolling Agreement or that Broadband believed TCC possessed such authority. Broadband's failure to secure a tolling agreement with Key cannot be attributed to a lack of knowledge, because Broadband was well aware of Key's interest in the Equipment and Transfers prior to the expiration of the Section 546 limitations period, as well as the execution of the Tolling Agreement. For example:

- On March 17, 2000, Broadband signed and consented to the assignment of the TCC UCC-1 Financing Statements to Key (Exhibit C);

- On June 29, 2001, Key filed a Proof of Claim in Broadband's bankruptcy proceeding in the amount of $6,066,838.91, under the name "Key Equipment Finance, a division of Key Corporate Capital, Inc., f/k/a Leasetec Corporation" (Exhibit D); and

- The June 29, 2001 Proof of Claim identified the leases at issues by reference to Broadband's own Schedule of Assets and by attaching detailed payment histories for each lease. (Exhibit D).

Absent a tolling agreement with Key, Broadband is precluded by the clear terms of Section 546 from commencing an "action or proceeding" against Key under Sections 544, 547 or 548 after May 9, 2003.

7

The Amended Complaint was filed on December 23, 2005 and represented the first effort by Broadband to assert a claim against Key, despite having actual knowledge of Key's interest in the Equipment and Transfers as early as March 2000 (the UCC assignment), and being re-noticed again in April 2001 (the proof of claim). By waiting over two and one-half (2-1/2) years after the expiration of the Section 546 limitations period to first assert claims against Key pursuant to Sections 544, 547 and 548, Counts One and Two of the Amended Complaint must be dismissed with prejudice. *See In re American Pad & Paper*, 319 B.R. 791 (D. Del. 2005) (affirming the dismissal of an avoidance action that was filed outside of the Section 546 limitations period).

**B. The Amended Complaint Does Not Satisfy F.R.C.P. 15(c) and Cannot Relate Back to the Original Pleading**

Should the Court conclude the Tolling Agreement applied to Key and extended the Section 546 limitations period, which it should not, the Amended Complaint must still be dismissed because it does not satisfy the relation back requirements of F.R.C.P. 15(c). Rule 15(c) can ameliorate the running of a statue of limitations on a claim by allowing the amended claim to relate back to the original, timely filed complaint. *Nelson v. County of Allegheny*, 60 F.3d 1010, 1015 (3d Cir. 1995). In this matter, however, Broadband failed to place Key on notice of the action within the time provided by Rule 4(m), and its failure to name Key as a defendant in the Original Complaint was not the result of a mistake. Accordingly, the Amended Complaint cannot relate back to the initial pleading and must be treated as having been filed two and one-half (2-1/2) years after expiration of the Section 546 limitations period.

Rule 15(c) provides:

(c) **Relation Back of Amendments.** An amendment of a pleading relates back to the date of the original pleading when

> (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or
>
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
>
> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

F.R.C.P. 15(c).

The Courts in this Circuit, have interpreted Rule 15(c)(3) as imposing four conditions, all of which must be satisfied for a successful relation back of an amended complaint seeking to add new defendants. *Urrutia v. Harrisburg County Police Dept.*, 91 F.3d 451, 457 (3d Cir. 1996). For purposes of this memorandum, Key will assume that the first requirement, that the claim against Key arose out of the conduct, transaction or occurrence set forth in the Original Complaint, has been satisfied. The second and third conditions are set forth in Rule 15(c)(3)(A) and (B), respectively, and must be met "within the period provided by Rule 4(m) for service of the summons and complaint" – which is 120 days after filing of the initial pleading. *Singletary v. Pennsylvania Dept. of Corrections*, 266 F.3d 186, 191 (3d Cir. 2001). The second condition requires that the new defendant must have received such notice of the original action, within the 120 period, so that the party will not be prejudiced in maintaining a defense on the merits. *Id.*

The third condition of Rule 15(c)(3), requires that the new defendant must have known, or should have known, within the 120 period, that "but for a mistake" made by the plaintiff concerning the newly named party's identity, "the action would have been brought against" the newly added defendant. *Id.* Finally, the fourth condition requires that the failure to name the

9

new defendant in the original pleading must have been the result of a mistake and that absent such mistake, the new defendant knew it would have been named in the original pleading. *Id.*

