# EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re

BROADBAND OFFICE, INC.,

Debtor.

BROADBAND OFFICE, INC.,

Plaintiff,

vs.

TECHNOLOGY CREDIT CORPORATION
D/B/A EXTREME NETWORKS CREDIT
CORPORATION

Defendant.

Chapter 11

Case No. 01-1720 (GMS)

Adversary No. 03-_____

## COMPLAINT FOR AVOIDANCE OF PREPETITION TRANSFERS

Broadband Office, Inc. (the "Debtor"), by its undersigned attorneys, files this complaint for avoidance of prepetition transfers (the "Complaint") against TECHNOLOGY CREDIT CORPORATION D/B/A EXTREME NETWORKS CREDIT CORPORATION ("Defendant"), and in support hereof alleges as follows:

### JURISDICTION, VENUE, AND PARTIES

1. This Court has subject matter jurisdiction over this adversary proceeding pursuant 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a) because this adversary proceeding arises in and relates to a bankruptcy case pending in this district.

2. The Debtor is a domestic corporation organized under the laws of the State of Delaware.

3. Upon information and belief, Defendant is a corporation or other entity subject to service of process pursuant to Federal Rule of Bankruptcy Procedure 7004(b) anywhere in the United States.

WL: #139030 v4 (2Z9Y04 .DOC)

4. On May 9, 2001 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor is managing its property as a Debtor in Possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

## FACTS COMMON TO ALL COUNTS

5. Within the ninety (90) day period before the Petition Date, the Debtor made one or more transfers of property to Defendant, in the aggregate amount of at least $771,875.07 (each a "Transfer," and collectively, the "Transfers"). A description of each of the Transfers is attached hereto as **Exhibit A**.

6. At the time the Debtor made each Transfer, either (i) Defendant was a creditor of the Debtor and such Transfer was made on account of an antecedent debt of the Debtor, or (ii) the Debtor did not receive fair or reasonably equivalent value in exchange for the making of such Transfer.

7. At the time the Debtor made each Transfer, the Debtor was insolvent or was rendered insolvent by making such Transfer.

8. With respect to each Transfer, if the Debtor had not made such Transfer and filed a case under Chapter 7 of the Bankruptcy Code, Defendant would have received less than the amount of such Transfer.

9. The Debtor and Defendant entered into a Stipulation Tolling Statute of Limitations dated as of April 10, 2003, ("Tolling Agreement"), in which the parties agreed to toll and extend the deadline for the Debtor to file Avoidance Actions through and including December 31, 2003. A copy of the Tolling Agreement is attached hereto as **Exhibit B**.

## COUNT ONE
## AVOIDANCE OF PREFERENTIAL TRANSFER PURSUANT TO 11 U.S.C. § 547

10. The Debtor incorporates the allegations set forth in paragraphs 1 through 8 above as if fully set forth herein at length.

11. Each of the Transfers represents a transfer to Defendant by or on behalf of the Debtor.

12. Each of the Transfers was made within ninety (90) days before the Petition Date.

13. Each of the Transfers was made to Defendant for, or on account of, an antecedent debt owed by the Debtor at the time such Transfer was made.

14. Each of the Transfers was made while the Debtor was insolvent.

15. As a result of each of the Transfers, Defendant received more than it would have received if (i) this were a case under Chapter 7 of the Bankruptcy Code; (ii) such Transfer had not been made; and (iii) Defendant received payment on account of the claim arising from any indebtedness to which the Transfer related.

WHEREFORE, the Debtor respectfully requests that this Court avoid each of the Transfers, and grant such further relief as this Court deems just and proper.

## COUNT TWO
### AVOIDANCE OF FRAUDULENT CONVEYANCES UNDER 11 U.S.C. § 548
16. The Debtor incorporates the allegations set forth in paragraphs 1 through 15 above as if fully set forth herein at length.

17. Each of the Transfers represents a transfer to Defendant by or on behalf of the Debtor.

18. Each of the Transfers was made within ninety (90) days before the Petition Date.

19. The Debtor received less than a reasonably equivalent value in exchange for each of the Transfers.

20. The Debtor was insolvent on the date each of the Transfers was made or became insolvent as a result of each of the Transfers.

21. At the time Defendant received each of the Transfers, the Debtor was engaged in a business or transaction for which any property remaining with the Debtor was an unreasonably small capital.

WHEREFORE, the Debtor respectfully requests that this Court avoid each of the Transfers, and grant such further relief as this Court deems just and proper.

## COUNT THREE
## AVOIDANCE OF TRANSFERS UNDER 11 U.S.C. § 550

22. The Debtor incorporates the allegations set forth in paragraphs 1 through 21 above as if fully set forth herein at length.

23. To the extent that they are avoided pursuant to 11 U.S.C. §§ 544, 545, 547, 548 and/or 549, the Debtor may recover the Transfers, or the value of the Transfers, pursuant to 11 U.S.C. § 550(a).

WHEREFORE, the Debtor respectfully requests that this Court enter a Money Judgment in the Debtor's favor against Defendant in the amount of $771,875.07 plus interest, costs of suit, and attorneys' fees, and grant such further relief as this Court deems just and proper.

Dated: 12/23/03
Wilmington, Delaware

Respectfully submitted,

PEPPER HAMILTON LLP

/s/ Adam Hiller

David M. Fournier (DE No. 2812)
Adam Hiller (DE No. 4105)
John D. Wallen (DE No. 4319)
1201 Market Street, Suite 1600
P.O. Box 1709
Wilmington, DE 19899-1709
(302) 777-6500

*Attorneys for the Debtor, Broadband Office, Inc*

## EXHIBIT A
*In re BroadBand Office, Inc., Case No. 01-1720 (GMS)*

The Transfers include, but may not be limited to, the following payment(s):

| Amount | Type | Check No. | Date Posted |
|--------|-------|-----------|-------------|
| $276,164.63 | Check | 107738 | 3/14/01 |
| $495,710.44 | Check | 107737 | 3/14/01 |

EXHIBIT B
*In re BroadBand Office, Inc., Case No. 01-1720 (GMS)*

# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

In re

BROADBAND OFFICE, INC.,

           Debtor.

Civil Action No. 04-407 (GMS)

Bankruptcy Case No. 01-1720 (GMS)

Chapter 11

BROADBAND OFFICE, INC.,

           Plaintiff,

vs.

TECHNOLOGY CREDIT CORPORATION
d/b/a EXTREME NETWORKS CREDIT
CORPORATION, and
EXTREME NETWORKS, INC.,
and
KEY EQUIPMENT FINANCE, INC. f/k/a
KEY CORPORATE CAPITAL, INC. f/k/a
LEASTEC CORPORATION
           Defendants.

## AMENDED COMPLAINT FOR AVOIDANCE OF PREPETITION TRANSFERS

Broadband Office, Inc. (the "Debtor" or "Broadband"), by its undersigned attorneys, files

this Amended Complaint for avoidance and recovery of pre-petition transfers (the "Complaint")

against Technology Credit Corporation d/b/a Extreme Networks Credit Corporation, and

Extreme Networks, Inc. and Key Equipment Finance, Inc, f/k/a Key Corporate Capital, Inc. f/k/a

Leasetec Corporation (collectively "Defendants"), and in support hereof alleges as follows:

### JURISDICTION, VENUE, AND PARTIES

1.    This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a) because this adversary proceeding arises in and relates to a bankruptcy case pending in this district.

2.    The Debtor is a domestic corporation organized under the laws of the State of Delaware.

3.    Defendants are corporations subject to service of process pursuant to Federal Rule of Bankruptcy Procedure 7004(b) anywhere in the United States.

4.    Defendant Technology Credit Corporation is a California corporation that, according to the records of the California Secretary of State, has a principal place of business at "919 The Alameda, San Jose, California". It did business with the Debtor as "Extreme Networks Credit Corporation" and "Extreme Networks" at a business address of "3585 Monroe Street, Santa Clara, California". Many of the documents underlying the transfers at issue in this proceeding were signed by James F. Hartigan, who signed on behalf of both "Technology Credit Corporation" and "Extreme Networks Credit Corporation". Technology Credit Corporation filed UCC-1 Financing Statements in the name of "Extreme Networks Credit Corporation" showing  a business address of "3585 Monroe Street, Santa Clara, California" bearing the signature of James F. Hartigan. Technology Credit Corporation also required that Broadband purchase insurance in favor of "Extreme Networks Credit Corporation" at "3585 Monroe Street, Santa Clara, California".

5.    Defendant Extreme Networks, Inc. is a Delaware corporation. According to the records of the California Secretary of State, Extreme Networks, Inc. has a principal place of business at 3585 Monroe Street, Santa Clara, California. Documents underlying the transfers at

2

issue in this proceeding identify that same Santa Clara, California address for "Extreme Networks Credit Corporation". Extreme Networks, Inc., agreed to or condoned Technology Credit Corporation's actions in doing business as "Extreme Networks Credit Corporation". As examples, Extreme Networks, Inc. allowed Technology Credit Corporation to hold itself out as "Extreme Networks Credit Corporation", enter into agreements with Broadband under that name, and use Extreme Networks, Inc.'s business address and corporate logo.

6.     Key Equipment Finance Inc. is a Michigan corporation with a principal place of business in Colorado. Until March 1, 2005 it was known as "Key Corporate Capital", and was a successor by merger to "Leasetec Corporation".

7.     Leasetec Corporation and Technology Credit Corporation were parties to a contract that, inter alia, allowed Leasetec Corporation to act in the name of Technology Credit Corporation in its dealings with Broadband.  Leasetec Corporation also did business with the Debtor as "Extreme Networks" and also used business stationery bearing that name and logo.

                              FACTS COMMON TO ALL COUNTS

8.     On May 9, 2001 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On September 12, 2005, the Court entered an Order Confirming the First Amended Joint Liquidating Plan of the Debtor and the Official Committee of Unsecured Creditors, which had the effect of reserving this action for the Plaintiff.

9.     Broadband was in the business of providing communications infrastructures and delivery systems for office buildings.  As part of that business, Broadband was interested in using networking equipment manufactured and sold by Extreme Networks, Inc.  The resulting

3

transaction was structured as a lease, with Broadband agreeing to make monthly lease payments for the use of the networking equipment (the "Equipment").

10. On or about March 9, 2000 and shortly thereafter, and as part of its transaction with Broadband, Extreme Networks, Inc. sold the Equipment to Technology Credit Corporation, which, under the name of "Extreme Networks Credit Corporation" immediately entered into a Master Lease Agreement with Broadband. That Master Lease Agreement shows "Extreme Networks Credit Corporation" as lessor, and Broadband as lessee. On the same day it purchased the Equipment, Technology Credit Corporation resold the Equipment to Leasetec Corporation and assigned at least a portion of Extreme Networks Credit Corporation's rights under the Master Lease Agreement to Leasetec Corporation.

11. The effective result of the transactions described above was that Extreme Networks Inc. and Leasetec Corporation (now Defendant Key Equipment Finance, Inc.) acting by and through Technology Credit Corporation financed the Equipment for Broadband to use. To facilitate this transaction and induce Leasetec and Technology Credit Corporation to enter into the financing arrangement, Extreme Networks, Inc. guaranteed Broadband's lease payment obligations to both Leasetec Corporation and Extreme Networks Credit Corporation. Any amounts Broadband paid under the Master Lease Agreement benefited, inter alia, both Leasetec Corporation and Extreme Networks, Inc.

12. Following the initial transaction, Technology Credit Corporation, again acting as "Extreme Networks" continued as the servicing agent on the lease.

13. Within the ninety (90) day period before the Petition Date, the Debtor made one or more transfers of property to or for the benefit of each of the Defendants in the aggregate amount of $771,875.07 (each a "Transfer," and collectively, the "Transfers"). A description of

4

each of the Transfers is attached hereto as **Exhibit A**. The Transfers were in payment of past due amounts under the Master Lease Agreement and related leases.

