## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

In re

BROADBAND OFFICE, INC.,

                     Debtor.

BROADBAND OFFICE, INC.,

                     Plaintiff,

vs.

TECHNOLOGY CREDIT
CORPORATION d/b/a EXTREME
NETWORKS CREDIT CORPORATION,
and
EXTREME NETWORKS, INC.,
and
KEY EQUIPMENT FINANCE, INC. f/k/a
KEY CORPORATE CAPITAL, INC. f/k/a
LEASETEC CORPORATION
                     Defendants.

Civil Action  No. 04-407 (GMS)

Bankruptcy Case No. 01-1720 (GMS)

Chapter 11

## PLAINTIFF'S BRIEF IN OPPOSITION TO KEY EQUIPMENT FINANCE INC.'S
## MOTION TO DISMISS

March 13, 2006

WERB & SULLIVAN

Brian A. Sullivan   (DE #2098)
Robert D. Wilcox   (DE #4321)
Amy D. Brown     (DE #4077)
300 Delaware Avenue, 13th Floor
P. O. Box 25046
Wilmington,  DE    19899
Telephone:  (302)  652-1100

Attorneys for BroadBand Office, Inc.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………………...3

PRELMINARY STATEMENT…………………………………………………………...5

STATEMENT OF FACTS…………………………………………………………..6

ARGUMENT…………………………………………………………………………10

I.    DEFENDANT'S ARGUMENT CONCERNING THE STATUTE OF
LIMITATIONS INVOLVES FACTUAL ISSUES NOT SUSCEPTIBLE TO
A RULING UNDER FED. R. CIV. PRO. 12(B)(6)…………………………………… 10

        A.  Technology Credit Had the Authority to Enter into the Tolling Agreement on
            Behalf of Key Equipment………………………………………………..…..11

        B.  Key Equipment has not shown that there are no facts enabling the Court to
            conclude that it's limitations defense fails as result of tolling………………12

        C.  Alternatively, the Doctrine of Equitable Tolling is Applicable……………...13

II. THE AMENDED COMPLAINT SHOULD RELATE BACK TO THE FILING OF
THE ORIGINAL COMPLAINT…………………………………………………..…15

        A.  Same "Conduct, Transaction or Occurrence…………………………………15

        B. Actual or Imputed Notice of the Lawsuit…………………………………..16

        B.  Key Equipment's Knowledge of a Mistake in Naming the Defendant……...18

III. COUNT THREE OF THE COMPLAINT STATES A
CAUSE OF ACTION UNDER § 550 OF THE BANKRUPTCY CODE………………21

CONCLUSION…………………………………………………………………..24

## TABLE OF AUTHORITIES                                                      PAGE

*ALA v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994)…………………………………..10

*Atchinson v. District of Columbia*, 73 F.3d 418, 421-22 (D.C. Cir. 1996)………………21

*AT&T v. Winback & Conserve Program*, 42 F.3d 1421, 1440
        (3d Cir. 1994)……………………………………………………………………………12

*Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d. Cir. 2004)………………………...17

*In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426
        (3d Cir.1997)………………………………………………………………………………20

*In re Butcher,* 72 B.R. 247, 250 (Bankr. E.D. Tenn 1987)……………………………....13

*In re Butcher,* 67 B.R. 102, 103 (Bankr. E.D. Tenn. 1986)……………………………...13

*Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)…………....10, 16

*E.I. duPont de Nemours & Co. v. Phillips Petroleum Co.*, 621 F.Supp. 310
        (D. Del. 1985)……………………………………………………………………………..19

*Foman v. Davis*. 371 U.S. 178, 182 (1962)…………………………………………15, 22

*Garvin v. City of Philadelphia*, 354 F.3d 215(3d Cir. 2003)………………………...16, 18

*Gomez v. Toledo*, 446 U.S. 635, 640 (1980)…………………………………………….21

*In re H & S Transportation*, 939 F.2d 355 (6th Cir 1991)…………………………22, 23

*JM Mechanical Corp. v. U.S. by U.S. Dept. of Housing and Urban Development*,
        716 F.2d 190, 197 (3d Cir. 1983)…………………………………………………10, 22

*Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994)……10

*Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir.1991)………………………...20

*Levit v. Riddell Sports (In re MacGregor Sporting Goods)* 199 B.R. 502 (D. N.J.
        1995)……………………………………………………………………...…..12

