# Exhibit F

| **United States Bankruptcy Court** **District of Delaware** | **PROOF OF CLAIM** |
|---|---|

| In re (Name of Debtor) **Broadband Office, Inc.** | Case Number  01-1720 (GMS) Chapter 11 |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor *(The person or other entity to whom the debtor owes money or property)* **Key Equipment Finance, a division of Key Corporate** **Capital, Inc., fka Leasetec Corporation** | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. DISTRICT OF DELAWARE BROADBAND OFFICE, INC. 01-1720 (GMS) 00129 |
|---|---|

| Name and Address Where Notices Should be Sent **Key Equipment Finance** **Attn:  Sal Boscia** **1000 South McCaslin Boulevard** **Louisville, CO  80027** **Tel.  (720) 304 – 1175  Fax:  (720) 304 - 1716** | ☐ Check box if you have never received any notices from the bankruptcy court in this case. ☐ Check box if the address differs from the address on the envelope sent to you by the court. THIS SPACE IS FOR COURT USE ONLY |
|---|---|

| ACCOUNT OR OTHER NUMBER BY WHICH CREDITOR IDENTIFIES DEBTOR **Lease # X163  Schedule #s 01, 02, 03, 04, 05 & 06** | Check here if this claim  ☐ replaces   a previously filed claim, dated ___. ☐ amends |
|---|---|

**1. BASIS FOR CLAIM:**

| ☐ Goods sold ☐ Services performed ☐ Money loaned ☐ Personal injury/wrongful death ☐ Taxes ☒ Other (describe briefly) **Computer Equipment - See Attached Schedule** | ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a) ☐ Wages, salaries, and compensation (Fill out below) Your social security number ___. Unpaid compensation for services performed from _____ to _____ date          date |
|---|---|

| **2.  DATE DEBT WAS INCURRED:** **03/09/00** | **3.  IF COURT JUDGMENT, DATE OBTAINED:** |
|---|---|

**4. CLASSIFICATION OF CLAIM.** Under the Bankruptcy Code all claims are classified as one or more of the following: (1) Unsecured nonpriority, (2) Unsecured priority, (3) Secured. It is possible for part of a claim to be in one category and part in another. CHECK THE APPROPRIATE BOX OR BOXES that best describe your claim and STATE THE AMOUNT OF THE CLAIM AT TIME CASE FILED.

| ☒ SECURED CLAIM $ 6,066,838.91 Attach evidence of perfection of security interest Brief Description of Collateral: ☐ Real Estate  ☐ Motor Vehicle  ☒ Other (Describe briefly)      Computer Equipment - See Attached Schedule Amount of arrearage and other charges at time case filed included in Secured claim above, if any $ 877,772.27 ☐ UNSECURED NONPRIORITY CLAIM $___. A claim is unsecured if there is no collateral or lien on property of the debtor Securing the claim or to the extent that the value of such property is less than The amount of the claim. ☐ UNSECURED PRIORITY CLAIM $___. Specify the priority of the claim. | ☐ Wages, salaries, or commissions (up to $4000)*, earned not more than 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier -- 11 U.S.C. § 507(a)(3) ☐ Contributions to an employee benefit plan -- 11 U.S.C. § 507(a)(4) ☐ Up to $1,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use -- 11 U.S.C. § 507(a)(6) ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child -- 11 U.S.C. § 507(a)(7) ☐ Taxes or penalties of governmental units - 11 U.S.C. § 507(a)(8) ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a) ___. *Amounts are subject to adjustment on 4/11/98 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. |
|---|---|

| **5.  TOTAL AMOUNT OF** **CLAIM AT THE TIME** | $_____ (Unsecured) | $ 6,066,838.91 (Secured) | $_____ (Priority) | $ 6,066,838.91 (Total) |
|---|---|---|---|---|

☐  Check this box if claim includes charges in addition to the principal amount of the claim. Attach itemized statement of all additional charges.

6. CREDITS AND SETOFFS: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. In filing this claim, claimant has deducted all amounts that claimant owes to debtor.

7. SUPPORTING DOCUMENTS: *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, or evidence of security interests. If the documents are not available, explain. If the documents are voluminous, attach a summary. Attachment I - Calculation, Attachment II - Lease & Schedule, Attachment III - Assignment, Attachment IV – Assignment

8. TIME-STAMPED COPY: To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

2001 JUN 29  PM 2: 09
U.S. CLERK BANKRUPTCY COURT DISTRICT OF DELAWARE

| Date **06/21/01** | Sign and print the name and title, if any, of the creditor or other person Authorized to file this claim (attach copy of power of attorney, if any) Brian D. York - Director of Asset Recovery |
|---|---|

FILED

2001 JUN 29  PM 2:09

CLERK
U.S. BANKRUPTCY COURT
DISTRICT OF DELAWARE



Key Equipment Finance
1000 S. McCaslin Blvd.
Superior, CO  80027

June 21, 2001

<u>CERTIFIED - Return Receipt Requested</u>

United States Bankruptcy Court
Attn:  David D. Bird - Clerk of the Court
824 Market Street, 5th Floor
Wilmington, DE  19801

Dear Mr. Bird:

SUBJECT:    **Broadband Office, Inc.**
            **Case # 01-1720 (GMS)**

Enclosed for filing in your office is the original Proof of Claim (with attachments) in the above-referenced cases.

Also enclosed is one copy of the Proof of Claim (without attachments) to be docket-stamped and returned to us in the enclosed, self-addressed, stamped envelope.

Sincerely,

Elizabeth Guarino

Elizabeth Guarino
Recovery Coordinator

Enclosures

# RIDER A

The secured status of this claim is based upon the fact that the Debtor is obligated to this lessor pursuant to an unexpired true lease of equipment (as supported by the enclosed attachments) which the Debtor may assume.  However, in the event that (i) the lease is rejected and the equipment is returned to lessor, or (ii) the lease is deemed a lease intended as security; and the equipment value is insufficient to satisfy lessor's entire claim, then lessor shall have an unsecured claim in an amount equal to the difference between the entire secured claim and the value of the equipment.

06/21/2001

## ATTACHMENT 1

**BROADBAND OFFICE, INC.**

Amounts Due Key Equipment Finance - Bankruptcy #:    01-1720 (GMS)

Date of Filing:    05/09/01

### *PRE-PETITION - PAGE 1*

| INVOICE OR DESCRIPTION | INV DUE DATE | AS OF | RENT | TAX | SUB TOTAL | # DAYS O/S | CONTRACT LATE CHARGE | TOTAL |
|---|---|---|---|---|---|---|---|---|
| 1615296 | 12/28/00 | 05/08/01 | 3,787.27 | 921.73 | $ 4,709.00 | 132 | $ 414.39 | $ 5,123.39 |
| 1644386 | 01/28/01 | 05/08/01 | 3,787.27 | 921.73 | $ 4,709.00 | 101 | $ 317.07 | $ 5,026.07 |
| 1671935 | 02/28/01 | 05/08/01 | 3,787.27 | 921.73 | $ 4,709.00 | 70 | $ 219.75 | $ 4,928.75 |
| 1702709 | 03/28/01 | 05/08/01 | 20,482.81 | 921.73 | $ 21,404.54 | 42 | $ 599.33 | $ 22,003.87 |
| 1729642 | 04/28/01 | 05/08/01 | 7,510.36 | 337.97 | $ 7,848.33 | 11 | $ 57.55 | $ 7,905.88 |
| 1635622 | 01/11/01 | 05/08/01 | 8,042.04 | 2,041.05 | $ 10,083.09 | 118 | $ 793.20 | $ 10,876.29 |
| 1664372 | 02/11/01 | 05/08/01 | 8,222.04 | 2,041.05 | $ 10,263.09 | 87 | $ 595.26 | $ 10,858.35 |
| 1691107 | 03/11/01 | 05/08/01 | 44,467.52 | 2,041.05 | $ 46,508.57 | 59 | $ 1,829.34 | $ 48,337.91 |
| 1722082 | 04/11/01 | 05/08/01 | 41,503.02 | 1,867.65 | $ 43,370.67 | 28 | $ 809.59 | $ 44,180.26 |
| 1611818 | 12/20/00 | 05/08/01 | 14,974.75 | 3,717.39 | $ 18,692.14 | 140 | $ 1,744.60 | $ 20,436.74 |
| 1639003 | 01/20/01 | 05/08/01 | 14,974.75 | 3,717.39 | $ 18,692.14 | 109 | $ 1,358.30 | $ 20,050.44 |
| 1667916 | 02/20/01 | 05/08/01 | 14,974.75 | 3,657.97 | $ 18,632.72 | 78 | $ 968.90 | $ 19,601.62 |
| 1696281 | 03/20/01 | 05/08/01 | 80,988.45 | 3,717.39 | $ 84,705.84 | 50 | $ 2,823.53 | $ 87,529.37 |
| 1725363 | 04/20/01 | 05/08/01 | 51,292.68 | 2,308.18 | $ 53,600.86 | 19 | $ 678.94 | $ 54,279.80 |
| 1616184 | 12/29/00 | 05/08/01 | 3,484.11 | 864.93 | $ 4,349.04 | 131 | $ 379.82 | $ 4,728.86 |
| 1645324 | 01/29/01 | 05/08/01 | 3,484.11 | 864.93 | $ 4,349.04 | 100 | $ 289.94 | $ 4,638.98 |
| 1671986 | 02/28/01 | 05/08/01 | 3,484.11 | 851.10 | $ 4,335.21 | 70 | $ 202.31 | $ 4,537.52 |
| 1702714 | 03/29/01 | 05/08/01 | 18,843.25 | 864.93 | $ 19,708.18 | 41 | $ 538.69 | $ 20,246.87 |
| 1730670 | 04/29/01 | 05/08/01 | 6,281.08 | 282.65 | $ 6,563.73 | 10 | $ 43.76 | $ 6,607.49 |
| 1610229 | 12/17/00 | 05/08/01 | 11,149.48 | 2,767.78 | $ 13,917.26 | 143 | $ 1,326.78 | $ 15,244.04 |
| 1638107 | 01/17/01 | 05/08/01 | 11,149.48 | 2,767.78 | $ 13,917.26 | 112 | $ 1,039.16 | $ 14,956.42 |
| 1666324 | 02/17/01 | 05/08/01 | 11,149.48 | 2,723.54 | $ 13,873.02 | 81 | $ 749.14 | $ 14,622.16 |
| 1696282 | 03/17/01 | 05/08/01 | 60,300.10 | 2,767.78 | $ 63,067.88 | 53 | $ 2,228.40 | $ 65,296.28 |
| 1724827 | 04/17/01 | 05/08/01 | 44,220.07 | 1,989.91 | $ 46,209.98 | 22 | $ 677.75 | $ 46,887.73 |
| 1641725 | 01/26/01 | 05/08/01 | 29,122.66 | 7,290.26 | $ 36,412.92 | 103 | $ 2,500.35 | $ 38,913.27 |
| 1670357 | 02/26/01 | 05/08/01 | 29,125.36 | 7,172.07 | $ 36,297.43 | 72 | $ 1,742.28 | $ 38,039.71 |
| 1699604 | 03/26/01 | 05/08/01 | 157,724.14 | 7,286.80 | $ 165,010.94 | 44 | $ 4,840.32 | $ 169,851.26 |
| 1728379 | 04/26/01 | 05/08/01 | 68,347.13 | 3,096.64 | $ 71,443.77 | 13 | $ 619.18 | $ 72,062.95 |
| **SUB TOTAL / PRE-PETITION AMOUNTS DUE UNDER LEASE:** | | | | | | | | $ 877,772.27 |
| **INTEREST ACCRUED SINCE PETITION DATE @ Contract Rate:** | | | | | | | | $ 25,162.80 |

06/21/2001

# ATTACHMENT 1

**BROADBAND OFFICE, INC.**

Amounts Due Key Equipment Finance - Bankruptcy #:    01-1720 (GMS)

Date of Filing:    05/09/01

### *POST-PETITION - PAGE 2*

#### POST PETITION AMOUNTS ACCRUED TO DATE

| INVOICE OR DESCRIPTION | INV DUE DATE | AS OF | RENT | TAX | SUB TOTAL | # DAYS O/S | POST PETITION INTEREST @ CONTRACT RATE | TOTAL |
|---|---|---|---|---|---|---|---|---|
| 1729642 | 04/28/01 | 06/21/01 | 12,972.45 | 583.76 | $ 13,556.21 | 54 | $ 488.02 | $ 14,044.23 |
| 1758506 | 05/28/01 | 06/21/01 | 20,482.81 | 921.73 | $ 21,404.54 | 24 | $ 342.47 | $ 21,747.01 |
| 1722082 | 04/11/01 | 06/21/01 | 2,964.50 | 133.40 | $ 3,097.90 | 71 | $ 146.63 | $ 3,244.53 |
| 1749851 | 05/11/01 | 06/21/01 | 44,467.52 | 2,041.05 | $ 46,508.57 | 41 | $ 1,271.23 | $ 47,779.80 |
| 1777170 | 06/11/01 | 06/21/01 | 44,467.52 | 2,001.05 | $ 46,468.57 | 10 | $ 309.79 | $ 46,778.36 |
| 1725363 | 04/20/01 | 06/21/01 | 29,695.77 | 1,336.32 | $ 31,032.09 | 62 | $ 1,282.66 | $ 32,314.75 |
| 1753007 | 05/20/01 | 06/21/01 | 80,988.45 | 3,644.50 | $ 84,632.95 | 32 | $ 1,805.50 | $ 86,438.45 |
| 1781390 | 06/20/01 | 06/21/01 | 80,988.45 | 3,644.50 | $ 84,632.95 | 1 | $ 56.42 | $ 84,689.37 |
| 1730670 | 04/29/01 | 06/21/01 | 12,562.17 | 565.31 | $ 13,127.48 | 53 | $ 463.84 | $ 13,591.32 |
| 1758515 | 05/29/01 | 06/21/01 | 18,843.25 | 847.96 | $ 19,691.21 | 23 | $ 301.93 | $ 19,993.14 |
| 1724827 | 04/17/01 | 06/21/01 | 16,080.03 | 723.60 | $ 16,803.63 | 65 | $ 728.16 | $ 17,531.79 |
| 1751950 | 05/17/01 | 06/21/01 | 60,300.10 | 2,713.51 | $ 63,013.61 | 35 | $ 1,470.32 | $ 64,483.93 |
| 1779984 | 06/17/01 | 06/21/01 | 60,300.10 | 2,713.51 | $ 63,013.61 | 4 | $ 168.04 | $ 63,181.65 |
| 1728379 | 04/26/01 | 06/21/01 | 89,377.01 | 4,049.45 | $ 93,426.46 | 56 | $ 3,487.92 | $ 96,914.38 |
| 1756114 | 05/26/01 | 06/21/01 | 157,724.14 | 7,146.09 | $164,870.23 | 26 | $ 2,857.75 | $ 167,727.98 |
| **SUB TOTAL / POST PETITION AMOUNTS DUE ACCRUED TO DATE:** | | | 732,214.27 | $ 33,065.74 | 765,280.01 | | $ 15,180.69 | $ 780,460.70 |

