# *Exhibit Q*

# MORRIS, NICHOLS, ARSHT & TUNNELL

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

302 658 9200
302 658 3989 FAX

THOMAS W. BRIGGS, JR.
302 498 6631
302 498 6226 FAX
tbriggs@mnat.com

May 20, 2004

**BY HAND**

Ms. Amy D. Brown, Esquire
WERB & SULLIVAN
300 Delaware Avenue, 10th Floor
P.O. Box 25046
Wilmington, Delaware 19899

Re: Broadband v. Technology Credit Corporation

Dear Ms. Brown:

We previously provided your firm with documentation showing that Technology Credit Corporation ("TCC") received none of the payments set out in your complaint. These payments appear to relate to a lease which TCC assigned in whole to Leasetec Corporation (Master Lease Agreement X163 and related lease Schedules one through six) (See Exhibit 1 to Affidavit of Lawrence M. Clark enclosed herewith). It is our understanding that Leasetec Corporation was subsequently purchased by Key Bank or Key Corporate Capital, Inc. In accordance with the terms of the Bill of Sale and Assignment(s) between Technology Credit Corporation and Leasetec Corporation, Leasetec and its successors and assigns purchased all right, title and interest to the Equipment and to the related leases (See Exhibit 2 to Clark Affidavit).

The transfers alleged in your complaint were invoiced by Key, received by Key and applied by Key. Enclosed please find copies of Key Equipment Finance's Account Payment History reports which summarize payments made by Broadband Office, Inc. to Key. Each report relates to payments received for a lease schedule, six in all (See Exhibit 3 to Clark Affidavit). It is obvious that Key Bank received the Broadband payments from an examination of the Account Payment History reports enclosed. A list of the alleged transfers and our reconciliation follows (See Exhibit A hereto):

TCC00001

Ms. Amy D. Brown, Esquire
May 20, 2004
Page 2

**Transfers**

|       |         |          |             |
|-------|---------|----------|-------------|
| Check | 3/14/01 | #107738  | $276,164.63 |
| Check | 3/14/01 | #107737  | $495,710.44 |

**Reconciliation**

| Rent Payment Schedule No: | Key Invoice No. | Key Due Date: | Transaction Type: | Amount |
|---------------------------|-----------------|---------------|-------------------|--------|
| **Check #107738:** | | | | |
| 01 | 1671925 | 2/28/01  | Rent | $16,695.54 |
| 02 | 1564939 | 11/11/00 | Tax  | $   346.85 |
| 03 | 1667916 | 2/20/01  | Rent | $66,013.70 |
| 04 | 1671936 | 12/29/00 | Rent | $15,359.14 |
| 05 | 1686324 | 2/17/01  | Rent | $49,150.62 |
| 06 | 1670357 | 2/26/01  | Rent | $128,598.78 |
| | | | Total Check: | $276,164.63 |
| **Check #107737:** | | | | |
| 01 | 1644386 | 1/28/01  | Rent | $16,695.54 |
| 01 | 1635296 | 12/28/00 | Rent | $16,695.54 |
| 02 | 1664372 | 2/11/01  | Rent | $36,245.48 |
| 02 | 1635622 | 1/11/01  | Rent | $36,425.48 |
| 03 | 1639003 | 12/20/00 | Rent | $66,013.70 |
| 03 | 1611919 | 1/20/00  | Rent | $66,013.70 |
| 04 | 1645324 | 1/29/01  | Rent | $15,359.14 |
| 04 | 1616184 | 12/29/00 | Rent | $15,359.14 |
| 05 | 1638107 | 1/17/01  | Rent | $49,150.62 |
| 05 | 1610820 | 12/17/00 | Rent | $49,150.62 |
| 06 | 1601725 | 1/26/01  | Rent | $128,601.48 |
| | | | Total Check: | $495,710.44 |

In addition, the tolling agreement attached to your complaint purports to have tolled the statute of limitations against my client. However, as evidenced by the affidavit of Jeffry A. Davis enclosed herewith, the attorney who signed the tolling agreement did not represent TCC and had no authority to execute such an agreement on behalf of TCC. Indeed, the company for whom the tolling agreement was executed was Extreme Networks, Inc., not TCC.

Ms. Amy D. Brown, Esquire
May 20, 2004
Page 3

The Complaint against TCC is without merit and your continued prosecution of the case against TCC is in bad faith. If you are not willing to dismiss TCC immediately, we will notice the deposition of Key Corporate Capital in Colorado and will pursue a motion for summary judgment with a request for attorneys' fees and sanctions.

Sincerely,

Thomas W. Briggs, Jr.

Enclosures

TCC00003

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BROADBAND OFFICE, INC.,<br><br>Debtor. | Chapter 11<br><br>Case No. 01-1720 (GMS) |
| BROADBAND OFFICE, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>TECHNOLOGY CREDIT CORPORATION dba<br>EXTREME NETWORKS CREDIT<br>CORPORATION<br><br>Defendant. | Adversary No. 03-60208 |

## AFFIDAVIT OF JEFFRY A. DAVIS

State of California        )
                           )    SS
County of _San Diego_      )

I, Jeffry A. Davis, say:

1.    I am an attorney at law, licensed to practice law in the State of California and am a partner with the law firm of Gray, Cary, Ware, Friedenrich in San Diego, California.

2.    On or about April 10, 2003, I executed the Stipulation Tolling Statute of Limitations attached hereto as Exhibit 1.

3.    At the time I executed said Stipulation, I understood that I was doing so in representation of my client, Extreme Networks, Inc. I did not understand, at that point, that Extreme Networks Credit Corporation was a name under which Technology Credit Corporation did business. I thought Extreme Networks Credit Corporation was instead a division or

subsidiary of Extreme Networks, Inc.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and of my own personal knowledge. I am competent to testify thereto.



Jeffry A. Davis

SWORN TO AND SUBSCRIBED before me this 18 day of May, 2004.

Notary Public

My Commission Expires: 4-4-2007

408819

LINDA M. BAKER
COMM. #1409057
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
My Commission Expires
APRIL 4, 2007

2

EXHIBIT A

## EXHIBIT A

*In re BroadBand Office, Inc., Case No. 01-1720 (GMS)*

The Transfers include, but may not be limited to, the following payment(s):

| Amount | Type | Check No. | Date Posted |
|---|---|---|---|
| $276,164.63 | Check | 107738 | 3/14/01 |
| $495,710.44 | Check | 107737 | 3/14/01 |

TCC00007

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BROADBAND OFFICE, INC.,<br><br>Debtor. | Chapter 11<br><br>Case No. 01-1720 (GMS) |
| BROADBAND OFFICE, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>TECHNOLOGY CREDIT CORPORATION dba<br>EXTREME NETWORKS CREDIT<br>CORPORATION<br><br>Defendant. | Adversary No. 03-60208 |

**AFFIDAVIT OF LAWRENCE M. CLARK**

State of California        )
                     )   SS
County of Santa Clara   )

I, Lawrence M. Clark, say:

1.     I am the President of Technology Credit Corporation dba Extreme Networks Credit Corporation ("TCC"), the defendant in the above referenced lawsuit.

2.     TCC is in the business of originating leases for the sale of high technology equipment.

3.     I was personally involved in the negotiation and consummation of the Lease Schedules along with Master Lease Agreement X163 between Broadband Office, Inc. and Extreme Networks Credit Corporation dated March 9, 2000. Attached hereto as Exhibit 1 are true and correct copies of the Lease Schedules and Master Lease Agreement X163.

TCC00008

4.    Between March 9, 2000 and July 20, 2000 the Lease Schedules one through six together with Master Lease Agreement X163 were assigned in whole to Leasetec Corporation. True and correct copies of the Bill of Sale and Assignments between TCC and Leasetec are attached hereto as Exhibit 2. In accordance with the terms of the Bill of Sale and Assignments between Technology Credit Corporation and Leasetec Corporation, Leasetec or its successors and assigns purchased all right title and interest to the Equipment and to the related leases (See Exhibit 2).

5.    To the best of my knowledge, Leasetec Corporation was subsequently purchased by Key Bank or Key Corporate Capital, Inc. aka Key Equipment Finance (collectively referred to herein as "Key").

6.    To my knowledge, the transfers alleged in the Complaint were invoiced by Key, received by Key and applied by Key. Attached hereto as Exhibit 3 is a true and correct copy of a Key Equipment Finance Account Payment History report which I received directly from Key. This report summarizes payments made by Broadband Office, Inc. to Key.

7.    TCC never had possession of nor received any of the payments which are alleged to be transfers in the Complaint.

8.    Although the checks may have been made payable to Extreme Networks Credit Co, the checks were never sent to TCC and were never deposited into a bank account which was for the benefit of TCC or owned or controlled by TCC.

9.    TCC did not retain Attorney Jeffry A. Davis to represent TCC in this litigation or in any legal matter. Attorney Jeffry A. Davis was not authorized by TCC to execute the Stipulation Tolling Statute of Limitations dated April 10, 2003. Mr. Davis had no authority (either actual or implied) to execute the tolling agreement on behalf of TCC.

TCC00009

10.    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and of my own personal knowledge.  I am competent to testify thereto.

_Lawrence M Clark_
Lawrence M. Clark

SWORN TO AND SUBSCRIBED before me this 19th day of May, 2004.

_P. Annette Kramer_
Notary Public

My Commission Expires: 11/26/2006

408816



TCC00010

TCC00011

Exhibit 1

# MASTER LEASE AGREEMENT

No. _____ X163

This Master Lease Agreement (the "MLA") is entered into by and between Extreme Networks® Credit Corporation ("Lessor"), having its principal place of business at 3585 Monroe Street, Santa Clara, CA 95051 and _____ Broadband Office, Inc. _____ ("Lessee"),

having its principal place of business at _____ 2070 Chain Bridge Road, Suite 350, Vienna, VA  22182 _____

1. **LEASE AGREEMENT.** Lessor agrees to lease to Lessee, and Lessee agrees to lease from Lessor, the equipment (the "Equipment") referenced in each of the Schedules (the "Schedule" or "Schedules") which incorporate this MLA therein (the "Lease").

2. **TERM.** Each Lease shall be effective upon the execution of the MLA and the related Schedule by the Lessor and the Lessee. The lease term (the "Lease Term") of the Equipment referenced in each of the Schedules shall commence on the rent commencement date specified in each Schedule (the "Rent Commencement Date"). The Rent Commencement Date shall be the date 30 days from the date that the Equipment is shipped by the supplier (the "Ship Date") as evidenced by a shipping document provided by the supplier related to the Equipment (the "Shipping Document"). Lessor will provide Lessee with a copy of the Shipping Document evidencing the Ship Date.

3. **RENT.** The rent (the "Rent") for the Equipment referenced in any Schedule shall be as stated in such Schedule and shall be payable according to the provisions of such Schedule. If any amount payable under a Schedule is not received by Lessor within 10 days of the due date, Lessee agrees to pay an Overdue Charge, as defined herein, with respect to such amount.

4. **SELECTION AND ASSIGNMENT.** Lessee will select the type, quantity and Supplier of each item of Equipment designated in a Schedule, and Lessee hereby assigns to Lessor all of its right, title Lessor. Any such assignment with respect to Equipment shall become binding upon Lessor when Lessor and Lessee have entered into a Lease with respect to such Equipment and as of the Rent Commencement Date referenced in such Lease. Upon such an assignment becoming effective, Lessor shall be obligated to purchase the Equipment from the Supplier in accordance with the provisions of the Agreement. It is expressly agreed that Lessee shall at all times remain liable to Supplier under the Agreement to perform all duties and obligations of Lessee thereunder, except for the obligation to purchase the Equipment to the extent expressly assumed by the Lessor hereunder, and that the Lessee shall be entitled to the same rights of the purchaser of the Equipment under the Agreement, except such right, title and interest in the Equipment retained exclusively by the Lessor as owner of the Equipment. Lessor shall have no liability for a Supplier's failure to meet the terms and conditions of the Agreement.