        **1.**     **Key Did Not Receive Notice Of The Original Complaint Within The 120 Period Required By F.R.C.P. 12(C)(3)**

The record before the Court is unequivocal and proves that Key was not served with the Amended Complaint within 120 days of the filing of the Original Complaint. The Original Complaint was filed on December 23, 2003, while the Amended Complaint, adding Key as a defendant, was filed two years later on December 23, 2005. Key did not receive actual notice within the period proscribed by F.R.C.P. Rule 4m. The Third Circuit, however, has held that Rule 15(c)(3) notice does not require actual service of process on the newly added defendant, but rather, notice may be deemed to have occurred when a party who has some reason to suspect its potential involvement as a defendant hears of the commencement of the action by some informal means. *See Garvin v. City of Philadelphia Police Officer John Doe*, 354 F.3d 215, 223 (3d Cir. 2003); *Varlack v. SWC Caribbean, Inc.*, 550 F.2d 171, 175 (3d Cir. 1977).

In *Singletary*, the Third circuit recognized two possible methods by which a court can impute notice under Rule 15(c)(3). *Garvin*, 354 F.3d at 223. The first is the "shared attorney" method, which is based on the presumption that when the originally named defendant and the party to be added are represented by the same legal counsel, the counsel will have informed the new defendant of the pending action. *Singletary*, 266 F.3d at 196. The second is the "identity of interest" method, whereby the court concludes that the parties' are so closely related in their business operations that the institution of an action against one serves to provide notice of the litigation to the other. *Id.* at 197. There is nothing in the Amended Complaint to suggest that Key and TCC were represented by the same counsel at the time the Original Complaint was

10

filed, or within 120 days thereafter. Accordingly, this memorandum will focus on the "identity of interest" test.

Since adoption of the "identity of interest" test in *Singeltary*, there have been very few cases explaining the proper application of the test or discussing what factors should be considered by the Courts. Cases that have applied the identity of interest test, have done so primarily in the context of determining whether notice to an employer or government agency can be imputed to an employee or related government agency. *See Garvin*, 344 F.3d at 227. Despite a thorough search, Key has been unable to locate a Third Circuit decision, in which the Court concluded that notice to one corporation constituted constructive notice to an unrelated corporation under Rule 15(c)(3).

Under even the most liberal application of the "identity of interest" test, this Court cannot conclude that service of the Original Complaint upon TCC served as constructive notice to separate, unaffiliated, corporation, Key. As noted in the Amended Complaint, TCC and Key are separate corporations, maintaining principle places of business in different states and are incorporated in different states. There is nothing in the Amended Complaint to suggest that TCC and Key are anything other than distinct companies that have engaged in mutually beneficial arms-length transactions. Under *Singletary* and its progeny, this is insufficient as a matter of law to conclude that TCC and Key enjoy a shared identity of interest. Accordingly, Broadband cannot satisfy the requirements of Rule 15(c)(3) and is not entitled to have the Amended Complaint relate back to the filing of the Original Complaint.

    2. **The Failure To Name Key As A Defendant In The Original Complaint Was Not A Mistake**

Even assuming Key was on constructive notice of this action within 120 days of the filing of the Original Complaint, which Key disputes, Broadband is still not entitled to rely upon Rule

11

15(c)(3) because its failure to name Key in the initial pleading was not the result of a mistake. As noted by the United States Supreme Court, a party cannot satisfy the requirements of Rule 15(c)(3) and be entitled to relate back to the initial pleading, when the plaintiff knew the identity of the new defendant and chose not to name them as a party to the Original Complaint. *Nelson v. Adams*, 529 U.S. 460, 467 n.1 (2000); *Lenard v. Parry*, 219 F.3d 25, 29 (3d Cir. 2000)(quoting *Wells v. HBO & Co.*, 813 F. Supp. 1561, 1567 (N.D. Ga. 1992)) (holding that a mistake does not include a deliberate decision not to sue a party whose identity the plaintiff knew from the outset); *accord Shea v. Esensten*, 208 F.3d 712, 720 (8th Cir. 2000); *see also* 6A Charles Alan Wright, et al., *Federal Practice and Procedure* § 1498 (2d ed. 1990 & 2004 Pocket Part) (noting that notwithstanding adequate notice to the new party, an amendment substituting the proper party will not be allowed when the plaintiff's inexcusable neglect was responsible for the failure to name the correct party).