14. At the time the Debtor made each Transfer, (i) Defendants were creditors of the Debtor and such Transfer was made on account of an antecedent debt and by the Debtor on account of the leasing transaction. Alternatively, the Debtor did not receive fair or reasonably equivalent value in exchange for the making of such Transfer.

15. At the time the Debtor made each Transfer, the Debtor was insolvent or was rendered insolvent by making such Transfer.

16. With respect to each Transfer, if the Debtor had not made such Transfer and filed a case under Chapter 7 of the Bankruptcy Code, each Defendant would have received less than the amount of such Transfer from the Debtor's estate.

17. After it filed its Chapter 11 case, Broadband rejected the lease on the Equipment. On June 29, 2001, Defendant Key Equipment Finance, Inc filed a Proof of Claim in Debtor's case in the amount of $6,066,838.91, under the name "Key Equipment Finance, a division of Key Corporate Capital, Inc., f/k/a Leasetec Corporation".

18. Key Equipment Finance, Inc. then made demand upon Defendant Extreme Networks, Inc. under its guaranty of Broadband's obligations, and received in excess of at least $2,000,000.00 on that guaranty.

19. The Debtor and Defendant, Technology Credit Corporation, entered into a Stipulation Tolling Statute of Limitations dated as of April 10, 2003, ("Tolling Agreement"), in which Technology Credit Corporation and the Debtor agreed to toll and extend the deadline for the Debtor to file Avoidance Actions through and including December 31, 2003. A copy of the Tolling Agreement is attached hereto as **Exhibit B**.

5

COUNT ONE
AVOIDANCE OF PREFERENTIAL TRANSFER PURSUANT TO 11 U.S.C. §§544
AND 547

20.     The Debtor incorporates the allegations set forth in paragraphs 1 through 19 above as if fully set forth herein at length.

21.     Each of the Transfers represents a transfer to or for the benefit of the Defendants by the Debtor. Technology Credit Corporation and Key Equipment Finance, Inc. each benefited directly from the Transfers. Extreme Networks, Inc. also benefited because each lease payment made by Broadband served to reduce commensurably Extreme Network, Inc.'s obligations under its guaranty.

22.     Each of the Transfers was made within ninety (90) days before the Petition Date.

23.     Each of the Transfers was made for, or on account of, an antecedent debt owed by the Debtor at the time such Transfer was made.

24.     Each of the Transfers was made while the Debtor was insolvent.

25.     As a result of each of the Transfers the Defendants received more than they would have received if (i) this were a case under Chapter 7 of the Bankruptcy Code; (ii) such Transfer had not been made; and (iii) Defendants received payment on account of the claim arising from any indebtedness to which the Transfer related.

WHEREFORE, the Debtor respectfully requests that this Court avoid each of the Transfers, and grant such further relief as this Court deems just and proper.

COUNT TWO
AVOIDANCE OF FRAUDULENT CONVEYANCES UNDER 11 U.S.C. § 548

6

26.    The Debtor incorporates the allegations set forth in paragraphs 1 through 25 above as if fully set forth herein at length.

27.    Each of the Transfers represents a transfer for the benefit of one of more of the Defendants by the Debtor.

28.    Each of the Transfers was made within ninety (90) days before the Petition Date.

29.    The Debtor received less than a reasonably equivalent value in exchange for each of the Transfers.

30.    The Debtor was insolvent on the date each of the Transfers was made or became insolvent as a result of each of the Transfers.

31.    At the time Defendants received each of the Transfers, the Debtor was engaged in a business or transaction for which any property remaining with the Debtor was an unreasonably small capital.

WHEREFORE, the Debtor respectfully requests that this Court avoid each of the Transfers, and grant such further relief as this Court deems just and proper.

## COUNT THREE
### RECOVERY OF TRANSFERS UNDER 11 U.S.C. § 550

32.    The Debtor incorporates the allegations set forth in paragraphs 1 through 31 above as if fully set forth herein at length.

33.    To the extent that they are avoided pursuant to 11 U.S.C. §§ 544, 545, 547, and/or 548, the Debtor may recover the Transfers, or the value of the Transfers, pursuant to 11 U.S.C. § 550(a).

7

WHEREFORE, the Debtor respectfully requests that this Court enter a Money Judgment

in the Debtor's favor against each of the Defendants in the amount of $771,875.07 plus interest,

costs of suit, and such further relief as this Court deems just and proper.

Dated: ___12/23/05___
       Wilmington, Delaware

Respectfully submitted,

WERB & SULLIVAN

/s/Brian A. Sullivan

| Brian A. Sullivan | (DE #2098) |
|---|---|
| Robert D. Wilcox | (DE #4321) |
| Amy D. Brown | (DE #4077) |

300 Delaware Avenue, 13th Floor
P. O. Box 25046
Wilmington, DE   19899
Telephone: (302) 652-1100

Attorneys for Broadband Office, Inc., Plaintiff

## EXHIBIT A
*In re BroadBand Office, Inc., Case No. 01-1720 (GMS)*

The Transfers include, but may not be limited to, the following payment(s):

| Amount | Type | Check No. | Date Posted |
|---|---|---|---|
| $276,164.63 | CHECK | 107738 | 3/14/01 |
| $495,710.44 | CHECK | 107737 | 3/14/01 |

9

## EXHIBIT B
*In re Broadband Office, Inc., Case No. 01-1720 (GMS)*

Technologies
~~Management~~ Credit
Corporation d/b/a

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | : Chapter 11 |
| | : |
| BROADBAND OFFICE, INC., | : Case No. 01-1720 (GMS) |
| | : |
| Debtor. | : |

## STIPULATION TOLLING STATUTE OF LIMITATIONS

THIS STIPULATION TOLLING STATUTE OF LIMITATIONS (the "Stipulation"),
dated as of April 10, 2003 by and between BroadBand Office, Inc. (the "Debtor") and Extreme
Networks Credit Co ("Alleged Transferee") (collectively, the Debtor and Respondent constitute
the "Parties").

WHEREAS, on May 9, 2001 (the "Petition Date"), the Debtor filed a voluntary petition
for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the
United States Bankruptcy Court for the District of Delaware, and since the Petition Date has
managed its affairs and remained in possession of its assets as a debtor in possession pursuant to
11 U.S.C. §§ 1107 and 1108; and

WHEREAS, pursuant to §§ 108 and 546(a)(1)(A) of the Bankruptcy Code, the time by
which the Debtor must commence actions, if any, arising under sections 544, 555, 547, 548, 550,
and/or 553 of the Bankruptcy Code ("Avoidance Actions") was originally due to expire on
May 9, 2003; and

WHEREAS, the Parties have agreed to the tolling and extension of the deadline to file
Avoidance Actions, subject to the terms and conditions set forth below,

NOW, THEREFORE, in consideration of the mutual covenants and promises herein
contained, the Parties hereby agree as follows:

WI-1210/24 v1 (2#89#1.DOC)

1.     The Parties hereby agree to toll the running of the statute of limitations period prescribed by sections 108 and 546(a)(1)(A) of the Bankruptcy Code and irrevocably extend the deadline by which the Debtor, or any party acting on behalf of the Debtor or its estate, must commence any Avoidance Action against Alleged Transferee under sections 544, 555, 547, 548, 550, and/or 553 of the Bankruptcy Code (including but not limited to related actions under state law) through and including the later of (A) December 31, 2003, and (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 302 of the *but only if such appointment or election occurs prior to May 9, 2003* Bankruptcy Code in the Debtor's case; provided, however, that (i) nothing herein shall prejudice or be deemed to constitute a waiver of, the right of Alleged Transferee to assert any and all defenses Alleged Transferee may have with respect to any Avoidance Actions filed by or on behalf of the Debtor or its estate, except that Alleged Transferee shall not be entitled to assert a defense based upon the statute of limitations set forth in sections 108 and/or 546(a)(1)(A) of the Bankruptcy Code, or the doctrine of laches, if any such Avoidance Action is commenced on or before the above-described deadline, and (ii) this Stipulation shall not be construed in any way as an admission or denial by either of the Parties regarding any fact or circumstance.

2.     This Stipulation contains the entire agreement of the Parties with respect to the subject matter hereof and there are no representations or agreements other than those expressly set forth herein. This Stipulation may not be modified or amended except by a writing signed by each of the Parties hereto.

3.     This Stipulation shall be subject to and governed by the laws of the State of Delaware.

4.     The terms of this Stipulation shall be binding upon the Parties and their respective successors and assigns. Each person signing this Stipulation represents that such person has the

W. v129224-1 (2F#601:.DOC')

-2-

power and authority to execute this Stipulation on behalf of, and bind, the party such person
purports to represent.

     5.    This Stipulation may be executed in multiple counterparts as if the Parties hereto
had signed a single instrument, all of which together shall constitute one agreement. Facsimile
signatures will be treated as original for purposes of this Stipulation.

     IN WITNESS WHEREOF, the parties hereto have caused this Stipulation to be executed
as of the date first written above.

BROADBAND OFFICE, INC.

by:

David M. Fournier (DE No. 2812)
Adam Hiller (DE No. 4105)
PEPPER HAMILTON LLP
Suite 1600
1201 Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
(302) 777-6500

*Subject to addition in paragraph 1*

EXTREME NETWORKS CREDIT CO

by:

Print Name: JEFFRY A. DAVIS
Title: ATTORNEY
Address: 4365 EXECUTIVE DRIVE, SUITE 1100
Phone Number: SAN DIEGO, CA 92121

(858) 638-6810

-3-

  
## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2005, I caused one copy of the foregoing

document to be served upon the persons listed below in the manner indicated:

### VIA HAND DELIVERY

Thomas W. Briggs, Jr., Esq.
Morris, Nichols, Arsht & Tunnell
Chase Manhattan Center, 18th Floor
1201 North Market Street
Wilmington, DE 19801

/s/ Brian A. Sullivan
Robert D. Wilcox(#4321)
Brian A. Sullivan(#2098)
Amy D. Brown  (#4077)
Werb & Sullivan
300 Delaware Ave. 13th Floor
Wilmington, DE 19899
Telephone: (302) 652-1100

# EXHIBIT C

PRINT OR TYPE ALL INFORMATION

THE SECURED PARTY DESIRES THIS FINANCING STATEMENT TO BE INDEXED AGAINST THE RECORD OWNER
OF THE REAL ESTATE   NO ( )  YES ( )    NAME OF RECORD OWNER

STATE CORPORATION COMMISSION
(Uniform Commercial Code Division, Box 1197, Richmond, Virginia 23209)
FORM FOR ORIGINAL FINANCING STATEMENT AND SUBSEQUENT STATEMENTS

The Commission stamps the File Number on the Original Financing Statement. The secured
party must place this same number on all subsequent statements.

Index numbers of subsequent statements  (For office use only)

**000612 7390**

| Name & mailing address of all debtors, trade styles, etc. No other name will be indexed. | Check the box indicating the kind of statement. Check only one box. |
|---|---|
| Broadband Office, Inc. 2070 Chain Bridge Road, Suite 350 Vienna, VA 22182 | (X) ORIGINAL FINANCING STATEMENT ( ) CONTINUATION-ORIGINAL STILL EFFECTIVE ( ) AMENDMENT ( ) ASSIGNMENT ( ) PARTIAL RELEASE OF COLLATERAL ( ) TERMINATION |

| Name & address of Secured Party | Name & address of Assignee |
|---|---|
| Extreme Networks® Credit Corporation 3585 Monroe Street Santa Clara, CA 95051 | Leasetec Corporation 1000 South McCaslin Blvd Superior, CO, 80027 |

| Date of maturity if less than five years | Check if proceeds of collateral are covered  ( ) |

Description of collateral covered by original financing statement
Lot X163-02
See attached    (VA)

TCC 627  X163-02

Space to record an amendment, assignment, release of collateral or a statement to cover collateral brought into Virginia
from another jurisdiction.