*Maio v. Aetna, Inc.,* 221 F.3d 472, 482 (3d. Cir. 2000)………………………………10

*In re Metzeler*, 66 B.R. 977,981 (Bankr. S.D.N.Y 1986)……………………………..13

*Olshiver v. Levin, Fishbein, Sedran & Berman*,

38 F.3d 1380, 1391 (3d Cir. 1994)….. ………………………………………...12, 14

*Oran v. Stafford,* 226 F.3d 275, 289 (3d Cir. 2000)…………………………………...20

*Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)…………..10

*Singletary v. Pennsylvania Dept. of Corrections*………………………………..15-16, 17

*Taliaferro v. Costello,* 467 F.Supp. 33, 36 (E.D. Pa.1979)……………………………...19

*Tello v. Dean Witter Reynolds, Inc.* 410 F.3d 1275 (11th Cir. 2005)……………………15

*Urrutia v. Harrisburg County Police Dept.*, 91 F.3d 451(3d. Cir. 1996)………………16

*In re Warmus*, 276 B.R. 688 (S.D. Fla. 2002)…………………………………………...23

*In re White v. Boston,* 104 B.R. 951, 957 (S.D.Ind.1989)…………………………………13

## FEDERAL STATUTES

11 U.S.C. § 1101…………………………………………………………………………21

11 U.S.C. § 547…………………………………………………………...……8, 17, 22, 23

11 U.S.C. § 550.………………………………………………….…….…17, 20, 22, 23

11 U.S.C. §1107…………………………………………………………………………21

## RULES

F.R.C.P. 15………………………………………………………………...15, 16, 17, 22

## OTHER AUTHORITIES

6(a) Wright, Miller, & Kane,
    *Federal Practice and Procedure* § 1497 (2d. ed. 2002)………………………17

## PRELIMINARY STATEMENT

With leave of this Court pursuant to an Order dated December 1, 2005, Plaintiff BroadBand Office, Inc. (the "Debtor" or "BroadBand") filed the Amended Complaint in this action to avoid and recover under the Bankruptcy Code the same transfer it sought to avoid and recover in the original Complaint. The Amended Complaint sought to correct an error in the Complaint regarding the naming of the defendants. More specifically, the Amended Complaint added, inter alia, Defendant Key Equipment Finance, Inc. f/k/a Key Corporate Capital, Inc. f/k/a Leasetec Corporation based upon its role as a creditor of BroadBand who benefited from $771,875.07 BroadBand paid shortly before its bankruptcy filing. As in the original Complaint, BroadBand asserted in the Amended Complaint that the $771,875.07 must be returned to the Debtor's estate for subsequent distribution according to the priorites of the Bankruptcy Code.

Defendant Key Equipment Finance, Inc. f/k/a Key Corporate Capital, Inc. f/k/a Leasetec Corporation has filed a Motion to Dismiss the Amended Complaint as to it, pursuant to Federal Rule of Civil Procedure 12(b)(6), asserting that the allegations against it are time-barred. BroadBand asserts that the Motion is not well-founded, seeks to improperly introduce factual issues, and must be denied.

## STATEMENT OF FACTS

On May 9, 2001 (the "Petition Date"), BroadBand Office, Inc. filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. Sections 101 et seq.   On September 12, 2005, the Court entered an Order Confirming the First Amended Joint Liquidating Plan of the Debtor and the Official Committee of Unsecured Creditors, which had the effect of reserving this action for the Plaintiff.

BroadBand was in the business of providing communications infrastructures and delivery systems for office buildings.   As part of that business, BroadBand was interested in using networking equipment manufactured and sold by Extreme Networks, Inc.   The resulting transaction was structured as a financed lease, with BroadBand agreeing to make monthly payments for the use of the networking equipment (the "Equipment").

On or about March 9, 2000, and as part of its transaction with BroadBand, Extreme Networks, Inc. sold the Equipment to Technology Credit Corporation, which, under the name of "Extreme Networks Credit Corporation" immediately entered into a Master Lease Agreement with BroadBand. That Master Lease Agreement shows "Extreme Networks Credit Corporation" as lessor, and BroadBand as lessee. On the same day it purchased the Equipment, Technology Credit Corporation resold the Equipment to Leasetec Corporation (now "Key Equipment") and assigned at least a portion of Extreme Networks Credit Corporation's rights under the Master Lease Agreement to Key Equipment.