06/21/2001

| ATTACHMENT 1 | | | | | | | |
|---|---|---|---|---|---|---|---|
| BROADBAND OFFICE, INC. | | | | | | | |
| Amounts Due Key Equipment Finance - Bankruptcy #: | | | 01-1720 (GMS) | | | | |
| Date of Filing: | 05/09/01 | | | | | | |
| **UNACCRUED FUTURE AMOUNTS DUE - POST PETITION - PAGE 3** | | | | | | | |
| **LEASE # and RENTAL PERIOD** | **RENT** | **TAX** | | | | **TOTAL** | |
| Schedule No.  X163-01<br>06/28/01 - 08/27/01<br>2 months @ $20,482.81/mo | 40,965.62 | 1,843.46 | | | | $ | 42,809.08 |
| Schedule No.  X163-02<br>07/11/01 - 10/10/01<br>3 months @ $44,467.52/mo | 133,402.56 | 6,003.15 | | | | $ | 139,405.71 |
| Schedule No.  X163-03<br>07/20/01 - 10/19/01<br>3 months @ $80,988.45/mo | 242,965.35 | 10,933.50 | | | | $ | 253,898.85 |
| Schedule No.  X163-04<br>06/29/01 - 10/28/01<br>4 months @ $18,843.25/mo | 75,373.00 | 3,391.84 | | | | $ | 78,764.84 |
| Schedule No.  X163-05<br>07/17/01 - 12/16/01<br>5 months @ $60,300.10/mo | 301,500.50 | 13,567.55 | | | | $ | 315,068.05 |
| Schedule No.  X163-06<br>06/26/01 - 01/25/02<br>7 months @ $157,724.14/mo | 1,104,068.98 | 50,022.63 | | | | $ | 1,154,091.61 |
| X163-01 EST 2001 PPTX | 0.00 | 13,300.00 | | | | $ | 13,300.00 |
| X163-02 EST 2001 PPTX | 0.00 | 21,650.00 | | | | $ | 21,650.00 |
| X163-03 EST 2001 PPTX | 0.00 | 39,435.00 | | | | $ | 39,435.00 |
| X163-04 EST 2001 PPTX | 0.00 | 9,175.00 | | | | $ | 9,175.00 |
| X163-05 EST 2001 PPTX | 0.00 | 39,525.00 | | | | $ | 39,525.00 |
| X163-06 EST 2001 PPTX | 0.00 | 76,320.00 | | | | $ | 76,320.00 |
| SUB TOTAL / POST PETITION UNACCRUED<br>AMOUNTS DUE UNDER LEASE: | | | | | | $ | 2,183,443.14 |
| EQUIPMENT VALUE (for true leases): | | | | | | $ | 2,200,000.00 |
| **TOTAL AMOUNT OF CLAIM\*** | | | | | | $ | 6,066,838.91 |
| *INTEREST ACCRUES ON ALL PRE- & POST-PETITION AMOUNTS AT LATE CHARGE RATE IN LEASE.* | | | | | | | |

# MASTER LEASE AGREEMENT

No. X163

This Master Lease Agreement (the "MLA") is entered into by and between Extreme Networks® Credit Corporation ("Lessor"), having its principal place of business at

3585 Monroe Street, Santa Clara, CA 95051 and _____ Broadband Office, Inc. _____ ("Lessee"),

having its principal place of business at _____ 2070 Chain Bridge Road, Suite 350, Vienna, VA 22182 _____ .

1. LEASE AGREEMENT. Lessor agrees to lease to Lessee; and Lessee agrees to lease from Lessor, the equipment (the "Equipment") referenced in each of the Schedules (the "Schedule" or "Schedules") which incorporate this MLA therein (the "Lease").

2. TERM. Each Lease shall be effective upon the execution of the MLA and the related Schedule by the Lessor and the Lessee. The lease term (the "Lease Term") of the Equipment referenced in each of the Schedules shall commence on the rent commencement date specified in each Schedule (the "Rent Commencement Date"). The Rent Commencement Date shall be the date 30 days from the date that the Equipment is shipped by the supplier (the "Ship Date") as evidenced by a shipping document provided by the supplier related to the Equipment (the "Shipping Document"). Lessor will provide Lessee with a copy of the Shipping Document evidencing the Ship Date.

3. RENT. The rent (the "Rent") for the Equipment referenced in any Schedule shall be as stated in such Schedule and shall be payable according to the provisions of such Schedule. If any amount payable under a Schedule is not received by Lessor within 10 days of the due date, Lessee agrees to pay an Overdue Charge, as defined herein, with respect to such amount.

4. SELECTION AND ASSIGNMENT. Lessee will select the type, quantity and Supplier of each item of Equipment designated in a Schedule, and Lessee hereby assigns to Lessor all of its right, title and interest in and to the related equipment purchase agreement, a copy of which has been provided to Lessor by Lessee (the "Agreement"). The Agreement may be amended with the consent of Lessor. Any such assignment with respect to Equipment shall become binding upon Lessor when Lessor and Lessee have entered into a Lease with respect to such Equipment and as of the Rent Commencement Date referenced in such Lease. Upon such an assignment becoming effective, Lessor shall be obligated to purchase the Equipment from the Supplier in accordance with the provisions of the Agreement. It is expressly agreed that Lessee shall at all times remain liable to Supplier under the Agreement to perform all duties and obligations of Lessee thereunder, except for the obligation to purchase the Equipment to the extent expressly assumed by the Lessor hereunder, and that the Lessee shall be entitled to the same rights of the purchaser of the Equipment under the Agreement, except such right, title and interest in the Equipment retained exclusively by the Lessor as owner of the Equipment. Lessor shall have no liability for a Supplier's failure to meet the terms and conditions of the Agreement.

5. DELIVERY AND INSTALLATION. Lessee shall be responsible for payment of all transportation, packing, installation, testing and other charges associated with the delivery, installation or use of any Equipment which are not included in the Agreement with respect to such Equipment.

6. WARRANTIES. LESSOR MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, WITH RESPECT TO ANY OF THE EQUIPMENT, ITS MERCHANTABILITY, OR ITS FITNESS FOR A PARTICULAR PURPOSE. LESSOR SHALL NOT BE LIABLE TO LESSEE OR ANY OTHER PERSON FOR DIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING FROM LESSEE'S USE OF THE EQUIPMENT, OR FOR DAMAGES BASED ON STRICT OR ABSOLUTE TORT LIABILITY OR LESSOR'S PASSIVE NEGLIGENCE. LESSEE HEREBY ACKNOWLEDGES THAT ANY MANUFACTURER'S OR SUPPLIER'S WARRANTIES WITH RESPECT TO THE EQUIPMENT ARE FOR THE BENEFIT OF BOTH LESSOR AND LESSEE. NOTWITHSTANDING THE FOREGOING, LESSEE'S OBLIGATIONS TO PAY EACH RENT PAYMENT DUE, OR OTHERWISE PERFORM ITS OBLIGATIONS, UNDER THIS LEASE ARE ABSOLUTE AND UNCONDITIONAL.

7. TITLE TO AND LOCATION OF EQUIPMENT. Lessee shall retain title to each item of Equipment. Lessee, at its expense, shall protect Lessor's title and keep the Equipment free from all claims, liens, encumbrances and legal processes. The Equipment is personal property and is not to be regarded as part of the real estate on which it may be situated. If requested by Lessor, Lessee will, at Lessee's expense, furnish a landlord or mortgagee waiver with respect to the Equipment. The Equipment shall not be removed from the location specified in the Schedule without the written consent of Lessor. Lessee shall, upon Lessor's request, affix and maintain plates, tags or other identifying labels, showing Lessor's ownership of the Equipment in a prominent position on the Equipment.

8. USE OF EQUIPMENT, INSPECTION AND REPORTS. The use of the Equipment by Lessee shall conform with all applicable laws, insurance policies, and warranties of the manufacturer or Supplier of the Equipment. Lessor shall have the right to inspect the Equipment at the premises where the Equipment is located. Lessee shall notify Lessor promptly of any claims, liens, encumbrances or legal processes with respect to the Equipment.

9. FURTHER ASSURANCES. Lessee shall execute and deliver to Lessor such instruments as Lessor deems necessary for the confirmation of this Lease and Lessor's rights hereunder. Lessor is authorized to file financing statements signed only by the Lessor in accordance with the Uniform Commercial Code, or financing statements signed by Lessor as Lessee's attorney-in-fact. Any such filing with respect to the Equipment leased pursuant to a true lease shall not be deemed evidence of any intent to create a security interest under the Uniform Commercial Code.

10. MAINTENANCE AND REPAIRS. Lessee shall, at its expense, maintain each item of Equipment in good condition, normal wear and tear excepted. Lessee shall not make any addition, alteration, or attachment to the Equipment without Lessor's prior written consent. Lessee shall make no repair, addition, alteration or attachment to the Equipment that interferes with the normal operation or maintenance thereof, creates a safety hazard, or might result in the creation of a mechanic's or materialman's lien.

11. LESSOR'S PERFORMANCE OF LESSEE'S OBLIGATIONS. If Lessee fails to perform any of its obligations under a Lease, Lessor may perform any act or make any payment which Lessor deems necessary for the maintenance and preservation of the Equipment subject thereto and Lessor's title thereto. All sums so paid by Lessor (together with all related Overdue Charges), and reasonable attorneys' fees incurred by Lessor in connection therewith, shall be additional rent payable to Lessor on demand. The performance of any such act or the making of any such payment by Lessor shall not be deemed a waiver or release of any obligation or default on the part of Lessee.

12. INDEMNIFICATION. Lessee assumes liability for, and hereby agrees to indemnify, protect and hold harmless, Lessor, and its agents, employees, officers, directors, partners and successors and assigns, from and against, all liabilities, obligations, losses, damages, injuries, claims, demands, penalties, actions, costs and expenses, including, without limitation, reasonable attorneys' fees, of whatever kind and nature, in contract or in tort, arising out of the use, condition, operation, ownership, selection, delivery, leasing or return of any item of Equipment, regardless of when, how and by whom operated, or any failure on the part of Lessee to perform or comply with any of its obligations under a Lease, excluding, however, any of the foregoing which result from the gross negligence or willful misconduct of Lessor. Such indemnities and assumptions of liabilities and obligations shall continue in full force and effect, notwithstanding the expiration or other termination of such Lease. Nothing contained in any Lease shall authorize Lessee to operate the Equipment subject thereto so as to incur or impose any liability on, or obligation for or on behalf of, Lessor.

13. NO OFF-SET. All Rents shall be paid by Lessee irrespective of any off-set, counterclaim, recoupment, defense or other right which Lessee may have against Lessor, the manufacturer or Supplier of the Equipment or any other party.

14. ASSIGNMENT BY LESSEE. Lessee shall not, without Lessor's prior written consent, (a) sell, assign, transfer, pledge, hypothecate, or otherwise dispose of, encumber or suffer to exist a lien upon or against, any of the Equipment or any Lease or any interest therein, by operation of law or otherwise, or (b) sublease or lend any of the Equipment or permit any of the Equipment to be used by anyone other than Lessee.

15. ASSIGNMENT BY LESSOR. Lessor may assign, sell or encumber its interest in any of the Equipment and any Lease. Upon Lessor's written consent, Lessee shall pay directly to the assignee of any such interest all Rent and other sums due under an assigned Lease. THE RIGHTS OF ANY SUCH ASSIGNEE SHALL NOT BE SUBJECT TO ANY ABATEMENT, DEDUCTION, OFF-SET, COUNTERCLAIM, RECOUPMENT, DEFENSE OR OTHER RIGHT WHICH LESSEE MAY HAVE AGAINST LESSOR OR ANY OTHER PERSON OR ENTITY. Notwithstanding the foregoing, any such assignment (a) shall be subject to Lessee's right to possess and use the Equipment subject to a Lease so long as Lessee is not in default thereunder, and (b) shall not release any of Lessee's obligations hereunder.