5. **DELIVERY AND INSTALLATION.** Lessee shall be responsible for payment of all transportation, packing, installation, testing and other charges associated with the delivery, installation or use of any Equipment which are not included in the Agreement with respect to such Equipment.

6. **WARRANTIES.** LESSOR MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, WITH RESPECT TO ANY OF THE EQUIPMENT, ITS MERCHANTABILITY, OR ITS FITNESS FOR A PARTICULAR PURPOSE. LESSOR SHALL NOT BE LIABLE TO LESSEE OR ANY OTHER PERSON FOR DIRECT, INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING FROM LESSEE'S USE OF THE EQUIPMENT, OR FOR DAMAGES BASED ON STRICT OR ABSOLUTE TORT LIABILITY OR LESSOR'S PASSIVE NEGLIGENCE. LESSEE HEREBY ACKNOWLEDGES THAT ANY MANUFACTURER'S OR SUPPLIER'S WARRANTIES WITH RESPECT TO THE EQUIPMENT ARE FOR THE BENEFIT OF BOTH LESSOR AND LESSEE. NOTWITHSTANDING THE FOREGOING, LESSEE'S OBLIGATIONS TO PAY EACH RENT PAYMENT DUE, OR OTHERWISE PERFORM ITS OBLIGATIONS, UNDER THIS LEASE ARE ABSOLUTE AND UNCONDITIONAL.

7. **TITLE TO AND LOCATION OF EQUIPMENT.** Lessor shall retain title to each item of Equipment. Lessee, at its expense, shall protect Lessor's title and keep the Equipment free from all claims, liens, encumbrances and legal processes. The Equipment is personal property and is not to be regarded as part of the real estate on which it may be situated. If requested by Lessor, Lessee will, at Lessor's expense, furnish a landlord or mortgagee waiver with respect to the Equipment. The Equipment shall not be removed from the location specified in the Schedule without the written consent of Lessor. Lessee shall, upon Lessor's request, affix and maintain plates, tags or other identifying labels, showing Lessor's ownership of the Equipment in a prominent position on the Equipment.

8. **USE OF EQUIPMENT, INSPECTION AND REPORTS.** The use of the Equipment by Lessee shall conform with all applicable laws, insurance policies, and warranties of the manufacturer or Supplier of the Equipment. Lessor shall have the right to inspect the Equipment at the premises where the Equipment is located. Lessee shall notify Lessor promptly of any claims, liens, encumbrances or legal processes with respect to the Equipment.

9. **FURTHER ASSURANCES.** Lessee shall execute and deliver to Lessor such instruments as Lessor deems necessary for the confirmation of this Lease and Lessor's rights hereunder. Lessor is authorized to file financing statements signed only by the Lessor in accordance with the Uniform Commercial Code, or financing statements signed by Lessor as Lessee's attorney-in-fact. Any such filing with respect to the Equipment leased pursuant to a true lease shall not be deemed evidence of any intent to create a security interest under the Uniform Commercial Code.

10. **MAINTENANCE AND REPAIRS.** Lessee shall, at its expense, maintain each item of Equipment in good condition, normal wear and tear excepted. Lessee shall not make any addition, alteration, or attachment to the Equipment without Lessor's prior written consent. Lessee shall make no repair, addition, alteration or attachment to the Equipment which interferes with the normal operation or maintenance thereof, creates a safety hazard, or might result in the creation of a mechanic's or materialman's lien.

11. **LESSOR'S PERFORMANCE OF LESSEE'S OBLIGATIONS.** If Lessee fails to perform any of its obligations under a Lease, Lessor may perform any act or make any payment which Lessor deems necessary for the maintenance and preservation of the Equipment subject thereto and Lessor's title thereto. All sums so paid by Lessor (together with all related Overdue Charges), and reasonable attorneys' fees incurred by Lessor in connection therewith, shall be additional rent payable to Lessor on demand. The performance of any such act or the making of any such payment by Lessor shall not be deemed a waiver or release of any obligation or default on the part of Lessee.

12. **INDEMNIFICATION.** Lessee assumes liability for, and hereby agrees to indemnify, protect and hold harmless, Lessor, and its agents, employees, officers, directors, partners and successors and assigns, from and against, all liabilities, obligations, losses, damages, injuries, claims, demands, penalties, actions, costs and expenses, including, without limitation, reasonable attorneys' fees, of whatever kind and nature, in contract or in tort, arising out of the use, condition, operation, ownership, selection, delivery, leasing or return of any item of Equipment, regardless of when, how and by whom operated, or any failure on the part of Lessee to perform or comply with any of its obligations under a Lease, excluding, however, any of the foregoing which result from the gross negligence or willful misconduct of Lessor. Such indemnities and assumptions of liabilities and obligations shall continue in full force and effect, notwithstanding the expiration or other termination of such Lease. Nothing contained in any Lease shall authorize Lessee to operate the Equipment subject thereto so as to incur or impose any liability on, or obligation for or on behalf of, Lessor.

13. **NO OFF-SET.** All Rents shall be paid by Lessee irrespective of any off-set, counterclaim, recoupment, defense or other right which Lessee may have against Lessor, the manufacturer or Supplier of the Equipment or any other party.

14. **ASSIGNMENT BY LESSEE.** Lessee shall not, without Lessor's prior written consent, (a) sell, assign, transfer, pledge, hypothecate, or otherwise dispose of, encumber or suffer to exist a lien upon or against, any of the Equipment, any of its right or interest therein, by operation of law or otherwise, or (b) sublease or lend any of the Equipment or permit any of the Equipment to be used by anyone other than Lessee.

15. **ASSIGNMENT BY LESSOR.** Lessor may assign, sell or encumber its interest in any of the Equipment and any Lease. Upon Lessor's written consent, Lessee shall pay directly to the assignee of any such interest all Rent and other sums due under an assigned Lease. THE RIGHTS OF ANY SUCH ASSIGNEE SHALL NOT BE SUBJECT TO ANY ABATEMENT, DEDUCTION, OFF-SET, COUNTERCLAIM, RECOUPMENT, DEFENSE OR OTHER RIGHT WHICH LESSEE MAY HAVE AGAINST LESSOR OR ANY OTHER PERSON OR ENTITY. Notwithstanding the foregoing, any such assignment (a) shall be subject to Lessee's right to possess and use the Equipment subject to a Lease so long as Lessee is not in default thereunder, and (b) shall not release any of Lessor's obligations hereunder.

16. **RETURN OF EQUIPMENT.** Unless Lessee has exercised its option, if any, to renew a lease or purchase the Equipment subject thereto, upon expiration of the then-current Lease Term of such Lease, Lessee shall, at its expense, cause such Equipment to be removed, disassembled, and placed in the same condition as when delivered to Lessee (reasonable wear and tear excepted) and within the continental United States. All additions, attachments, alterations and repairs made or placed upon any of the Equipment shall become part of such Equipment and shall be the property of Lessor.

TCC00012

Exhibit 1

17. EVENTS OF DEFAULT. The occurrence of any of the following shall be deemed to constitute an Event of Default hereunder: (a) Lessee fails to pay Rent, any other amount it is obligated to pay under a Lease or any other amount it is obligated to pay to Lessor and does not cure such failure within 10 days of such amount becoming due; (b) Lessee fails to perform or observe any obligation or covenant to be performed or observed by Lessee hereunder or under any Schedule, including, without limitation, supplying all requested documentation, and does not cure such failure within 10 days of receiving written notice thereof from Lessor; (c) any warranty, representation or statement made or furnished to Lessor by or on behalf of Lessee is proven to have been false in any material respect when made or furnished; (d) the attempted sale or encumbrance by Lessee of the Equipment, or the making of any levy, seizure or attachment thereof or thereon; or (e) the dissolution, termination of existence, discontinuance of business, insolvency, or appointment of a receiver of any part of the property of Lessee, assignment by Lessee for the benefit of creditors, the commencement of proceedings under any bankruptcy, reorganization or arrangement laws by or against Lessee, or any other act of bankruptcy on the part of Lessee.

18. REMEDIES OF LESSOR. At any time after the occurrence of any Event of Default, Lessor may exercise one or more of the following remedies: (a) Lessor may terminate any or all of the Leases with respect to any or all items of Equipment subject thereto; (b) Lessor may recover from Lessee all Rent and other amounts then due, and to become due under any or all of the Leases; (c) Lessor may take possession of any or all items of Equipment, wherever the same may be located, without demand or notice, without any court order or other process of law and without liability to Lessee for any damages occasioned by such taking of possession, and any such taking of possession shall not constitute a termination of any Lease; (d) Lessor may demand that Lessee return any or all items of Equipment to Lessor in accordance with Paragraph 16; and (e) Lessor may pursue any other remedy available at law or in equity, including, without limitation, seeking damages, specific performance or an injunction.

Upon repossession or return of any item of the Equipment, Lessor shall sell, lease or otherwise dispose of such item in a commercially reasonable manner, with or without notice and on public or private bid, and apply the net proceeds thereof (after deducting the estimated fair market value of such item at the expiration of the term of the applicable Lease, in the case of a sale, or the rents due for any period beyond the scheduled expiration of such Lease, in the case of any subsequent lease of such item, and all expenses, including, without limitation, reasonable attorneys' fees, incurred in connection therewith) towards the Rent and other amounts due under such Lease, with any excess net proceeds to be retained by Lessor.

Each of the remedies under this Lease shall be cumulative, and not exclusive, and in addition to any other remedy referred to herein or otherwise available to Lessor in law or in equity. Any repossession or subsequent sale or lease by Lessor of any item of Equipment shall not bar an action for a deficiency as herein provided, and the bringing of an action or the entry of judgment against Lessee shall not bar Lessor's right to repossess any or all items of Equipment.

19. CREDIT AND FINANCIAL INFORMATION. Within 90 days of the close of each of Lessee's fiscal years, Lessee shall deliver to Lessor a copy of Lessee's annual report, if any, and an audited balance sheet and profit and loss statement with respect to such year. If audited financial statements of Lessee for such year are not prepared, Lessee may provide financial statements certified by an officer of Lessee. At Lessor's request, Lessee shall deliver to Lessor a balance sheet and profit and loss statement for any of its fiscal quarters, certified by an officer of Lessee.

20. INSURANCE. As of the date that risk of loss for the Equipment passes from the Supplier to the Lessee under the terms of the Agreement, Lessee shall obtain and maintain through the end of the Lease Term of each Lease (and any renewal or extension thereof), at its own expense, property damage and personal liability insurance and insurance against loss or damage to the Equipment, including, without limitation, loss by fire (with extended coverage), theft and such other risks of loss as are customarily insured against with respect to the types of Equipment leased hereunder and by the types of businesses in which such Equipment will be used by Lessee. Such insurance shall be in such amounts, with such deductibles, in such form and with such insurers as shall be satisfactory to Lessor, provided, however, that the amount of the insurance against loss or damage to the Equipment shall not be less than the greater of the replacement value of the Equipment, from time to time, or the original purchase price of the Equipment. Each insurance policy shall name Lessee as an insured and Lessor as an additional insured or loss payee, and shall contain a clause requiring the insurer to give Lessor at least 30 days prior written notice of any alteration in the terms of such policy or of the cancellation thereof. Lessee shall furnish to Lessor a certificate of insurance or other evidence satisfactory to Lessor that such insurance coverage is in effect; provided, however, that Lessor shall be under no duty either to ascertain the existence of or to examine such insurance policy or to advise Lessee in the event such insurance shall not comply with the requirements hereof. Lessee shall give Lessor prompt notice of any damage to, or loss of, any of the Equipment, or any part thereof, or any personal injury or property damage occasioned by the use of any of the Equipment.