Here, there can be no doubt that long before filing the Original Complaint, Broadband knew that: (i) Key existed as a corporation; (ii) Key held an ownership interest in the Equipment at issue; (iii) Key was the assignee of TCC's rights in the Equipment and lease and (iv) Key and TCC had a contractual relationship with respect to the Equipment at issue. (Exhibits B at ¶¶ 4, 6, and 10) (Exhibits C and D). As discussed above, on March 17, 2000, Broadband signed and consented to the assignment of the UCC-1 Financing Statements from TCC to Key. (Exhibit C). Following Broadband's filing for bankruptcy, on June 29, 2001, Key filed a Proof of Claim in the amount of $6,066,838.91, under the name "Key Equipment Finance, a division of Key Corporate Capital, Inc., f/k/a Leasetec Corporation" and identified Key's ownership interest in the leases at issues by reference to Broadband's own Schedule of Assets and by attaching detailed payment histories for each lease. (Exhibit D).

Aware of Key's interest in the Equipment and leases at issue over two years before filing the Original Complaint and before executing the Tolling Agreement, Broadband cannot, even under the most liberal interpretation of Rule 15(c)(3), claim the failure to name Key as an original defendant was anything other than a deliberate decision or inexcusable neglect. Accordingly, Broadband cannot rely on Rule 15(c) or have the Amended Complaint relate back to the filing date of the initial pleading. Absent relation back, the Amended Complaint must be dismissed because it was filed well after the Section 546 statute of limitations period.

## II.  COUNT THREE OF THE COMPLAINT FAILS TO ASSERT A CASE OR CONTROVERSY THAT IS RIPE FOR ADJUDICATION

It is well settled within the Third Circuit, that the existence of a case or controversy is a prerequisite to all federal actions. *Peachlum v. City of York*, 333 F.3d 429, 433 (3d Cir. 2003) The function of the ripeness doctrine is to determine whether a party has brought an action prematurely and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine. *Id.*; *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (noting that the ripeness doctrine requires that the dispute arise out of a real and substantial controversy between the parties that involves a dispute that is definite and concrete, not hypothetical or abstract).

Through Count Three of the Complaint, Broadband seeks to recover the Transfers under 11 U.S.C. § 550(a), which permits the recovery of a transfer that has been avoided under, among others, Sections 544, 547 and 548. As indicated by the clear terms of the statute, a prerequisite to the invocation of Section 550(a), is the avoidance of a transfer under one of the other enumerated Bankruptcy Code provisions. In this matter, there is no judicial declaration entitling Broadband to recover the Transfers from Key or any third party. Absent such an award, it is

premature for Broadband to maintain a cause of action under Section 550(a), because, based on the present facts, there are no transfers or monies that can be recovered from Key.

The Third Circuit has held that ripeness affects justiciability and that unripe claims should be disposed of on a motion to dismiss. *Lehigh Cement Co. v. Steadfast Ins. Co.*, 2006 U.S. Dist. LEXIS 429, *10 (E.D.P.A. 2006) Accordingly, Count Three of the Complaint must be dismissed.

## CONCLUSION

For all of the foregoing reasons, Defendant Key respectfully requests that this Honorable Court grant its Motion to Dismiss dismissing the Amended Complaint with prejudice.

BLANK ROME LLP

_____
Steven L. Caponi (DE. I.D. 3484)
1201 N. Market Street, Suite 800
Wilmington, DE 19801
(302) 425-6408

and

Regina Stango Kelbon, Esquire
Blank Rome LLP
One Logan Square
130 N 18th St
Philadelphia, PA 19103
Phone: (215)569-5507

Attorneys for Defendant
Key Equipment Finance Inc.

Dated: January 31, 2006

14

052810.00403/40159401v.1

## CERTIFICATE OF SERVICE

I, Steven L. Caponi, Esquire, hereby certify that on January 31, 2006 I caused true and correct copies of Defendant Key Equipment Finance Inc.'s Brief In Support Of Its Motion To Dismiss to be served electronically on the following:

Adam Hiller, Esquire
Pepper Hamilton LLP
1313 Market Street, Suite 5100
P.O. Box 1709
Wilmington, DE  19899

Thomas W. Briggs, Jr., Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899

Ricardo Palacio, Esquire
Ashby & Geddes
222 Delaware Ave.
P.O. Box 1150
Wilmington, DE  19899

Brian A. Sullivan, Esquire
Werb & Sullivan
300 Delaware Ave., 10th Fl.
P.O. Box 25046
Wilmington, DE  19899

_____
Steven L. Caponi  (DE #3484)