Describe Real Estate if applicable:

RETURN ACK. TO:
TCC DIRECT SERVICES
PO BOX 29071
GLENDALE, CA 91209-9071

| Broadband Office, Inc. | | Extreme Networks® Credit Corporation |
|---|---|---|
| X [signature]  3/17/00 | | [signature] |
| Signature of Debtor if applicable (Date) | | Signature of Secured Party if applicable (Date) |

EXTENSION SHEET FOR UNIFORM COMMERCIAL CODE FINANCING STATEMENTS

STATE OF:    VA                          NUMBER OF SHEETS: 1

The Equipment listed below:

| Quantity | Description |
|---|---|
| 71 | SUMMIT4-10/100TX |
| 18 | 48 10/100 TX, NO GBIC |
| 30 | SUMMIT48-BASIC LAYE |
| 30 | SUMMIT24-BASIC LAYE |
| 20 | SX GBIC MODULE |

has been sold by Extreme Networks and all additions, substitutions, and upgrades thereto whether now or hereafter in the Lessee's possession. This equipment is more fully described in Schedule No. 02 to Master Lease Agreement X163 between Debtor and Secured Party. This filing is made for information purposes only. The equipment covered hereby is the subject of a lease transaction with Debtor as Lessee and Secured Party as Lessor.

Debtor:              Broadband Office, Inc.

Secured Party:       Extreme Networks® Credit Corporation

Sheet No. 1

## ADDENDUM

This Addendum is to Schedule No. 02 (the "Schedule") to Master Lease Agreement No. X163, by and between Extreme Networks Credit Corporation ("Lessor") and Broadband Office, Inc. ("Lessee").

Paragraph 7 – In Paragraph 7 of the Lease Schedule, the following in replaced:

The words "its fair market value for continued use ("FMV") in the first line of Paragraph 7 are deleted and replaced with the following: "20% of the Equipment Value not to exceed the Fair Market Value ("FMV").

Except as modified by this Addendum, the terms and conditions of the Schedule shall remain in full force and effect.

Accepted by:

| Extreme Networks Credit Corporation | Lessee: Broadband Office, Inc. |
|---|---|
| By: _____ | By: X _____ |
| Name: _J___ E. H___s__ | Name: Perry FAO1 |
| Title: CFO | Title: Director of Finance & Con____ |
| Date: 3/17/05 | Date: 5/17/00 |

Extreme Networks® Credit Corporation (Lessor) and __Broadband Office, Inc.__      (Lessee)

1. Supplier __Extreme Networks__

2. Location of Equipment __2070 Chain Bridge Road, Suite 350, Vienna, VA 22182__

3. Equipment Value: $ __758,572.50__    (exclusive of sales and/or use taxes).

4. Lease Term. The Lease Term of the Equipment described in this Schedule shall begin on the Rent Commencement Date referenced below in Paragraph 6 and, if its expiration date shall be __18__ months after such Rent Commencement Date.

5. Rent $ __44,467.52__ per month exclusive of sales and/or use taxes, due and payable on the Rent Commencement Date and, on the same date of each succeeding month of the Lease Term. The advance Rent payment shall be $ __88,935.04__ . This amount includes $ __44,467.52__ for the first month, and $ __44,467.52__ for the last __1__ months of the Lease Term.

6. Rent Commencement Date: _____ 20_____

7. Purchase Option

Lessee shall have the option to purchase the Equipment for its fair market value for continued use ("FMV") on the expiration of this Lease or any renewal term, provided Lessee is not in default of any of its obligations under this Lease on such expiration date. This purchase option may only be exercised by Lessee's written notice to Lessor not earlier than 180 days, nor later than 90 days, prior to the end of the Lease Term or any renewal term. The purchase price for such Equipment shall be payable upon the expiration date of such term. FMV shall be equal to the value of the Equipment installed and in use, with consideration given to the age, condition, utility and replacement costs for the Equipment. In the event that Lessor and Lessee are unable to agree upon the purchase price for the Equipment, such purchase price will be determined by an independent appraiser to be selected by Lessor. Lessee shall be responsible for all post-capture sales and/or use taxes on the Equipment. Upon exercise of this purchase option and payment of the purchase price, Lessor shall execute and deliver to Lessee such documents as Lessee may reasonably request in order to vest in Lessee all right, title and interest in the Equipment.

8. Renewal Option

Lessee shall have the option to renew this Lease, on the expiration date of this Lease or any renewal term, for the fair market rental for the continued use of the Equipment, ("FMV") and on such other terms as may be agreed upon by Lessor and Lessee prior to such expiration date, provided Lessee is not in default of any of its obligations under this lease on such expiration date. This renewal option may only be exercised by Lessee's written notice to Lessor not earlier than 180 days, nor later than 90 days, prior to the end of the Lease Term or any renewal term. FMV shall be equal to the value of the monthly rental of the Equipment installed and in use, with consideration given to the age, condition, utility and replacement costs for the Equipment, for the renewal term.

9. Tax Benefits

Lessor acknowledges that Lessor intends to claim the "Tax Benefits" consisting of the maximum Modified Accelerated Cost Recovery System deductions for the normal useful life attributable to each item of Equipment as provided by Sections 168(b) and (c) of the Internal Revenue Code of 1986, and analogous benefits under state law with respect to the Equipment. Lessee represents and warrants that (i) Lessee has not been, is not now, and during the term of this Lease will not become, and will not allow the Equipment to be used by or leased to, a tax-exempt entity or government agency, and (ii) Lessee is not now, and during the term of this Lease and not become a public utility. Without limitation of the preceding sentence, Lessee agrees not to take any action, fail to take any action, or make or permit any event which may result in any loss of the Tax Benefits.

Lessee agrees to fully compensate Lessor on an after-tax basis, for any loss of the Tax Benefits. Such indemnity payments, resulting from Lessee's acts, omissions or misstatements, including, without limitation, with respect to the representations and warranties in the preceding paragraph. A loss of Tax Benefits occurs at the earliest of: (i) the happening of any event causing the loss; (ii) payment to Lessor of any additional tax resulting from the loss; or (iii) the return of Lessor. Lessor's right to recovery of a loss of Tax Benefits shall survive the expiration or termination of this Lease.

10. Description of Equipment

See Exhibit A which is attached hereto and made a part hereof by this reference.

The person executing this Schedule on behalf of Lessee hereby certifies that he or she has read and is duly authorized to execute this Schedule.

Accepted by Extreme Networks® Credit Corporation       LESSEE __Broadband Office, Inc.__

BY _____         BY _____

NAME __Terry E. Hutson__         NAME __Perry Fao__

TITLE __CFO__         TITLE __Director of Finance & Controller__

DATE __3/17/00__         DATE __3/17/00__

BEST AVAILABLE COPY

X183, dated _____ March 9, 2000 _____, which, together with all existing and future equipment lease schedules and related supplements, riders and addenda thereto, are herein collectively called the "Lease" between Extreme Networks Credit Corporation and Broadband Office, Inc. ("Lessee"), the undersigned (and each of them if more than one, hereinafter collectively called the "Guarantor") hereby jointly and severally unconditionally guarantees and promises to Assignee as follows:

**1. PAYMENT AND PERFORMANCE.**

The Guarantor guarantees and promises to Assignee that Lessee will promptly perform and comply with each of its agreements contained in the Lease, and that all sums payable by the Lessee under such Lease will be promptly paid when due in accordance with the provisions thereof and, in case of extension of time of payment, in whole or in part, of any such sums, that all such sums will be promptly paid when due in accordance with the terms of such extension provided. Guarantor hereby waives any right to require Assignee to apply any payments or proceeds received in any particular order against the indebtedness, including any right to require Assignee to apply payments first to principal.

**2. WAIVER OF NOTICE OF MODIFICATION OF LEASE.**

The Guarantor hereby consents that at any time or from time to time without notice to the Guarantor, the care for the Lessee's performance of or compliance with any of its obligations contained in such Lease may be extended or such performance or compliance may be waived by the Assignee; such Lease may from time to time be amended for the purpose of adding any provision thereto, including additional indebtedness, or changing in any manner the rights of Assignee or of Lessee thereunder; payment of any sums due or to become due under such Lease may be extended, in whole or in part; and the terms of such Lease may be waived by the Assignee in its sole discretion; all without affecting the liability of the Guarantor hereunder.

**3. ASSIGNEE'S REMEDIES.**

Assignee may pursue its rights and remedies upon this Guaranty and shall be entitled to payment hereunder and to enforce all or its other rights hereunder notwithstanding any other guaranty of or security for all or any part of the obligations of Lessee and any Lease, and notwithstanding any action taken or omitted to be taken by Assignee to enforce any of its rights or remedies under the Lease. Under such other guaranty or with respect to any other security, or any payment received by the Guarantor shall not be subrogated to anyone in part to the rights of Assignee against Lessee under such Lease until Assignee shall have been paid in full all such sums as are at any time payable by Lessee under such Lease.

**4. ASSIGNMENT OF GUARANTY.**

Assignee may assign this instrument or any right and remedy hereunder and any assignment of such Lease or the sums due or to become due of any right, remedy or proceeds thereunder and, at the event of such assignment, such Assignee shall have the same rights and remedies as if originally named herein.

[signature block]

Guarantor:
By: _____
Title: CEO
Date: 3/24/00
Witness: _____

Additional individual Guarantor:
By: _____
Title: _____
Date: _____
Witness: _____

---

Guarantor hereby waives diligence, presentment of any instrument, demand for payment, protest and notice of non-payment or protest and the performance of each and every condition precedent to which Guarantor might otherwise be entitled by law. Guarantor also waives notice of any action or non-action taken by Lessee, Assignee or any other guarantor, notice of the creation or accrual of any of the obligations of Lessee to Assignee under such Lease, and all demands, whatsoever.

**6. WAIVER OF DEFENSES.**

Guarantor hereby waives any right it may have arising from any disability or defense of Lessee.

**7. INDEPENDENT OBLIGATION.**

Lessee's obligations, and each of them, shall conclusively be deemed to have been incurred, contracted or incurred in reliance upon this Guaranty. The obligations of the undersigned hereunder are joint and several, and the independent of the obligations of Lessee. Guarantor waives any right to require Assignee to proceed first against the collateral or any other person. A separate action or actions may be brought and prosecuted against Guarantor, or any of them, whether an action is brought against Lessee or whether Lessee is joined in any such action or actions; and Guarantor waives the benefit of any statute of limitations affecting its liability hereunder or the enforcement thereof.

**8. UNCONDITIONAL GUARANTY.**

This Guaranty shall be construed as a continuing, absolute and unconditional guaranty of payment and performance of Lessee's obligations under the Lease, irrespective of the validity or enforceability of (?) any of the obligations of Lessee to Assignee as aforesaid, or (ii) the Lease, or (iii) any present or future law or notwithstanding any present or future law on order of any governmental (the jure or de facto) or of any agency thereof purporting to reduce, amend or otherwise affect any obligation of Lessee or other obligor or to vary any terms of payment; and irrespective of any other circumstance which might otherwise constitute a legal or equitable discharge of a surety or a guarantor. Notwithstanding the above, the maximum liability of Guarantor to Assignee shall be 55% of the aggregate equipment value as shown on the lease.

**9. SEVERABILITY.**

Should any provision of this Guarantee be held invalid or unenforceable by a court of competent jurisdiction, the remaining provisions of this Guarantee shall remain in full force and effect.

**10. WAIVER OF JURY.**

Guarantor hereby waives any and all right to a trial by jury in any action or proceeding based hereon.

**11. MISCELLANEOUS.**

Without the written consent of Assignee, this Guaranty cannot be changed, terminated or assigned by Guarantor. This Guaranty shall be governed by and construed according to the laws of the State of Colorado, shall be binding upon the heirs, executors, administrators, successors, and assigns of the Guarantor and shall inure to the benefit of the Assignee, its successors and assigns.