The effective result of the transactions described above was that Extreme Networks, Inc. and Key Equipment, acting by and through Technology Credit

Corporation, financed the Equipment for BroadBand to use. To facilitate this transaction and induce Key Equipment and Technology Credit Corporation to enter into the financing arrangement, Extreme Networks, Inc. guaranteed BroadBand's lease payment obligations to both Key Equipment and Extreme Networks Credit Corporation. Any amounts BroadBand paid under the Master Lease Agreement benefited Key Equipment.

Key Equipment's Opening Brief describes the facts as follows:

In early 2000, Extreme Networks, Inc., as part of the transaction with BroadBand, sold the Equipment to Technology Credit Corporation ("TCC") which, under the name of "Extreme Networks Credit Corporation," entered into a Master Lease Agreement with BroadBand. The Master Lease Agreement identifies "Extreme Networks Credit Corporation" as the lessor, and BroadBand as the lessee. Pursuant to an express or implied agreement, Extreme Networks, Inc. permitted TCC to do business with BroadBand as "Extreme Networks Credit Corporation" and "Extreme Networks." Many of the documents underlying the transfers at issue in this proceeding were signed by James F. Hartigan, who signed on behalf of both "Technology Credit Corporation" and "Extreme Networks Credit Corporation." Opening Brief ("OB") at 3.

After completing the lease transaction with BroadBand, TCC filed UCC-1 Financing Statements, with respect to the Lease and Equipment at issue in the name of "Extreme Networks Credit Corporation" showing a business address of "3585 Monroe Street, Santa Clara, California" bearing the signature of James F. Hartigan. OB at 4. On the same day it purchased the equipment, Technology Credit Corporation resold the Equipment to Leasetec Corporation ("Leasetec") (now Key Equipment) and assigned a portion of its rights under the Master Lease Agreement to Leasetec/Key Equipment.

Leasetec was subsequently acquired by Key Equipment.  Key Equipment was permitted to act in the name of TCC in its dealings with BroadBand.  OB at 4.

As a result of the transactions described above, Key, acting by and through Technology Credit Corporation, financed the Equipment for BroadBand to use. Following the initial transaction, Technology Credit Corporation, acting as "Extreme Networks" continued as the servicing agent on the lease.  Within the ninety (90) day period before the Petition Date, and in response to demand letters from TCC, under the name "Extreme Networks" but purportedly acting (unknown to BroadBand at the time) on behalf of Key Equipment.  BroadBand made lease payments totaling $771,875.07 to one or more of the Defendants (the "Transfers").  The Transfers were in payment of past due amounts under the Master Lease agreement and related leases.  BroadBand believes these payments are recoverable or avoidable as either preferences or fraudulent conveyances under 11 U.S.C. §§ 544, 547 and 548.  On June 29, 2001, Key filed a Proof of Claim in BroadBand's bankruptcy proceeding in the amount of $6,066,838.91, under the name "Key Equipment Finance, a division of Key Corporate Capital, Inc., f/k/a Leasetec Corporation."  (Exhibit "B" to OB, at 4.)

In April of 2003, BroadBand and TCC entered into a Stipulation Tolling Statute of Limitations dated as of April 10, 2003 ("Tolling Agreement") (Exhibit "A" to the Complaint and Exhibit "E" to the OB).  Through the Tolling Agreement, TCC and BroadBand agreed to toll and extend until December 31, 2003, the Section 546 statute of limitations period within which BroadBand was required to file an action against TCC to recover the Transfers.  OB at 5.  There has been no argument by Key Equipment that

BroadBand failed to file the Complaint beyond the time allotted in the Tolling

Agreement.

## ARGUMENT

## I.  DEFENDANT'S ARGUMENT CONCERNING THE STATUTE OF LIMITATIONS INVOLVES FACTUAL ISSUES NOT SUSCEPTIBLE TO A RULING UNDER FED. R. CIV. PRO. 12(B)(6).