16. RETURN OF EQUIPMENT. Unless Lessee has exercised its option, if any, to renew a lease or purchase the Equipment subject thereto, upon expiration of the then current Lease Term of such Lease, Lessee shall, at its expense, cause such Equipment to be removed, disassembled, and placed in the same condition as when delivered to Lessee (reasonable wear and tear excepted) and properly crate such Equipment for shipment and deliver it to a common carrier designated by Lessor. Lessee will ship such Equipment, F.O.B. destination, to any address specified in writing by Lessor within the continental United States. All additions, attachments, alterations and repairs made or placed upon any of the Equipment shall become part of such Equipment and shall be the property of Lessor.

17. EVENTS OF DEFAULT. The occurrence of any of the following shall be deemed to constitute an Event of Default hereunder: (a) Lessee fails to pay Rent, any other amount it is obligated to pay under a Lease or any other amount it is obligated to pay to Lessor and does not cure such failure within 10 days of such amount becoming due; (b) Lessee fails to perform or observe any obligation or covenant to be performed or observed by Lessee hereunder or under any Schedule, including, without limitation, supplying all requested documentation, and does not cure such failure within 10 days of receiving written notice thereof from Lessor; (c) any warranty, representation or statement made or furnished to Lessor by or on behalf of Lessee is proven to have been false in any material respect when made or furnished; (d) the attempted sale or encumbrance by Lessee of the Equipment, or the making of any levy, seizure or attachment thereof or thereon; or (e) the dissolution, termination of existence, discontinuance of business, insolvency, or appointment of a receiver of any part of the property of Lessee, assignment by Lessee for the benefit of creditors, the commencement of proceedings under any bankruptcy, reorganization or arrangement laws by or against Lessee, or any other act of bankruptcy on the part of Lessee.

18. REMEDIES OF LESSOR. At any time after the occurrence of any Event of Default, Lessor may exercise one or more of the following remedies: (a) Lessor may terminate any or all of the Leases with respect to any or all items of Equipment subject thereto; (b) Lessor may recover from Lessee all Rent and other amounts then due and to become due under any or all of the Leases; (c) Lessor may take possession of any or all items of Equipment, wherever the same may be located, without demand or notice, without any court order or other process of law and without liability to Lessee for any damages occasioned by such taking of possession, and any such taking of possession shall not constitute a termination of any Lease; (d) Lessor may demand that Lessee return any or all items of Equipment to Lessor in accordance with Paragraph 16; and (e) Lessor may pursue any other remedy available at law or in equity, including, without limitation, seeking damages, specific performance or an injunction.

Upon repossession or return of any item of the Equipment, Lessor shall sell, lease or otherwise dispose of such item in a commercially reasonable manner, with or without notice and on public or private bid, and apply the net proceeds thereof (after deducting the estimated fair market value of such item at the expiration of the term of the applicable Lease, in the case of a sale, or the rents due for any period beyond the scheduled expiration of such Lease, in the case of any subsequent lease of such item, and all expenses, including, without limitation, reasonable attorneys' fees, incurred in connection therewith) towards the Rent and other amounts due under such Lease, with any excess net proceeds to be retained by Lessor.

Each of the remedies under this Lease shall be cumulative, and not exclusive, and in addition to any other remedy referred to herein or otherwise available to Lessor in law or in equity. Any repossession or subsequent sale or lease by Lessor of any item of Equipment shall not bar an action for a deficiency as herein provided, and the bringing of an action or the entry of judgment against Lessee shall not bar Lessor's right to repossess any or all items of Equipment.

19. CREDIT AND FINANCIAL INFORMATION. Within 90 days of the close of each of Lessee's fiscal years, Lessee shall deliver to Lessor a copy of Lessee's annual report, if any, and an audited balance sheet and profit and loss statement with respect to such year. If audited financial statements of Lessee for such year are not prepared, Lessee may provide financial statements certified by an officer of Lessee. At Lessor's request, Lessee shall deliver to Lessor a balance sheet and profit and loss statement for any of its fiscal quarters, certified by an officer of Lessee.

20. INSURANCE. As of the date that risk of loss for the Equipment passes from the Supplier to the Lessee under the terms of the Agreement, Lessee shall obtain and maintain through the end of the Lease Term of each Lease (and any renewal or extension thereof), at its own expense, property damage and personal liability insurance and insurance against loss or damage to the Equipment, including, without limitation, loss by fire (with extended coverage), theft and such other risks of loss as are customarily insured against with respect to the types of Equipment leased hereunder and by the types of businesses in which such Equipment will be used by Lessee. Such insurance shall be in such amounts, with such deductibles, in such form and with such insurers as shall be satisfactory to Lessor; provided, however, that the amount of the insurance against loss or damage to the Equipment shall not be less than the greater of the replacement value of the Equipment, from time to time, or the original purchase price of the Equipment. Each insurance policy shall name Lessee as an insured and Lessor as an additional insured or loss payee, and shall contain a clause requiring the insurer to give Lessor at least 30 days prior written notice of any alteration in the terms of such policy or of the cancellation thereof. Lessee shall furnish to Lessor a certificate of insurance or other evidence satisfactory to Lessor that such insurance coverage is in effect; provided, however, that Lessor shall be under no duty either to ascertain the existence of or to examine such insurance policy or to advise Lessee in the event such insurance coverage shall not comply with the requirements hereof. Lessee shall give Lessor prompt notice of any damage to, or loss of, any of the Equipment, or any part thereof, or any personal injury or property damage occasioned by the use of any of the Equipment.

21. TAXES. Lessee hereby assumes liability for, and shall pay when due, and, on a net after-tax basis, shall indemnify, protect and hold harmless Lessor against all fees, taxes and governmental charges (including, without limitation, fines and penalties) of any nature imposed on or in any way relating to Lessor, Lessee, any item of Equipment or any Lease, except state and local taxes on or measured by Lessor's net income (other than any such tax which is in substitution for or relieves Lessee from the payment of taxes it would otherwise be obligated to pay or reimburse to Lessee as herein provided) and federal taxes on Lessor's net income. Lessee shall, at its expense, file when due with the appropriate authorities any and all tax and similar returns, and reports required to be filed with respect thereto, for which it has indemnified Lessor hereunder or, if requested by Lessor, notify Lessor of all such requirements and furnish Lessor with all information required for Lessor to effect such filings. Any fees, taxes or other charges paid by Lessor upon failure of Lessee to make such payments shall, at Lessor's option, become immediately due from Lessee to Lessor and shall be subject to the Overdue Charge from the date paid by Lessor until the date reimbursed by Lessee.

22. SEVERABILITY. If any provision of any Lease is held to be invalid by a court of competent jurisdiction, such invalidity shall not affect the other provisions of such Lease or any provision of any other Lease.

23. NOTICES. All notices hereunder shall be in writing and shall be deemed given when sent by certified mail, postage prepaid, return receipt requested, addressed to the party to which it is being sent at its address set forth herein or to such other address as such party may designate in writing to the other party.

24. AMENDMENTS, WAIVERS AND EXTENSIONS. This MLA and each Schedule constitute the entire agreement between Lessor and Lessee with respect to the lease of the Equipment subject to such Schedule, and supersede all previous communications, understandings, and agreements, whether oral or written, between the parties with respect to such subject matter. No provision of any Lease may be changed, waived, amended or terminated except by a written agreement, specifying such change, waiver, amendment or termination, signed by both Lessee and Lessor, except that Lessor may insert, on the appropriate schedule, the serial number of Equipment, after delivery of such Equipment, and the Rent Commencement Date for the Equipment. No waiver by Lessor of any Event of Default shall be construed as a waiver of any future Event of Default or any other Event of Default. At the expiration of the Lease Term with respect to a Lease, upon notice given by Lessee at least ninety (90) days prior thereto, (a) such Lease shall be renewed or the Equipment subject thereto shall be purchased under the terms and conditions set forth herein for a term and rent amount or purchase price, as the case may be, or (b) if no such agreement is reached prior to the expiration of such Lease Term or such notice specifies that Lessee intends to return the Equipment, then Lessee shall return the Equipment to Lessor in the manner prescribed in Paragraph 16 of this MLA. In the absence of Lessor's timely receipt of the notice contemplated by the preceding sentence, the Lease shall be automatically extended, on a month-to-month basis, until terminated (upon notice by either party given at least ninety (90) days prior to the end of the month on which the termination is to be effective) or until renewed or the Equipment subject thereto is purchased by agreement of the parties. Unless otherwise agreed, Lessee shall continue to pay Rent for each month following such Lease Term until the Equipment subject to such Lease is returned pursuant to Paragraph 16 of this MLA.

25. CONSTRUCTION. This MLA shall be governed by and construed in accordance with the internal laws, but not the choice of laws provisions, of the State of California. The titles of the sections of this MLA are for convenience only and shall not define or limit any of the terms or provisions hereof. Time is of the essence in each of the provisions hereof.

26. PARTIES. This MLA shall be binding upon, and inure to the benefit of, the permitted assigns, representatives and successors of the Lessor and Lessee. If there is more than one Lessee named in this MLA, the liability of each shall be joint and several.

27. COUNTERPARTS. Each Lease may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute but one and the same instrument.

28. OVERDUE CHARGE. Overdue Charge shall mean an amount equal to 2% per month of any payment under a Lease which is past due, including, without limitation, any amounts not included in any payment of Rent hereunder, or the highest charge permitted by law, whichever is lower.

The person executing this MLA on behalf of Lessee hereby certifies that he or she has read, and is duly authorized to execute, this MLA.

Accepted by:
Extreme Networks® Credit Corporation

LESSEE:  Broadband Office, Inc.

BY: _Jerre E. Hartigan_

BY: _(signature)_

NAME: _Jerre E. Hartigan_

NAME: _Perry G. Fab_
                      Print

TITLE: _CFO_

TITLE: _Director of Finance & Controller_

DATE: _3/7/00_

DATE: _3/9/00_

# LEASE SCHEDULE NO. __01__

This Schedule and its supplements incorporate by this reference the terms and conditions of the Master Lease Agreement, Number __X163__, between

Extreme Networks® Credit Corporation (Lessor) and __Broadband Office, Inc._____ (Lessee).

1. Supplier: __Extreme Networks__

2. Location of Equipment: __Broadband Office, Inc. 2070 Chain Bridge Road, Suite 350, Vienna, VA 22182__.

3. Equipment Value: $ __349,416.75__ (exclusive of sales and/or use taxes).

4. Lease Term: The Lease Term of the Equipment described in this Schedule shall begin on the Rent Commencement Date referenced below in Paragraph 6 and its expiration date shall be __18__ months after such Rent Commencement Date.

5. Rent: $ __20,482.81__ per month (exclusive of sales and/or use taxes) due and payable at the Rent Commencement Date and on the same date of each succeeding month of the Lease Term. The advance Rent payment shall be $ __40,965.62__. This amount includes $ __20,482.81__ for the first month, and $ __20,482.81__ for the last __1__ month(s), of the Lease Term.

6. Rent Commencement Date: __February 28 19 2000__

7. Purchase Option:

   Lessee shall have the option to purchase the Equipment for its fair market value for continued use ("FMV"), on the expiration of this Lease or any renewal term, provided Lessee is not in default of any of its obligations under this Lease on such expiration date. This purchase option may only be exercised by Lessee's written notice to Lessor not earlier than 180 days, nor later than 90 days, prior to the end of the Lease Term or any renewal term. The purchase price for such Equipment shall be payable upon the expiration date of such term. FMV shall be equal to the value of the Equipment installed and in use, with consideration given to the age, condition, utility and replacement costs for the Equipment. In the event that Lessor and Lessee are unable to agree upon the purchase price for the Equipment, such purchase price will be determined by an independent appraiser to be selected by Lessor. Lessee shall be responsible for all applicable sales and/or use taxes on the Equipment. Upon exercise of this purchase option and payment of the purchase price, Lessor shall execute and deliver to Lessee such documents as Lessee may reasonably request in order to vest in Lessee all right, title and interest in the Equipment.

8. Renewal Option:

   Lessee shall have the option to renew this Lease, on the expiration date of this Lease or any renewal term, for the fair market rental for the continued use of the Equipment ("FMR") and on such other terms as may be agreed upon by Lessor and Lessee prior to such expiration date, provided Lessee is not in default of any of its obligations under this Lease on such expiration date. This renewal option may only be exercised by Lessee's written notice to Lessor not earlier than 180 days, nor later than 90 days, prior to the end of the Lease Term or any renewal term. FMR shall be equal to the value of the monthly rental of the Equipment installed and in use, with consideration given to the age, condition, utility and replacement costs for the Equipment, for the renewal term.

9. Tax Benefits:

   Lessee understands that Lessor intends to claim the "Tax Benefits", consisting of the maximum Modified Accelerated Cost Recovery System deductions for the minimum useful life applicable to each item of Equipment, as provided by Sections 168(b) and (c) of the Internal Revenue Code of 1986, and analogous benefits under state law, with respect to the Equipment. Lessee represents and warrants that: (i) Equipment has not been, is not now, and during the term of this Lease will not become, and will not allow the Equipment to be used by or leased to, a tax-exempt entity or government agency; and (ii) Lessee is not now, and during the term of this Lease will not become, a public utility. Without limitation by the preceding sentence, Lessee agrees not to take any action, fail to take any action, or misstate any fact which may result in any loss to Lessor of the Tax Benefits.

   Lessee agrees to pay promptly to Lessor an amount which will fully compensate Lessor, on an after-tax basis, for any loss of the Tax Benefits, plus interest, penalties and additions to tax, any loss in time value of the Tax Benefits, and any taxes imposed on any such compensation payment, resulting from Lessee's acts, omissions or misstatements, including, without limitation, with respect to the representations and warranties in the preceding paragraph. A loss of Tax Benefits occurs at the earliest of: (i) the happening of any event causing the loss; (ii) payment by Lessor of any additional tax resulting from the loss; or (iii) any adjustment to the tax return of Lessor. Lessor's right to recovery of a loss of Tax Benefits shall survive the expiration or termination of this Lease.