21. TAXES. Lessee hereby assumes liability for, and shall pay when due, and, on a net after-tax basis, shall indemnify, protect and hold harmless Lessor against all fees, taxes and governmental charges (including, without limitation, interest and penalties) of any nature imposed on or in any way relating to Lessor, Lessee, any item of Equipment or any Lease, except state and local taxes on or measured by Lessor's net income (other than any such tax which is in substitution for or relieves Lessee from the payment of taxes it would otherwise be obligated to pay or reimburse to Lessor as herein provided) and federal taxes on Lessor's net income. Lessee shall, at its expense, file when due with the appropriate authorities any and all tax and similar returns, and reports required to be filed with respect thereto, or shall, if Lessor is not indemnified Lessor hereunder or, if requested by Lessor, notify Lessor of all such requirements and furnish Lessor with all information required by Lessor to effect such filings. Any fees, taxes or other charges paid by Lessor upon failure of Lessee to make such payments shall, at Lessor's option, become immediately due from Lessee to Lessor and shall be subject to the Overdue Charge from the date paid by Lessor until the date reimbursed by Lessee.

22. SEVERABILITY. If any provision of any Lease is held to be invalid by a court of competent jurisdiction, such invalidity shall not affect the other provisions of such Lease or any provision of any other Lease.

23. NOTICES. All notices hereunder shall be in writing and shall be deemed given when sent by certified mail, postage prepaid, return receipt requested, addressed to the party to which it is being sent at its address set forth herein or to such other address as such party may designate in writing to the other party.

24. AMENDMENTS, WAIVERS AND EXTENSIONS. This MLA and each Schedule constitute the entire agreement between Lessor and Lessee with respect to the lease of the Equipment subject to such Schedule, and supersede all previous communications, understandings, and agreements, whether oral or written, between the parties with respect to such subject matter. No provision of any Lease may be changed, waived, amended or terminated except by a written agreement, specifying such change, waiver, amendment or termination, signed by both Lessee and Lessor, except that Lessor may insert, on the appropriate schedule, the serial number of Equipment, after delivery of such Equipment, and the Rent Commencement Date for the Equipment. No waiver by Lessor of any Event of Default shall be construed as a waiver of any future Event of Default or any other Event of Default. At the expiration of the Lease Term with respect to a Lease, upon notice given by Lessee at least ninety (90) days prior thereto, (a) such Lease shall be renewed or the Equipment subject thereto shall be purchased under the terms and conditions set forth herein for a term and end amount or purchase price, as the case may be, to be agreed upon, or (b) if no such agreement is reached prior to the expiration of such Lease Term or such notice specifies that Lessee intends to return the Equipment, then Lessee shall return the Equipment to Lessor in the manner prescribed in Paragraph 16 of this MLA. In the absence of Lessor's timely receipt of the notice contemplated by the preceding sentence, the Lease shall be automatically extended, on a month-to-month basis, until terminated (upon notice by either party given at least ninety (90) days prior to the end of the month on which the termination is to be effective) or until renewed or the Equipment subject thereto is purchased by agreement of the parties. Unless otherwise agreed, Lessee shall continue to pay Rent for each Lease during such Lease Term until the Equipment subject to such Lease is returned pursuant to Paragraph 16 of this MLA.

25. CONSTRUCTION. This MLA shall be governed by and construed in accordance with the internal laws, but not the choice of laws provisions, of the State of California. The titles of the sections of this MLA are for convenience only and should not define or limit any of the terms or provisions hereof. Time is of the essence in each of the provisions hereof.

26. PARTIES. This MLA shall be binding upon, and inure to the benefit of, the permitted assigns, representatives and successors of the Lessor and Lessee. If there is more than one Lessee named in this MLA, the liability of each shall be joint and several.

27. COUNTERPARTS. Each Lease may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute but one and the same instrument.

28. OVERDUE CHARGE. Overdue Charge shall mean an amount equal to 2% per month of any payment under a Lease which is past due, including, without limitation, any amounts not included in any payment of Rent hereunder, or the highest charge permitted by law, whichever is lower.

The person executing this MLA on behalf of Lessee hereby certifies that he or she has read, and is duly authorized to execute, this MLA.

Accepted by:

Extreme Networks® Credit Corporation                      LESSEE:   Broadband Office, Inc.

BY: _____                               BY: _____

NAME: _____                               NAME: _Perry G. Fabi_
                                                                      Print
TITLE: _____CFO_____                                TITLE: _Director of Finance & Controller_

DATE: ___3/7/__                                            DATE: __3/9/00__

TCC00013

Exhibit 1

# LEASE SCHEDULE NO. ___01___

This Schedule and its supplements incorporate by this reference the terms and conditions of the Master Lease Agreement, Number __X163__ , between

Extreme Networks® Credit Corporation (Lessor) and __Broadband Office, Inc.__ _____ (Lessee).

1.  Supplier: __Extreme Networks__

2.  Location of Equipment: __Broadband Office, Inc. 2070 Chain Bridge Road, Suite 350, Vienna, VA 22182__

3.  Equipment Value: $ __349,416.75__ (exclusive of sales and/or use taxes).

4.  Lease Term: The Lease Term of the Equipment described in this Schedule shall begin on the Rent Commencement Date referenced below in Paragraph 6 and its expiration date shall be __18__ months after such Rent Commencement Date.

5.  Rent: $ __20,482.81__ per month (exclusive of sales and/or use taxes) due and payable at the Rent Commencement Date and on the same date of each succeeding month of the Lease Term. The advance Rent payment shall be $ __40,965.62__ . This amount includes $ __20,482.81__ for the first month, and $ __20,482.81__ for the last __1__ month(s) of the Lease Term.

6.  Rent Commencement Date: __February 28~~th~~ 2000__

7.  Purchase Option:

    Lessee shall have the option to purchase the Equipment for its fair market value for continued use ("FMV"), on the expiration of this Lease or any renewal term, provided Lessee is not in default of any of its obligations under this Lease on such expiration date. This purchase option may only be exercised by Lessee's written notice to Lessor not earlier than 180 days, nor later than 90 days, prior to the end of the Lease Term or any renewal term. The purchase price for such Equipment shall be payable upon the expiration date of such term. FMV shall be equal to the value of the Equipment installed and in use, with consideration given to the age, condition, utility and replacement costs for the Equipment. In the event that Lessor and Lessee are unable to agree upon the purchase price for the Equipment, such purchase price will be determined by an independent appraiser to be selected by Lessor. Lessee shall be responsible for all applicable sales and/or use taxes on the Equipment. Upon exercise of this purchase option and payment of the purchase price, Lessor shall execute and deliver to Lessee such documents as Lessee may reasonably request in order to vest in Lessee all right, title and interest in the Equipment.

8.  Renewal Option:

    Lessee shall have the option to renew this Lease, on the expiration date of this Lease or any renewal term, for the fair market rental for the continued use of the Equipment ("FMR") and on such other terms as may be agreed upon by Lessor and Lessee prior to such expiration date, provided Lessee is not in default of any of its obligations under this Lease on such expiration date. This renewal option may only be exercised by Lessee's written notice to Lessor not earlier than 180 days, nor later than 90 days, prior to the end of the Lease Term or any renewal term. FMR shall be equal to the value of the monthly rental of the Equipment installed and in use, with consideration given to the age, condition, utility and replacement costs for the Equipment, for the renewal term.

9.  Tax Benefits:

    Lessee understands that Lessor intends to claim the "Tax Benefits", consisting of the maximum Modified Accelerated Cost Recovery System deductions for the minimum useful life applicable to each item of Equipment, as provided by Sections 168(b) and (c) of the Internal Revenue Code of 1986, and analogous benefits under state law, with respect to the Equipment. Lessee represents and warrants that: (i) Lessee has not been, is not now, and during the term of this Lease will not become, and will not allow the Equipment to be used by or leased to, a tax-exempt entity or government agency; and (ii) Lessee is not now, and during the term of this Lease will not become, a public utility. Without limitation by the preceding sentence, Lessee agrees not to take any action, fail to take any action, or misstate any fact which may result in any loss to Lessor of the Tax Benefits.

    Lessee agrees to pay promptly to Lessor an amount which will fully compensate Lessor, on an after-tax basis, for any loss of the Tax Benefits, plus interest, penalties and additions to tax, any loss in time value of the Tax Benefits, and any taxes imposed on any such compensation payment, resulting from Lessee's Benefits occurs at the earliest of: (i) the happening of any event causing the loss; (ii) payment by Lessor of any additional tax resulting from the loss; or (iii) any adjustment to the tax return of Lessor. Lessor's right to recovery of a loss of Tax Benefits shall survive the expiration or termination of this Lease.

10. Description of Equipment:

    See Schedule A which is attached hereto and made a part hereof by this reference.

The person executing this Schedule on behalf of Lessee hereby certifies that he or she has read, and is duly authorized to execute, this Schedule

Accepted by: Extreme Networks® Credit Corporation

BY: _James P. Hutchison_ (signature)

NAME: _James E. Hutchison_
        Print

TITLE: _CFO_

DATE: _3/9/00_

LESSEE: Broadband Office, Inc.

BY: _(signature)_

NAME: _Perry G. Fabi_
        Print

TITLE: _Director of Finance & Controller_

DATE: _3/9/00_

TCC00014

**Exhibit 1**

# LEASE SCHEDULE NO. __02__

This Schedule and its supplements incorporate by this reference the terms and conditions of the Master Lease Agreement, Number __X163__ , between

Extreme Networks® Credit Corporation (Lessor) and __Broadband Office, Inc.__ _____ (Lessee).

1.  Supplier __Extreme Networks__

2.  Location of Equipment: __2070 Chain Bridge Road, Suite 350, Vienna, VA 22182__

3.  Equipment Value: $ __758,572.50__ (exclusive of sales and/or use taxes).

4.  Lease Term: The Lease Term of the Equipment described in this Schedule shall begin on the Rent Commencement Date referenced below in Paragraph 6 and its expiration date shall be __18__ months after such Rent Commencement Date.

5.  Rent $ __44,467.52__ per month (exclusive of sales and/or use taxes) due and payable at the Rent Commencement Date and, on the same date of each succeeding month of the Lease Term. The advance Rent payment shall be $ __88,935.04__ . This amount includes $ __44,467.52__ for the first month, and $ __44,467.52__ for the last __1__ month(s) of the Lease Term.

6.  Rent Commencement Date: _____, 20_____

7.  Purchase Option:

    Lessee shall have the option to purchase the Equipment for its fair market value for continued use ("FMV"), on the expiration of this Lease or any renewal term, provided Lessee is not in default of any of its obligations under this Lease on such expiration date. This purchase option may only be exercised by Lessee's written notice to Lessor not earlier than 180 days, nor later than 90 days, prior to the end of the Lease Term or any renewal term. FMV shall be equal to the value of the Equipment installed and in use, with consideration given to the age, condition, utility and replacement costs for the Equipment. In the event that Lessor and Lessee are unable to agree upon the purchase price for the Equipment, such purchase price will be determined by an independent appraiser to be selected by Lessor. Lessee shall be responsible for all applicable sales and/or use taxes on the Equipment. Upon exercise of this purchase option and payment of the purchase price, Lessor shall execute and deliver to Lessee such documents as Lessee may reasonably request in order to vest in Lessee all right, title and interest in the Equipment.