Guarantor's address: 3585 MONROE STREET
SANTA CLARA, CA 95051

Guarantor's address: _____

BEST AVAILABLE COPY

# EXHIBIT D



Key Equipment Finance
1000 S. McCaslin Blvd.
Superior, CO 80027

June 21, 2001

CERTIFIED - Return Receipt Requested

United States Bankruptcy Court
Attn: David D. Bird - Clerk of the Court
824 Market Street, 5th Floor
Wilmington, DE 19801

Dear Mr. Bird:

SUBJECT:     **Broadband Office, Inc.**
                       **Case # 01-1720 (GMS)**

Enclosed for filing in your office is the original Proof of Claim (with attachments) in the above-referenced cases.

Also enclosed is one copy of the Proof of Claim (without attachments) to be docket-stamped and returned to us in the enclosed, self-addressed, stamped envelope.

Sincerely,

Elizabeth Guarino

Elizabeth Guarino
Recovery Coordinator

Enclosures

**United States Bankruptcy Court**

**District of Delaware**

# PROOF OF CLAIM

| | |
|---|---|
| In re (Name of Debtor)<br><br>**Broadband Office, Inc.** | Case Number 01-1720 (GMS)<br>Chapter 11 |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| | |
|---|---|
| Name of Creditor<br>*(The person or other entity to whom the debtor owes money or property.)*<br><br>**Key Equipment Finance, a division of Key Corporate**<br><br>**Capital, Inc., fka Leasetec Corporation** | ☐ Check box if you are aware that any one else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |
| Name and Address Where Notices Should be Sent<br><br>**Key Equipment Finance**<br>**Attn: Sal Boscia**<br>**1000 South McCaslin Boulevard**<br>**Louisville, CO 80027**<br><br>Tel. (720) 304 – 1175 Fax: (720) 304 - 1716 | ☐ Check box if you have never received any notices from the bankruptcy court in this case.<br><br>☐ Check box if the address differs from the address on the envelope sent to you by the court. | THIS SPACE IS FOR COURT USE ONLY |

| | |
|---|---|
| ACCOUNT OR OTHER NUMBER BY WHICH CREDITOR IDENTIFIES DEBTOR<br><br>**Lease # X163 Schedule #s 01, 02, 03, 04, 05 & 06** | Check here if this claim: ☐ replaces a previously filed claim, dated ___.<br>☐ amends |

**1. BASIS FOR CLAIM:**

☐ Goods sold
☐ Services performed
☐ Money loaned
☐ Personal injury/wrongful death
☐ Taxes
☒ Other (describe briefly)

**Computer Equipment - See Attached Schedule**

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (Fill out below)
Your social security number ___
Unpaid compensation for services performed
from ___ to ___
date     date

| 2. DATE DEBT WAS INCURRED:<br><br>03/09/00 | 3. IF COURT JUDGMENT, DATE OBTAINED: |
|---|---|

**4. CLASSIFICATION OF CLAIM.** Under the Bankruptcy Code all claims are classified as one or more of the following: (1) Unsecured nonpriority, (2) Unsecured priority, (3) Secured. It is possible for part of a claim to be in one category and part in another.
CHECK THE APPROPRIATE BOX OR BOXES that best describe your claim and STATE THE AMOUNT OF THE CLAIM AT TIME CASE FILED.

☒ SECURED CLAIM $ 6,066,838.91
Attach evidence of perfection of security interest
Brief Description of Collateral:
☐ Real Estate ☐ Motor Vehicle ☒ Other (Describe briefly)
   Computer Equipment - See Attached Schedule
Amount of arrearage and other charges at time case filed included in Secured claim above, if any $ 877,772.27

☐ UNSECURED NONPRIORITY CLAIM $___.
A claim is unsecured if there is no collateral or lien on property of the debtor Securing the claim or to the extent that the value of such property is less than the amount of the claim.

☐ UNSECURED PRIORITY CLAIM $___.
Specify the priority of the claim.

☐ Wages, salaries, or commissions (up to $4000)*, earned not more than 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(3)
☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(4)
☐ Up to $1,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use -- 11 U.S.C. § 507(a)(6)
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child -- 11 U.S.C. § 507(a)(7)
☐ Taxes or penalties of governmental units - 11 U.S.C. § 507(a)(8)
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a) ___.
*Amounts are subject to adjustment on 4/11/98 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**5. TOTAL AMOUNT OF CLAIM AT THE TIME**

| $ ___<br>(Unsecured) | $ 6,066,838.91<br>(Secured) | $ ___<br>(Priority) | $ 6,066,838.91<br>(Total) |
|---|---|---|---|

☐ Check this box if claim includes charges in addition to the principal amount of the claim. Attach itemized statement of all additional charges.

6. CREDITS AND SETOFFS: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. In filing this claim, claimant has deducted all amounts that claimant owes to debtor.

7. SUPPORTING DOCUMENTS: *Attach copies of supporting documents*, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, or evidence of security interests. If the documents are not available, explain. If the documents are voluminous, attach a summary.
Attachment I - Calculation, Attachment II - Lease & Schedule, Attachment III - Assignment, Attachment IV – Assignment

8. TIME-STAMPED COPY: To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

| Date<br><br>06/21/01 | Sign and print the name and title, if any, of the creditor or other person Authorized to file this claim (attach copy of power of attorney, if any)<br><br>Steve B. York – Director of Asset Recovery |
|---|---|

# RIDER A

The secured status of this claim is based upon the fact that the Debtor is obligated to this lessor pursuant to an unexpired true lease of equipment (as supported by the enclosed attachments) which the Debtor may assume. However, in the event that (i) the lease is rejected and the equipment is returned to lessor, or (ii) the lease is deemed a lease intended as security; and the equipment value is insufficient to satisfy lessor's entire claim, then lessor shall have an unsecured claim in an amount equal to the difference between the entire secured claim and the value of the equipment.

06/21/2001

## ATTACHMENT 1

**BROADBAND OFFICE, INC.**

Amounts Due Key Equipment Finance - Bankruptcy #:    01-1720 (GMS)

Date of Filing:    05/09/01

### PRE-PETITION - PAGE 1

| INVOICE OR DESCRIPTION | INV DUE DATE | AS OF | RENT | TAX | SUB TOTAL | # DAYS O/S | CONTRACT LATE CHARGE | TOTAL |
|---|---|---|---|---|---|---|---|---|
| 1615296 | 12/28/00 | 05/08/01 | 3,787.27 | 921.73 | $ 4,709.00 | 132 | $ 414.39 | $ 5,123.39 |
| 1644386 | 01/28/01 | 05/08/01 | 3,787.27 | 921.73 | $ 4,709.00 | 101 | $ 317.07 | $ 5,026.07 |
| 1671935 | 02/28/01 | 05/08/01 | 3,787.27 | 921.73 | $ 4,709.00 | 70 | $ 219.75 | $ 4,928.75 |
| 1702709 | 03/28/01 | 05/08/01 | 20,482.81 | 921.73 | $ 21,404.54 | 42 | $ 599.33 | $ 22,003.87 |
| 1729642 | 04/28/01 | 05/08/01 | 7,510.36 | 337.97 | $ 7,848.33 | 11 | $ 57.55 | $ 7,905.88 |
| 1635622 | 01/11/01 | 05/08/01 | 8,042.04 | 2,041.05 | $ 10,083.09 | 118 | $ 793.20 | $ 10,876.29 |
| 1664372 | 02/11/01 | 05/08/01 | 8,222.04 | 2,041.05 | $ 10,263.09 | 87 | $ 595.26 | $ 10,858.35 |
| 1691107 | 03/11/01 | 05/08/01 | 44,467.52 | 2,041.05 | $ 46,508.57 | 59 | $ 1,829.34 | $ 48,337.91 |
| 1722082 | 04/11/01 | 05/08/01 | 41,503.02 | 1,867.65 | $ 43,370.67 | 28 | $ 809.59 | $ 44,180.26 |
| 1611818 | 12/20/00 | 05/08/01 | 14,974.75 | 3,717.39 | $ 18,692.14 | 140 | $ 1,744.60 | $ 20,436.74 |
| 1639003 | 01/20/01 | 05/08/01 | 14,974.75 | 3,717.39 | $ 18,692.14 | 109 | $ 1,358.30 | $ 20,050.44 |
| 1667916 | 02/20/01 | 05/08/01 | 14,974.75 | 3,657.97 | $ 18,632.72 | 78 | $ 968.90 | $ 19,601.62 |
| 1696281 | 03/20/01 | 05/08/01 | 80,988.45 | 3,717.39 | $ 84,705.84 | 50 | $ 2,823.53 | $ 87,529.37 |
| 1725363 | 04/20/01 | 05/08/01 | 51,292.68 | 2,308.18 | $ 53,600.86 | 19 | $ 678.94 | $ 54,279.80 |
| 1616184 | 12/29/00 | 05/08/01 | 3,484.11 | 864.93 | $ 4,349.04 | 131 | $ 379.82 | $ 4,728.86 |
| 1645324 | 01/29/01 | 05/08/01 | 3,484.11 | 864.93 | $ 4,349.04 | 100 | $ 289.94 | $ 4,638.98 |
| 1671936 | 02/28/01 | 05/08/01 | 3,484.11 | 851.10 | $ 4,335.21 | 70 | $ 202.31 | $ 4,537.52 |
| 1702714 | 03/29/01 | 05/08/01 | 18,843.25 | 864.93 | $ 19,708.18 | 41 | $ 538.69 | $ 20,246.87 |
| 1730670 | 04/29/01 | 05/08/01 | 6,281.08 | 282.65 | $ 6,563.73 | 10 | $ 43.76 | $ 6,607.49 |
| 1610229 | 12/17/00 | 05/08/01 | 11,149.48 | 2,767.78 | $ 13,917.26 | 143 | $ 1,326.78 | $ 15,244.04 |
| 1638107 | 01/17/01 | 05/08/01 | 11,149.48 | 2,767.78 | $ 13,917.26 | 112 | $ 1,039.16 | $ 14,956.42 |
| 1666324 | 02/17/01 | 05/08/01 | 11,149.48 | 2,723.54 | $ 13,873.02 | 81 | $ 749.14 | $ 14,622.16 |
| 1696282 | 03/17/01 | 05/08/01 | 60,300.10 | 2,767.78 | $ 63,067.88 | 53 | $ 2,228.40 | $ 65,296.28 |
| 1724827 | 04/17/01 | 05/08/01 | 44,220.07 | 1,989.91 | $ 46,209.98 | 22 | $ 677.75 | $ 46,887.73 |
| 1641725 | 01/26/01 | 05/08/01 | 29,122.66 | 7,290.26 | $ 36,412.92 | 103 | $ 2,500.35 | $ 38,913.27 |
| 1670357 | 02/26/01 | 05/08/01 | 29,125.36 | 7,172.07 | $ 36,297.43 | 72 | $ 1,742.28 | $ 38,039.71 |
| 1699604 | 03/26/01 | 05/08/01 | 157,724.14 | 7,286.80 | $ 165,010.94 | 44 | $ 4,840.32 | $ 169,851.26 |
| 1728379 | 04/26/01 | 05/08/01 | 68,347.13 | 3,096.64 | $ 71,443.77 | 13 | $ 619.18 | $ 72,062.95 |

SUB TOTAL / PRE-PETITION AMOUNTS DUE UNDER LEASE:

$ 877,772.27

INTEREST ACCRUED SINCE PETITION DATE @ Contract Rate:

$ 25,162.80

06/21/2001

| ATTACHMENT 1 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **BROADBAND OFFICE, INC.** | | | | | | | | |
| Amounts Due Key Equipment Finance - Bankruptcy #: | | | 01-1720 (GMS) | | | | | |
| Date of Filing: | 05/09/01 | | | | | | | |
| *POST-PETITION - PAGE 2* | | | | | | | | |
| POST PETITION AMOUNTS ACCRUED TO DATE | | | | | | | | |
| INVOICE OR DESCRIPTION | INV DUE DATE | AS OF | RENT | TAX | SUB TOTAL | # DAYS O/S | POST PETITION INTEREST @ CONTRACT RATE | TOTAL |
| 1729642 | 04/28/01 | 06/21/01 | 12,972.45 | 583.76 | $ 13,556.21 | 54 | $ 488.02 | $ 14,044.23 |
| 1758506 | 05/28/01 | 06/21/01 | 20,482.81 | 921.73 | $ 21,404.54 | 24 | $ 342.47 | $ 21,747.01 |
| 1722082 | 04/11/01 | 06/21/01 | 2,964.50 | 133.40 | $ 3,097.90 | 71 | $ 146.63 | $ 3,244.53 |
| 1749851 | 05/11/01 | 06/21/01 | 44,467.52 | 2,041.05 | $ 46,508.57 | 41 | $ 1,271.23 | $ 47,779.80 |
| 1777170 | 06/11/01 | 06/21/01 | 44,467.52 | 2,001.05 | $ 46,468.57 | 10 | $ 309.79 | $ 46,778.36 |
| 1725363 | 04/20/01 | 06/21/01 | 29,695.77 | 1,336.32 | $ 31,032.09 | 62 | $ 1,282.66 | $ 32,314.75 |
| 1753007 | 05/20/01 | 06/21/01 | 80,988.45 | 3,644.50 | $ 84,632.95 | 32 | $ 1,805.50 | $ 86,438.45 |
| 1781390 | 06/20/01 | 06/21/01 | 80,988.45 | 3,644.50 | $ 84,632.95 | 1 | $ 56.42 | $ 84,689.37 |
| 1730670 | 04/29/01 | 06/21/01 | 12,562.17 | 565.31 | $ 13,127.48 | 53 | $ 463.84 | $ 13,591.32 |
| 1758515 | 05/29/01 | 06/21/01 | 18,843.25 | 847.96 | $ 19,691.21 | 23 | $ 301.93 | $ 19,993.14 |
| 1724827 | 04/17/01 | 06/21/01 | 16,080.03 | 723.60 | $ 16,803.63 | 65 | $ 728.16 | $ 17,531.79 |
| 1751950 | 05/17/01 | 06/21/01 | 60,300.10 | 2,713.51 | $ 63,013.61 | 35 | $ 1,470.32 | $ 64,483.93 |
| 1779984 | 06/17/01 | 06/21/01 | 60,300.10 | 2,713.51 | $ 63,013.61 | 4 | $ 168.04 | $ 63,181.65 |
| 1728379 | 04/26/01 | 06/21/01 | 89,377.01 | 4,049.45 | $ 93,426.46 | 56 | $ 3,487.92 | $ 96,914.38 |
| 1756114 | 05/26/01 | 06/21/01 | 157,724.14 | 7,146.09 | $164,870.23 | 26 | $ 2,857.75 | $ 167,727.98 |
| **SUB TOTAL / POST PETITION AMOUNTS DUE ACCRUED TO DATE:** | | | 732,214.27 | $ 33,065.74 | 765,280.01 | | $ 15,180.69 | $ 780,460.70 |

06/21/2001

| ATTACHMENT 1 | | | | | | | |
|---|---|---|---|---|---|---|---|
| BROADBAND OFFICE, INC. | | | | | | | |
| Amounts Due Key Equipment Finance - Bankruptcy #: | | | 01-1720 (GMS) | | | | |
| Date of Filing: 05/09/01 | | | | | | | |

**_UNACCRUED FUTURE AMOUNTS DUE - POST PETITION - PAGE 3_**

| LEASE # and RENTAL PERIOD | RENT | TAX | | | | TOTAL |
|---|---|---|---|---|---|---|
| Schedule No. X163-01<br>06/28/01 - 08/27/01<br>2 months @ $20,482.81/mo | 40,965.62 | 1,843.46 | | | | $ 42,809.08 |
| Schedule No. X163-02<br>07/11/01 - 10/10/01<br>3 months @ $44,467.52/mo | 133,402.56 | 6,003.15 | | | | $ 139,405.71 |
| Schedule No. X163-03<br>07/20/01 - 10/19/01<br>3 months @ $80,988.45/mo | 242,965.35 | 10,933.50 | | | | $ 253,898.85 |
| Schedule No. X163-04<br>06/29/01 - 10/28/01<br>4 months @ $18,843.25/mo | 75,373.00 | 3,391.84 | | | | $ 78,764.84 |
| Schedule No. X163-05<br>07/17/01 - 12/16/01<br>5 months @ $60,300.10/mo | 301,500.50 | 13,567.55 | | | | $ 315,068.05 |
| Schedule No. X163-06<br>06/26/01 - 01/25/02<br>7 months @ $157,724.14/mo | 1,104,068.98 | 50,022.63 | | | | $ 1,154,091.61 |
| X163-01 EST 2001 PPTX | 0.00 | 13,300.00 | | | | $ 13,300.00 |
| X163-02 EST 2001 PPTX | 0.00 | 21,650.00 | | | | $ 21,650.00 |
| X163-03 EST 2001 PPTX | 0.00 | 39,435.00 | | | | $ 39,435.00 |
| X163-04 EST 2001 PPTX | 0.00 | 9,175.00 | | | | $ 9,175.00 |
| X163-05 EST 2001 PPTX | 0.00 | 39,525.00 | | | | $ 39,525.00 |
| X163-06 EST 2001 PPTX | 0.00 | 76,320.00 | | | | $ 76,320.00 |
| SUB TOTAL / POST PETITION UNACCRUED AMOUNTS DUE UNDER LEASE: | | | | | | $ 2,183,443.14 |
| EQUIPMENT VALUE (for true leases): | | | | | | $ 2,200,000.00 |
| **TOTAL AMOUNT OF CLAIM*** | | | | | | **$ 6,066,838.91** |

*INTEREST ACCRUES ON ALL PRE- & POST-PETITION AMOUNTS AT LATE CHARGE RATE IN LEASE.*

# EXHIBIT E

SENT BY: EXTREME;          408 579 2861;     APR-21-03 10:11AM;     PAGE 4/8

*Technologies Management Credit Corporation d/b/a*

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

In re                                        :    Chapter 11
                                             :
BROADBAND OFFICE, INC.,                      :    Case No. 01-1720 (GMS)
                                             :
                        Debtor.              :

## STIPULATION TOLLING STATUTE OF LIMITATIONS

THIS STIPULATION TOLLING STATUTE OF LIMITATIONS (the "Stipulation"),
dated as of April 10, 2003 by and between BroadBand Office, Inc. (the "Debtor") and Extreme
Networks Credit Co ("Alleged Transferee") (collectively, the Debtor and Respondent constitute
the "Parties").

WHEREAS, on May 9, 2001 (the "Petition Date"), the Debtor filed a voluntary petition
for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the
United States Bankruptcy Court for the District of Delaware, and since the Petition Date has
managed its affairs and remained in possession of its assets as a debtor in possession pursuant to
11 U.S.C. §§ 1107 and 1108; and

WHEREAS, pursuant to §§ 108 and 546(a)(1)(A) of the Bankruptcy Code, the time by
which the Debtor must commence actions, if any, arising under sections 544, 555, 547, 548, 550,
and/or 553 of the Bankruptcy Code ("Avoidance Actions") was originally due to expire on
May 9, 2003; and

WHEREAS, the Parties have agreed to the tolling and extension of the deadline to file
Avoidance Actions, subject to the terms and conditions set forth below,

NOW, THEREFORE, in consideration of the mutual covenants and promises herein
contained, the Parties hereby agree as follows:

WT: #71474 v1 (BF#SK1.DOC)

04/21/03  MON 10:10  [TX/RX NO 5793]

1.    The Parties hereby agree to toll the running of the statute of limitations period prescribed by sections 108 and 546(a)(1)(A) of the Bankruptcy Code and irrevocably extend the deadline by which the Debtor, or any party acting on behalf of the Debtor or its estate, must commence any Avoidance Action against Alleged Transferee under sections 544, 555, 547, 548, 550, and/or 553 of the Bankruptcy Code (including but not limited to related actions under state law) through and including the later of (A) December 31, 2003, and (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 302 of the Bankruptcy Code in the Debtor's case; *but only if such appointment or election occurs prior to May 9, 2003* provided, however, that (i) nothing herein shall prejudice or be deemed to constitute a waiver of, the right of Alleged Transferee to assert any and all defenses Alleged Transferee may have with respect to any Avoidance Actions filed by or on behalf of the Debtor or its estate, except that Alleged Transferee shall not be entitled to assert a defense based upon the statute of limitations set forth in sections 108 and/or 546(a)(1)(A) of the Bankruptcy Code, or the doctrine of laches, if any such Avoidance Action is commenced on or before the above-described deadline, and (ii) this Stipulation shall not be construed in any way as an admission or denial by either of the Parties regarding any fact or circumstance.

2.    This Stipulation contains the entire agreement of the Parties with respect to the subject matter hereof and there are no representations or agreements other than those expressly set forth herein. This Stipulation may not be modified or amended except by a writing signed by each of the Parties hereto.

3.    This Stipulation shall be subject to and governed by the laws of the State of Delaware.

4.    The terms of this Stipulation shall be binding upon the Parties and their respective successors and assigns. Each person signing this Stipulation represents that such person has the

-2-

WL-VI79774-1 (3P8901-DLX7)

power and authority to execute this Stipulation on behalf of, and bind, the party such person purports to represent.

    5.   This Stipulation may be executed in multiple counterparts as if the Parties hereto had signed a single instrument, all of which together shall constitute one agreement. Facsimile signatures will be treated as original for purposes of this Stipulation.

    IN WITNESS WHEREOF, the parties hereto have caused this Stipulation to be executed as of the date first written above.

BROADBAND OFFICE, INC.

by: _____

David M. Fournier (DE No. 2812)
Adam Hiller (DE No. 4105)
PEPPER HAMILTON LLP
Suite 1600
1201 Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
(302) 777-6500

*Subject to addition in paragraph 1*

EXTREME NETWORKS CREDIT CO

By: _____

Print Name: JEFFRY A. DAVIS
Title: ATTORNEY
Address: 4365 EXECUTIVE DRIVE, SUITE 1100
Phone Number:  SAN DIEGO, CA 92121
(858) 638-6810

# EXHIBIT F

## LEHIGH CEMENT COMPANY f/k/a LEHIGH PORTLAND CEMENT COMPANY v. STEADFAST INSURANCE COMPANY

### CIVIL ACTION, NO. 04-4906

### UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

#### 2006 U.S. Dist. LEXIS 429

#### January 6, 2006, Decided

COUNSEL: [*1] For LEHIGH CEMENT COMPANY, F/K/A LEHIGH PORTLAND CEMENT COMPANY, Plaintiff: KRISTINA D. PASKO, RICHARD F. RICCI, LOWENSTEIN SANDLER, P.C., ROSELAND, NJ; MALCOLM J. GROSS, GROSS, MCGINLEY, LABARRE & EATON, LLP, ALLENTOWN, PA.

For STEADFAST INSURANCE COMPANY, Defendant: CATHERINE MIRAGLIA LECKY, LOUIS A. BOVE, BODELL BOVE GRACE & VAN HORN P.C., PHILADELPHIA, PA.

JUDGES: Harvey Bartle III, C.J.

OPINIONBY: Harvey Bartle III

#### OPINION:

##### MEMORANDUM

Bartle, C.J.

Plaintiff Lehigh Cement Company ("Lehigh") has brought this diversity action against defendant Steadfast Insurance Company ("Steadfast"). Lehigh asserts a breach of contract claim due to Steadfast's refusal to indemnify it for damages allegedly covered under an "Owner's Protective Professional and Environmental Liability Insurance Policy" (the "OPEL Policy") issued to it by Steadfast. In addition, Lehigh requests declaratory relief.

Before the court is the motion of Steadfast for summary judgment under *Rule 56 of the Federal Rules of Civil Procedure* on both claims.

I.