Key Equipment's Opening Brief in support of its argument that the Amended Complaint was filed outside of the statue of limitations raises questions of fact and is therefore improper for a motion to dismiss. Quite simply, the attempted introduction of those allegations of fact is grossly improper in the context of Rule 12(b)(6).  See, *JM Mechanical Corp. v. U.S. by U.S. Dept. of Housing and Urban Development*, 716 F.2d 190, 197 (3d Cir. 1983). In considering a motion to dismiss under Rule 12(b)(6), a court is evaluating the legal sufficiency of the complaint. Id.  Under Rule 12(b)(6), a complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). See also *Maio v. Aetna, Inc.,* 221 F.3d 472, 482 (3d. Cir. 2000). In considering whether a complaint should be dismissed for failure to state a claim upon which relief can be granted, the Court must consider only those facts alleged in the complaint and accept all of the allegations as true, drawing all reasonable inferences in the plaintiff's favor.  *ALA v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994)

The issue before this Court is whether BroadBand should be entitled to seek discovery from Key Equipment and other defendants in order to identify evidence on

which it can prevail against Key Equipment. Such discovery may reveal facts that show

Key Equipment's ultimate liability and negate its alleged limitations defense. So long as

those possibilities exist, the Motion to Dismiss must be denied.

### A. Technology Credit Had the Authority to Enter into the Tolling Agreement on Behalf of Key Equipment.

In this case BroadBand entered into a Tolling Agreement with Technology Credit

Corporation, which had been servicing the account for Key Equipment and who

BroadBand originally thought was the Defendant.  In fact, and as alleged in detail in the

Amended Complaint, Technology Credit Corporation was acting pursuant to authority

from Key Equipment.  Technology Credit Corporation was servicing the account on

behalf of Key Equipment, yet using the "d/b/a" name "Extreme Networks".  It was only

after the Complaint was filed, responses to discovery were received, and other

information was provided to BroadBand by Technology Credit Corporation, that

BroadBand was able to unravel and decipher the complicated and misleading transactions

that were arranged by the three Defendants.  Even though the Tolling Agreement was

ostensibly only executed by Technology Credit Corporation, Key Equipment should be

bound by the Tolling Agreement because Technology Credit Corporation had actual or

apparent authority to act on behalf of Key Equipment.

BroadBand's position that Technology Credit Corporation had the authority of

Key Equipment is acknowledged by Key Equipment in its Opening Brief wherein it

states that,  "As a result of the transactions described above, Key, acting by and through

Technology Credit Corporation, financed the equipment for BroadBand to use.

Following the initial transaction, Technology Credit Corporation, acting as "Extreme

Networks" continued as the servicing agent on the lease."  (Emphasis Added)  OB at 4.

An agency relationship can be created by the manifestations of the principal which would make the third party reasonably believe that the agent did have authority to act on behalf of the Principal.  The Court must look to the principal's actions and third party's reasonable beliefs.  See *AT&T v. Winback & Conserve Program*, 42 F.3d 1421, 1440 (3d Cir. 1994).

### B. Key Equipment has failed to demonstrate that there are not any facts that would enable the Court to conclude that Key Equipment's limitations defense should fail as result of tolling.

In order to prevail on a motion to dismiss based upon a statute of limitations argument, the "movant must show that the plaintiff can prove no set of facts which would toll the statute of limitations.  *Levit v. Riddell Sports (In re MacGregor Sporting Goods)* 199 B.R. 502 (D. N.J. 1995).   To prevail, Key Equipment must show that there is no set of facts that would enable the Court to conclude that Key Equipment's limitations defense fails as a result of tolling.  The tolling of statute of limitations involves factual issues which cannot be resolved in the absence of discovery. *Id*. at 516.  Tolling principles "involve questions of fact which can not be resolved as a matter of law on a motion to dismiss" and "factual issues which cannot be resolved in the absence of discovery." *Id*., see also *Olshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1391 (3d Cir. 1994) ("Tolling issues relative to the statute of limitations involve factual issues which must be determined on a case-by-case basis, and cannot be decided in the context of a motion to dismiss.") In *Olshiver*, the court stated that the issue of whether a statute of limitations was tolled involves issues of fact which could not be resolved on the face of the complaint. 38 F.3d at 1391. "Simply, pleading the applicability of a tolling doctrine is sufficient to survive a motion to dismiss. " *Levit v. Riddell*, 199 B.R. 502 at

517.  Key Equipment has failed to demonstrate that TCC cannot prove that the Statute of Limitations should be tolled.  Therefore, its Motion to Dismiss should be denied.