10. Description of Equipment:

    See Schedule A which is attached hereto and made a part hereof by this reference.

The person executing this Schedule on behalf of Lessee Hereby certifies that he or she has read, and is duly authorized to execute, this Schedule

Accepted by: Extreme Networks® Credit Corporation

BY: _____

NAME: __James E. Hutigan__ Print

TITLE: __CFO__

DATE: __3/9/00__

LESSEE: __Broadband Office, Inc.__

BY: _____

NAME: __PERRY G. FABI__ Print

TITLE: __DIRECTOR OF FINANCE & CONTROLLER__

DATE: __3/9/00__

# ADDENDUM

This Addendum is to Schedule No. 01 (the "Schedule") to Master Lease Agreement No. X163, by and between Extreme Networks Credit Corporation ("Lessor") and Broadband Office, Inc. ("Lessee").

Paragraph (7) – In Paragraph (7) of the Lease Schedule, the following in replaced:

The words "its fair market value for continued use ("FMV") in the first line of Paragraph (7) are deleted and replaced with the following: "(20)% of the Equipment Value not to exceed the Fair Market Value ("FMV").

Except as modified by this Addendum, the terms and conditions of the Schedule shall remain in full force and effect.

Accepted by:

| Extreme Networks Credit Corporation | Lessee: Broadband Office, Inc. |
|---|---|
| By: _(signature)_ | By: _(signature)_ |
| Name: _James E. Hutchins_ | Name: _Perry G. Fabi_ |
| Title: _CFO_ | Title: _Director of Finance & Controller_ |
| Date: _3/9/00_ | Date: _3/9/00_ |



February 9, 2000

Mr. Brian Blair
Broadband Office, Inc.
2070 Chain Bridge Road, Suite 350
Vienna, VA  22182

Re:  Master Lease Agreement No. X163, Schedule No. 01

Dear Mr. Blair:

Please sign below your agreement and acknowledgment that the Rent Commencement date on the above referenced Schedule to Master Lease Agreement No. X163 will be

_Feb. 28 2000_

This date supersedes section 3 of the Master Lease Agreement.

Except as modified by this letter, the terms and conditions of the Lease Schedule and Master Lease Agreement shall remain in full force and effect.

Don't hesitate to call with any questions you may have.

Cordially,

Extreme Networks® Credit Corporation

*Richard Salhany V.P.*
Richard Salhany


Agreed and Acknowledged by:

Broadband Office, Inc.

By: _X_____

Name: _Brian Blair_

Title: _Manager Purchasing + Contracts_

Date: _3/10/00_





## SCHEDULE A

2070 Chain-Bridge Road, Suite 350                     MLA#  X163
Vienna, VA  22182                                     Schedule #01

| Serial Number | Description | Quantity | Unit Price | Total Price |
|---|---|---|---|---|
| 14001 | SUMMIT4-10/100TX | 21 | 6,997.50 | 146,947.50 |
| 11703 | S7i 1000BSX 4 GBIC | 5 | 15,672.25 | 78,361.25 |
| 15001 | SUMMIT48-BASIC LAYE | 20 | 3,677.70 | 73,554.00 |
| 13011 | SUMMIT24-BASIC LAYE | 20 | 2,527.70 | 50,554.00 |

**TOTAL COST:**          **$349,416.75**

3585 Monroe Street, Santa Clara, CA 95051
Phone 408.579.2800   Fax 408.579.3000
http://www.extremenetworks.com

PRINT OR TYPE ALL INFORMATION

THE SECURED PARTY DESIRES THIS FINANCING STATEMENT TO BE INDEXED AGAINST THE RECORD OWNER
OF THE REAL ESTATE   NO ( )   YES ( )   NAME OF RECORD OWNER_____

STATE CORPORATION COMMISSION
(Uniform Commercial Code Division, Box 1197, Richmond, Virginia 23209)
FORM FOR ORIGINAL FINANCING STATEMENT AND SUBSEQUENT STATEMENTS

The Commission stamps the File Number on the Original Financing Statement. The secured
party must place this same number on all subsequent statements.

Index numbers of subsequent statements  (For office use only)

| Name & mailing address of all debtors, trade styles, etc. No other name will be indexed. | Check the box indicating the kind of statement. Check only one box. |
|---|---|
| Broadband Office, Inc.<br>2070 Chain Bridge Road<br>Vienna, VA 22162 | (X)  ORIGINAL FINANCING STATEMENT<br><br>( )  CONTINUATION-ORIGINAL STILL EFFECTIVE<br><br>( )  AMENDMENT<br><br>( )  ASSIGNMENT<br><br>( )  PARTIAL RELEASE OF COLLATERAL<br><br>( )  TERMINATION |

00-004299

| Name & address of Secured Party<br>Extreme Networks® Credit Corporation<br>3585 Monroe Street<br>Santa Clara, CA 95051 | Name & address of Assignee<br>Leasetec Corporation<br>1000 South McCaslin Blvd<br>Superior, CO 80027 |
|---|---|

| Date of maturity if less than five years | Check if proceeds of collateral are covered  ( ) |
|---|---|

Description of collateral covered by original financing statement

MLA# X163-01
See attached (VA,  Fairfax)

TCC# 620  X163-01

00 APR 27 AM 8:29

Space to record an amendment, assignment, release of collateral or a statement to cover collateral brought into Virginia
from another jurisdiction.

Describe Real Estate if applicable:

| Broadband Office, Inc.<br>X _____ 3/9/00<br>Signature of Debtor if applicable (Date) | Extreme Networks® Credit Corporation<br>_____<br>Signature of Secured Party if applicable (Date) |
|---|---|

FILING OFFICER COPY - ACKNOWLEDGEMENT                    Revised 7.1.82

PRINT OR TYPE ALL INFORMATION

THE SECURED PARTY DESIRES THIS FINANCING STATEMENT TO BE INDEXED AGAINST THE RECORD OWNER
OF THE REAL ESTATE  NO ( )  YES ( )   NAME OF RECORD OWNER_____

**STATE CORPORATION COMMISSION**
(Uniform Commercial Code Division, Box 1197, Richmond, Virginia 23209)
FORM FOR ORIGINAL FINANCING STATEMENT AND SUBSEQUENT STATEMENTS

| The Commission stamps the File Number on the Original Financing Statement. The secured party must place this same number on all subsequent statements. | |
|---|---|
| Index numbers of subsequent statements (For office use only) | 000417 7259 |

| Name & mailing address of all debtors, trade styles, etc. No other name will be indexed. | Check the box indicating the kind of statement. Check only one box. |
|---|---|
| Broadband Office, Inc.<br>2070 Chain Bridge Road, Suite 350<br>Vienna, VA 22162 | (X)  ORIGINAL FINANCING STATEMENT<br><br>( )  CONTINUATION-ORIGINAL STILL EFFECTIVE<br><br>( )  AMENDMENT<br><br>( )  ASSIGNMENT<br><br>( )  PARTIAL RELEASE OF COLLATERAL<br><br>( )  TERMINATION |

| Name & address of Secured Party | Name & address of Assignee |
|---|---|
| Extreme Networks® Credit Corporation<br>3585 Monroe Street<br>Santa Clara, CA 95051 | Leasetec Corporation<br>1000 South McCaslin Blvd<br>Superior, CO.  80027 |
| Date of maturity if less than five years | Check if proceeds of collateral are covered  ( ) |

Description of collateral covered by original financing statement

MLA# X163-01
See attached  **(VA)**

                                                    TCC#620   X163-01

Space to record an amendment, assignment, release of collateral or a statement to cover collateral brought into Virginia from another jurisdiction.


Describe Real Estate if applicable:


Broadband Office, Inc.                          Extreme Networks® Credit Corporation

# LEASE SCHEDULE NO. __02__

This Schedule and its supplements incorporate by this reference the terms and conditions of the Master Lease Agreement, Number __X163__ , between

Extreme Networks® Credit Corporation (Lessor) and __Broadband Office, Inc._____ (Lessee).

1.  Supplier: __Extreme Networks_____

2.  Location of Equipment: __2070 Chain Bridge Road, Suite 350, Vienna, VA 22182_____

3.  Equipment Value: $ ____758,572.50_____ (exclusive of sales and/or use taxes).

4.  Lease Term: The Lease Term of the Equipment described in this Schedule shall begin on the Rent Commencement Date referenced below in Paragraph 6
    and its expiration date shall be _____18_____ months after such Rent Commencement Date.

5.  Rent: $ __44,467.52__ per month (exclusive of sales and/or use taxes) due and payable at the Rent Commencement Date and on the same date of each
    succeeding month of the Lease Term. The advance Rent payment shall be $ ____88,935.04____ . This amount includes $ __44,467.52__ for the first
    month, and $ ____44,467.52____ for the last ___1___ month(s), of the Lease Term.

6.  Rent Commencement Date: _____, 20_____.

7.  Purchase Option:

    Lessee shall have the option to purchase the Equipment for its fair market value for continued use ("FMV"), on the expiration of this Lease or any renewal term,
    provided Lessee is not in default of any of its obligations under this Lease on such expiration date. This purchase option may only be exercised by Lessee's
    written notice to Lessor not earlier than 180 days, nor later than 90 days, prior to the end of the Lease Term or any renewal term. The purchase price for such
    Equipment shall be payable upon the expiration date of such term. FMV shall be equal to the value of the Equipment installed and in use, with consideration given
    to the age, condition, utility and replacement costs for the Equipment. In the event that Lessor and Lessee are unable to agree upon the purchase price for the
    Equipment, such purchase price will be determined by an independent appraiser to be selected by Lessor. Lessee shall be responsible for all applicable sales
    and/or use taxes on the Equipment. Upon exercise of this purchase option and payment of the purchase price, Lessor shall execute and deliver to Lessee such
    documents as Lessee may reasonably request in order to vest in Lessee all right, title and interest in the Equipment.

8.  Renewal Option:

    Lessee shall have the option to renew this Lease, on the expiration date of this Lease or any renewal term, for the fair market rental for the continued use of the
    Equipment ("FMR") and on such other terms as may be agreed upon by Lessor and Lessee prior to such expiration date, provided Lessee is not in default of any of
    its obligations under this lease on such expiration date. This renewal option may only be exercised by Lessee's written notice to Lessor not earlier than 180 days,
    nor later than 90 days, prior to the end of the Lease Term or any renewal term. FMR shall be equal to the value of the monthly rental of the Equipment installed
    and in use, with consideration given to the age, condition, utility and replacement costs for the Equipment, for the renewal term.

9.  Tax Benefits:

    Lessee understands that Lessor intends to claim the "Tax Benefits", consisting of the maximum Modified Accelerated Cost Recovery System deductions for the
    minimum useful life applicable to each item of Equipment, as provided by Sections 168(b) and (c) of the Internal Revenue Code of 1986, and analogous benefits
    under state law, with respect to the Equipment. Lessee represents and warrants that: (i) Lessee has not been, is not now, and during the term of this Lease will
    not become, and will not allow the Equipment to be used by or leased to, a tax-exempt entity or government agency; and (ii) Lessee is not now, and during the
    term of this Lease will not become, a public utility. Without limitation by the preceding sentence, Lessee agrees not to take any action, fail to take any action, or
    misstate any fact which may result in any loss to Lessor of the Tax Benefits.

    Lessee agrees to pay promptly to Lessor an amount which will fully compensate Lessor, on an after-tax basis, for any loss of the Tax Benefits, plus interest,
    penalties and additions to tax, any loss in time value of the Tax Benefits, and any taxes imposed on any such compensation payment, resulting from Lessee's acts,
    omissions or misstatements, including, without limitation, with respect to the representations and warranties in the preceding paragraph. A loss of Tax Benefits
    occurs at the earliest of: (i) the happening of any event causing the loss; (ii) payment by Lessor of any additional tax resulting from the loss; or (iii) any adjustment
    to the tax return of Lessor. Lessor's right to recovery of a loss of Tax Benefits shall survive the expiration or termination of this Lease.

10. Description of Equipment:

    See Schedule A which is attached hereto and made a part hereof by this reference.

The person executing this Schedule on behalf of Lessee Hereby certifies that he or she has read, and is duly authorized to execute, this Schedule

Accepted by: Extreme Networks® Credit Corporation          LESSEE: __Broadband Office, Inc._____

BY: _____                        BY: _____

NAME: __James E. Hartigan__                                 NAME: __Perry Fabi__
         Print                                                        Print

TITLE: ____CFO____                                          TITLE: __Director of Finance & Controller__

DATE: __3/17/00__                                           DATE: __3/17/00__

# ADDENDUM

This Addendum is to Schedule No. 02 (the "Schedule") to Master Lease Agreement No. X163, by and between Extreme Networks Credit Corporation ("Lessor") and Broadband Office, Inc. ("Lessee").

Paragraph 7 – In Paragraph 7 of the Lease Schedule, the following in replaced:

 The words "its fair market value for continued use ("FMV") in the first line of Paragraph 7 are deleted and replaced with the following:  "20% of the Equipment Value not to exceed the Fair Market Value ("FMV").

Except as modified by this Addendum, the terms and conditions of the Schedule shall remain in full force and effect.

Accepted by:

Extreme Networks Credit Corporation

By: _Jens E. Hartwig_

Name: _Jens E. Hartwig_

Title: _CFO_

Date: _3/17/00_

Lessee: Broadband Office, Inc.