8.  Renewal Option:

    Lessee shall have the option to renew this Lease, on the expiration date of this Lease or any renewal term, for the fair market rental for the continued use of the Equipment ("FMR") and on such other terms as may be agreed upon by Lessor and Lessee prior to such expiration date, provided Lessee is not in default of any of its obligations under this lease on such expiration date. This renewal option may only be exercised by Lessee's written notice to Lessor not earlier than 180 days, nor later than 90 days, prior to the end of the Lease Term or any renewal term. FMR shall be equal to the value of the monthly rental of the Equipment installed and in use, with consideration given to the age, condition, utility and replacement costs for the Equipment, for the renewal term.

9.  Tax Benefits:

    Lessee understands that Lessor intends to claim the "Tax Benefits", consisting of the maximum Modified Accelerated Cost Recovery System deductions for the minimum useful life applicable to each item of Equipment, as provided by Sections 168(b) and (c) of the Internal Revenue Code of 1986, and analogous benefits under state law, with respect to the Equipment. Lessee represents and warrants that: (i) Lessee has not been, is not now, and during the term of this Lease will not become, and will not allow the Equipment to be used by or leased to, a tax-exempt entity or government agency; and (ii) Lessee is not now, and during the term of this Lease will not become, a public utility. Without limitation by the preceding sentence, Lessee agrees not to take any action, fail to take any action, or misstate any fact which may result in any loss to Lessor of the Tax Benefits.

    Lessee agrees to pay promptly to Lessor an amount which will fully compensate Lessor, on an after-tax basis, for any loss of the Tax Benefits, plus interest, penalties and additions to tax, any loss in time value of the Tax Benefits, and any taxes imposed on any such compensation payment, resulting from Lessee's acts, omissions or misstatements, including, without limitation, with respect to the representations and warranties in the preceding paragraph. A loss of Tax Benefits occurs at the earliest of: (i) the happening of any event causing the loss; (ii) payment by Lessor of any additional tax resulting from the loss; or (iii) any adjustment to the tax return of Lessor. Lessor's right to recovery of a loss of Tax Benefits shall survive the expiration or termination of this Lease.

10. Description of Equipment:

    See Schedule A which is attached hereto and made a part hereof by this reference.

The person executing this Schedule on behalf of Lessee hereby certifies that he or she has read, and is duly authorized to execute, this Schedule

Accepted by: Extreme Networks® Credit Corporation                 LESSEE: __Broadband Office, Inc.__

BY: _____                 BY: _____

NAME: _____                 NAME: __Perry Fagi__
              Print                                                                 Print

TITLE: __CFO__                 TITLE: __Director of Finance & Controller__

DATE: __3/17/00__                 DATE: __3/17/00__

TCC00015

Exhibit 1

# LEASE SCHEDULE NO. ___03___

This Schedule and its supplements incorporate by this reference the terms and conditions of the Master Lease Agreement, Number __X1E3__ , between

Extreme Networks® Credit Corporation (Lessor) and __Broadband Office, Inc.__ _____ (Lessee).

1. Supplier: __Extreme Networks__

2. Location of Equipment: __2070 Chain Bridge Road, Suite 350, Vienna, VA 22182__

3. Equipment Value: $ __1,3B1,584.00__ _____ (exclusive of sales and/or use taxes).

4. Lease Term: The Lease Term of the Equipment described in this Schedule shall begin on the Rent Commencement Date referenced below in Paragraph 6 and its expiration date shall be __18__ months after such Rent Commencement Date.

5. Rent: $ __80,98B.45__ per month (exclusive of sales and/or use taxes) due and payable at the Rent Commencement Date and on the same date of each succeeding month of the Lease Term. The advance Rent payment shall be $ __161,976.90__ . This amount includes $ __80,98B.45__ for the first month, and $ __80,98B.45__ for the last __1__ month(s) of the Lease Term.

6. Rent Commencement Date: _____ , 19 ____

7. Purchase Option:

   Lessee shall have the option to purchase the Equipment for its fair market value for continued use ("FMV"), on the expiration of this Lease or any renewal term, provided Lessee is not in default of any of its obligations under this Lease on such expiration date. This purchase option may only be exercised by Lessee's written notice to Lessor not earlier than 180 days, nor later than 90 days, prior to the end of the Lease Term or any renewal term. The purchase price for such Equipment shall be payable upon the expiration date of such term. FMV shall be equal to the value of the Equipment installed and in use, with consideration given to the age, condition, utility and replacement costs for the Equipment. In the event that Lessor and Lessee are unable to agree upon the purchase price for the Equipment, such purchase price will be determined by an independent appraiser to be selected by Lessor. Lessee shall be responsible for all applicable sales and/or use taxes on the Equipment. Upon exercise of this purchase option and payment of the purchase price, Lessor shall execute and deliver to Lessee such documents as Lessee may reasonably request in order to vest in Lessee all right, title and interest in the Equipment.

8. Renewal Option:

   Lessee shall have the option to renew this Lease, on the expiration date of this Lease or any renewal term, for the fair market rental for the continued use of the Equipment ("FMR") and on such other terms as may be agreed upon by Lessor and Lessee prior to such expiration date, provided Lessee is not in default of any of its obligations under this lease on such expiration date. This renewal option may only be exercised by Lessee's written notice to Lessor not earlier than 180 days, nor later than 90 days, prior to the end of the Lease Term or any renewal term. FMR shall be equal to the value of the monthly rental of the Equipment installed and in use, with consideration given to the age, condition, utility and replacement costs for the Equipment, for the renewal term.

9. Tax Benefits:

   Lessee understands that Lessor intends to claim the "Tax Benefits", consisting of the maximum Modified Accelerated Cost Recovery System deductions for the minimum useful life applicable to each item of Equipment, as provided by Sections 16B(b) and (c) of the Internal Revenue Code of 1986, and analogous benefits under state law, with respect to the Equipment. Lessee represents and warrants that: (i) Lessee has not been, is not now, and during the term of this Lease will term of this Lease will not become, and will not allow the Equipment to be used by or leased to, a tax-exempt entity or government agency; and (ii) Lessee is not now, and during the term of this Lease will not become, a public utility. Without limitation by the preceding sentence, Lessee agrees not to take any action, fail to take any action, or misstate any fact which may result in any loss to Lessor of the Tax Benefits.

   Lessee agrees to pay promptly to Lessor an amount which will fully compensate Lessor, on an after-tax basis, for any loss of the Tax Benefits, plus interest, penalties and additions to tax, any loss in time value of the Tax Benefits, and any taxes imposed on any such compensation payment, resulting from Lessee's acts, omissions or misstatements, including, without limitation, with respect to the representations and warranties in the preceding paragraph. A loss of Tax Benefits occurs at the earliest of: (i) the happening of any event causing the loss; (ii) payment by Lessor of any additional tax resulting from the loss; or (iii) any adjustment to the tax return of Lessor. Lessor's right to recovery of a loss of Tax Benefits shall survive the expiration or termination of this Lease.

10. Description of Equipment:

    See Schedule A which is attached hereto and made a part hereof by this reference.

The person executing this Schedule on behalf of Lessee hereby certifies that he or she has read, and is duly authorized to execute, this Schedule

Accepted by: Extreme Networks® Credit Corporation

BY: _____

NAME: __James F Harrison__ _____
                    Print

TITLE: __CFO__

DATE: __7/25/00__

LESSEE: __Broadband Office, Inc.__

BY: _____

NAME: __Paul Fabi__ _____
                    Print

TITLE: __Director of Finance = Controller__

DATE: __8/24/00__

TCC00016

**Exhibit 1**

# LEASE SCHEDULE NO. 04

This Schedule and its supplements incorporate by this reference the terms and conditions of the Master Lease Agreement, Number X163, between

Extreme Networks® Credit Corporation (Lessor) and Broadband Office, Inc. (Lessee)

1.  Supplier: **Extreme Networks**

2.  Location of Equipment: 2070 Chain Bridge Road, Suite 350, Vienna, VA 22182

3.  Equipment Value: $ 321,447.50 (exclusive of sales and/or use taxes).

4.  Lease Term: The Lease Term of the Equipment described in this Schedule shall begin on the Rent Commencement Date referenced below in Paragraph 6 and its expiration date shall be 18 months after such Rent Commencement Date.

5.  Rent: $ 18,843.25 per month (exclusive of sales and/or use taxes) due and payable at the Rent Commencement Date and on the same date of each succeeding month of the Lease Term. The advance Rent payment shall be $ 37,686.50. This amount includes $ 18,843.25 for the first month, and $ 18,843.25 for the last 1 month(s) of the Lease Term.

6.  Rent Commencement Date: _____, 20____.

7.  Purchase Option:

    Lessee shall have the option to purchase the Equipment for its fair market value for continued use ("FMV"), on the expiration of this Lease or any renewal term, provided Lessee is not in default of any of its obligations under this Lease on such expiration date. This purchase option may only be exercised by Lessee's written notice to Lessor not earlier than 180 days, nor later than 90 days, prior to the end of the Lease Term or any renewal term. The purchase price for such Equipment shall be payable upon the expiration date of such term. FMV shall be equal to the value of the Equipment installed and in use, with consideration given to the age, condition, utility and replacement costs for the Equipment. In the event that Lessor and Lessee are unable to agree upon the purchase price for the Equipment, such purchase price will be determined by an independent appraiser to be selected by Lessor. Lessee shall be responsible for all applicable sales and/or use taxes on the Equipment. Upon exercise of this purchase option and payment of the purchase price, Lessor shall execute and deliver to Lessee such documents as Lessee may reasonably request in order to vest in Lessee all right, title and interest in the Equipment.

8.  Renewal Option:

    Lessee shall have the option to renew this Lease, on the expiration date of this Lease or any renewal term, for the fair market rental for the continued use of the Equipment ("FMR") and on such other terms as may be agreed upon by Lessor and Lessee prior to such expiration date, provided Lessee is not in default of any of its obligations under this Lease on such expiration date. This renewal option may only be exercised by Lessee's written notice to Lessor not earlier than 180 days, nor later than 90 days, prior to the end of the Lease Term or any renewal term. FMR shall be equal to the value of the monthly rental of the Equipment installed and in use, with consideration given to the age, condition, utility and replacement costs for the Equipment, for the renewal term.

9.  Tax Benefits:

    Lessee understands that Lessor intends to claim the "Tax Benefits", consisting of the maximum Modified Accelerated Cost Recovery System deductions for the minimum useful life applicable to each item of Equipment, as provided by Sections 168(b) and (c) of the Internal Revenue Code of 1986, and analogous benefits under state law, with respect to the Equipment. Lessee represents and warrants that: (i) Lessee has not been, is not now, and during the term of this Lease will not become, and will not allow the Equipment to be used by or leased to, a tax-exempt entity or government agency; and (ii) Lessee is not now, and during the term of this Lease will not become, a public utility. Without limitation by the preceding sentence, Lessee agrees not to take any action, fail to take any action, or misstate any fact which may result in any loss to Lessor of the Tax Benefits.

    Lessee agrees to pay promptly to Lessor an amount which will fully compensate Lessor, on an after-tax basis, for any loss of the Tax Benefits, plus interest, penalties and additions to tax, any loss in time value of the Tax Benefits, and any taxes imposed on any such compensation payment, resulting from Lessee's acts, omissions or misstatements, including, without limitation, with respect to the representations and warranties in the preceding paragraph. A loss of Tax Benefits occurs at the earliest of: (i) the happening of any event causing the loss; (ii) payment by Lessor of any additional tax resulting from the loss; or (iii) any adjustment to the tax return of Lessor. Lessor's right to recovery of a loss of Tax Benefits shall survive the expiration or termination of this Lease.

10. Description of Equipment:

    See Schedule A which is attached hereto and made a part hereof by this reference.