Under *Rule 56(c)*, we may grant summary judgment only "if the pleadings, depositions, answers to interroga-tories, and admissions [*2] on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." *Fed. R. Civ. P. 56(c)*; see also *Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998)*. A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Boyle, 139 F.3d at 393*. We review all evidence and make all reasonable inferences from the evidence in the light most favorable to the non-movant. See *Wicker v. CONRAIL, 142 F.3d 690, 696 (3d Cir. 1998)*. The non-moving party may not rest upon mere allegations or denials but must set forth specific facts showing there is a genuine issue for trial. *Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990)*.

II.

The following facts are either undisputed or stipulated to by the parties solely for purposes of this motion, and they are viewed in the light most favorable to plaintiff.

Lehigh is a Pennsylvania corporation, with its principal place of business in [*3] Allentown, Pennsylvania. On or about December 15, 2000, Lehigh entered into an agreement with National Refractories and Minerals Corporation ("NRM") whereby NRM would furnish "the labor, materials and supervision required to supply refractory materials for lining" furnace equipment in Lehigh's cement manufacturing plant in Union Bridge, Maryland. These refractory lining materials include anchors, wear lining and insulation for various equipment. The process of manufacturing cement requires that rock be calcined (changed from calcium carbonate to calcium oxide), partially liquified, and then cooled, all under highly specific operating conditions. The agreement, memorialized in refractory purchase order number 45-88056 (the "NRM purchase order"), required NRM to

manufacture the required materials as well as provide certain engineering and technical work.

The NRM purchase order was part of Lehigh's larger effort to modernize the Union Bridge plant in several respects. Before Lehigh entered into the agreement with NRM, it purchased the OPEL Policy from Steadfast, a Delaware corporation with its principal offices in Illinois. The coverage period was from February 11, 1999 to February 11, 2002. n1 [*4] Lehigh obtained the OPEL Policy to insure against any errors or omissions of the third-party "design professionals" n2 with whom it would contract to perform work on the Union Bridge plant. Pursuant to the terms of the OPEL Policy. Steadfast agreed to indemnify Lehigh "for 'Damages' arising out of an act, error, or omission by a 'Design Professional' during the rendering of 'Professional Services,' to the extent said 'Damages' are in excess of the 'Design Professional's Insurance.'" OPEL Policy § I. The OPEL Policy also contains several exclusions, including a prohibition of coverage for the "design or manufacture of any goods or products which are sold or supplied by the 'Design Professional.'" OPEL Policy § III.F. Lehigh, the named insured, paid $ 260,000 to procure a coverage limit of $ 15 million for claims covered under the policy. This coverage limit sits in excess of a $ 500,000 minimum "Design Professional's Insurance" required to be held by the "Design Professional" as the named insured. The policy also contains a required $ 500,000 self-insured retention.

n1 At some point, the parties apparently extended the policy period to January 1, 2003.

[*5]

n2 The OPEL Policy defines "design professionals" as "those persons or entities or successors legally qualified to perform architecture, engineering, land surveying, construction management 'Professional Services,' or environmental consulting services." OPEL Policy § II.J.

Shortly after the completed installation of NRM's refractory lining work in late 2001, the Union Bridge facility began encountering serious problems. The refractory linings did not expand properly in a horizontal direction, causing them to buckle and fail, and the metal anchor system failed to withstand the operation temperatures at the plant. The parties dispute the reasons behind these failures.

The refractory problems have necessitated substantial repairs following the installation, with total costs to Lehigh in excess of $ 6 million to date. Before the work for Lehigh was completed, NRM filed a petition for bankruptcy under Chapter 11 with the United States Bankruptcy Court for the Northern District of California, Oakland Division on Octover 20, 2001. On August 6, 2002, Lehigh first sent written notice to NRM of "defects, [*6] failures, and other problems with the refractory material and anchors supplied by" NRM. On or around Devember 10, 2002, Lehigh, through its broker J&H Marsh & McLennan ("Marsh"), wrote to Steadfast that it was putting the insurer on notice of "potential claims arising from design errors in the refractory material and the refractory anchors" at the Union Bridge plant. Lehigh filed an amended proof of claim with the Bankruptcy Court on June 13, 2005 for an amount "not less than $ 5,254,106.49." There has not yet been any determination in the Bankruptcy Court or otherwise concerning NRM's liability for those damages.

III.

Steadfast moves for summary judgment on several grounds. First, it argues that it has no responsibility to indemnify Lehigh for its losses because Lehigh did not provide it with timely notice of the refractory problems as required under the OPEL Policy. Second, Steadfast maintains there are no "Damages" as that term is defined in the OPEL Policy and thus Lehigh has no basis for recovery. Third, Steadfast contends that NRM did not maintain required "Design Professional's Insurance," an alleged condition precedent to Lehigh's ability to seek coverage under the OPEL Policy. [*7] Fourth, according to Steadfast, Lehigh has no right to sue because of its alleged non-compliance with certain conditions precedent to bringing an action under the OPEL Policy. Finally, Steadfast submits that even if Lehigh's conduct does not vitiate the OPEL Policy, certain exclusions under the policy bar any recovery.

We turn first to Steadfast's argument that Lehigh has failed to obtain the necessary prior determination of "Damages" against NRM before seeking to collect from Steadfast under the OPEL Policy.

The OPEL Policy is limited to indemnifying Lehigh for "damages," or "the monetary amount [Lehigh] is legally entitled to recover from each 'Design Professional' ... either by adjudication by a court of competent jurisdiction or by settlement, arbitration or other method of dispute resolution to which [Steadfast] agrees in writing." OPEL Policy § II.I. These "damages" must arise from "a negligent act, error or omission on the part of the Design Professional." Id. It is conceded that Lehigh has not obtained an adjudication, settlement, or other resolution of its claim against NRM for its negligence as a "Design Professional" under the OPEL Policy, and NRM is not a party [*8] to this action.

Lehigh counters that NRM's ongoing bankruptcy proceedings have precluded their ability to obtain any adjudication against NRM. Any damages Lehigh would seek to recover from NRM are property of the bankruptcy estate, says Lehigh, and thus governed by the automatic stay provision contained in *11 U.S.C. § 362(a)*. Lehigh thus contends that it has availed itself of the only avenue currently open to it by filing a proof of claim (and subsequent amended proof of claim) in the Bankruptcy Court for the Northern District of California. It further argues that the question of NRM's negligence in designing the refractory linings is the proper subject of the instant action.

Lehigh's argument is not persuasive. The plain language of the OPEL Policy requires Lehigh to secure the specific monetary amount it is entitled to recover from NRM "either by adjudication by a court of competent jurisdiction or by settlement, arbitration or other method of dispute resolution to which [Steadfast] agrees in writing." OPEL Policy § II.I. The NRM bankruptcy proceedings are still pending in which Lehigh has filed an amended claim for "not less than $ 5,254,106.49." Lehigh [*9] advances no reason why the Bankruptcy Court cannot resolve its underlying dispute with NRM. Even if Lehigh has proceeded, as it states, to the best of its ability to prove the validity and amount of its claim against NRM, the matter as of now remains undecided. The existence of the claim without more is simply not enough to satisfy the precedent condition set forth in the OPEL Policy. There must be a final resolution of Lehigh's underlying claim against NRM by one of the means outlined in the OPEL Policy before Steadfast has any obligation to indemnify Lehigh.

We conclude that both the breach of contract and declaratory judgment claims are not ripe for adjudication

absent the required underlying determination of the amount of damages Lehigh is entitled to recover from NRM as a result of services covered by the OPEL Policy. Since the pending dispute between Lehigh and Steadfast is not at a point where it can be decided by this court, we need not reach the other issues raised by Steadfast.

There is one final matter, however, with which we must deal. Our Court of Appeals has held that "because ripeness affects justiciability, ... unripe claims should ordinarily be disposed of on a motion [*10] to dismiss, not summary judgment." *Taylor Inv. Ltd. v. Upper Darby Twp., 983 F.2d 1285, 1290 (3d Cir. 1993)*. To that end, the Court of Appeals agreed with the District Court in *Taylor* that plaintiff's civil rights claims were not yet ripe but vacated judgment for defendants and remanded with instructions to dismiss the complaint. *Id. at 1295*. Accordingly, for the foregoing reasons, the motion of Steadfast for summary judgment pursuant to *Rule 56* must be denied. Instead, the complaint will be dismissed without prejudice for lack of ripeness.

## ORDER

AND NOW, this 6th day of January, 2006, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that the motion of defendant Steadfast Insurance Company for summary judgment is DENIED. Because plaintiff's claims are not yet ripe, however, the complaint is DISMISSED without prejudice.

BY THE COURT:

/s/ Harvey Bartle III

C.J.

# EXHIBIT G

LEXSEE 2006 U.S. DIST. LEXIS 2345

### In re MERCK CO., INC., SECURITIES, DERIVATIVE & "ERISA" LITIGATION

#### Civil Action No. 05-1151 (SRC), 05-2367 (SRC)

#### UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

*2006 U.S. Dist. LEXIS 2345*

**January 20, 2006, Decided**
**January 20, 2006, Filed**

NOTICE: [*1] NOT FOR PUBLICATION

COUNSEL: For JEROME HABER, STEVEN LEVAN, MARC NATHANSON, RICHARD REYNOLDS, Plaintiffs: DAVID A.P. BROWER, MARK LEVINE, COUNSEL NOT ADMITTED TO USDC-NJ BAR, STULL, STULL & BRODY, ESQS., NEW YORK, NY: PETER S. PEARLMAN, COHN, LIFLAND, PEARLMAN, HERRMANN & KNOPF, LLP, SADDLE BROOK, NJ; PAUL B. BRICKFIELD, BRICKFIELD AND DONAHUE, RIVER EDGE, NJ.

For MERCK & CO, INC., ALISE S. REICIN, ANNE M. TATLOCK, BERNARD J. KELLEY, CAROLINE DORSA, CELIA COLBERT, DAVID W. ANSTICE, HEIDI G. MILLER, JOHNNETTA B. COLE, JUDY C. LEWENT, KENNETH C. FRAZIER, LAWRENCE A. BOSSIDY, LINDA M. DISTLERATH, LLOYD C. ELAM, PER G.H. LOFBERG, PER WOLD-OLSEN, PETER S. KIM, RAYMOND V. GILMARTIN, RICHARD C. HENRIQUES, RICHARD T. CLARK, SAMUEL O. THIER, THOMAS E. SHENK, WILLIAM B. HARRISON, WILLIAM G. BOWEN, WILLIAM N. KELLEY, Defendants: ROBERT H. BARON, COUNSEL NOT ADMITTED TO USDC-NJ BAR, CRAVATH SWAINE & MOORE, LLP, NEW YORK, NY; ROBERTA KOSS, WILLIAM R. STEIN, COUNSEL NOT ADMITTED TO USDC- NJ BAR, HUGHES HUBBARD & REED, LLP, WASHINGTON, DC.

For ACE AMERICAN INSURANCE COMPANY, Defendant: WILLIAM D. WILSON, MOUND, COTTON & WOLLAN, NEWARK. NJ.

For ACE BERMUDA INSURANCE LTD., Defendant: DAREN [*2] S. MCNALLY, CONNELL FOLEY, LLP, ROSELAND, NJ.

For AMERICAN CASUALTY COMPANY OF READING. PENNSYLVANIA, NORTH ROCK INSURANCE CO. LTD., Defendants: PAUL C. VITRANO, ROSS, DIXON, & BELL, LLP, WASHINGTON, DC.

For ARCH REINSURANCE LTD., Defendant: BRETT L. MESSINGER, DUANE MORRIS, LLP, PHILADELPHIA, PA.

For AXIS REINSURANCE CO., AXIS SPECIALTY LTD., Defendants: JONATHAN S. REED, TRAUB, EGLIN, LIEBERMAN & STRAUS, LLP, EDISON, NJ.