### C.  Alternatively, the Doctrine of Equitable Tolling is Applicable.

In the unlikely event that the Court were to find after an evidentiary hearing, the conduct of which is clearly not appropriate in the context of a Motion to Dismiss, that Key Equipment is not bound by the Tolling Agreement, then the Court should apply the doctrine of Equitable Tolling.  This is also a question of fact that precludes the Court from granting Key Equipment's Motion.

The U.S. Supreme Court has stated that the doctrine of equitable tolling is "read into every federal statute of limitations."  *In re Lyons,* 130 B.R. 272, 279 (Bankr.N.D.Ill.1991) (citing *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946)).  The doctrine of equitable tolling can be applied to toll the statute of limitations in bankruptcy adversary proceedings. *Id*. at 281 (citing *In re White v. Boston,* 104 B.R. 951,957 (S.D.Ind.1989); *In re Butcher,* 72 B.R. 247, 250 (Bankr. E.D.Tenn 1987); *In re Butcher,* 67 B.R. 102, 103 (Bankr. E.D.Tenn. 1986); and *In re Metzeler*, 66 B.R. 977,981 (Bankr. S.D.N.Y 1986)).  The court in *In re Lyons* acknowledged the applicability of the doctrine of equitable tolling to 11. U.S.C. § 546(a)'s two-year statute of limitations, but declined to apply it to the particular facts of that case where the plaintiff learned the true facts of the voidable transfers while there was still a year in which to file the actions.  *In re Lyons*, 130 B.R. at 280.  Therefore, because BroadBand's adversary proceeding against Key Equipment is governed by 11 U.S.C. § 546(a)(1)(A)'s two year statute of limitations, equitable tolling may be considered as well, and in these circumstances should be applied.

The Third Circuit has repeatedly held that there are three principal, though not exclusive, situations in which equitable tolling might be appropriate: (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action: (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights: or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum. *Olshiver*, 38 F.3d at 1387.

BroadBand submits that it has been "actively misled" into believing TCC was solely liable for the avoidable payments due to the Defendants' convoluted, interwoven business practices. Therefore, the equitable tolling doctrine is appropriate. All three Defendants were closely involved in the lease transaction through a series of guarantees, purported corporate affiliations and transfers, "d/b/a's" and interlocking relationships. For example, Extreme Networks, Inc. allowed Technology Credit Corporation to hold itself out as "Extreme Networks Corporation", and to enter into agreements with BroadBand under that name, and to use Extreme Networks, Inc.'s business address and corporate logo. Extreme Networks, Inc. also allowed Key Equipment to hold itself out as "Extreme Networks Credit Corporation" and use Extreme Networks, Inc.'s corporate logo in dealing with BroadBand. Key Equipment allowed Technology Credit Corporation to service the account and to use the name "Extreme Networks."

As such, Key Equipment's Motion should be denied, since the applicability of a tolling doctrine has been asserted by Plaintiff and involves factual questions that are not appropriate in the context of a motion to dismiss. See, *Olshiver*, 38 F.3d at 1391.

## II. THE AMENDED COMPLAINT SHOULD RELATE BACK TO THE FILING OF THE ORIGINAL COMPLAINT.

Ordinarily, of course, limitations is a factual matter based upon when the events in question occurred. See, *Tello v. Dean Witter Reynolds, Inc.* 410 F.3d 1275, 1295 (11th Cir. 2005) (factual finding must be made before limitations issue can be determined in securities case).

Fed.R.Civ.P. 15, made applicable to this proceeding by Fed.R.Bankr.P. 7015, titled "Amended and Supplemental Pleadings", is grounded in a recognition that it is preferable for a case to be decided on its merits rather than on pleading technicalities. *Foman v. Davis,* 371 U.S. 178, 182 (1962). Rule 15 states in relevant part:

> (c)    Relation Back of Amendments. An amendment of a pleading relates back to the date of the original pleading when
> ...
>
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
>
> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied, and within the period provided by Rule 4(j) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

The Rule is written in the conjunctive, and courts interpret 15(c)(3) as imposing three conditions, all of which must be met for a successful relation back of an amended complaint that seeks to substitute newly named defendants. *Singletary v. Pennsylvania Dept. of Corrections,* 266 F.3d 186, 194 (3d. Cir. 2001), citing *Urrutia v. Harrisburg*

*County Police Dept.*, 91 F.3d 451(3d. Cir. 1996) ("three conditions in Rule 15(c)(3) must be satisfied" for relation back).[1]

As applied to this case, those requirements are: (1) that the Amended Complaint be based upon the "conduct, transaction, or occurrence" as the Complaint; (2) that Key Equipment received notice of the filing of the action so that it will not be prejudiced, and (3) that Key Equipment "knew or should have known" that except for a mistake, it would have been named as a defendant.