By: X _P Fah._

Name: _PERRY FAOI_

Title: _DIRECTOR OF FINANCE & CONTROLLER_

Date: _3/17/00_





## SCHEDULE A

Broadband Office, Inc.                                    MLA#    X163
2070 Chain Bridge Road, Suite 350                         Schedule #  02
Vienna, VA  22182

| Serial Number | Description | Quantity | Unit Price | Total Price |
|---|---|---|---|---|
| 14001 | SUMMIT4-10/100TX | 71 | 6,997.50 | 496,822.50 |
| 15010 | 48 10/100 TX, NO GBIC | 18 | 2,997.50 | 53,955.00 |
| 15001 | SUMMIT48-BASIC LAYE | 30 | 3,997.50 | 119,925.00 |
| 13011 | SUMMIT24-BASIC LAYE | 30 | 2,747.50 | 82,425.00 |
| 10011 | SX GBIC MODULE | 20 | 272.25 | 5,445.00 |

**TOTAL COST:**          **$758,572.50**

3585 Monroe Street, Santa Clara, CA 95051
Phone 408.579.2800    Fax 408.579.3000
http://www.extremenetworks.com



March 16, 2000

Mr. Perry Fabi
Broadband Office, Inc.
2070 Chain Bridge Road, Suite 350
Vienna, VA  22182

RE:  Master Lease Agreement No. X163, Schedule No. 02

Dear Mr. Fabi:

We have attached a copy of the Shipping Document or Suppliers Invoice evidencing the Ship Date of       March 13, 2000 as provided under Section 2 of the above referenced Master Lease Agreement.  Accordingly, your lease payments for the above referenced schedule shall commence on April 11, 2000.

Our billing department will send out invoices shortly reflecting payments due.  Please remit all other payments to the address at the top of this letter or to the address on the invoices, which our billing department will send out.

Regards,

EXTREME NETWORKS® CREDIT CORPORATION

Richard Salhany

cc: Billing Department

3585 Monroe Street, Santa Clara, CA 95051
Phone 408.579.2800   Fax 408.579.3000
http://www.extremenetworks.com

*2423184 CC VA FAIRFAX*

#13

## PRINT OR TYPE ALL INFORMATION

THE SECURED PARTY DESIRES THIS FINANCING STATEMENT TO BE INDEXED AGAINST THE RECORD OWNER OF THE REAL ESTATE   NO ( )   YES ( )   NAME OF RECORD OWNER _____

### STATE CORPORATION COMMISSION
(Uniform Commercial Code Division, Box 1197, Richmond, Virginia 23209)
FORM FOR ORIGINAL FINANCING STATEMENT AND SUBSEQUENT STATEMENTS

0 0 1 0 9 0 3 3

| The Commission stamps the File Number on the Original Financing Statement. The secured party must place this same number on all subsequent statements. | |
|---|---|

Index numbers of subsequent statements  (For office use only)

| Name & mailing address of all debtors, trade styles, etc. No other name will be indexed. | Check the box indicating the kind of statement. Check only one box. |
|---|---|
| Broadband Office, Inc. 2070 Chain Bridge Road, Suite 350 Vienna, CA 22182 | (X)  ORIGINAL FINANCING STATEMENT<br><br>( )  CONTINUATION-ORIGINAL STILL EFFECTIVE<br><br>( )  AMENDMENT<br><br>( )  ASSIGNMENT<br><br>( )  PARTIAL RELEASE OF COLLATERAL<br><br>( )  TERMINATION |
| Name & address of Secured Party<br><br>Extreme Networks ® Credit Corporation 3583 Monroe XXXX Street Santa Clara, CA 95051 | Name & address of Assignee<br><br>Leasetec Corporation 1000 South McCaslin Blvd Superior, CO. 80027 |
| Date of maturity if less than five years | Check if proceeds of collateral are covered ( ) |

Description of collateral covered by original financing statement

MLA# X163-02    **(Fairfax, VA)**
See attached

TCC 627    X163-02

Space to record an amendment, assignment, release of collateral or a statement to cover collateral brought into Virginia from another jurisdiction.

Describe Real Estate if applicable:

RETURN ACK. TO:
UCC DIRECT SERVICES
P.O. BOX 29071
GLENDALE, CA 91209-9071

Broadband Office, Inc.                    Extreme Networks® Credit XX Corporation

X _____  3/17/00            _____

Signature of Debtor if applicable (Date)       Signature of Secured Party if applicable (Date)



23184    SS VA

### PRINT OR TYPE ALL INFORMATION

THE SECURED PARTY DESIRES THIS FINANCING STATEMENT TO BE INDEXED AGAINST THE RECORD OWNER
OF THE REAL ESTATE  NO ( )  YES ( )   NAME OF RECORD OWNER_____

### STATE CORPORATION COMMISSION
**(Uniform Commercial Code Division, Box 1197, Richmond, Virginia 23209)**
**FORM FOR ORIGINAL FINANCING STATEMENT AND SUBSEQUENT STATEMENTS**

| The Commission stamps the File Number on the Original Financing Statement. The secured party must place this same number on all subsequent statements. | |
|---|---|

Index numbers of subsequent statements  (For office use only)    **000612 7390**

| Name & mailing address of all debtors, trade styles, etc. **No other name will be indexed.** #13 | Check the box indicating the kind of statement. Check only one box. |
|---|---|
| Broadband Office, Inc.<br>2070 Chain Bridge Road, Suite 350<br>Vienna, VA 22182 | (X)  ORIGINAL FINANCING STATEMENT<br><br>( )  CONTINUATION-ORIGINAL STILL EFFECTIVE<br><br>( )  AMENDMENT<br><br>( )  ASSIGNMENT<br><br>( )  PARTIAL RELEASE OF COLLATERAL<br><br>( )  TERMINATION |
| Name & address of Secured Party<br><br>Extreme Networks® Credit Corporation<br>3583 Monroe Street<br>Santa Clara, CA 95051 | Name & address of Assignee<br><br>Leasetec Corporation<br>1000 South McCaslin Blvd<br>Superior, CO. 80027 |
| Date of maturity if less than five years | Check if proceeds of collateral are covered  ( ) |

Description of collateral covered by original financing statement
MLA# X163-02     **(VA)**
See attached

TCC 627  X163-02

TCC - CLERK'S OFFICE

Space to record an amendment, assignment, release of collateral or a statement to cover collateral brought into Virginia from another jurisdiction.

Describe Real Estate if applicable:

RETURN ACK. TO:
UCC DIRECT SERVICES
P.O. BOX 29071
GLENDALE, CA 91209-9071

Broadband Office, Inc.                    Extreme Networks® Credit Corporation

X _____ 3/17/00            _____
Signature of Debtor if applicable (Date)     Signature of Secured Party if applicable (Date)

# LEASE SCHEDULE NO. ___03___

This Schedule and its supplements incorporate by this reference the terms and conditions of the Master Lease Agreement, Number __X163__, between

Extreme Networks® Credit Corporation (Lessor) and __Broadband Office, Inc._____ (Lessee).

1.  Supplier: __Extreme Networks_____.

2.  Location of Equipment: __2070 Chain Bridge Road, Suite 350, Vienna, VA 22182_____.

3.  Equipment Value: $ ___1,381,584.00_____ (exclusive of sales and/or use taxes).

4.  Lease Term: The Lease Term of the Equipment described in this Schedule shall begin on the Rent Commencement Date referenced below in Paragraph 6 and its expiration date shall be __18__ months after such Rent Commencement Date.

5.  Rent: $ __80,988.45__ per month (exclusive of sales and/or use taxes) due and payable at the Rent Commencement Date and on the same date of each succeeding month of the Lease Term. The advance Rent payment shall be $ __161,976.90__. This amount includes $ __80,988.45__ for the first month, and $ __80,988.45__ for the last __1__ month(s), of the Lease Term.

6.  Rent Commencement Date: _____, 19_____.

7.  Purchase Option:

    Lessee shall have the option to purchase the Equipment for its fair market value for continued use ("FMV"), on the expiration of this Lease or any renewal term, provided Lessee is not in default of any of its obligations under this Lease on such expiration date. This purchase option may only be exercised by Lessee's written notice to Lessor not earlier than 180 days, nor later than 90 days, prior to the end of the Lease Term or any renewal term. The purchase price for such Equipment shall be payable upon the expiration date of such term. FMV shall be equal to the value of the Equipment installed and in use, with consideration given to the age, condition, utility and replacement costs for the Equipment. In the event that Lessor and Lessee are unable to agree upon the purchase price for the Equipment, such purchase price will be determined by an independent appraiser to be selected by Lessor. Lessee shall be responsible for all applicable sales and/or use taxes on the Equipment. Upon exercise of this purchase option and payment of the purchase price, Lessor shall execute and deliver to Lessee such documents as Lessee may reasonably request in order to vest in Lessee all right, title and interest in the Equipment.

8.  Renewal Option:

    Lessee shall have the option to renew this Lease, on the expiration date of this Lease or any renewal term, for the fair market rental for the continued use of the Equipment ("FMR") and on such other terms as may be agreed upon by Lessor and Lessee prior to such expiration date, provided Lessee is not in default of any of its obligations under this lease on such expiration date. This renewal option may only be exercised by Lessee's written notice to Lessor not earlier than 180 days, nor later than 90 days, prior to the end of the Lease Term or any renewal term. FMR shall be equal to the value of the monthly rental of the Equipment installed and in use, with consideration given to the age, condition, utility and replacement costs for the Equipment, for the renewal term.

9.  Tax Benefits:

    Lessee understands that Lessor intends to claim the "Tax Benefits", consisting of the maximum Modified Accelerated Cost Recovery System deductions for the minimum useful life applicable to each item of Equipment, as provided by Sections 168(b) and (c) of the Internal Revenue Code of 1986, and analogous benefits under state law, with respect to the Equipment. Lessee represents and warrants that: (i) Lessee has not been, is not now, and during the term of this Lease will not become, and will not allow the Equipment to be used by or leased to, a tax-exempt entity or government agency; and (ii) Lessee is not now, and during the term of this Lease will not become, a public utility. Without limitation by the preceding sentence, Lessee agrees not to take any action, fail to take any action, or misstate any fact which may result in any loss to Lessor of the Tax Benefits.

    Lessee agrees to pay promptly to Lessor an amount which will fully compensate Lessor, on an after-tax basis, for any loss of the Tax Benefits, plus interest, penalties and additions to tax, any loss in time value of the Tax Benefits, and any taxes imposed on any such compensation payment, resulting from Lessee's acts, omissions or misstatements, including, without limitation, with respect to the representations and warranties in the preceding paragraph. A loss of Tax Benefits occurs at the earliest of: (i) the happening of any event causing the loss; (ii) payment by Lessor of any additional tax resulting from the loss; or (iii) any adjustment to the tax return of Lessor. Lessor's right to recovery of a loss of Tax Benefits shall survive the expiration or termination of this Lease.

10.  Description of Equipment:

     See Schedule A which is attached hereto and made a part hereof by this reference.

The person executing this Schedule on behalf of Lessee Hereby certifies that he or she has read, and is duly authorized to execute, this Schedule

Accepted by: Extreme Networks® Credit Corporation        LESSEE: Broadband Office, Inc.

BY: _James E Hartigan_____          BY: _____

NAME: _James E Hartigan_____         NAME: __Perry Fabi_____
            Print                                           Print

TITLE: ____CFO_____           TITLE: __Director of Finance & Controller__

DATE: ___3/28/00_____            DATE: ___8/24/00_____

# ADDENDUM

This Addendum is to Schedule No. 03 (the "Schedule") to Master Lease Agreement No. X163, by and between Extreme Networks Credit Corporation ("Lessor") and Broadband Office, Inc. ("Lessee").

Paragraph (x) – In Paragraph (x) of the Lease Schedule, the following in replaced:

The words "its fair market value for continued use ("FMV") in the first line of Paragraph **7** (**x**) are deleted and replaced with the following: "20% of the Equipment Value not to exceed the Fair Market Value ("FMV")".

Except as modified by this Addendum, the terms and conditions of the Schedule shall remain in full force and effect.

Accepted by:

| Extreme Networks ® Credit Corporation | Lessee: Broadband Office, Inc. |
|---|---|
| By: _James F Hartigan_ | By: _____ |
| Name: _James E. Hartigan_ | Name: _Peter Fabi_ |
| Title: _CFO_ | Title: _Director of Finance & Controller_ |
| Date: _3/28/00_ | Date: _3/24/00_ |





### SCHEDULE A

Broadband Office, Inc.                          MLA#      X163
2070 Chain Bridge Road, Suite 350               Schedule#  03
Vienna, VA  22182

| Quantity | Description |
|----------|-------------|
| 70 | Summit4 - 10/100TX |
| 50 | S7F,28 100BSX.4 GBIC |
| 23 | 48 10/100 TX, No GBIC |
| 144 | SX GBIC Module |

**TOTAL COST:**            **$1,381,584.00**

3585 Monroe Street, Santa Clara, CA 95051
Phone 408.579.2800    Fax 408.579.3000
http://www.extremenetworks.com



March 24, 2000

Mr. Peter Fabi
Broadband Office, Inc.
2070 Chain Bridge Road, Suite 350
Vienna, VA 22182

RE: Master Lease Agreement No. X163, Schedule No. 03

Dear Mr. Fabi:

We have attached a copy of the Shipping Document or Suppliers Invoice evidencing the Ship Date of March 22, 2000as provided under Section 2 of the above referenced Master Lease Agreement. Accordingly, your lease payments for the above referenced schedule shall commence on April 20, 2000.

Our billing department will send out invoices shortly reflecting payments due. Please remit all other payments to the address at the top of this letter or to the address on the invoices, which our billing department will send out.