The person executing this Schedule on behalf of Lessee hereby certifies that he or she has read, and is duly authorized to execute, this Schedule

Accepted by: Extreme Networks® Credit Corporation

BY: _____

NAME: _James F Harbison_____
                   Print

TITLE: _CFO_____

DATE: _4/4/00_____

LESSEE: Broadband Office, Inc.

BY: _____

NAME: _PEGGY FASI_____
                   Print

TITLE: _DIRECTOR OF FINANCE & CONTROLLER_

DATE: _4/4/00_____

TCC00017

# LEASE SCHEDULE NO. __05__

This Schedule and its supplements incorporate by this reference the terms and conditions of the Master Lease Agreement, Number __X163__, between

Extreme Networks® Credit Corporation (Lessor) and __Broadband Office, Inc.__ (Lessee).

1. Supplier: __Extreme Networks__

2. Location of Equipment: __2070 Chain Bridge Road, Suite 350, Vienna, VA 22182__

3. Equipment Value: $ __1,377,973.00__ (exclusive of sales and/or use taxes).

4. Lease Term: The Lease Term of the Equipment described in this Schedule shall begin on the Rent Commencement Date referenced below in Paragraph 6 and its expiration date shall be __18__ months after such Rent Commencement Date.

5. xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
   xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
   xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
   xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx See Addendum

6. Rent Commencement Date: __June 17__, 2000

7. Purchase Option:

   Lessee shall have the option to purchase the Equipment for its fair market value for continued use ("FMV"), on the expiration of this Lease or any renewal term, provided Lessee is not in default of any of its obligations under this Lease on such expiration date. This purchase option may only be exercised by Lessee's written notice to Lessor not earlier than 180 days, nor later than 90 days, prior to the end of the Lease Term or any renewal term. The purchase price for such Equipment shall be payable upon the expiration date of such term. FMV shall be equal to the value of the Equipment installed and in use, with consideration given to the age, condition, utility and replacement costs for the Equipment. In the event that Lessor and Lessee are unable to agree upon the purchase price for the Equipment, such purchase price will be determined by an independent appraiser to be selected by Lessor. Lessee shall be responsible for all applicable sales and/or use taxes on the Equipment. Upon exercise of this purchase option and payment of the purchase price, Lessor shall execute and deliver to Lessee such documents as Lessee may reasonably request in order to vest in Lessee all right, title and interest in the Equipment.

8. Renewal Option:

   Lessee shall have the option to renew this Lease, on the expiration date of this Lease or any renewal term, for the fair market rental for the continued use of the Equipment ("FMR") and on such other terms as may be agreed upon by Lessor and Lessee prior to such expiration date, provided Lessee is not in default of any of its obligations under this Lease on such expiration date. This renewal option may only be exercised by Lessee's written notice to Lessor not earlier than 180 days, nor later than 90 days, prior to the end of the Lease Term or any renewal term. FMR shall be equal to the value of the monthly rental of the Equipment installed and in use, with consideration given to the age, condition, utility and replacement costs for the Equipment, for the renewal term.

9. Tax Benefits:

   Lessee understands that Lessor intends to claim the "Tax Benefits", consisting of the maximum Modified Accelerated Cost Recovery System deductions for the minimum useful life applicable to each item of Equipment, as provided by Sections 168(b) and (c) of the Internal Revenue Code of 1986, and analogous benefits under state law, with respect to the Equipment. Lessee represents and warrants that: (i) Lessee has not been, is not now, and during the term of this Lease will not become, and will not allow the Equipment to be used by or leased to, a tax-exempt entity or government agency; and (ii) Lessee is not now, and during the term of this Lease will not become, a public utility. Without limitation by the preceding sentence, Lessee agrees not to take any action, fail to take any action, or misstate any fact which may result in any loss to Lessor of the Tax Benefits.

   Lessee agrees to promptly pay to Lessor an amount which will fully compensate Lessor, on an after-tax basis, for any loss of the Tax Benefits, plus interest, penalties and additions to tax, any loss in time value of the Tax Benefits, and any taxes imposed on any such compensation payment, resulting from Lessee's acts, omissions or misstatements, including, without limitation, with respect to the representations and warranties in the preceding paragraph. A loss of Tax Benefits occurs at the earliest of: (i) the happening of any event causing the loss; (ii) payment by Lessor of any additional tax resulting from the loss; or (iii) any adjustment to the tax return of Lessor. Lessor's right to recovery of a loss of Tax Benefits shall survive the expiration or termination of this Lease.

10. Description of Equipment:

    See Schedule A which is attached hereto and made a part hereof by this reference.

The person executing this Schedule on behalf of Lessee hereby certifies that he or she has read, and is duly authorized to execute, this Schedule

Accepted by: Extreme Networks® Credit Corporation

BY: _____

NAME: __John E Hutson__ Print

TITLE: __CFO__

DATE: __6/27/00__

LESSEE: __Broadband Office, Inc.__

BY: _____

NAME: __PERRY FABI__ Print

TITLE: __CONTROLLER__

DATE: __6/27/00__

# LEASE SCHEDULE NO. __06__

This Schedule and its supplements incorporate by this reference the terms and conditions of the Master Lease Agreement, Number __X163__ , between

Extreme Networks® Credit Corporation (Lessor) and __Broadband Office, Inc.__ (Lessee).

1. Supplier: __Extreme Networks__

2. Location of Equipment: __See Attachement A__

3. Equipment Value: $ __2,690,620.00__ (exclusive of sales and/or use taxes).

4. Lease Term: The Lease Term of the Equipment described in this Schedule shall begin on the Rent Commencement Date referenced below in Paragraph 6 and its expiration date shall be __18__ months after such Rent Commencement Date.

5. Rent: $ __157,724.14__ per month (exclusive of sales and/or use taxes) due and payable at the Rent Commencement Date and on the same date of each succeeding month of the Lease Term. The advance Rent payment shall be $ __315,448.29__ . This amount includes $ __157,724.14__ for the first month, and $ __157,724.14__ for the last __1__ month(s), of the Lease Term.

6. Rent Commencement Date: _____, 20 ____.

7. Purchase Option:

   Lessee shall have the option to purchase the Equipment for its fair market value for continued use ("FMV"), on the expiration of this Lease or any renewal term, provided Lessee is not in default of any of its obligations under this Lease on such expiration date. This purchase option may only be exercised by Lessee's written notice to Lessor not earlier than 180 days, nor later than 90 days, prior to the end of the Lease Term or any renewal term. The purchase price for such Equipment shall be payable upon the expiration date of such term. FMV shall be equal to the value of the Equipment installed and in use, with consideration given to the age, condition, utility and replacement costs for the Equipment. In the event that Lessor and Lessee are unable to agree upon the purchase price for the Equipment, such purchase price will be determined by an independent appraiser to be selected by Lessor. Lessee shall be responsible for all applicable sales and/or use taxes on the Equipment. Upon exercise of this purchase option and payment of the purchase price, Lessor shall execute and deliver to Lessee such documents as Lessee may reasonably request in order to vest in Lessee all right, title and interest in the Equipment.

8. Renewal Option:

   Lessee shall have the option to renew this Lease, on the expiration date of this Lease or any renewal term, for the fair market rental for the continued use of the Equipment ("FMR") and on such other terms as may be agreed upon by Lessor and Lessee prior to such expiration date, provided Lessee is not in default of any of its obligations under this lease on such expiration date. This renewal option may only be exercised by Lessee's written notice to Lessor not earlier than 180 days, nor later than 90 days, prior to the end of the Lease Term or any renewal term. FMR shall be equal to the value of the monthly rental of the Equipment installed and in use, with consideration given to the age, condition, utility and replacement costs for the Equipment, for the renewal term.

9. Tax Benefits:

   Lessee understands that Lessor intends to claim the "Tax Benefits", consisting of the maximum Modified Accelerated Cost Recovery System deductions for the minimum useful life applicable to each item of Equipment, as provided by Sections 168(b) and (c) of the Internal Revenue Code of 1986, and analogous benefits under state law, with respect to the Equipment. Lessee represents and warrants that: (i) Lessee has not been, is not now, and during the term of this Lease will not become, and will not allow the Equipment to be used by or leased to, a tax-exempt entity or government agency; and (ii) Lessee is not now, and during the term of this Lease will not become, a public utility. Without limitation by the preceding sentence, Lessee agrees not to take any action, fail to take any action, or misstate any fact which may result in any loss to Lessor of the Tax Benefits.

   Lessee agrees to pay promptly to Lessor an amount which will fully compensate Lessor, on an after-tax basis, for any loss of the Tax Benefits, plus interest, penalties and additions to tax, any loss in time value of the Tax Benefits, and any taxes imposed on any such compensation payment, resulting from Lessee's acts, omissions or misstatements, including, without limitation, with respect to the representations and warranties in the preceding paragraph. A loss of Tax Benefits occurs at the earliest of: (i) the happening of any event causing the loss; (ii) payment by Lessor of any additional tax resulting from the loss; or (iii) any adjustment to the tax return of Lessor. Lessor's right to recovery of a loss of Tax Benefits shall survive the expiration or termination of this Lease.

10. Description of Equipment:

    See Schedule A, which is attached hereto and made a part hereof by this reference.

The person executing this Schedule on behalf of Lessee hereby certifies that he or she has read, and is duly authorized to execute, this Schedule

Accepted by: Extreme Networks® Credit Corporation

BY: _Laura M Caul_

NAME: _____
Print

TITLE: _____

DATE: _____

LESSEE: __Broadband Office, Inc.__

BY: X _____

NAME: __PERRY FABI__
Print

TITLE: __DIR FINANCE + CONTROLLER__

DATE: __7/20/00__

TCC00019

Exhibit 2

**TECHNOLOGY**
**Credit Corporation**

BILL OF SALE
and
Assignment

MLA NO.: X163
Schedule: 01

TECHNOLOGY Credit Corporation ("Seller"), pursuant and subject to the provisions of the Equipment Acquisition Agreement dated as of October 10, 1988, between TECHNOLOGY Credit Corporation and Leasetec Corporation (the "Purchase Agreement"), for good and valuable consideration paid by Leasetec Corporation ("Purchaser"), receipt of which is hereby acknowledged, hereby grants, bargains, sells, conveys, assigns, transfers and delivers unto Purchaser, its successors and assigns, (i) all right, title and interest in and to the equipment which is described in Schedule A hereto (the "Equipment"), and (ii) all right, title and interest in and to the Manufacturer's Agreement with respect to, and insofar as it pertains to, the Equipment, and (iii) all rights of the lessor under the leases derived in Schedule A (the "Leases"), to the extent the Leases cover the Equipment, provided, however, that Seller shall continue to be liable for all of, and Purchaser shall not assume any of, the obligations of the lessor under the leases.

Seller hereby warrants its right to convey title and warrants that by execution and delivery hereof Seller ratifies and confirms conveyance to Buyer of the same title to the Equipment which it received from Manufacturer, and Seller's rights in the Leases to which the Equipment is subject, free from any lien or encumbrances whatsoever. In addition Seller confirms its covenants, representations and warranties set forth in the Purchase Agreement as they apply to the above-referenced Equipment and Leases.

Capitalized terms used herein shall have the same meanings as set forth in the Purchase Agreement.

IN WITNESS WHEREOF, Seller has executed this instrument by an authorized officer as of _____2/9/00_____.