For EDWARD SCOLNICK, Defendant: MARTIN L. PERSCHETZ, SUNG-HEE SUH, WILLIAM HAYWARD GUSSMAN, JR., COUNSEL NOT ADMITTED TO USDC-NJ BAR, SCHULTE, ROTH & ZABEL, LLP, NEW YORK, NY; LAWRENCE M. ROLNICK, SHEILA A. SADIGHI, LOWESTEIN SANDLER, PC, ROSELAND, NJ; SALLY ANNE MULLIGAN, LOWENSTEIN SANDLER, ROSELAND, NJ.

For FEDERAL INSURANCE CO., Defendant: STEVEN F. GOOBY, DLA PIPER RUDNICK GRAY CARY US LLP, EDISON, NJ.

For HOUSTON CASUALTY CO., Defendant: ANTHONY J. LAPORTA, WHITE & WILLIAMS, LLP, PARAMUS, NJ.

For MAX RE LTD., XL INSURANCE SWITZERLAND, Defendants: NATALIE GARCIA, LANDMAN, CORSI, BALLAINE & FORD, PC, NEWARK, NJ.

For SR INTERNATIONAL BUSINESS INSURANCE CO. LTD., Defendant: JOANNA L. CROSBY, TRESSLER, SODERSTROM, MALONEY [*3] & PRIESS, ESQS., NEWARK, NJ.

For STEADFAST INSURANCE CO., ZURICH AMERICAN INSURANCE CO., Defendants: STEFANO V. CALOGERO, CUYLER BURK LLP, PARSIPPANY, NJ.

For TWIN CITY FIRE INSURANCE CO., Defendant: JOHN B. MULLAHY, TIMOTHY E. MCCARTHY, KAUFMAN BORGEEST & RYAN LLP, PARSIPPANY, NJ.

For XL INSURANCE (BERMUDA), Defendant: MARC B. ZINGARINI, WEBER, GALLAGHER, SIMPSON, STAPLETON & FIRES, LLP, CHERRY HILL, NJ; MICHAEL S. SAVETT, WEBER, GALLAGHER, SIMPSON, STAPLETON, FIRES & NEWBY, LLP, CHERRY HILL, NJ.

JUDGES: HONORABLE TONIANNE J. BONGIOVANNI, UNITED STATES MAGISTRATE JUDGE.

OPINIONBY: TONIANNE J. BONGIOVANNI

OPINION:

### LETTER OPINION AND ORDER

#### BONGIOVANNI, Magistrate Judge

This matter comes before the Court upon formal motion by Plaintiffs for the securities litigation (hereinafter Plaintiffs) seeking: (1) to strike 139 of 172 exhibits attached to the Declaration of Robert H. Baron in Support of Defendants' Motion to Dismiss the Corrected Consolidated and Fourth Amended Class Action Complaint (hereinafter "the Baron Declaration"), as well as the Memorandum of Law in Support of Defendants' Motion to Dismiss; or in the alternative (2) to have Defendants' Motion to Dismiss [*4] converted to a Motion for Summary Judgment pursuant to *FED. R. CIV. P. 12(b)* [Docket Entry # 35 for Civil Action No. 05-2367]. Defendants' object to Plaintiffs' Motion. For the foregoing reasons, Plaintiffs' Motion shall be DENIED.

#### *Plaintiffs' Motion in Summary*

Plaintiffs place at issue 139 of the 172 exhibits Defendants attached to the Baron Declaration in support of their Motion to Dismiss. n1 Plaintiffs argue that the 139 exhibits in question are extraneous and go beyond the contents of the complaint, in contradiction to *FED. R. CIV. P. 12(b)* and subsequent judicial holdings. Because these exhibits are neither explicitly referenced or quoted in Plaintiffs' Complaint, nor otherwise fall into any exception to *Rule 12(b)* and its progeny, Plaintiffs argue that the 139 exhibits should be stricken.

n1 Plaintiffs' originating Motion had placed at issue 152 exhibits. Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Motion withdrew their objection to Exhibits 14, 15, 16, 17, 18, 19, 54, 55 and 56 (previously filed securities complaints against Merck). Additionally, Plaintiffs indicated that they would not object to the submission of Exhibits 23, 24, 25 and 33 (tort complaints filed against Merck) if Plaintiffs were permitted to submit Merck's answers to those complaints, which the Court shall so order. As such, the aforementioned exhibits are no longer at issue.

[*5]

Additionally, Plaintiffs argue that because Defendants' Memorandum of Law in support of their Motion to Dismiss is so laden with references to the 139 exhibits in question, that the Memorandum of Law should be stricken as well, and Defendants instructed to redraft their Memorandum of Law removing all references to the 139 exhibits.

Alternatively, should the Court not strike the 139 exhibits, this Court should convert Defendants' Motion to Dismiss to a Motion for Summary Judgment as so instructed under *FED. R. CIV. P. 12(b)*, and permit Plaintiffs to proceed with discovery so that they may properly respond to the convert Motion for Summary Judgment.

## *Defendants' Opposition in Summary*

Defendants' object to Plaintiffs' Motion to Strike or alternatively, to convert Defendants' Motion to Dismiss to a Motion for Summary Judgment. Defendants' argue that Plaintiffs' Motion to Strike was simply a diversionary tactic to obfuscate Defendants' contestation that Plaintiffs' Complaint is barred by the applicable statute of limitations, which is Defendants' basis for their Motion to Dismiss.

Defendants' substantively argue three separate bases [*6] to justify the submission of the 139 exhibits in question. First, Defendants argue that the exhibits are subject to mandatory judicial notice as public documents not being offered for the truth of their contents pursuant to *F.R.E. 201(d)*. Second, Defendants argue that the exhibits may be considered by the Court because they are either explicitly quoted or referenced in the Complaint, or because the allegations in the Complaint are based upon the challenged exhibits. Defendants' third and final argument is that the exhibits in question are integral to Plaintiffs' Complaint as Plaintiffs' invoke the "fraud on the market doctrine" which allows a court to consider what was publicly available to the market at the time of the allegedly fraudulent conduct.

## *The Law*

### *The 12(b)(6) Standard*

In deciding a motion to dismiss under *FED. R. CIV. P. 12(b)(6)* all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. See *Warth v. Seldin, 422 U.S. 490, 501, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)*; *Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc., 140 F.3d 478, 483 (3d Cir. 1998)*; [*7] *Robb v. Philadelphia, 733 F.2d 286, 290 (3d Cir. 1984)*. In evaluating a *Rule 12(b)(6)* motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents. See *Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)*. If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted "under any set of facts which could prove consistent with the allegations," a court shall dismiss a complaint for failure to state a claim. *Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984)*; *Zynn v. O'Donnell, 688 F.2d 940, 941 (3d Cir. 1982)*.

### *The Four Corners Doctrine*

*FED.R.CIV.P. 12(b)* specifically circumscribes material that a court may consider in a motion to dismiss by stating, in pertinent part: "If, on a motion asserting the defense number (6) to dismiss, . . .matters outside the pleading are [*8] presented and not excluded by the court, the motion shall be treated as one for summary judgment . . ." As such, a court generally may not "consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)*. There are two exceptions to the general rule, however. Documents which are integral to the complaint and documents of which a court may take judicial notice.

### *Documents Integral to the Complaint*

The first exception to the four corners doctrine allows a court to consider documents that can be considered "integral" to the referencing complaint. Id. Integral documents are defined as documents which create the rights or duties that are the basis for the Complaint. *Id. at 1196*. A typical example is a civil action alleging contractual breach where the actual contract has not been annexed to the complaint. In such cases, the contract would be considered integral and a defendant filing a motion to dismiss under *Rule 12(b)(6)* would be permitted to attach the contract as an exhibit, which would then be considered for its truth by the court. See *Burlington Coat at 1426* (finding that where a complaint [*9] relied on certain data in support of claims alleged, but did not attach the source of the data, a court could consider that source if provided by defendants in a motion to dismiss).

### *Judicial Notice of Public Records*

The second exception to the four corners doctrine allows a court to "take judicial notice of public records." See *Oran v. Stafford, 226 F.3d 275, 289 (3d Cir. 2000)*, see also *In re ATI Tech., Inc. Sec. Litig., 216 F. Supp. 2d 418, 430 (E.D.Pa. 2002)*. *Federal Rule of Evidence 201, et seq.* is the cornerstone of judicial notice, and it states, in relevant part:

> Judicial Notice of Adjudicative Facts - *F.R.E. 201(b)* Kinds of facts. A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

Should a document be judicially noticed, said document "may only be considered for the limited purpose of showing that a particular statement [*10] was made by a particular person" and not "for the truth of the matters purportedly contained within those documents." *Oran at 289* (quoting *Kramer v. Time Warner, 937 F.2d 767, 774 (2d Cir. 1991)*. If a court were to consider and judicially notice documents for their truth it would be, in essence, authorizing a trial by public documents, impermissibly expanding the scope of a *Rule 12(b)(6)* motion. *In Re Viropharma, Inc., 2003 U.S. Dist. LEXIS 5623, 2003 WL 1824914 (E.D.Pa. 2003)*.

Courts have held "public records" to include criminal case dispositions, letter decisions of government agencies, published reports of administrative bodies, or any "concededly authentic document upon which the complaint is based . . ." *Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc., 998 F.2d 1192, 1196-97 (3d Cir. 1993)*. Additionally, courts have found public disclosure documents required by law to be filed with the SEC are capable of judicial notice *(Kramer v. Time Warner, 937 F.2d 767, 774 (2d Cir. 1991))*, as well as opening and closing stock prices *(Ieradi v. Mylan Lab., Inc., 230 F.3d 594, 600 n.3 (3d Cir. 2000))*.

## [*11] *Analysis*

This Court shall adopt the categorization of exhibits as illustrated in Plaintiffs' Declaration of Bruce D. Berstein, Exhibit 1.

### *FDA Material (Exhibits 2, 7, 8, 10, 27, 28, 52, 53)*

Plaintiffs' seek to strike all annexed exhibits related to FDA materials by Defendants in their Motion to Dismiss. Plaintiffs argue that the FDA material offered by Defendants should be stricken because they include: (1) transcripts of an FDA Advisory Committee Meeting which have not been identified as authentic; (2) extraneous FDA documents which are not official actions or decisions of the agency; (3) material submitted to the FDA by Defendants themselves; (4) scientists' opinions; and (5) documents offered for their truth.

Defendants counter that none of the FDA exhibits are being offered for their truth, but rather, as a demonstration that such statements were made by certain people. Additionally, Defendants argue that Exhibit 2 ("FDA Advisory Committee Briefing Document" dated February 8, 2001) is specifically referenced in Plaintiffs' Complaint, allowing for its consideration for not only its existence, but also for its truth.

The Court recognizes that there is a distinction [*12] between official releases by an administrative body and supporting documents which are submitted by other sources and merely considered by an agency in its decision-making process. Merely because the agency in question makes available those supporting documents that they then become "records and letters of official actions or decisions of government agencies and administrative bodies." See *Arizmendi v. Lawson, 914 F.Supp. 1157, 1160 (E.D.Pa. 1996)*.

There are, however, fact specific exceptions ambuscading about in case law. See *Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc., 998 F.2d 1192, 1197 (3d Cir. 1993)* (court refusing to judicially notice an interparty written communication because it may be subject to disclosure under FOIA, indicating a different result has a FOIA request been made and granted); see also *Mullen v. Topper's Salon and Health Spa, Inc., 99 F.Supp.2d 553 (E.D.Pa. 2000)* (an EEOC charge of discrimination by Plaintiff found to be an administrative filing was to be considered part of the public record) citing *Fasburg v. Lehigh University, 1999 U.S. Dist. LEXIS 2833, 1999 WL 124458 at 2 (E.D.Pa. 1999)*; [*13] *In re Guidant Corp. Sec. Litig., 2004 U.S. Dist. LEXIS 22809, 2004 WL 2538374 at *9, n.20 (S.D.Ind. 2004)* (medical device reports filed with the FDA considered on a motion to dismiss); *In re Viropharma, Inc., 2003 U.S. Dist. LEXIS 5623, 2003 WL 1824914 at *1 (E.D.Pa. 2003)* (rejecting statements made by Viropharma to the FDA for their truth).