BroadBand believes that discovery will eventually show that its claims against Key Equipment satisfy all the requirements for "relation back" under Rule 15(c), but it also recognizes that these are factual issues it may be required to prove.

However, in the context of its Rule 12(b)(6) motion, the burden of persuasion as to what the evidence may eventually show must be borne by Key Equipment. Under the well-settled standard of a Rule 12(b)(6) motion, Key Equipment must demonstrate "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

To prevail, Key Equipment must show "beyond doubt" that there is <u>no set of facts</u> which BroadBand could prove that would allow "relation back". Key Equipment simply has not satisfied that burden.

### A. Same "Conduct, Transaction or Occurrence"

It is unquestionable that the Amended Complaint satisfies the requirement of Rule 15(c)(2) that the claim or defense asserted in the amended pleading "arose out of the

---

[1] Key Equipment asserts that there are "four conditions". Opening Brief, pp. 9, 10. It appears that Key equipment  refers to the requirements of Rule 15(c)(3)(B) twice.

conduct, transaction, or occurrence set forth or attempted to be set forth in the original

pleading." The Amended Complaint seeks the avoidance of the exact same transfers as

did the original Complaint. It is well established that a change in legal theory is of no

consequence when the facts underlying in the two pleadings are the same. 6(a) Wright,

Miller, & Kane, *Federal Practice and Procedure* § 1497 (2d. ed. 2002). Here, with

regard to the avoidance claims under Sections 547 and 550 of the Bankruptcy Code,

neither the underlying facts nor the legal theory has changed between the Complaint and

the Amended Complaint. As such, both complaints are based upon the same "conduct,

transaction or occurrence." See *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir.

2004) (even if amendment restates original claim with greater particularity or amplifies

factual circumstances surrounding pertinent conduct, transaction or occurrence in

preceding pleading relates back to date of original pleading).

### B. Actual or Imputed Notice of the Lawsuit

Rule 15(c)(3) notice does not require actual service of process on the party sought

to be added; notice may be deemed to have occurred when a party who has some reason

to expect his potential involvement as a defendant hears of the commencement of

litigation through some informal means. *Singletary,* 266 F.3d at 195. Notice under Rule

15 may be "actual" or "imputed." *Garvin v. City of Philadelphia*, 354 F.3d 215, 222-23

(3d Cir.2003).

In the discussion of "actual notice" in its Opening Brief, Key Equipment shows

exactly why the dismissal it seeks is inappropriate. In its section heading on page 10 of its

Opening Brief, Key Equipment boldly states "**Key Did Not Receive Notice Of The**

**Original Complaint** …". (emphasis in original). Further, it states "Key [Equipment] did

not receive actual notice within the period proscribed…". OB at 10. Key Equipment's defense on this issue is a purely <u>factual</u> one, not a legal one. Key Equipment provides no proof of the allegations, either by affidavit or discovery material. Nor may Key Equipment properly do so in the context of a motion to dismiss under Rule 12(b)(6). Moreover, given the allegations concerning the extensive interrelationships among the defendants, and the obvious existence of multiple agency relationships, it is certainly a reasonable inference that Key Equipment may have received <u>actual notice</u> of the lawsuit. The question before the Court in this context is whether there is a possible set of facts on which BroadBand can prevail, and the answer is undoubtedly "Yes". Because Key Equipment's defense on this issue is a factual one, not a legal one, the existence of this issue alone requires the denial of its Motion to Dismiss.

The Court of Appeals for the Third Circuit has held that even if there is no actual notice of the suit, notice may be "imputed", and has recognized two methods of imputing notice: (1) the "shared attorney" method; and (2) the "identity of interest" method. *Garvin*, 354 F.3d at 222-23.