Regards,

EXTREME NETWORKS® CREDIT CORPORATION

Richard Salhany

cc: Billing Department

STATE CORPORATION COMMISSION

FORM FOR FINANCING STATEMENT AND SUBSEQUENT STATEMENTS

000042.72901

ORIGINAL FINANCING STATEMENT

Broadband Office, Inc.
2070 Chain Bridge Road, Suite 350
Vienna VA 22182

Extreme Networks Credit Corporation
475 Sycamore Street
Santa Clara CA 95051

Extreme Corporation
10800 North McCarthy Blvd
Sunnyvale, CA, 90021

See Attached

Broadband Office, Inc.                         Extreme Networks Credit Corporation

RETURN ACK TO:
UCC DIRECT SERVICES
P.O. BOX 29071
GLENDALE CA 91209-9071

FILING OFFICER COPY - ACKNOWLEDGEMENT                    Revised 7-1-82

242 3190   CC VA FAIRFAX

## PRINT OR TYPE ALL INFORMATION

THE SECURED PARTY DESIRES THIS FINANCING STATEMENT TO BE INDEXED AGAINST THE RECORD OWNER
OF THE REAL ESTATE   NO ( )   YES ( )   NAME OF RECORD OWNER _____

## STATE CORPORATION COMMISSION
(Uniform Commercial Code Division, Box 1197, Richmond, Virginia 23209)
### FORM FOR ORIGINAL FINANCING STATEMENT AND SUBSEQUENT STATEMENTS

The Commission stamps the File Number on the Original Financing Statement. The secured
party must place this same number on all subsequent statements.

Index numbers of subsequent statements (For office use only)    # 14c

| Name & mailing address of all debtors, trade styles, etc. No other name will be indexed. | Check the box indicating the kind of statement. Check only one box. |
|---|---|
| | (X)   ORIGINAL FINANCING STATEMENT |
| Broadband Office, Inc. 2970 Chain Bridge Road, Suite 350 Vienna VA 22182 | ( )   CONTINUATION-ORIGINAL STILL EFFECTIV |
| | ( )   AMENDMENT |
| | ( )   ASSIGNMENT |
| | ( )   PARTIAL RELEASE OF COLLATERAL |
| | ( )   TERMINATION |

| Name & address of Secured Party | Name & address of Assignee |
|---|---|
| Extreme Networks Credit Corporation 3585 Monroe Street Santa Clara CA 95051 | Leasetec Corporation 1000 South McCaslin Blvd Superior, CO. 80027 |

| Date of maturity if less than five years | Check if proceeds of collateral are covered ( ) |
|---|---|

Description of collateral covered by original financing statement

MLA# X163 - 03 (Fairfax, VA)
See Attached

TCC 629   X163-03

Space to record an amendment, assignment, release of collateral or a statement to cover collateral brought into Virginia
from another jurisdiction.

Describe Real Estate if applicable:

RETURN ACK TO:
UCC DIRECT SERVICES
P.O. BOX 29071
GLENDALE, CA 91209-9071

| Broadband Office, Inc.   3/24/00 | Extreme Networks Credit Corporation |
|---|---|
| Signature of Debtor if applicable (Date) | Signature of Secured Party if applicable (Date) |

# LEASE SCHEDULE NO. ___04___

This Schedule and its supplements incorporate by this reference the terms and conditions of the Master Lease Agreement, Number __X163__, between

Extreme Networks® Credit Corporation (Lessor) and _Broadband Office, Inc._____ (Lessee).

1. Supplier: __Extreme Networks_____

2. Location of Equipment: ___2070 Chain Bridge Road, Suite 350, Vienna, VA 22182_____

3. Equipment Value: $ ____321,447.50_____ (exclusive of sales and/or use taxes).

4. Lease Term: The Lease Term of the Equipment described in this Schedule shall begin on the Rent Commencement Date referenced below in Paragraph 6
   and its expiration date shall be _____18_____ months after such Rent Commencement Date.

5. Rent: $ _18,843.25__ per month (exclusive of sales and/or use taxes) due and payable at the Rent Commencement Date and on the same date of each
   succeeding month of the Lease Term. The advance Rent payment shall be $ _37,686.50__. This amount includes $ _18,843.25__ for the first
   month, and $ _18,843.25_____ for the last ___1___ month(s), of the Lease Term.

6. Rent Commencement Date: _____, 20 _____.

7. Purchase Option:

   Lessee shall have the option to purchase the Equipment for its fair market value for continued use ("FMV"), on the expiration of this Lease or any renewal term,
   provided Lessee is not in default of any of its obligations under this Lease on such expiration date. This purchase option may only be exercised by Lessee's
   written notice to Lessor not earlier than 180 days, nor later than 90 days, prior to the end of the Lease Term or any renewal term. The purchase price for such
   Equipment shall be payable upon the expiration date of such term. FMV shall be equal to the value of the Equipment installed and in use, with consideration given
   to the age, condition, utility and replacement costs for the Equipment. In the event that Lessor and Lessee are unable to agree upon the purchase price for the
   Equipment, such purchase price will be determined by an independent appraiser to be selected by Lessor. Lessee shall be responsible for all applicable sales
   and/or use taxes on the Equipment. Upon exercise of this purchase option and payment of the purchase price, Lessor shall execute and deliver to Lessee such
   documents as Lessee may reasonably request in order to vest in Lessee all right, title and interest in the Equipment.

8. Renewal Option:

   Lessee shall have the option to renew this Lease, on the expiration date of this Lease or any renewal term, for the fair market rental for the continued use of the
   Equipment ("FMR") and on such other terms as may be agreed upon by Lessor and Lessee prior to such expiration date, provided Lessee is not in default of any of
   its obligations under this lease on such expiration date. This renewal option may only be exercised by Lessee's written notice to Lessor not earlier than 180 days,
   nor later than 90 days, prior to the end of the Lease Term or any renewal term. FMR shall be equal to the value of the monthly rental of the Equipment installed
   and in use, with consideration given to the age, condition, utility and replacement costs for the Equipment, for the renewal term.

9. Tax Benefits:

   Lessee understands that Lessor intends to claim the "Tax Benefits", consisting of the maximum Modified Accelerated Cost Recovery System deductions for the
   minimum useful life applicable to each item of Equipment, as provided by Sections 168(b) and (c) of the Internal Revenue Code of 1986, and analogous benefits
   under state law, with respect to the Equipment. Lessee represents and warrants that: (i) Lessee has not been, is not now, and during the term of this Lease will
   not become, and will not allow the Equipment to be used by or leased to, a tax-exempt entity or government agency; and (ii) Lessee is not now, and during the
   term of this Lease will not become, a public utility. Without limitation by the preceding sentence, Lessee agrees not to take any action, fail to take any action, or
   misstate any fact which may result in any loss to Lessor of the Tax Benefits.

   Lessee agrees to pay promptly to Lessor an amount which will fully compensate Lessor, on an after-tax basis, for any loss of the Tax Benefits, plus interest,
   penalties and additions to tax, any loss in time value of the Tax Benefits, and any taxes imposed on any such compensation payment, resulting from Lessee's acts,
   omissions or misstatements, including, without limitation, with respect to the representations and warranties in the preceding paragraph. A loss of Tax Benefits
   occurs at the earliest of: (i) the happening of any event causing the loss; (ii) payment by Lessor of any additional tax resulting from the loss; or (iii) any adjustment
   to the tax return of Lessor. Lessor's right to recovery of a loss of Tax Benefits shall survive the expiration or termination of this Lease.

10. Description of Equipment:

    See Schedule A which is attached hereto and made a part hereof by this reference.

The person executing this Schedule on behalf of Lessee Hereby certifies that he or she has read, and is duly authorized to execute, this Schedule

Accepted by: Extreme Networks® Credit Corporation          LESSEE: Broadband Office, Inc.

BY: _James E. Hartigan_____          BY: _____

NAME: _James E. Hartigan_____          NAME: _Perry Fabi_____
                    Print                                              Print

TITLE: ____CFO_____          TITLE: _Director of Finance & Controller_

DATE: __4/4/00_____          DATE: __4/4/00_____

# ADDENDUM

This Addendum is to Schedule No. 04 (the "Schedule") to Master Lease Agreement No. X163, by and between Extreme Networks Credit Corporation ("Lessor") and Broadband Office, Inc. ("Lessee").

Paragraph 7 – In Paragraph 7 of the Lease Schedule, the following in replaced:

The words "its fair market value for continued use ("FMV")" in the first line of Paragraph 7 are deleted and replaced with the following:  "20% of the Equipment Value not to exceed the Fair Market Value ("FMV").

Except as modified by this Addendum, the terms and conditions of the Schedule shall remain in full force and effect.

Accepted by:

Extreme Networks® Credit Corporation

By: _James E. Hartigan_

Name: _James E. Hartigan_

Title: _CFO_

Date: _4/4/00_

Lessee: Broadband Office, Inc.

By: _____

Name: _PERRY FAB I_

Title: _DIRECTOR OF FINANCE & CONTROLLER_

Date: _4/4/00_



## SCHEDULE A

Broadband Office, Inc.
2070 Chain Bridge Road, Suite 350
Vienna, VA  22182

MLA#      X163
Schedule #  04

| Quantity | Description |
|----------|-------------|
| 44 | SUMMIT4-10/100TX |
| 2 | BLACKDIAMOND 6800 CHASSIS |
| 3 | BD 6800 A/C POWER SUPPLY |
| 7 | BD 6800 BLANK MODULE |

**TOTAL COST:**          **$321,447.50**

3585 Monroe Street, Santa Clara, CA 95051
Phone 408.579.2800   Fax 408.579.3000
http://www.extremenetworks.com



April 3, 2000

Mr. Perry Fabi
Broadband Office, Inc.
2070 Chain Bridge Road, Suite 350
Vienna, VA 22182

RE: Master Lease Agreement No. X163, Schedule No. 04

Dear Mr. Fabi:

We have attached a copy of the Shipping Document or Suppliers Invoice evidencing the Ship Date of   March 29, 2000 as provided under Section 2 of the above referenced Master Lease Agreement.  Accordingly, your lease payments for the above referenced schedule shall commence on April 29, 2000.

Our billing department will send out invoices shortly reflecting payments due.  Please remit all other payments to the address at the top of this letter or to the address on the invoices, which our billing department will send out.

Regards,

EXTREME NETWORKS® CREDIT CORPORATION

Richard Salhany

cc: Billing Department

3585 Monroe Street, Santa Clara, CA 95051
Phone 408.579.2800   Fax 408.579.3000
http://www.extremenetworks.com

*C.C Fairfax  2422471*

PRINT OR TYPE ALL INFORMATION

THE SECURED PARTY DESIRES THIS FINANCING STATEMENT TO BE INDEXED AGAINST THE RECORD OWNER
OF THE REAL ESTATE   NO ( )   YES ( )    NAME OF RECORD OWNER_____

STATE CORPORATION COMMISSION
(Uniform Commercial Code Division, Box 1197, Richmond, Virginia 23209)
FORM FOR ORIGINAL FINANCING STATEMENT AND SUBSEQUENT STATEMENTS

| The Commission stamps the File Number on the Original Financing Statement. The secured party must place this same number on all subsequent statements. | |
|---|---|

Index numbers of subsequent statements  (For office use only)

| Name & mailing address of all debtors, trade styles, etc. No other name will be indexed. | Check the box indicating the kind of statement. Check only one box. |
|---|---|
| Broadband Office, Inc.<br>2070 Chain ~~XXXXXX~~ Bridge Road, Suite 350<br>Vienna, VA 22182 | (X)  ORIGINAL FINANCING STATEMENT<br><br>( )  CONTINUATION-ORIGINAL STILL EFFECTIVE<br><br>( )  AMENDMENT<br><br>( )  ASSIGNMENT<br><br>( )  PARTIAL RELEASE OF COLLATERAL<br><br>( )  TERMINATION |
| **Name & address of Secured Party**<br><br>Extreme Networks® Credit Corporation<br>3583 Monroe Street<br>Santa Clara, CA 95051 | **Name & address of Assignee**<br><br>Leasetec Corporation<br>1000 McCaslin Blvd.<br>Superior, Colorado<br>80027 |
| Date of maturity if less than five years | Check if proceeds of collateral are covered   ( ) |

Description of collateral covered by original financing statement

MLA# X163-04  (~~XX~~) (FAIRFAX)
See attached

TCC# 631

Space to record an amendment, assignment, release of collateral or a statement to cover collateral brought into Virginia
from another jurisdiction.

Describe Real Estate if applicable:

| Broadband Office, Inc.<br><br>X_____  4/4/00<br>Signature of Debtor if applicable (Date) | Extreme Networks® Credit Corporation<br><br>X_____<br>Signature of Secured Party if applicable (Date) |
|---|---|

RETURN ACK. TO:
UCC DIRECT SERVICES
P.O. BOX 29071
GLENDALE, CA 91209-9071

PRINT OR TYPE ALL INFORMATION

THE SECURED PARTY DESIRES THIS FINANCING STATEMENT TO BE INDEXED AGAINST THE RECORD OWNER
OF THE REAL ESTATE   NO ( )   YES ( )   NAME OF RECORD OWNER _____

STATE CORPORATION COMMISSION
(Uniform Commercial Code Division, Box 1197, Richmond, Virginia 23209)
FORM FOR ORIGINAL FINANCING STATEMENT AND SUBSEQUENT STATEMENTS

| The Commission stamps the File Number on the Original Financing Statement. The secured party must place this same number on all subsequent statements. | |
|---|---|

| Index numbers of subsequent statements  (For office use only) | **000623  7091**    000609  7216 |
|---|---|

| Name & mailing address of all debtors, trade styles, etc. No other name will be indexed. | Check the box indicating the kind of statement. Check only one box. |
|---|---|
| Broadband Office, Inc. 2070 Chain Bridge Road, Suite 350 Vienna, VA 22182 | ( )   ORIGINAL FINANCING STATEMENT ( )   CONTINUATION-ORIGINAL STILL EFFECTIVE ( )   AMENDMENT ( )   ASSIGNMENT ( )   PARTIAL RELEASE OF COLLATERAL ( )   TERMINATION |

| Name & address of Secured Party | Name & address of Assignee |
|---|---|
| Extreme Networks® Credit Corporation 3585 Monroe Street Santa XXX Clara, CA 95051 | Leasetec Corporation 1000 McCaslin Blvd. Superior, COlorado 80027 |

| Date of maturity if less than five years | Check if proceeds of collateral are covered  ( ) |
|---|---|

Description of collateral covered by original financing statement

MLA# X163-04
See attached   **(VA)**

TCC#631

Space to record an amendment, assignment, release of collateral or a statement to cover collateral brought into Virginia from another jurisdiction.