TECHNOLOGY CREDIT CORPORATION

By: _____

Title: _____

TECHNOLOGY
Credit Corporation

BILL OF SALE
and
Assignment

MLA NO.: X163
Schedule: 02

TECHNOLOGY Credit Corporation ("Seller"), pursuant and subject to the provisions of the Equipment Acquisition Agreement dated as of October 10, 1988, between TECHNOLOGY Credit Corporation and Leasetec Corporation (the "Purchase Agreement"), for good and valuable consideration paid by Leasetec Corporation ("Purchaser"), receipt of which is hereby acknowledged, hereby grants, bargains, sells, conveys, assigns, transfers and delivers unto Purchaser, its successors and assigns, (i) all right, title and interest in and to the equipment which is described in Schedule A hereto (the "Equipment"), and (ii) all right, title and interest in and to the Manufacturer's Agreement with respect to, and insofar as it pertains to, the Equipment, and (iii) all rights of the lessor under the leases derived in Schedule A (the "Leases"), to the extent the Leases cover the Equipment. provided, however, that Seller shall continue to be liable for all of, and Purchaser shall not assume any of, the obligations of the lessor under the leases.

Seller hereby warrants its right to convey title and warrants that by execution and delivery hereof Seller ratifies and confirms conveyance to Buyer of the same title to the Equipment which it received from Manufacturer, and Seller's rights in the Leases to which the Equipment is subject, free from any lien or encumbrances whatsoever. In addition Seller confirms its covenants, representations and warranties set forth in the Purchase Agreement as they apply to the above-referenced Equipment and Leases.

Capitalized terms used herein shall have the same meanings as set forth in the Purchase Agreement.

IN WITNESS WHEREOF, Seller has executed this instrument by an authorized officer as of _____

TECHNOLOGY CREDIT CORPORATION

By: _____

Title: _____

**TECHNOLOGY**
**Credit Corporation**

BILL OF SALE
and
Assignment

MLA NO.: X163
Schedule: 03

TECHNOLOGY Credit Corporation ("Seller"), pursuant and subject to the provisions of the Equipment Acquisition Agreement dated as of October 10, 1988, between TECHNOLOGY Credit Corporation and Leasetec Corporation (the "Purchase Agreement"), for good and valuable consideration paid by Leasetec Corporation ("Purchaser"), receipt of which is hereby acknowledged, hereby grants, bargains, sells, conveys, assigns, transfers and delivers unto Purchaser, its successors and assigns, (i) all right, title and interest in and to the equipment which is described in Schedule A hereto (the "Equipment"), and (ii) all right, title and interest in and to the Manufacturer's Agreement with respect to, and insofar as it pertains to, the Equipment, and (iii) all rights of the lessor under the leases derived in Schedule A (the "Leases"), to the extent the Leases cover the Equipment, provided, however, that Seller shall continue to be liable for all of, and Purchaser shall not assume any of, the obligations of the lessor under the leases.

Seller hereby warrants its right to convey title and warrants that by execution and delivery hereof Seller ratifies and confirms conveyance to Buyer of the same title to the Equipment which it received from Manufacturer, and Seller's rights in the Leases to which the Equipment is subject, free from any lien or encumbrances whatsoever. In addition Seller confirms its covenants, representations and warranties set forth in the Purchase Agreement as they apply to the above-referenced Equipment and Leases.

Capitalized terms used herein shall have the same meanings as set forth in the Purchase Agreement.

IN WITNESS WHEREOF, Seller has executed this instrument by an authorized officer as of ___3/28/00___.

TECHNOLOGY CREDIT CORPORATION

By: _____

Title: ___CFO___

**TECHNOLOGY**
Credit Corporation

BILL OF SALE
and
Assignment

MLA NO.: X163
Schedule: 04

TECHNOLOGY Credit Corporation ("Seller"), pursuant and subject to the provisions of the Equipment Acquisition Agreement dated as of October 10, 1988, between TECHNOLOGY Credit Corporation and Leasetec Corporation (the "Purchase Agreement"), for good and valuable consideration paid by Leasetec Corporation ("Purchaser"), receipt of which is hereby acknowledged, hereby grants, bargains, sells, conveys, assigns, transfers and delivers unto Purchaser, its successors and assigns, (i) all right, title and interest in and to the equipment which is described in Schedule A hereto (the "Equipment"), and (ii) all right, title and interest in and to the Manufacturer's Agreement with respect to, and insofar as it pertains to, the Equipment, and (iii) all rights of the lessor under the leases derived in Schedule A (the "Leases"), to the extent the Leases cover the Equipment, provided, however, that Seller shall continue to be liable for all of, and Purchaser shall not assume any of, the obligations of the lessor under the leases.

Seller hereby warrants its right to convey title and warrants that by execution and delivery hereof Seller ratifies and confirms conveyance to Buyer of the same title to the Equipment which it received from Manufacturer, and Seller's rights in the Leases to which the Equipment is subject, free from any lien or encumbrances whatsoever.  In addition Seller confirms its covenants, representations and warranties set forth in the Purchase Agreement as they apply to the above-referenced Equipment and Leases.

Capitalized terms used herein shall have the same meanings as set forth in the Purchase Agreement.

IN WITNESS WHEREOF, Seller has executed this instrument by an authorized officer as of _____ 4/4/00 _____.

TECHNOLOGY CREDIT CORPORATION

By: _____

Title: _____

**TECHNOLOGY**
**Credit Corporation**

BILL OF SALE
and
Assignment

MLA NO.:  X163
Schedule:  05

TECHNOLOGY Credit Corporation ("Seller"), pursuant and subject to the provisions of the Equipment Acquisition Agreement dated as of October 10, 1988, between TECHNOLOGY Credit Corporation and Leasetec Corporation (the "Purchase Agreement"), for good and valuable consideration paid by Leasetec Corporation ("Purchaser"), receipt of which is hereby acknowledged, hereby grants, bargains, sells, conveys, assigns, transfers and delivers unto Purchaser, its successors and assigns, (i) all right, title and interest in and to the equipment which is described in Schedule A hereto (the "Equipment"), and (ii) all right, title and interest in and to the Manufacturer's Agreement with respect to, and insofar as it pertains to, the Equipment, and (iii) all rights of the lessor under the leases derived in Schedule A (the "Leases"), to the extent the Leases cover the Equipment, provided, however, that Seller shall continue to be liable for all of, and Purchaser shall not assume any of, the obligations of the lessor under the leases.

Seller hereby warrants its right to convey title and warrants that by execution and delivery hereof Seller ratifies and confirms conveyance to Buyer of the same title to the Equipment which it received from Manufacturer, and Seller's rights in the Leases to which the Equipment is subject, free from any lien or encumbrances whatsoever.  In addition Seller confirms its covenants, representations and warranties set forth in the Purchase Agreement as they apply to the above-referenced Equipment and Leases.

Capitalized terms used herein shall have the same meanings as set forth in the Purchase Agreement.

IN WITNESS WHEREOF, Seller has executed this instrument by an authorized officer as of _____ 5/22/60 _____.

TECHNOLOGY CREDIT CORPORATION

By: _____

Title: _____

Exhibit 2

# TECHNOLOGY
## Credit Corporation

BILL OF SALE
and
Assignment

MLA NO.: X163
Schedule: 06

TECHNOLOGY Credit Corporation ("Seller"), pursuant and subject to the provisions of the Equipment Acquisition Agreement dated as of October 10, 1988, between TECHNOLOGY Credit Corporation and Leasetec Corporation (the "Purchase Agreement"), for good and valuable consideration paid by Leasetec Corporation ("Purchaser"), receipt of which is hereby acknowledged, hereby grants, bargains, sells, conveys, assigns, transfers and delivers unto Purchaser, its successors and assigns, (i) all right, title and interest in and to the equipment which is described in Schedule A hereto (the "Equipment"), and (ii) all right, title and interest in and to the Manufacturer's Agreement with respect to, and insofar as it pertains to, the Equipment, and (iii) all rights of the lessor under the leases derived in Schedule A (the "Leases"), to the extent the Leases cover the Equipment, provided, however, that Seller shall continue to be liable for all of, and Purchaser shall not assume any of, the obligations of the lessor under the leases.

Seller hereby warrants its right to convey title and warrants that by execution and delivery hereof Seller ratifies and confirms conveyance to Buyer of the same title to the Equipment which it received from Manufacturer, and Seller's rights in the Leases to which the Equipment is subject, free from any lien or encumbrances whatsoever. In addition Seller confirms its covenants, representations and warranties set forth in the Purchase Agreement as they apply to the above-referenced Equipment and Leases.

Capitalized terms used herein shall have the same meanings as set forth in the Purchase Agreement.

IN WITNESS WHEREOF, Seller has executed this instrument by an authorized officer as of _____ 7/20/00 _____

TECHNOLOGY CREDIT CORPORATION

By: _____

Title: _____ CFO _____

TCC00026

Exhibit 3

TCC00027

Exhibit 3

KEY EQUIPMENT FINANCE
KEY-DOMESTIC
ACCOUNT PAYMENT HISTORY

Page    1
LEASEPAK 1/ 4.5a

Report : R0909
User ID : GBHCPD6

Lessee NAME: BROADBAND OFFICE

SELECTED lessor: X165-01

| INVOICE NO. / CREDIT MEMO | PAYMENT DUE DATE | CHECK NUMBER | DATE | TIME | KEY DATE | OPR DRK | TRANSACTION TYPE | AMOUNT | REASON |
|---|---|---|---|---|---|---|---|---|---|
| 1671925 | 2/28/01 | 107128 | 3/14/01 | 5:28p | 3/12/01 | KIM 125 | PARTIAL PAYMENT | 16,685.54 | |
| 1604386 | 1/28/01 | 107757 | 3/14/01 | 5:25p | 3/12/01 | KIM 125 | PARTIAL PAYMENT | 16,685.54 | |
| 1635286 | 12/28/00 | 107737 | 3/14/00 | 5:23p | 3/12/01 | KIM 125 | PARTIAL PAYMENT | 16,685.54 | |
| 1573584 | 11/28/00 | 105270 | 12/26/00 | 12:46p | 12/28/00 | GDE 125 | PAYMENT NORMAL | 20,482.81 | 11 |
| 1573584 | 11/28/00 | 105270 | 12/26/00 | 12:46p | 12/22/00 | GDE 125 | PAYMENT USE TAX | 921.73 | |
| 1544733 | 10/28/00 | 103412 | 11/06/00 | 12:22p | 11/02/00 | MDE 125 | PAYMENT NORMAL | 20,432.81 | 10 |
| 1544733 | 10/28/00 | 103413 | 11/06/00 | 12:22p | 11/02/00 | MDE 125 | PAYMENT USE TAX | 921.73 | |
| 1513402 | 9/28/00 | 102246 | 10/03/00 | 12:08p | 10/02/00 | SUW 125 | PAYMENT NORMAL | 20,482.81 | 9 |
| 1513402 | 9/28/00 | 102249 | 10/03/00 | 12:08p | 10/07/00 | SUW 125 | PAYMENT USE TAX | 921.73 | |
| 1484347 | 8/28/00 | 101230 | 9/07/00 | 4:46p | 9/05/00 | GDE 125 | PAYMENT NORMAL | 20,482.81 | 8 |
| 1484347 | 8/28/00 | 101230 | 9/07/00 | 4:46p | 9/05/00 | GDE 125 | PAYMENT USE TAX | 921.73 | |
| 1451399 | 7/28/00 | 5256 | 8/03/00 | 1:32p | 8/02/00 | GDE 175 | PAYMENT NORMAL | 20,482.81 | 7 |
| 1451399 | 7/28/00 | 5256 | 8/03/00 | 1:37p | 8/02/00 | GDE 125 | PAYMENT USE TAX | 921.73 | |
| 1475808 | 6/28/00 | 4477 | 7/07/00 | 12:54p | 7/06/00 | GDE 125 | PAYMENT NORMAL | 20,482.81 | 6 |
| 1425808 | 6/28/00 | 4677 | 7/07/00 | 12:54p | 7/06/00 | GDE 125 | PAYMENT USE TAX | 921.73 | |
| 1397515 | 5/28/00 | 3730 | 6/05/00 | 12:44p | 6/01/00 | NFB 125 | PAYMENT NORMAL | 20,482.81 | 5 |
| 1397515 | 5/28/00 | 3730 | 6/05/00 | 12:44p | 6/01/00 | NFB 125 | PAYMENT USE TAX | 921.73 | |
| 1367510 | 4/28/00 | 3730 | 6/05/00 | 12:45p | 6/01/00 | NFD 125 | PAYMENT NORMAL | 20,482.81 | 4 |
| 1367510 | 4/28/00 | 3730 | 6/05/00 | 12:45p | 6/01/00 | NFD 125 | PAYMENT USE TAX | 921.73 | |
| 1367509 | 3/28/00 | 3730 | 6/05/00 | 12:48p | 6/01/00 | NFB 125 | PAYMENT NORMAL | 20,482.81 | 3 |
| 1367509 | 3/28/00 | 3730 | 6/05/00 | 12:48p | 6/01/00 | NFB 125 | PAYMENT USE TAX | 921.73 | |
| 1367508 | 2/28/00 | 3730 | 3/29/00 | 2:23p | 3/29/00 | TAT 125 | PAYMENT NORMAL | 1,442.30 | |
| 1367508 | 2/28/00 | | 3/29/00 | 2:23p | 3/29/00 | TAT 125 | PAYMENT NORMAL | 40,965.62 | 2 |
| | | | | | | | RENTAL CREDIT OF 41166.28 | | |
| 1367508 | 2/28/00 | | 3/29/00 | 2:23p | 3/29/00 | TAT 125 | PAYMENT USE TAX | 901.07 | |
| | | | | | | | RENTAL CREDIT OF 41166.28 | | |