Additionally, it is undeniable that all of Defendants' FDA exhibits are readily viewable by the public when the appropriate web address is entered. The FDA commonly offers submissions it receives from outside sources, and offers them publicly which alleviates a need for a FOIA request.

A final consideration for the court is the Defendants plain assertion that none of the FDA exhibits they have exhibited are being offered for their truth, thereby limiting the impact the documents in question can make in the District Court's deliberation regarding Defendants' Motion to Dismiss. Because the exhibits will not be considered for their truth, and because supporting documentation to administrative agencies have been judicially noticed, this Court shall take judicial notice of all FDA exhibits propounded by Defendants, except for Exhibit 2, which shall be substantively adopted. [*14]

### Charts "Purporting" to Set Forth Insider Trading of Defendant Merck's Stock (Exhibits 35 though 51)

Plaintiffs next object to the charts by Defendants setting forth the insider trading transactions in Merck stock. Plaintiffs allege that these exhibits cannot fall under the SEC filing exception to a motion to dismiss because they are not SEC filings and because a third-party created them.

Defendants disagree and argue that the charts are summaries of information taken directly from the publicly available SEC Forms 4 and 5 for each listed individual. Defendants further argue that because the charts in question fall within the SEC filing exception, and because Plaintiffs utilize similar charts to summarize other Defendant Merck transactions in their Complaint, that the charts should be incorporated and should be considered for their truth. Lastly, Defendants argue that no third-party was employed by Defendants to create the charts, but rather, the name cited at the bottom of each chart is an online service used to obtain SEC Forms 4 and 5 for each charted individual.

*Oran v. Stafford, 226 F.3d 275, 289 (3d Cir. 2000)* states in plain terms that a court may [*15] take judicial notice of SEC filings. It is also without dispute that SEC Forms 4 and 5 are in fact SEC filings as contemplated by Oran. What remains at issue is whether the District Court can consider informational charts as "sources whose accuracy cannot reasonably be questioned" (*F.R.E. 201(b)(2)*) for purposes of judicial notice or, as Defendants would prefer the Court find, whether the information is "integral to" Plaintiffs' Complaint (*In re Burlington Coat Factory Sec. Litig., 114 F.3d 1510 (3d Cir. 1997)*), allowing for the charts substantive consideration by the District Court.

It is clear that Plaintiffs rely on a similar charting process to demonstrate Defendants' transactions in Merck stock in Plaintiffs' Complaint (See Complaint, P394(a)-(p)). Plaintiffs' also dedicate a five paragraph section of their Complaint on SEC filings to support a claim of scienter by Defendants regarding insider trading by Merck employees (Complaint, PP394-99). The fact that the SEC forms submitted by Defendants in their Motion to Dismiss are in chart summary form does not dissuade as they were not crafted by a third-party and as Plaintiffs [*16] will be permitted to challenge their veracity if they so choose.

As such, Defendants' charts may be substantively considered in support of their Motion to Dismiss as integral to Plaintiffs' theory of reliance as they purport comparable evidence previously offered by Plaintiffs in support of their civil action. *In re Sec. Litig. BMC Software, Inc., 183 F.Supp.2d 860, 884 (S.D.Tex. 2001)* (allowing incorporation by reference of SEC Forms 4 and 5 though not explicitly mentioned in complaint because they are integral to plaintiff's allegations); *Allison v. Brooktree Corp., 999 F.Supp. 1342, 1352, n.3 (S.D.Cal. 1998)* (taking judicial notice of SEC Forms 4 and 5 on a motion to dismiss).

### Scientific and Medical Literature, New Articles, Analyst Reports and Composite Charts (Exhibits 4, 9, 29-32, 57-72, 74-87, 90-99, 101-109, 111-113, 115-121, 123-140 and 142-172)

Plaintiffs next contend that the 32 science/medical submissions, 40 news stories and 39 analyst reports should be stricken because these documents are not referenced in the Complaint, nor are they the types of documents considered to be public records.

Defendants argue that this Court may indeed [*17] take judicial notice of Exhibits 4, 9, 29-31, 60-72 and 74-87 specifically because they are available on Westlaw and Lexis, making them self-authenticating, and because they demonstrate inquiry notice by Plaintiffs in support of Defendants' contention in their Motion to Dismiss that the Plaintiffs' claims are time barred as being brought outside the applicable statute of limitations. Defendants also allege that the public information about Merck and VIOXX is integral to Plaintiffs' Complaint because Plaintiff invokes the "Fraud on the Market Doctrine" which allows courts to consider what was publicly available to the market at the time of the allegedly fraudulent conduct.

Law in the Third Circuit has recently crystalized which permits judicial notice of the newspaper articles submitted by Defendants, and by implication the science and medical literature **and** analyst reports as well. Specifically, in *Benak v. Alliance Capital Mgmt. L.P., 349 F.Supp.2d 882, 889 n.5 (D.N.J. 2004)*, the District Court had held that it would consider newspaper articles "notwithstanding their absence from the Complaint . . .[for purposes of inquiry notice]." The District Court dismissed [*18] the plaintiffs' complaint on defendants' motion to dismiss. The plaintiffs appealed. The decision of the Third Circuit ends the debate:

> "We review the District Court's decision to take judicial notice of certain facts for abuse of discretion. *In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1323*. We see no basis to upset the District Court's decision to take judicial notice of newspaper articles supplied by appellees. The inquiry notice analysis is an objective one. Whether appellants read the articles or were aware of them is immaterial. They serve only to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true. *In re Merrill Lynch & Co. Research Reports Sec. Litig., 289 F.Supp.2d 416, 425 n.15 (S.D.N.Y. 2003)* ('The Court may take judicial notice of newspaper articles for the fact of their publication without transforming the motion into one for summary judgment.'). There publication is 'not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned.' *Fed. R. Evid. 201(b)(2)*; see *Heliotrope Gen., Inc. v. Ford Motor Co., 189 F.3d 971, 981 n.18 (9th Cir. 1999)* [*19] ('We take judicial notice that the market was aware of the information contained in news articles submitted by the defendants.')."

See *Benak v. Alliance Capital Mgmt. L.P., 2006 U.S. App. LEXIS 819, slip op., n.15 (3d Cir. 2006)*.

In light of the Third Circuit's recent determination, this Court shall take judicial notice of the 40 new stories submitted by Defendants in their Motion to Dismiss, and by implication shall also judicially notice the 32 science and medical submissions, the 39 analyst reports and the composite charts in question. This Court will not admit the exhibits for their truth, but rather, for the limited purpose of proving their existence with regards to Defendants' assertions of inquiry notice for the purpose of their statute of limitations' defense, and in defense of Plaintiffs' Fraud on the Market assertions as conveyed in their (Plaintiffs) Complaint.

## Conclusion

For the foregoing reasons, Plaintiffs' Motion to Strike Defendants' Exhibits to their Motion to Dismiss or alternatively, to convert Defendants' Motion to Dismiss to a Motion for Summary Judgment shall be denied. Defendants' Exhibits 2 and 35 though 51 shall be substantively considered [*20] as integral to Plaintiffs' Complaint and Defendants' Exhibits 4, 7 through 10, 27 through 32, 52 through 53, 57 through 72, 74 though 87, 90 through 99, 101 through 109, 111 through 113, 115 through 121, 123 through 140 and 142 through 172 shall be judicially noticed. n2

n2 As a necessary result of this Court's determination, Defendant Scolnick's Memorandum of Law in support of his Motion to Dismiss, as well as the Certification of Lawrence M. Rolnick and Baron's Exhibit 51 shall not be stricken.

20 JAN 06

**HONORABLE TONIANNE J. BONGIOVANNI**

**UNITED STATES MAGISTRATE JUDGE**

# EXHIBIT H

LEXSEE 2005 U.S. DIST. LEXIS 17482

FLORENCE WATSON, Power of Attorney for Dorothy Briscoe (Deceased), Plaintiff, v. BENEFICIAL DELAWARE, INC., Defendant.

Civil Action No. 04-382 JJF

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

*2005 U.S. Dist. LEXIS 17482*

August 22, 2005, Decided
August 22, 2005, Field

COUNSEL: [*1] Florence Watson, Pro se, for Plaintiff.

Robert J. Katzenstein, Esquire and Joelle E. Polesky, Esquire of SMITH, KATZENSTEIN & FURLOW LLP, Wilmington, Delaware, for Defendant.

JUDGES: Farnan, District Judge.

OPINIONBY: Joseph J. Farnan Jr.

OPINION:

## MEMORANDUM OPINION

August 22, 2005
Wilmington, Delaware

### Farnan, District Judge.

Pending before the Court is a Motion To Dismiss (D.I. 5) filed by Defendant Beneficial Delaware, Inc. ("Beneficial"). For the reasons discussed, Defendant's Motion To Dismiss will be granted.

### I. BACKGROUND

On May 14, 1998, Beneficial loaned Plaintiff Florence Watson $ 64,000 pursuant to a three-year mortgage and credit line account agreement. On June 17, 2004, Watson filed a complaint against Beneficial alleging that the Mortgage and Note "contain usurious interest rates and unfair trade practices involving predatory lending practices." Watson further alleged "non-disclosure of Plaintiff's right to cancel [the contract]" ... and Federal violations of numerous consumer rights..." Specifically, Watson alleges violations of *15 U.S.C. § 1691, 1635, 1638;* 12 C.F.R. § 226; Regulation Z; *12 U.S.C. § § 85,* [*2] *2601, 2610.* Watson seeks rescission of the Mortgage and Note, as well as damages.

### I. PARTIES' CONTENTIONS

By its motion, Beneficial contends that the Court should dismiss Watson's Complaint as time-barred. Beneficial also contends that the Complaint should be dismissed because Watson fails to state a claim upon which relief may be granted. Watson has failed to respond to Beneficial's motion, despite the Court's August 19, 2004 Order (D.I. 7), granting her additional time to file her Answering Brief (D.I. 7). Therefore, pursuant to the Court's Order (D.I. 7), the Court will render its decision on the papers submitted.

### III. DISCUSSION

A motion to dismiss tests the legal sufficiency of the complaint. *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957).* In reviewing a motion to dismiss pursuant to *Rule 12(b)(6),* courts "must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." *Langford v. Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000).* A court will grant a motion to dismiss only when it appears that a plaintiff can prove no set of facts that would entitle him or her to relief. [*3] Id.

Failure to comply with the statute of limitations will justify granting a motion to dismiss "where the claim is facially non-compliant with the limitations period and the affirmative defense [of failure to comply with the statute of limitations] clearly appears on the face of the pleading." See *Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.1 (3d Cir. 1994;* (citing *Trevino v. Union Pacific R.R. Co., 916 F.2d 1230 (7th Cir 1990)).*

Reviewing the Complaint in light of these standards, the Court concludes that Watson's claims are barred by

2005 U.S. Dist. LEXIS 17482, *

the statute of limitations. The statutes relied upon by Watson to support her allegations require a plaintiff to file a complaint within three (3) years of the alleged occurrence. See *15 U.S.C. § 1640(e)*, *1635(f)*; 12 C.F.R. § 226.23; *12 U.S.C. § § 86, 2614*. In this case, the facts alleged occurred more than. six (6) years before Watson filed her Complaint. Further, Watson has not asserted any facts that would justify tolling of the limitations period. Accordingly, the Court will grant Beneficial's Motion To Dismiss [*4] (D.I. 5).

## IV. CONCLUSION

For the reasons discussed, the Court will grant Beneficial's Motion To Dismiss (D.I. 5). An appropriate order will be entered.

**ORDER**

At Wilmington, this 22 day of August 2005, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:

1. Defendant's Motion To Dismiss (D.I. 5) is **GRANTED**;

2. Plaintiff's Complaint is **DISMISSED** with prejudice.

**August** 22, 2005
DATE

Joseph J. Farnan Jr.

UNITED STATES DISTRICT JUDGE