The application of the "shared attorney" doctrine is based on the common sense idea that when the same attorney represents both the originally named party and the party sought to be added, "the attorney is likely to have communicated to the latter party that he may very well be joined in the action." *Id.* The obvious factual issue that arises in this context is whether, at or near the time of the filing of this lawsuit, the attorney for Defendant Technology Credit Corporation represented Key Equipment, acted on its behalf, or communicated with it regarding the lawsuit. There is no basis for the Court to decide that issue in the context of Key Equipment's Motion. Of course, the fact that Key

equipment's current attorneys represent only Key Equipment is not relevant to the determination of the facts at the relevant time. Again, the presence or absence of Key Equipment's defense is based upon a set of facts not before the Court.

Notice may also be imputed to a party which did not receive actual notice of that party has an "identity of interest" with a party that did receive actual notice. Key Equipment argues that "this Court cannot conclude that service of the Original Complaint…" satisfies the identity of interest test applies. OB at 11. Key Equipment, once again, is asking the Court to reach a conclusion based upon the facts of its relationship with the original defendant. While that defendant and Key Equipment may not have an "identity of interest" for all purposes, they may have had that relationship with regard to the BroadBand lease transaction on which they were working together to collect the overdue amounts from BroadBand. Further, given the existence of the multiple and overlapping agent-principal relationships, the facts of which are set forth in the Amended Complaint, service on the agent might fairly be imputed to the principal.

### C.  Key Equipment's Knowledge of a Mistake in Naming the Defendant

It is undeniable that the evidence may eventually show that Key Equipment "knew or should have known" that the action would named it as a defendant, except for a mistake. The "knew or should have known" requirement ensures that the defendant to be added knew or should have known all along that joinder was a possibility. *E.I. duPont de Nemours & Co. v. Phillips Petroleum Co.,* 621 F.Supp. 310. (D. Del. 1985) citing *Taliaferro v. Costello*, 467 F.Supp. 33, 36 (E.D.Pa.1979). The questions of what Key Equipment knew at any point in time and whether BroadBand made a "mistake" are fundamentally questions of fact. Key Equipment makes the bold assertion that

BroadBand "knew" that Key Equipment was the proper party.[2]  While it might be able to tell this Court what <u>it</u> knew, it is certainly not competent to tell the Court what *BroadBand* knew.

Further its apparent attempt to "impute" notice to BroadBand that it was a proper party is legally and factually wrong. Key Equipment's Exhibits C and D are hearsay documents offered for the truth of their contents, not for their existence, and may not be considered. In the context of a motion to dismiss, a court in this circuit may not generally go beyond the "four corners' of the complaint. *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3d Cir. 1997). Limited exceptions permit the Court to consider a document "integral" to the complaint, or, a "public record" as a matter of judicial notice.  See *Oran v. Stafford,* 226 F.3d 275, 289 (3d Cir. 2000).

Even if Key Equipment argued for the application of the exceptions, they would not be applicable here. Exhibit C is an alleged copy of a UCC Financing Statement, and Exhibit D is an alleged copy of a proof of claim. Neither of the exhibits is referred to or made a part of the Amended Complaint and therefore neither is "integral" to it. While the exhibits may be "public records", such documents may not be used to show the proof of their contents. *Id*. at 289, citing *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir.1991).  Key Equipment is attempting to use them, not for their existence, but for the proof that Key Equipment (a) "held a security interest in the Equipment at issue", and (b) "was the assignee of TCC's rights". Neither of these alleged "facts" can be determined from the <u>existence</u> of the document, but necessarily involve questions of the accuracy of its contents. As such, Exhibit C is hearsay under the Federal Rules of Evidence. Further

---

[2] Apparently Key Equipment does not deny that it is a potentially liable party under 11 U.S.C. §§ 547 and 550.

Key Equipment remarkably asserts that the documents show what <u>BroadBand</u> as a post-petition Debtor-in-Possession knew[3], and, in a tremendous leap of logic, whether the naming of Technology Credit Corporation as the defendant in the original Complaint was (a) a mistake, or (b) a calculated litigation decision. As stated before, however, Key Equipment's argument proves too much--- if BroadBand had known that Key Equipment was the potentially responsible defendant, there is no reason to believe that it would not have directly sued Key Equipment in the first instance. Any explanation other than "mistake" is pure factual conjecture on Key Equipment's part.[4]  In addition to its previous arguments about what Key Equipment knew, and when Key Equipment knew it, this defendant would have this Court decide in the context of a motion to dismiss what <u>BroadBand</u> knew, and when <u>BroadBand</u> knew it.