Describe Real Estate if applicable:

| Broadband Office, Inc. | Extreme Networks® Credit Corporation |
|---|---|
| X _____ 4/4/00 | X _____ |
| Signature of Debtor if applicable (Date) | Signature of Secured Party if applicable (Date) |

RETURN ACK. TO:
UCC DIRECT SERVICES
P.O. BOX 29071
GLENDALE, CA 91209-9071

# LEASE SCHEDULE NO. __05__

This Schedule and its supplements incorporate by this reference the terms and conditions of the Master Lease Agreement, Number __X163__ , between

Extreme Networks® Credit Corporation (Lessor) and __Broadband Office, Inc.__ _____ (Lessee).

1. Supplier: __Extreme Networks__

2. Location of Equipment: __2070 Chain Bridge Road, Suite 350, Vienna, VA 22182__

3. Equipment Value: $ __1,377,973.00__ (exclusive of sales and/or use taxes).

4. Lease Term: The Lease Term of the Equipment described in this Schedule shall begin on the Rent Commencement Date referenced below in Paragraph 6 and its expiration date shall be __18__ months after such Rent Commencement Date.

5. xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx  See Addendum

6. Rent Commencement Date: _____June 17_____ , 2000

7. Purchase Option:

Lessee shall have the option to purchase the Equipment for its fair market value for continued use ("FMV"), on the expiration of this Lease or any renewal term, provided Lessee is not in default of any of its obligations under this Lease on such expiration date. This purchase option may only be exercised by Lessee's written notice to Lessor not earlier than 180 days, nor later than 90 days, prior to the end of the Lease Term or any renewal term. The purchase price for such Equipment shall be payable upon the expiration date of such term. FMV shall be equal to the value of the Equipment installed and in use, with consideration given to the age, condition, utility and replacement costs for the Equipment. In the event that Lessor and Lessee are unable to agree upon the purchase price for the Equipment, such purchase price will be determined by an independent appraiser to be selected by Lessor. Lessee shall be responsible for all applicable sales and/or use taxes on the Equipment. Upon exercise of this purchase option and payment of the purchase price, Lessor shall execute and deliver to Lessee such documents as Lessee may reasonably request in order to vest in Lessee all right, title and interest in the Equipment.

8. Renewal Option:

Lessee shall have the option to renew this Lease, on the expiration date of this Lease or any renewal term, for the fair market rental for the continued use of the Equipment ("FMR") and on such other terms as may be agreed upon by Lessor and Lessee prior to such expiration date, provided Lessee is not in default of any of its obligations under this lease on such expiration date. This renewal option may only be exercised by Lessee's written notice to Lessor not earlier than 180 days, nor later than 90 days, prior to the end of the Lease Term or any renewal term. FMR shall be equal to the value of the monthly rental of the Equipment installed and in use, with consideration given to the age, condition, utility and replacement costs for the Equipment, for the renewal term.

9. Tax Benefits:

Lessee understands that Lessor intends to claim the "Tax Benefits", consisting of the maximum Modified Accelerated Cost Recovery System deductions for the minimum useful life applicable to each item of Equipment, as provided by Sections 168(b) and (c) of the Internal Revenue Code of 1986, and analogous benefits under state law, with respect to the Equipment. Lessee represents and warrants that: (i) Lessee has not been, is not now, and during the term of this Lease will not become, and will not allow the Equipment to be used by or leased to, a tax-exempt entity or government agency; and (ii) Lessee is not now, and during the term of this Lease will not become, a public utility. Without limitation to the preceding sentence, Lessee agrees not to take any action, fail to take any action, or misstate any fact which may result in any loss to Lessor of the Tax Benefits.

Lessee agrees to pay promptly to Lessor an amount which will fully compensate Lessor, on an after-tax basis, for any loss of the Tax Benefits, plus interest, penalties and additions to tax, any loss in time value of the Tax Benefits, and any taxes imposed on any such compensation payment, resulting from Lessee's acts, omissions or misstatements, including, without limitation, with respect to the representations and warranties in the preceding paragraph. A loss of Tax Benefits occurs at the earliest of: (i) the happening of any event causing the loss; (ii) payment by Lessor of any additional tax resulting from the loss; or (iii) any adjustment to the tax return of Lessor. Lessor's right of recovery of a loss of Tax Benefits shall survive the expiration or termination of this Lease.

10. Description of Equipment:

See Schedule A which is attached hereto and made a part hereof by this reference.

The person executing this Schedule on behalf of Lessee Hereby certifies that he or she has read, and is duly authorized to execute, this Schedule

Accepted by: Extreme Networks® Credit Corporation

BY: _James E. Hartigan_

NAME: _James E. Hartigan_
           Print

TITLE: _CFO_

DATE: _6/27/00_

LESSEE: __Broadband Office, Inc.__

BY: _Perry Fabi_

NAME: _PERRY FABI_
           Print

TITLE: _CONTROLLER_

DATE: _6/27/00_

# ADDENDUM

This Addendum is to Schedule No. 05 (the "Schedule") to Master Lease Agreement No. X163, by and between Extreme Networks Credit Corporation ("Lessor") and Broadband Office, Inc. ("Lessee").

Paragraph **5** - Paragraph **5** is deleted and replaced by the following:

> "Rent:  $\underline{\$413,391.90}$ for the first month (exclusive of sales and/or use taxes), $\underline{\$60,300.10}$ for the next **seventeen** months (exclusive of sales and/or use taxes). The advance rental payment shall be $\underline{\$413,391.90}$.  This amount includes $\underline{\$413,391.90}$ for the first month."

Paragraph **7** – In Paragraph **7** of the Lease Schedule, the following is replaced:

> The words "its fair market value for the continued use ("FMV") in the first line of Paragraph **7** are deleted and replaced with 20% of the Equipment Value not to exceed the Fair Market Value ("FMV").

Except as modified by this Addendum, the terms and conditions of the Schedule shall remain in full force and effect.

Accepted by:

| Extreme Networks Credit Corporation | Lessee: Broadband Office, Inc. |
|---|---|
| By: _James P Hartigan_ | By: _[signature]_ |
| Name: _James E Hartigan_ | Name: _PERRY FABI_ |
| Title: _CFO_ | Title: _CONTROLLER_ |
| Date: _6/27/00_ | Date: _6/27/00_ |



**SCHEDULE A**

Broadband Office, Inc.                                    MLA#      X163
2070 Chain Bridge Road, Suite 350                        Schedule#  05
Vienna, VA  22182

| Quantity | Description |
|----------|-------------|
| 9 | 48 10/100 TX, No GBIC |
| 178 | Summit4 - 10/100TX |
| 3 | BD 48 Port 10/100Base |
| 6 | LX GBIC Module |
| 20 | SX GBIC Module |
| 3 | BD 6800 MSM 64 |
| 7 | BD, G8X Blade Shippin |
| 2 | S7i, 28 100BSX, 4 GBIC |

**TOTAL COST:**              **$1,377,973.00**

3585 Monroe Street, Santa Clara, CA 95051
Phone 408.579.2800   Fax 408.579.3000
http://www.extremenetworks.com



June 23, 2000

Mr. Perry Fabi
Broadband Office, Inc.
2070 Chain Bridge Road, Suite 350
Vienna, VA 22182

RE:  Master Lease Agreement No. X163, Schedule No. 05

Dear Mr. Fabi:

We have attached a copy of the Shipping Document or Suppliers Invoice evidencing the Ship Date of May 19, 2000 as provided under Section 2 of the above referenced Master Lease Agreement.  Accordingly, your lease payments for the above referenced schedule shall commence on June 17, 2000.

Our billing department will send out invoices shortly reflecting payments due.  Please remit all other payments to the address at the top of this letter or to the address on the invoices, which our billing department will send out.

Regards,

EXTREME NETWORKS® CREDIT CORPORATION

*Richard Salhany*

Richard Salhany

cc: Billing Department

3585 Monroe Street, Santa Clara, CA 95051
Phone 408.579.2800    Fax 408.579.3000
http://www.extremenetworks.com

2 4 8 2 3 9 C    CC VA FAIRFAX

PRINT OR TYPE ALL INFORMATION

THE SECURED PARTY DESIRES THIS FINANCING STATEMENT TO BE INDEXED AGAINST THE RECORD OWNER
OF THE REAL ESTATE   NO ( )  YES ( )   NAME OF RECORD OWNER _____

STATE CORPORATION COMMISSION
(Uniform Commercial Code Division, Box 1197, Richmond, Virginia 23209)
FORM FOR ORIGINAL FINANCING STATEMENT AND SUBSEQUENT STATEMENTS

| | |
|---|---|
| The Commission stamps the File Number on the Original Financing Statement. The secured party must place this same number on all subsequent statements. | |

Index numbers of subsequent statements  (For office use only)

| Name & mailing address of all debtors, trade styles, etc. No other name will be indexed. | Check the box indicating the kind of statement. Check only one box. |
|---|---|
| Broadband Office, Inc.<br>2070 Chain Bridge Road, Suite 350<br>Vienna VA 22182 | (X)  ORIGINAL FINANCING STATEMENT<br>( )  CONTINUATION-ORIGINAL STILL EFFECTIVE<br>( )  AMENDMENT<br>( )  ASSIGNMENT<br>( )  PARTIAL RELEASE OF COLLATERAL<br>( )  TERMINATION |
| Name & address of Secured Party<br>Extreme Networks Credit Corporation<br>3585 Monroe Street<br>Santa Clara CA 95051 | Name & address of Assignee<br>Leasetec Corporation<br>1000 South McCaslin Blvd<br>Superior, CO. 80027 |
| Date of maturity if less than five years | Check if proceeds of collateral are covered  ( ) |

Description of collateral covered by original financing statement

MLA# X163 - 05 (VA, Fairfax)
See Attached

TCC 646  X163-05

Space to record an amendment, assignment, release of collateral or a statement to cover collateral brought into Virginia from another jurisdiction.

Describe Real Estate if applicable:

RETURN ACK. TO:
UCC DIRECT SERVICES
P.O. BOX 29071
GLENDALE, CA 91209-9071

Broadband Office, Inc.           Networks Credit Corporation

Perry Fabi
Controller

6/27/0

ature of Debtor if applicable (Date)        Signature of Secured Party if applicable (Date)

2482390  SS VA

PRINT OR TYPE ALL INFORMATION

THE SECURED PARTY DESIRES THIS FINANCING STATEMENT TO BE INDEXED AGAINST THE RECORD OWNER
OF THE REAL ESTATE   NO ( )   YES ( )   NAME OF RECORD OWNER _____

STATE CORPORATION COMMISSION
(Uniform Commercial Code Division, Box 1197, Richmond, Virginia 23209)
FORM FOR ORIGINAL FINANCING STATEMENT AND SUBSEQUENT STATEMENTS

| The Commission stamps the File Number on the Original Financing Statement. The secured party must place this same number on all subsequent statements. | 000725  7075 |
|---|---|

Index numbers of subsequent statements  (For office use only)

| Name & mailing address of all debtors, trade styles, etc. No other name will be indexed. | Check the box indicating the kind of statement. Check only one box. |
|---|---|
| Broadband Office, Inc. 2070 Chain Bridge Road, Suite 350 Vienna VA 22182 | (X)   ORIGINAL FINANCING STATEMENT ( )   CONTINUATION-ORIGINAL STILL EFFECTIVE ( )   AMENDMENT ( )   ASSIGNMENT ( )   PARTIAL RELEASE OF COLLATERAL ( )   TERMINATION |

| Name & address of Secured Party | Name & address of Assignee |
|---|---|
| Extreme Networks Credit Corporation 3585 Monroe Street Santa Clara CA 95051 | Leasetec Corporation 1000 South McCaslin Blvd Superior, CO. 80027 |

| Date of maturity if less than five years | Check if proceeds of collateral are covered  ( ) |
|---|---|

Description of collateral covered by original financing statement

MLA# X163 - 05   (VA)
See Attached

TCC 646  X163-05

Space to record an amendment, assignment, release of collateral or a statement to cover collateral brought into Virginia from another jurisdiction.

Describe Real Estate if applicable:

| Broadband Office, Inc. Perry Fabi Controller | Extreme Networks Credit Corporation |
|---|---|
| 6/27/00 | |
| Signature of Debtor if applicable (Date) | Signature of Secured Party if applicable (Date) |

RETURN ACK. TO:
UCC DIRECT SERVICES

# LEASE SCHEDULE NO. <u>06</u>

This Schedule and its supplements incorporate by this reference the terms and conditions of the Master Lease Agreement, Number <u>X163</u>, between

Extreme Networks® Credit Corporation (Lessor) and <u>Broadband Office, Inc.</u> (Lessee).