SUMMARY OF MONIES RECEIVED:   LEASE PAYMENT:   275,397.53   SALES/USE TAX:   10,135.03   OTHER MISC:   0.00
                              PROPERTY TAX :   0.00         LATE CHARGE :    0.00       CAPITAL RE:   0.00
                              FMLT    :         0.00

Printed by DAZEL                          Page 1                          Oct 1 15:23:09 2001 EDT

TCC00028

Exhibit 3

Run date: 10/01/01    Time: 15:22                    KEY EQUIPMENT FINANCE                                    Page    1
Report  : RUP09                                       KEF-DOMESTIC                                      LEASEPAK TI 4.30-
User ID : GDHCMDE                                     ACCOUNT PAYMENT HISTORY

                                                                                                        SELECTED Lease: ¥165-02

Lessee NAME: BROADBAND OFFICE

| INVOICE NO. / CREDIT MEMO | PAYMENT DUE DATE | CHECK NUMBER | DATE | TIME | PPF DATE | OPR BNK | TRANSACTION TYPE | AMOUNT | REASON |
|---|---|---|---|---|---|---|---|---|---|
| 1664772 | 2/11/01 | 107737 | 3/14/01 | 5:25p | 3/12/01 | KTM 125 | PARTIAL PAYMENT | 36,245.48 | |
| 1564938 | 11/11/00 | 107738 | 3/14/01 | 5:26p | 3/12/01 | KTM 125 | PAYMENT USE TAX | 561.85 | |
| 1635622 | 1/11/01 | 107737 | 3/14/01 | 5:25p | 3/12/01 | KTM 125 | PARTIAL PAYMENT | 34,425.48 | |
| 16DBDD2 | 12/11/00 | 105911 | 12/29/00 | 3:13p | 12/27/00 | HDE 125 | PAYMENT NORMAL | 44,467.52 | |
| 1608603 | 12/11/00 | 105911 | 12/29/00 | 3:13p | 12/27/00 | HDE 125 | PAYMENT USE TAX | 2,001.05 | 10 |
| 1564938 | 11/11/00 | 104132 | 11/21/00 | 12:38p | 11/17/00 | CUE 125 | PAYMENT NORMAL | 44,467.52 | |
| 1564938 | 11/11/00 | 104132 | 11/21/00 | 12:38p | 11/17/00 | CDE 125 | PAYMENT USE TAX | 1,556.37 | 9 |
| 1534242 | 10/11/00 | 104132 | 11/21/00 | 12:38p | 11/17/00 | CDE 125 | PAYMENT USE TAX | 444.68 | |
| 1534242 | 10/11/00 | 102719 | 10/20/00 | 12:15p | 10/19/00 | RBA 125 | PAYMENT NORMAL | 44,467.52 | 8 |
| 1534242 | 10/11/00 | 102719 | 10/20/00 | 12:11p | 10/19/00 | RBA 125 | PAYMENT USE TAX | 2,001.05 | |
| 180AB85 | 9/11/00 | 101633 | 9/20/00 | 10:24a | 9/18/00 | GDE 125 | PAYMENT NORMAL | 44,461.55 | |
| 1505885 | 9/11/00 | 101633 | 9/20/00 | 10:24a | 9/18/00 | CDE 125 | PAYMENT USE TAX | 1,556.34 | 7 |
| 1473228 | 8/11/00 | 101633 | 9/20/00 | 10:24a | 4/15/00 | CDE 125 | PAYMENT USE TAX | 444.71 | |
| 1473228 | 8/11/00 | 101230 | 9/07/00 | 4:47p | 9/05/00 | CDE 125 | PAYMENT NORMAL | 44,467.52 | 6 |
| 1473228 | 8/11/00 | 101230 | 9/07/00 | 4:47p | 9/05/00 | CDE 125 | PAYMENT USE TAX | 1,556.34 | |
| 1445120 | 7/11/00 | 5256 | 8/03/00 | 1:32p | 8/02/00 | CDE 125 | PAYMENT NORMAL | 44,467.52 | 5 |
| 1445120 | 7/11/00 | 5256 | 8/03/00 | 1:32p | 8/02/00 | CDE 125 | PAYMENT USE TAX | 2,001.05 | |
| 1418269 | 6/11/00 | 4477 | 7/07/00 | 12:55p | 7/06/00 | CDE 125 | PAYMENT NORMAL | 44,467.52 | 4 |
| 1418269 | 6/11/00 | 4477 | 7/07/00 | 12:55p | 7/06/00 | GDE 125 | PAYMENT USE TAX | 2,001.05 | |
| 1380401 | 5/11/00 | 3730 | 6/05/00 | 17:43p | 6/01/00 | NFD 125 | PAYMENT NORMAL | 44,667.62 | 3 |
| 1380401 | 5/11/00 | 3730 | 6/05/00 | 12:14p | 6/01/00 | NFB 125 | PAYMENT USE TAX | 2,001.05 | |
| 1380400 | 4/11/00 | 3730 | 6/05/00 | 12:14p | 6/01/00 | NFB 125 | PAYMENT USE TAX | 4,002.10 | 1 & 2 |
| 1380400 | 4/11/00 | | 4/17/00 | 4:43p | 4/11/00 | TAT 125 | PAYMENT NORMAL | 86,935.04 | |

SUMMARY OF MONIES RECEIVED:   LEASE PAYMENT:   417,344.16    SALES/USE TAX:   19,912.64    OTHER MISC:   0.00
                              PROPERTY TAX :        0.00    LATE CHARGE  :        0.00    CAPITAL RE:   0.00
                              NSUT         :        0.00

Printed by DAZEL                                Page 1                                   Det 1 15:23:30 2001 EDT

TCC00029

**Exhibit 3**

```
Run date: 10/01/01   Time: 15:23              KEY EQUIPMENT FINANCE                              Page   1
Report : K0908                                  KEF-DOMESTIC                                  LEASEPAK II 4.0c-
User ID : GRMCPD6                          ACCOUNT PAYMENT HISTORY

                                                                                          SELECTED Lease: X163-00

Lessee NAME: BROADBAND OFFICE

INVOICE NO. /     PAYMENT       CHECK    ------------------- TRANSACTION -------------------
# CREDIT MEMO    DUE DATE      NUMBER     DATE     TIME  EFF DATE  OPR BNK  TYPE                 AMOUNT  REASON

   1667316       2/20/01       107736    3/14/01   1:27p  3/12/01  KIM 125  PARTIAL PAYMENT     66,013.70
   1639000       5/20/01       107737    3/14/01   1:24p  3/12/01  KIM 125  PARTIAL PAYMENT     66,013.70
   1611519      12/20/00       107737    3/14/01   1:22p  3/12/01  KIM 125  PARTIAL PAYMENT     66,013.70
   1568387      11/20/00       104541   11/27/00  12:51p 11/24/00  GDE 125  PAYMENT NORMAL      80,988.45  } 9
   1568387      11/20/00       104541   11/27/00  12:51p 11/24/00  GDE 125  PAYMENT USE TAX      3,644.50
   1538031      10/20/00       103413   11/06/00  12:20p 11/02/00  MDI 125  PAYMENT NORMAL      80,988.45  } 8
   1538031      10/20/00       103413   11/06/00  12:20p 11/02/00  MDE 125  PAYMENT USE TAX      3,644.50
   1509734       9/20/00       102249   10/03/00  12:08p 10/02/00  EHM 125  PAYMENT NORMAL      80,988.45  } 7
   1509734       9/20/00       102249   10/03/00  12:08p 10/02/00  EHM 125  PAYMENT USE TAX      3,644.50
   1478625       8/20/00       101230    9/07/00   0:14p  9/06/00  GDE 125  PAYMENT NORMAL      80,988.45  } 6
   1478625       8/20/00       101230    9/07/00   0:14p  9/06/00  GDE 125  PAYMENT USE TAX      3,644.50
   1448016       7/20/00         5256    8/03/00   1:32p  8/02/00  GDE 125  PAYMENT NORMAL      80,988.45  } 5
   1448016       7/20/00         5256    8/03/00   1:32p  8/02/00  GDE 125  PAYMENT USE TAX      3,644.50
   1423361       6/20/00         4477    7/07/00  12:55p  7/06/00  GAE 125  PAYMENT NORMAL      80,988.45  } 4
   1423361       6/20/00         4477    7/07/00  12:55p  7/06/00  GAE 125  PAYMENT USE TAX      3,644.50
   1391933       5/20/00         3730    6/05/00  12:50p  6/01/00  NFD 125  PAYMENT NORMAL      80,988.45  } 3
   1391933       5/20/00         3730    6/05/00  12:50p  6/01/00  NFD 125  PAYMENT USE TAX      3,644.50
   1391932       4/20/00         3730    6/05/00  12:55p  6/01/00  NFE 125  PAYMENT USE TAX      7,289.00  } 1,2
   1391932       4/20/00                 4/20/00   1:33p  4/20/00  TAT 125  PAYMENT NORMAL     161,976.90

SUMMARY OF MONIES RECEIVED:   LEASE PAYMENT:   926,037.15   SALES/USE TAX:   22,800.50   OTHER MISC:   0.00
                              PROPERTY TAX :        0.00    LATE CHARGE  :        0.00   CAPITAL REL:  0.00
                              PMNT         :        0.00
```

Printed by DAZEL                          Page 1                          Oct 1 15:23:51 2001 EDT