In essence, Key Equipment is asserting the unsupported proposition that BroadBand must demonstrate that relation back is appropriate on the face of the Amended Complaint. No such requirement exists. A complaint does not have to anticipate affirmative defenses to survive a motion to dismiss. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).  Key Equipment seeks to have this Court engage in further burden-shifting that is not authorized by Rule 12 or by applicable case law. "A complaint…need not allege all that a Plaintiff must eventually prove."  *Atchinson v. District of Colombia*, 73 F.3d 418, 421-22 (D.C. Cir. 1996). Further, while BroadBand vigorously contends

---

[3] Whether a post-petition Debtor-In-Possession, such as BroadBand, may be bound by the alleged knowledge of the debtor prior to its bankruptcy filing is a highly complex question of bankruptcy law that the Court need not reach given the hearsay nature of Key Equipment's Exhibits C and D and the impropriety of their use in the context of a Rule 12(b)(6) motion.

[4] Aside from whether Exhibit D is "offered for the truth" of its contents, the argument Key Equipment makes is that BroadBand, as Debtor-in-Possession pursuant to 11 U.S.C. § 1101 with duties of a Trustee pursuant to 11 U.S.C. § 1107, should be charged with knowledge of a particular proof of claim out of the large number filed in this case. There is no basis for the Court to make that determination in this context.

that its Amended Complaint is legally sufficient and withstands scrutiny under Rule 12, in the event that this Court agrees with Key Equipment's contention that not all necessary allegations are present, the Court should permit BroadBand to make and support those allegations in a further amendment. Leave to amend must generally be granted unless equitable considerations render it otherwise unjust. _Foman,_ 371 U.S. at 182.

In summary, the results of the discovery process will ultimately show what Key Equipment knew at various times, and whether its asserted limitations defense survives the relation back provisions of Rule 15. But the task before this Court is to determine whether there is a possible set of facts on which the Plaintiff <u>could</u> prevail, and that set of facts unquestionably exists. Because of the existence of that set of facts, Key Equipment's Motion must fail. As stated before, Key equipment's raw allegations of what it knew, when it knew it, what BroadBand knew, and when BroadBand knew it, are factual issues far beyond the permissible scope of a motion designed to test the "legal sufficiency" of the complaint. *JM Mechanical Corp.*, 716 F.2d at 197.

## III. COUNT THREE OF THE COMPLAINT STATES A CAUSE OF ACTION UNDER § 550 OF THE BANKRUPTCY CODE.

Section 550(a) of the Bankruptcy Code provides that the trustee may recover from the initial transferee or any immediate or mediate transferee "to the extent that a transfer is avoided under Section ... 547....". The Code specifically separates the identification of avoidable transfers, under provisions such as Section 547, from the identification under Section 550 of who must pay. See, *In re H & S Transportation,* 939 F.2d 355, 358 (6th Cir 1991). If it is determined that the transfer is a preference under Section 547, the Court then looks to Section 550(a) to determine to whom the plaintiff may look for recovery of the property. *Id.* Although more than one creditor may be held responsible for a single

avoidable transaction under Section 550(a), such a recovery is subject to the trustee's right to only a single satisfaction of each preference claim. *Id.*, citing 11 U.S.C. § 550(c). While it is true that the viability of a Section 550 count is dependent upon the existence of a viable avoidance count, even if Key Equipment were entitled to dismissal under the preference count, there would continue to be a viable preference count as to two other defendants. A Section 550 action may be commenced against an entity that was not a party to the underlying section 547 action. See, *In re Warmus*, 276 B.R. 688 (S.D. Fla. 2002). It is also premature for the Court to deal with the Section 550 issues, as the issue of the avoidability of the transfers themselves has not been determined by this Court.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiff BroadBand Office, Inc. respectfully requests that this Honorable Court deny Key Equipment's Motion to Dismiss.

Dated: March 13, 2006            Respectfully submitted,
      Wilmington, Delaware

    WERB & SULLIVAN

/s/  Brian A. Sullivan
_____
Brian A. Sullivan            (DE #2098)
Robert D. Wilcox            (DE #4321)
Amy D. Brown            (DE #4077)
300 Delaware Avenue, 13th Floor
P. O. Box 25046
Wilmington, DE   19899
Telephone: (302) 652-1100

Attorneys for Broadband Office, Inc., Plaintiff