1. Supplier: <u>**Extreme Networks**</u>

2. Location of Equipment: <u>See Attachement A</u>

3. Equipment Value: $ <u>2,690,620.00</u> (exclusive of sales and/or use taxes).

4. Lease Term: The Lease Term of the Equipment described in this Schedule shall begin on the Rent Commencement Date referenced below in Paragraph 6
   and its expiration date shall be <u>18</u> months after such Rent Commencement Date.

5. Rent: $ <u>157,724.14</u> per month (exclusive of sales and/or use taxes) due and payable at the Rent Commencement Date and on the same date of each
   succeeding month of the Lease Term. The advance Rent payment shall be $ <u>315,448.29</u>. This amount includes $ <u>157,724.14</u> for the first
   month, and $ <u>157,724.14</u> for the last <u>1</u> month(s), of the Lease Term.

6. Rent Commencement Date: _____, 20 ____.

7. Purchase Option:

   Lessee shall have the option to purchase the Equipment for its fair market value for continued use ("FMV"), on the expiration of this Lease or any renewal term, provided Lessee is not in default of any of its obligations under this Lease on such expiration date. This purchase option may only be exercised by Lessee's written notice to Lessor not earlier than 180 days, nor later than 90 days, prior to the end of the Lease Term or any renewal term. The purchase price for such Equipment shall be payable upon the expiration date of such term. FMV shall be equal to the value of the Equipment installed and in use, with consideration given to the age, condition, utility and replacement costs for the Equipment. In the event that Lessor and Lessee are unable to agree upon the purchase price for the Equipment, such purchase price will be determined by an independent appraiser to be selected by Lessor. Lessee shall be responsible for all applicable sales and/or use taxes on the Equipment. Upon exercise of this purchase option and payment of the purchase price, Lessor shall execute and deliver to Lessee such documents as Lessee may reasonably request in order to vest in Lessee all right, title and interest in the Equipment.

8. Renewal Option:

   Lessee shall have the option to renew this Lease, on the expiration date of this Lease or any renewal term, for the fair market rental for the continued use of the Equipment ("FMR") and on such other terms as may be agreed upon by Lessor and Lessee prior to such expiration date, provided Lessee is not in default of any of its obligations under this lease on such expiration date. This renewal option may only be exercised by Lessee's written notice to Lessor not earlier than 180 days, nor later than 90 days, prior to the end of the Lease Term or any renewal term. FMR shall be equal to the value of the monthly rental of the Equipment installed and in use, with consideration given to the age, condition, utility and replacement costs for the Equipment, for the renewal term.

9. Tax Benefits:

   Lessee understands that Lessor intends to claim the "Tax Benefits", consisting of the maximum Modified Accelerated Cost Recovery System deductions for the minimum useful life applicable to each item of Equipment, as provided by Sections 168(b) and (c) of the Internal Revenue Code of 1986, and analogous benefits under state law, with respect to the Equipment. Lessee represents and warrants that: (i) Lessee has not been, is not now, and during the term of this Lease will not become, and will not allow the Equipment to be used by or leased to, a tax-exempt entity or government agency; and (ii) Lessee is not now, and during the term of this Lease will not become, a public utility. Without limitation by the preceding sentence, Lessee agrees not to take any action, fail to take any action, or misstate any fact which may result in any loss to Lessor of the Tax Benefits.

   Lessee agrees to pay promptly to Lessor an amount which will fully compensate Lessor, on an after-tax basis, for any loss of the Tax Benefits, plus interest, penalties and additions to tax, any loss in time value of the Tax Benefits, and any taxes imposed on any such compensation payment, resulting from Lessee's acts, omissions or misstatements, including, without limitation, with respect to the representations and warranties in the preceding paragraph. A loss of Tax Benefits occurs at the earliest of: (i) the happening of any event causing the loss; (ii) payment by Lessor of any additional tax resulting from the loss; or (iii) any adjustment to the tax return of Lessor. Lessor's right to recovery of a loss of Tax Benefits shall survive the expiration or termination of this Lease.

10. Description of Equipment:

    See Schedule A which is attached hereto and made a part hereof by this reference.

The person executing this Schedule on behalf of Lessee Hereby certifies that he or she has read, and is duly authorized to execute, this Schedule

Accepted by: Extreme Networks® Credit Corporation

BY: _Laurence M Ceul_

NAME: _____
            Print

TITLE: _____

DATE: _____

LESSEE: <u>Broadband Office, Inc.</u>

BY: X _____

NAME: _PERRY FABI_
            Print

TITLE: _DIR, FINANCE + CONTROLLER_

DATE: _7/20/00_

# ADDENDUM

This Addendum is to Schedule No. 06 (the "Schedule") to Master Lease Agreement No. X163, by and between Extreme Networks Credit Corporation ("Lessor") and Broadband Office, Inc. ("Lessee").

Paragraph 7 – In Paragraph 7 of the Lease Schedule, the following in replaced:

The words "its fair market value for continued use ("FMV") in the first line of Paragraph 7 are deleted and replaced with the following: "20% of the Equipment Value not to exceed the Fair Market Value ("FMV").

Except as modified by this Addendum, the terms and conditions of the Schedule shall remain in full force and effect.

Accepted by:

Extreme Networks® Credit Corporation

By:_____

Name:_____

Title:_____

Date:_____

Lessee: Broadband Office, Inc.

By: X _____

Name: PERRY FABI

Title: DIR, FINANCE & CONTROLLER

Date: 7/20/00

Sign
Seal
Tcc

ATTACHMENT A FOR SCHEDULE NO. 06 TO MASTER LEASE AGREEMENT NO. X163

Lessee:    Broadband Office, Inc.
           2070 Chain Bridge Road
           Vienna, VA 22182

| Schedule No. | Equipment Location | | Equipment Value | Lease Rate | REN |
|---|---|---|---|---|---|
| 06-01 | 951 Mariners Island Blvd. San Mateo, CA 94404 | Equipment | $ 10,997.25 | 0.05862 | $ 644.65 |
| 06-02 | 2950 Gallow Road Falls Church, VA 22042 | Equipment | $ 74,648.75 | 0.05862 | $ 4,375.90 |
| 06-03 | 2950 Telestar Ct. Falls Church, VA 22042 | Equipment | $ 1,110,925.00 | 0.05862 | $ 65,122.44 |
| 06-04 | 2070 Chain Bridge Road Vienna, VA 22182 | Equipment | $ 1,494,049.00 | 0.05862 | $ 87,581.15 |
| | Total for Schedule No. 06 | | $ 2,690,620.00 | | $ 157,724.14 |



## SCHEDULE A

Broadband Office, Inc.
951 Mariner's Island Blvd.
San Mateo, CA 94404

MLA# X163
Schedule# 06-01

| Serial Number | Description | Quantity | Unit Price | Total Price |
|---|---|---|---|---|
| 11701 | S7I;28 1000BT,4 GBIC | 1 | 10,997.25 | 10,997.25 |

**TOTAL COST:**        **$10,997.25**

3585 Monroe Street, Santa Clara, CA 95051
Phone 408.579.2800   Fax 408.579.3000
http://www.extremenetworks.com



### SCHEDULE A

Broadband Office, Inc.
2950 Gallow Road
Falls Church, VA 22042

MLA# X163
Schedule# 06-02

| Serial Number | Description | Quantity | Unit Price | Total Price |
|---|---|---|---|---|
| 10013 | LX GBIC MODULE | 20 | 822.25 | 16,445.00 |
| 45080 | ALP3808 CHASSIS | 1 | 7,147.25 | 7,147.25 |
| 45012 | ALP3800 AC PSU | 2 | 1,097.25 | 2,194.50 |
| 45112 | ALP3800 1000B-X MODULE | 3 | 1,372.25 | 4,116.75 |
| 45210 | ALP3800 10/100B-T MOD | 1 | 877.25 | 877.25 |
| 45024 | ALP3800 SMMI | 1 | 8,244.50 | 8,244.50 |
| 11704 | S7I;28 1000BSX, 4 GBIC | 6 | 5,937.25 | 35,623.50 |

**TOTAL COST:**          **$74,648.75**

3585 Monroe Street, Santa Clara, CA 95051
Phone 408.579.2800   Fax 408.579.3000
http://www.extremenetworks.com



## SCHEDULE A

Broadband Office, Inc.
2950 Telestar Ct.
Falls Church, VA 22042

MLA# X163
Schedule# 06-03

| Serial Number | Description | Quantity | Unit Price | Total Price |
|---|---|---|---|---|
| 50015 | BD 6800 MSM 64 | 20 | 5,997.50 | 119,950.00 |
| 10011 | SX GBIC MODULE | 148 | 247.50 | 36,630.00 |
| 50011 | BLACKDIAMOND 6800 CAHSSIS | 37 | 2,997.50 | 110,907.50 |
| 50015 | BD 6800 MSM 64 | 54 | 5,997.50 | 323,865.00 |
| 52011 | BD 48 PORT 10/100BASE | 74 | 4,747.50 | 351,315.00 |
| 51032 | BD, G8X SHIPPING | 37 | 4,497.50 | 166,407.50 |
| 50005 | BD 6800 BLANK MODULE | 185 | 10.00 | 1,850.00 |

**TOTAL COST:**          **$1,110,915.00**

3585 Monroe Street, Santa Clara, CA 95051
Phone 408.579.2800   Fax 408.579.3000
http://www.extremenetworks.com



## SCHEDULE A

Broadband Office, Inc.
2070 Chain Bridge Road
Vienna, VA 22182

MLA#  X163
Schedule# 06-04

| Serial Number | Description | Quantity | Unit Price | Total Price |
|---|---|---|---|---|
| 14001 | SUMMIT4- 10/100TX | 212 | 6,997.50 | 1,483,470.00 |
| 15010 | 48 10/100 TX, NO GBIC | 2 | 2,997.50 | 5,995.00 |
| 13010 | 24 10/100 TX, NO GBIC | 2 | 1,747.50 | 3,495.00 |
| 10011 | SX GBIC MODULE | 4 | 272.25 | 1,089.00 |

**TOTAL COST:**          **$1,494,049.00**

PRINT OR TYPE ALL INFORMATION

THE SECURED PARTY DESIRES THIS FINANCING STATEMENT TO BE INDEXED AGAINST THE RECORD OWNER
OF THE REAL ESTATE   NO ( )   YES ( )   NAME OF RECORD OWNER

STATE CORPORATION COMMISSION
(Uniform Commercial Code Division, Box 1197, Richmond, Virginia 23209)
FORM FOR ORIGINAL FINANCING STATEMENT AND SUBSEQUENT STATEMENTS

The Commission stamps the File Number on the Original Financing Statement. The secured
party must place this same number on all subsequent statements.

**010108  7116**

Name & mailing address of all debtors, trade styles, etc.
No other name will be indexed.

Check the box indicating the kind of statement.
Check only one box.

(X)  ORIGINAL FINANCING STATEMENT
( )  CONTINUATION ORIGINAL STILL EFFECTIVE
( )  AMENDMENT
( )  ASSIGNMENT
( )  PARTIAL RELEASE OF COLLATERAL
( )  TERMINATION

Borphand Office, Inc.
... Suite 350
...

Name & address of secured party

Name & address of Assignee

Description of collateral covered by original financing statement

Space to record an amendment, assignment, release of collateral or a statement to cover collateral brought into Virginia
from another jurisdiction.

Describe Real Estate if applicable:

RETURN AND TO:
UCC DIRECT SERVICES
P.O. BOX 29071
GLENDALE, CA 91209-9071

PRINT OR TYPE ALL INFORMATION

THE SECURED PARTY DESIRES THIS FINANCING STATEMENT TO BE INDEXED AGAINST THE RECORD OWNER OF THE REAL ESTATE  NO ( )  YES ( )  NAME OF RECORD OWNER _____

## STATE CORPORATION COMMISSION
(Uniform Commercial Code Division, Box 1197, Richmond, Virginia 23209)
FORM FOR ORIGINAL FINANCING STATEMENT AND SUBSEQUENT STATEMENTS

The Commission stamps the File Number on the Original Financing Statement. The secured party must place this same number on all subsequent statements.

Index numbers of subsequent statements (For office use only)

Name & mailing address of all debtors, trade styles, etc. No other name will be indexed.

Broadband Office, Inc.
2070 Chain Bridge Road, Suite 350
Vienna VA 22182

Check the box indicating the kind of statement. Check only one box.

(X)  ORIGINAL FINANCING STATEMENT

( )  CONTINUATION-ORIGINAL STILL EFFECTIVE

( )  AMENDMENT

( )  ASSIGNMENT

( )  PARTIAL RELEASE OF COLLATERAL

( )  TERMINATION

Name & address of Secured Party

Extreme Networks® Credit Corporation
3585 Monroe Street
Santa Clara CA 95051

Name & address of Assignee

Leasetec Corporation
1050 South McCaslin Blvd
Superior, CO. 80027

Date of maturity if less than five years

Check if proceeds of collateral are covered  ( )

Description of collateral covered by original financing statement

MLA# X163 - 06-02, 06-03 & 06-04  (VA. Falls Church)
See Attached

Space to record an amendment, assignment, release of collateral or a statement to cover collateral brought into Virginia from another jurisdiction.

Describe Real Estate if applicable

RETURN ACK. TO:
UCC DIRECT SERVICES
P.O. BOX 29071
GLENDALE, CA 91209-9071

Broadband Office, Inc.

Signature of Debtor if applicable (Date)

Extreme Networks® Credit Corporation

Signature of Secured Party if applicable (Date)

FILING OFFICER COPY - ACKNOWLEDGEMENT

Revised 7-1-82