TCC00030

Run date: 10/01/01    Time: 15:23

KEY EQUIPMENT FINANCE
KEF-DOMESTIC
ACCOUNT PAYMENT HISTORY

Page      1
LEASEPAK II 4.3b-

Report : RD909
User ID : GDNCPD6

SELECTED Lease: X165-04

Lessee NAME: BROADBAND OFFICE

| INVOICE NO. / # CREDIT MEMO | PAYMENT DUE DATE | CHECK NUMBER | DATE | TIME | EFF DATE | DPR BNK | TRANSACTION TYPE | AMOUNT | REASON |
|---|---|---|---|---|---|---|---|---|---|
| 1671936 | 2/28/01 | 10773E | 3/14/01 | 5:25p | 3/12/01 | KIM 125 | PARTIAL PAYMENT | 15,559.14 | |
| 1665324 | 1/29/01 | 107737 | 3/14/01 | 5:25p | 3/12/01 | KIM 125 | PARTIAL PAYMENT | 15,559.14 | |
| 1616186 | 12/28/00 | 107727 | 3/14/01 | 5:25p | 3/12/01 | KIM 125 | PARTIAL PAYMENT | 15,559.14 | |
| 1572685 | 11/28/00 | 10527D | 12/26/00 | 12:46p | 12/22/00 | GDE 125 | PAYMENT NORMAL | 16,843.25 | 9 |
| 1573505 | 11/29/00 | 10527D | 12/26/00 | 12:46p | 12/22/00 | GDE 125 | PAYMENT USE TAX | 847.96 | |
| 1542521 | 10/29/00 | 103737 | 11/13/00 | 11:26a | 11/10/00 | CDE 125 | PAYMENT NORMAL | 16,843.79 | 8 |
| 1545521 | 10/29/00 | 103737 | 11/13/00 | 11:26a | 11/10/00 | CDE 125 | PAYMENT USE TAX | 847.96 | |
| 1514187 | 9/29/00 | 10224D | 10/03/00 | 12:08p | 10/02/00 | SNW 125 | PAYMENT NORMAL | 16,843.25 | 7 |
| 1514187 | 9/29/00 | 10224D | 10/03/00 | 12:08p | 10/02/00 | SNW 125 | PAYMENT USE TAX | 847.96 | |
| 1494714 | 8/29/00 | 10123D | 9/07/00 | 4:46p | 9/05/00 | CDE 125 | PAYMENT NORMAL | 16,843.25 | 6 |
| 1494714 | 8/29/00 | 10123D | 9/07/00 | 4:46p | 9/05/00 | CDE 125 | PAYMENT USE TAX | 847.96 | |
| 1452193 | 7/29/00 | 5256 | 8/03/00 | 1:32p | 8/02/00 | GDE 125 | PAYMENT NORMAL | 16,843.25 | 5 |
| 1452193 | 7/29/00 | 5256 | 8/03/00 | 1:32p | 8/02/00 | GDE 125 | PAYMENT USE TAX | 847.96 | |
| 1425808 | 6/29/00 | 4477 | 7/07/00 | 12:54p | 7/06/00 | CDE 125 | PAYMENT NORMAL | 16,843.25 | 4 |
| 1425809 | 6/29/00 | 4477 | 7/07/00 | 12:54p | 7/06/00 | CDE 125 | PAYMENT USE TAX | 847.96 | |
| 1407475 | 5/29/00 | 3773D | 6/05/00 | 12:51p | 6/01/00 | NFB 125 | PAYMENT NORMAL | 16,843.25 | 3 |
| 1407475 | 5/29/00 | 3773D | 6/05/00 | 12:51p | 6/01/00 | NFB 125 | PAYMENT USE TAX | 847.96 | |
| 1386981 | 4/28/00 | 3773D | 6/05/00 | 12:51p | 6/01/00 | NFB 125 | PAYMENT USE TAX | 1,691.92 | 2 |
| 1386981 | 4/28/00 | | 4/28/00 | 4:40p | 4/28/00 | TAT 125 | PAYMENT USE TAX | 0.00 | 1 |
| | | | | | | | OVERPAYMENT ON RENTAL CREDIT | | |
| 1386981 | 4/29/00 | | 4/28/00 | 4:39p | 4/29/00 | TAT 125 | PAYMENT NORMAL | 27,666.50 | |

SUMMARY OF MONIES RECEIVED:    LEASE PAYMENT:  215,666.67    SALES/USE TAX:  7,631.64    OTHER MISC:  0.00
                               PROPERTY TAX :       0.00    LATE CHARGE :        0.00    CAPITAL RE:  0.00
                               FUUT :               0.00

TCC00031

Run date: 10/01/01    Time: 15:25
Report  : R0909
User ID : CUHEPD6

KEY EQUIPMENT FINANCE
NON-DOMESTIC
ACCOUNT PAYMENT HISTORY

Page      1
LEASEPAK II 6.0a

SELECTED Lease: X163-05

Lessee NAME: BROADBAND OFFICE

| INVOICE NO./ J CREDIT MEMO | PAYMENT DUE DATE | CHECK NUMBER | DATE | TIME | EFF DATE | OPR BNK | TRANSACTION TYPE | AMOUNT | REASON |
|---|---|---|---|---|---|---|---|---|---|
| 1666324 | 2/17/01 | 107738 | 3/15/01 | 11:07a | 3/12/01 | KIM 125 | PARTIAL PAYMENT | 45,150.62 | |
| 1666324 | 2/17/01 | | 3/15/01 | 11:06 | 3/12/01 | KIM 125 | PMT REV-PARTIAL | 45,150.62 | UNBK |
| 1666324 | 2/17/01 | | 3/14/01 | 5:25p | 3/12/01 | KIM 125 | PARTIAL PAYMENT | 45,150.62 | |
| 1636107 | 1/17/01 | 107757 | 3/14/01 | 5:25p | 3/12/01 | KIM 125 | PARTIAL PAYMENT | 45,150.62 | |
| 1610279 | 12/17/00 | 107757 | 3/14/01 | 5:25p | 3/12/01 | KIM 125 | PARTIAL PAYMENT | 45,150.62 | |
| 1566693S | 11/17/00 | 104132 | 11/21/00 | 12:36p | 11/17/00 | GDE 125 | PAYMENT NORMAL | 60,300.10 | 6 |
| 1566693S | 11/17/00 | 104132 | 11/21/00 | 12:36p | 11/17/00 | GDE 125 | PAYMENT USE TAX | 2,713.51 | |
| 1536766 | 10/17/00 | 103044 | 10/26/00 | 1:16p | 10/23/00 | KEN 125 | PAYMENT NORMAL | 60,300.10 | 5 |
| 1536766 | 10/17/00 | 103044 | 10/25/00 | 1:16p | 10/23/00 | KEN 125 | PAYMENT USE TAX | 2,713.51 | |
| 1507719 | 9/17/00 | 101609 | 9/18/00 | 1:10p | 9/14/00 | GDE 125 | PAYMENT NORMAL | 60,300.10 | 4 |
| 1507719 | 9/17/00 | 101609 | 9/18/00 | 1:10p | 9/14/00 | GDE 125 | PAYMENT USE TAX | 2,713.51 | |
| 1477285S | 8/17/00 | 101230 | 9/07/00 | 4:47p | 9/05/00 | GDE 125 | PAYMENT NORMAL | 60,300.10 | 3 |
| 1477285S | 8/17/00 | 101230 | 9/07/00 | 4:47p | 9/05/00 | GDE 125 | PAYMENT USE TAX | 2,713.51 | |
| 1452422 | 7/17/00 | 101230 | 9/07/00 | 4:47p | 9/05/00 | GDE 125 | PAYMENT NORMAL | 60,300.10 | 2 |
| 1452422 | 7/17/00 | 101230 | 9/07/00 | 4:47p | 9/05/00 | GDE 125 | PAYMENT USE TAX | 2,713.51 | |
| 1452421 | 6/17/00 | 101230 | 9/07/00 | 4:46p | 9/05/00 | GDE 125 | PAYMENT USE TAX | 18,602.62 | 1 |
| 1452421 | 6/17/00 | | 6/30/00 | 4:24p | 6/17/00 | TAT 125 | PAYMENT NORMAL | 413,991.90 | |

SUMMARY OF MONIES RECEIVED:    LEASE PAYMENT:    862,346.26    SALES/USE TAX:    32,170.18    OTHER MISC:    0.00
                               PROPERTY TAX :         0.00    LATE CHARGE :          0.00    CAPITAL RE:    0.00
                               PMNT :                 0.00

TCC00032

Run date: 10/01/01    Time: 15:22

KEY EQUIPMENT FINANCE
REF-DOMESTIC
ACCOUNT PAYMENT HISTORY

Page      1
LEASEPAK II 4.3a

Report  : R0409
User ID : EWHCFP6

SELECTED lease: X165.06

Lessee NAME: BROADBAND OFFICE

| INVOICE NO. / CREDIT MEMO | PAYMENT DUE DATE | CHECK NUMBER | DATE | TIME | EFF DATE | OPR BNK | TRANSACTION TYPE | AMOUNT | HRXDON |
|---|---|---|---|---|---|---|---|---|---|
| 1670057 | 2/26/01 | 107738 | 3/14/01 | 5:28p | 3/12/01 | KLM 125 | PARTIAL PAYMENT | 128,594.76 | |
| 1601725 | 1/26/01 | 107737 | 3/14/01 | 5:24p | 3/12/01 | KLM 125 | PARTIAL PAYMENT | 128,601.48 | |
| 1614241 | 12/26/00 | 106418 | 1/16/01 | 4:21p | 1/12/01 | MDE 125 | PAYMENT NORMAL | 157,724.18 | |
| 1614241 | 12/26/00 | 106418 | 1/16/01 | 4:21p | 1/12/01 | MDE 125 | PAYMENT USE TAX | 7,149.55 | |
| 1571000 | 11/26/00 | 105278 | 12/26/00 | 12:46p | 12/22/00 | GDB 125 | PAYMENT NORMAL | 157,724.14 | |
| 1571000 | 11/26/00 | 105278 | 12/26/00 | 12:46p | 12/22/00 | GDB 125 | PAYMENT USE TAX | 7,149.55 | |
| 1641141 | 10/26/00 | 103417 | 11/06/00 | 12:15p | 11/02/00 | MDE 125 | PAYMENT NORMAL | 157,724.14 | |
| 1641141 | 10/26/00 | 103417 | 11/06/00 | 12:15p | 11/02/00 | MDE 125 | PAYMENT USE TAX | 7,149.55 | |
| 1513403 | 9/26/00 | 102249 | 10/03/00 | 12:07p | 10/02/00 | SHW 125 | PAYMENT NORMAL | 157,724.16 | |
| 1513403 | 9/26/00 | 102249 | 10/03/00 | 12:07p | 10/02/00 | SHW 125 | PAYMENT USE TAX | 7,149.55 | |
| 1499060 | 8/26/00 | 102249 | 10/03/00 | 12:07p | 10/02/00 | SHW 125 | PAYMENT NORMAL | 157,724.56 | |
| 1499060 | 8/26/00 | 102249 | 10/03/00 | 12:07p | 10/02/00 | SHW 125 | PAYMENT USE TAX | 16,289.10 | |
| 1499058 | 7/26/00 | 102249 | 8/02/00 | 11:49a | 7/26/00 | TAF 125 | PAYMENT NORMAL | 315,448.28 | |

SUMMARY OF MONIES RECEIVED:    LEASE PAYMENT:    1,361,268.24    SALES/USE TAX:    56,046.85    OTHER MISC:    0.00
PROPERTY TAX  :    0.00    LATE CHARGE :    0.00    CAPITAL RE:    0.00
MMUT    :    0.00

4p    6/17/00   TAF 125    PAYMENT NORMAL    413,381.80

SUMMARY OF MONIES RECEIVED:    LEASE PAYMENT:    862,944.28    SALES/USE TAX:    52,170.16    OTHER MISC:    0.00
PROPERTY TAX  :    0.00    LATE CHARGE :    0.00    CAPITAL RE:    0.00
MMUT    :    0.00

TCC00033