# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | |
| | |
| BROADBAND OFFICE, INC., | Civil Action  No. 04-407 (GMS) |
| | |
| Debtor. | Bankruptcy Case No. 01-1720 (GMS) |
| | |
| | Chapter 11 |

BROADBAND OFFICE, INC.,

                Plaintiff,

vs.

TECHNOLOGY CREDIT
CORPORATION d/b/a EXTREME
NETWORKS CREDIT CORPORATION,
and
EXTREME NETWORKS, INC.,
and
KEY EQUIPMENT FINANCE, INC. f/k/a
KEY CORPORATE CAPITAL, INC. f/k/a
LEASETEC CORPORATION
                Defendants.

## PLAINTIFF'S BRIEF IN OPPOSITION TO EXTREME NETWORKS INC.'S MOTION FOR SUMMARY JUDGMENT

March 29, 2007

WERB & SULLIVAN

Brian A. Sullivan   (DE #2098)
Robert D. Wilcox  (DE #4321)
Amy D. Brown     (DE #4077)
300 Delaware Avenue, 13th Floor
P. O. Box 25046
Wilmington,  DE   19899
Telephone:  (302)  652-1100

Attorneys for Broadband Office, Inc.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………………………………     3

PRELMINARY STATEMENT……………………………………………     4

STATEMENT OF FACTS……………………………………………      6

ARGUMENT……………………………………………………………13

    A.  Legal Standard for Summary Judgment ……………………………… 13

    B.  Extreme Networks, Inc. has failed to establish that it is not a party
from whom the Transfers may be recovered  …………………………     13

    C.   The Stipulation Tolling Statute of Limitations was signed by
an Attorney who   represented Extreme Networks, Inc.………………     15

    D.   The Plaintiff's Claim against Extreme in the Amended Complaint
 Relates Back to the Original Complaint ………………………….     17

    E.   Extreme's Argument of Prejudice Must Fail……………………..     20

CONCLUSION………………………………………………………     21.

## TABLE OF AUTHORITIES

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986)…........................................................  13

*Fenold v. Green*, 175 F.2d 247, 249 (2d Cir.1949)………………………………  14

*Foman v. Davis,* 371 U.S. 178, 182 (1962)………………………………………  18

*Horner v. First National Bank,* 149 Va. 854, 141 S.E. 767, 770 (1928)…………  14

*In re Art Shirt, Ltd.* 34 B.R.918, 921 (Ed. Pa. 1983)………………………………  14

*In re Big Three Transp., Inc.*, 41 Bankr. 16, 20-21 (Bankr. W.D. Ark. 1983) ……  15

*In re C-L Cartage Co.*, 899 F.2d at 1494…………………………………………  14, 15

*In re David Jones Builder, Inc.*, 129 Bankr. 682, 693 (Bankr. S.D. Fla. 1991) ………  15

*In re Herman Cantor Corp*, 15. B.R. 747 (E.D. Va. 1981)……………………  14

*In re Robinson Bros. Drilling, Inc.,* 97 Bankr. at 80………………………………………..15

*Matter of T.B. Westex Foods, Inc.*, 950 F.2d 1187 (5th Cir. 1992) …………………  15

*Miller v. Steinbert,* 141 B.R. 587……………………………………………………  14

*Paper v. Stern*, 198 F. 642 (8th Cir. 1912)………………………………………………13

*Shea v. Esensten* 208 F.3d 712, 720 (8th Cir. 2000)………………………………………..19

*Singletary v. Pennsylvania Dept. of Corrections*, 266 F.3d 186, 194 (3d. Cir. 2001)………18

*Urrutia v. Harrisburg County Police Dept.*, 91 F.3d 451 (3d. Cir. 1996)  …………………18

## OTHER AUTHORITIES

*Collier on Bankruptcy*  para. 547.18 at 547.62 (15th ed. 1982)……………………………..13

## STATUTES

Fed.R.Civ.P.15……………………………………………………………………  17

Fed.R.Bankr.P.7015…………………………………………………………………  17

11 U.S.C. §101, 544, 547, 548 and 550……………………………  4, 9, 13, 15

**PRELIMINARY STATEMENT**

1.    This is an action in which the Plaintiff BroadBand Office, Inc., acting for the benefit of its creditors, seeks the avoidance and recovery of $771,875.07 that it paid to creditors shortly before its bankruptcy filing. BroadBand Office, Inc. asserts a cause of action pursuant to Sections 547 and 550 of the Bankruptcy Code.

2.    On May 9, 2001 (the "Petition Date"), BroadBand Office, Inc. filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. Sections 101 et seq.   On September 12, 2005, the Court entered an Order Confirming the First Amended Joint Liquidating Plan of the Debtor and the Official Committee of Unsecured Creditors, which had the effect of reserving this action for the Plaintiff.

3.    With leave of this Court pursuant to an Order dated December 1, 2005, Plaintiff BroadBand Office, Inc. (the "Debtor" or "BroadBand") filed the Amended Complaint in this action to avoid and recover the same transfers it sought to avoid and recover in the original Complaint. The Amended Complaint sought to correct an error in the Complaint regarding the naming of the defendants. More specifically, the Amended Complaint named as a defendant, inter alia, Extreme Networks, Inc. based upon its role as a party which benefited from the $771,875.07 Broadband paid shortly before its bankruptcy filing. As in the Complaint, Broadband asserted in the Amended Complaint that the $771,875.07 must be returned to the Debtor's estate for subsequent distribution according to the priorites of the Bankruptcy Code.

4.    In its Amended Complaint, Plaintiff named three Defendants: (a) Technology Credit Corporation (dba Extreme Networks Credit Corporation), (b) Extreme Networks, Inc., and (c) Key Equipment Finance, Inc.

5.      On January 31, 2006 Key Equipment Finance, Inc. filed its Motion to Dismiss arguing that  the claims in the Amended Complaint were barred by the applicable statute of limitations. Docket Item No. 15.

6.      On April 3, 2006, this Honorable Court entered an Order that denied Key Equipment Finance, Inc.'s Motion to Dismiss. (Docket Item No. 28) A copy of the Order is included as Exhibit "A" of Plaintiff's Appendix in Support of its Brief in Opposition to Extreme Network's Inc. Motion for Summary Judgment (hereinafter "Plaintiff's Appendix") filed concurrently herewith.

7.      Pursuant to the Scheduling Order entered in this adversary proceeding, the parties have engaged in depositions and other discovery.

8.      On March 15, 2007, Defendant Extreme Networks, Inc. filed its *Motion for Summary Judgment* and an *Opening  Brief in Support of Defendant Extreme Networks Inc.'s Motion for Summary Judgment*, pursuant to Federal Rule of Civil Procedure 56.

9.      BroadBand asserts that the Motion is not well-founded, the relief sought by the Motion should be denied, and that the Brief itself illustrates the numerous disputed issues of fact that can only be resolved at trial by the finder of fact.

10.     BroadBand further asserts that the Motion is a rehash of the very similar motion to dismiss filed by Key Equipment which was denied by this Court in its Order dated April 3, 2006. Plaintiff's Appendix, Exhibit "A." In that Order, this Court has already ruled that:

> Whereas the court holds that this is sufficient under the liberal pleading requirements of the Federal Rules of Civil Procedure to constitute an allegation that Key Equipment is bound by the tolling agreement;

> Whereas the court further holds that, given the complex relationship among the defendants and their predecessors/aliases, it is plausible that Broadband

will be able to prove the requirements of relation back in Rule 15(c) (e.g., BroadBand's failure to name Key Equipment was a mistake)……

11.    Broadband submits that Extreme Networks is now trying to take a second bite at the same apple by making virtually the same arguments which this Court has previously denied as to Key Equipment. While Plaintiff acknowledges that the standards under this Motion for Summary Judgment are somewhat different than under the previous Motion to Dismiss, the Court's prior ruling in this matter rises virtually to the level of law of the case concerning these very similar arguments now presented by Extreme Networks.

## STATEMENT OF FACTS

12.  Because the arguments now asserted by Extreme Networks are so strikingly similar to the arguments previously raised by Key Equipment which were already denied by this Court, Broadband will for ease of reference below, set forth the Statement of Facts which were previously submitted in Plaintiff's Brief in Opposition to Key Equipment Finance Inc's Motion to Dismiss, dated March 13, 2006.  A true and correct copy of this document is attached to Plaintiff's Appendix as "Exhibit B".

13.    On May 9, 2001 (the "Petition Date"), BroadBand Office, Inc. filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. Sections 101 et seq.   On September 12, 2005, the Court entered an Order Confirming the First Amended Joint Liquidating Plan of the Debtor and the Official Committee of Unsecured Creditors, which had the effect of reserving this action for the Plaintiff.

14.    BroadBand was in the business of providing communications infrastructures and delivery systems for office buildings.  As part of that business,

BroadBand was interested in using networking equipment manufactured and sold by Extreme Networks, Inc.  The resulting transaction was structured as a financed lease, with BroadBand agreeing to make monthly payments for the use of the networking equipment (the "Equipment").

15.     On or about March 9, 2000, and as part of its transaction with BroadBand, Extreme Networks, Inc. sold the Equipment to Technology Credit Corporation, which, under the name of "Extreme Networks Credit Corporation" immediately entered into a Master Lease Agreement with BroadBand. That Master Lease Agreement shows "Extreme Networks Credit Corporation" as lessor, and BroadBand as lessee. On the same day it purchased the Equipment, Technology Credit Corporation resold the Equipment to Leasetec Corporation (now "Key Equipment") and assigned at least a portion of Extreme Networks Credit Corporation's rights under the Master Lease Agreement to Key Equipment.

16.     The effective result of the transactions described above was that Extreme Networks, Inc. and Key Equipment, acting by and through Technology Credit Corporation, financed the Equipment for BroadBand to use. To facilitate this transaction and induce Key Equipment and Technology Credit Corporation to enter into the financing arrangement, Extreme Networks, Inc. guaranteed BroadBand's lease payment obligations to both Key Equipment and Extreme Networks Credit Corporation.

17.     In early 2000, Extreme Networks, Inc., as part of the transaction with BroadBand, sold the Equipment to Technology Credit Corporation ("TCC") which, under the name of "Extreme Networks Credit Corporation," entered into a Master Lease Agreement with BroadBand.   The Master Lease Agreement identifies "Extreme

Networks Credit Corporation" as the lessor, and BroadBand as the lessee.  Pursuant to

an express or implied agreement, Extreme Networks, Inc. permitted TCC to do business

with BroadBand as "Extreme Networks Credit Corporation" and "Extreme Networks."

Many of the documents underlying the transfers at issue in this proceeding were signed

by James F. Hartigan, who signed on behalf of both "Technology Credit Corporation"

and "Extreme Networks Credit Corporation."    Extreme Networks' Opening Brief

("OB") at 3.

18.    After completing the lease transaction with BroadBand, Technology

Credit Corporation filed  UCC-1 Financing Statements, with respect to the Lease and

Equipment at issue in the name of "Extreme Networks Credit Corporation" showing a

business address of "3585 Monroe Street, Santa Clara, California"  (Extreme Network,

Inc.'s business address) and bearing the signature of James F. Hartigan.  OB at 4.  On the

same day it purchased the Equipment, Technology Credit Corporation resold the

Equipment to Leasetec Corporation ("Leasetec") (now Key Equipment) and assigned a

portion of its rights under the Master Lease Agreement to Leasetec/Key Equipment.

Leasetec was subsequently acquired by Key Equipment.  Key Equipment was permitted

to act in the name of TCC in its dealings with BroadBand.  OB at 4.

19.    As a result of the transactions described above, Key, acting by and through

Technology Credit Corporation, financed the Equipment for BroadBand to use.

Following the initial transaction, Technology Credit Corporation, acting as "Extreme

Networks" continued as the servicing agent on the lease.  Within the ninety (90) day

period before the Petition Date, and in response to demand letters from Tech Credit

Corporation, under the name "Extreme Networks" but purportedly acting (unknown to

BroadBand at the time) on behalf of Key Equipment, BroadBand made lease payments

totaling $771,875.07 to one or more of the Defendants (the "Transfers"). The Transfers

were in payment of past due amounts under the Master Lease agreement and related

leases. BroadBand believes these payments are recoverable or avoidable as either

preferences or fraudulent conveyances under 11 U.S.C. §§ 544, 547 and 548.

20.    On June 29, 2001, Key Equipment  filed a Proof of Claim in BroadBand's

bankruptcy proceeding in the amount of $6,066,838.91, under the name "Key Equipment

Finance, a division of Key Corporate Capital, Inc., f/k/a Leasetec Corporation."  A  true

and correct copy of Key Equipment's proof of claim is attached to Plaintiff's Appendix

as "Exhibit C".

21.    In April of 2003, BroadBand and Technology Credit Corporation  entered

into a Stipulation Tolling Statute of Limitations dated as of April 10, 2003 (the "Tolling

Agreement"). A true and correct copy of the Tolling Agreement is attached to Plaintiff's

Appendix as Exhibit "D".  Through the Tolling Agreement, Extreme Networks Credit

Corp.  and BroadBand agreed to toll and extend until December 31, 2003, the Section

546 statute of limitations period within which BroadBand was required to file an action

against Extreme Network Credit Corp. to recover the Transfers.  OB at 5.

22.    The complexity of the relationship between Extreme Networks and

Extreme Networks Credit Corporation is acknowledged in Section 10 of Extreme's

Opening Brief wherein it states and admits that:

> Pursuant to the vendor program, TCC assigned one employee, Richard
> Salhany, to work at Extreme Networks' headquarters located at 3585
> Monroe Street, Santa Clara, CA 95091. Mr. Salhany had his own
> telephone and fax number. *See* Salhany Depo. At 100:1-3; 100:24-101:11.
> Customers would be referred to Mr. Salhany from various Extreme
> Networks employees. *See* Salhany Depo. At 101:16-102:10. Mr. Salhany

> would always introduce himself to new customers as an employee of
> Extreme Networks Credit Corporation. *See* Salhany Depo., at 101:2-16;
> *see also* Hartigan Depo., at 47:11-16. TCC never conducted business with
> its customers at Extreme Networks, Inc. *See* Hartigan Depo., at 47:7-10."

23.     Further, in Section 13 of its Opening Brief, Extreme acknowledges that "Extreme Networks provided a limited guarantee of BroadBand's obligations under the Lease (the "Lease Guaranty"). Under the Lease Guaranty, Extreme Networks guaranteed the performance of Broadband under the Lease and that all sums payable under the Lease will be promptly paid when due."  According to the Lease Guaranty executed by Extreme, the business address for Extreme is "3585 Monroe Street, Santa Clara, CA".  A true and correct copy of the Lease Guaranty is attached to Plaintiff's Appendix as Exhibit "E".

24.      Extreme has also acknowledged that it was a party to an arrangement under which another corporate entity, Technology Credit Corporation, represented itself as "Extreme Networks Credit Corporation". Extreme's Opening Brief, paragraph 8, states that "under the Purchase Agreement, Technology Credit Corporation was granted a restricted and limited license to use the term 'Extreme Networks Credit Corporation.'". In fact, Extreme Networks also acknowledges in Sections 8 and 9 that it authorized Technology Credit Corp. to use this "fictitious name."

25.     With the benefit of hindsight gained in this litigation, it is apparent that "Extreme Networks Credit Corporation" is not in fact a corporation. The confusion this name  has caused is reflected in, and Extreme's arguments are belied by, the fact that Extreme's own lawyer Jeffry Davis has sworn in an Affidavit that, as of the relevant time, "I thought Extreme Networks Credit Corporation was a instead a division or

subsidiary of Extreme Networks, Inc." Affidavit of Jeffry Davis, paragraph 3. A true and correct copy of the Affidavit of Jeffry Davis is attached to Plaintiff's Appendix as Exhibit "F".

26.     The effective result of the lease transaction was that Extreme and Key Equipment Finance, Inc., acting by and through Technology Credit Corporation, financed the networking equipment for BroadBand to use. To facilitate this transaction and induce Key Equipment Finance, Inc. and Technology Credit Corporation to enter into the financing arrangement, Extreme Networks, Inc. guaranteed BroadBand's lease payment obligations to both Key Equipment Finance, Inc. and Extreme Networks Credit Corporation.

27.     After completing the lease transaction with BroadBand, Extreme Networks Credit Corporation (the d/b/a of Technology Credit Corp. as opposed to Extreme Networks, Inc., the original lessor) continued as the servicing agent on the lease.

28. After Broadband fell behind in its payment obligations, Extreme Networks Credit Corporation, sent demand letters bearing the letterhead "Extreme Networks" demanding payment of all past due amounts. A true and correct copy of one such demand letter dated February 20, 2001 is attached to Plaintiff's Appendix as Exhibit "G".

29.     Within ninety days of its Petition Date, Broadband made overdue lease payments totaling $771,875.07 (the "Transfers").

30.     In the context of its Chapter 11 case, Broadband's attorneys sought the return of the Transfers under the avoidable preference provisions of the Bankruptcy Code. As Extreme acknowledged in its Opening Brief, by letter date April 10, 2003 Attorney Adam Hiller sent a letter demanding the return of the Transfers to "Extreme

Networks Credit Co". (the "Demand Letter"). A true and correct copy of the Demand Letter is attached to Plaintiff's Appendix as Exhibit "H".

31.     The undisputable fact that Extreme was aware of the Demand Letter and the potential claim for the return of the Transfers is shown by the fact that Exhibit "M" of the Appendix to the Opening Brief bears the notation created by a fax machine designated as "Extreme", bearing the facsimile telephone number "(408) 579-2281" and bearing the date of April 21, 2003. Appendix to Opening Brief, Exhibit M. As set forth in the footnote below, Plaintiff requests that the Court take judicial notice of the fact that Extreme's headquarters in Santa Clara, California are located in are code "408".[1]

32.     As Extreme also acknowledges in its Opening Brief, in April 2003 Attorney Jeffrey Davis signed a Stipulation Tolling Statute of Limitations (the "Stipulation") agreeing to extend the limitations period for the filing of a lawsuit relating to the Transfers from May 9, 2003 to December 31, 2003. Opening Brief, paragraph 1

33.     As set forth in his Affidavit, Extreme's own attorney Jeffry Davis has sworn that on April 10, 2003 "[a]t the time I executed said Stipulation, I understood I was doing do on behalf of my client, Extreme Networks, Inc." Exhibit  "F" to Plaintiff's Appendix, paragraph 3, emphasis added.

34.     Extreme was aware of Mr. Davis' execution of the Stipulation, as is shown by the fax notation on the copy of the Stipulation attached  to Plaintiff's Appendix as Exhibit "D". As with the Demand letter, the document bears the notation created by a fax machine designated as "Extreme", bearing the facsimile telephone number "(408) 579-2281" and bearing the date of April 21, 2003. *Id.*

---

[1] As mentioned above, the telephone Area Code for Extreme's headquarters at the address it identified in Santa Clara, California is "408". Plaintiff submits that under FRE 201(b) the fact is not subject to reasonable dispute.

35.    Plaintiff filed this case on December 23, 2003. There has been no argument by Extreme that Broadband failed to file the Complaint beyond the time allotted in the Stipulation.

36.    As shown from the evidence in this case, Extreme was a guarantor of the lease obligations, is chargeable with knowledge of the Stipulation well before the expiration of the limitations period, and is not entitled to summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

## ARGUMENT

### A.  The Applicable Legal Standard for Summary Judgment

Plaintiff does not dispute Extreme's general recitation of the standard under Rule 56 of the Federal Rules of Civil Procedure. *See Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).   Instead, Plaintiff submits that Extreme has wholly failed to satisfy that standard in this case. Extreme bears the burden of showing that there is "no genuine issue of material fact". *Id.,* 477 U.S. 317, 325.

To prevail, Extreme must show "beyond doubt" that there is <u>no dispute as to material facts</u> on which BroadBand could prove its claims in the Amended Complaint. Extreme simply has not satisfied that burden.  In fact, Extreme's Opening Brief contains numerous admissions showing the unquestionable existence of material factual disputes.

### B.  Extreme has Failed to Demonstrate That it Never Benefited from the Transfers

<u>Extreme acknowledges and admits that it was a guarantor</u> of the Lease payment obligations of Broadband. Opening Brief, paragraphs 13 and 28.  As such, Extreme is a creditor for purposes of U.S.C.S. § 547 and is indeed susceptible to liability as a

preference defendant.  A guarantor is a "creditor" of the estate who may be preferred within the meaning of 11 U.S.C.S. § 547. *In re Art Shirt, Ltd.* 34 B.R.918, 921 (Ed. Pa. 1983).  Furthermore, "a guarantor or surety for the debtor. . . is a creditor under the Bankruptcy Code, 11 U.S.C.S. § 101, et seq., because he holds a contingent claim against the debtor that becomes fixed when he pays the creditor whose claim he has guaranteed or insured. Consequently, any transfer of property made by a debtor to or for the benefit of an endorser, guarantor or surety, may constitute a preference**.** Id., citing 4 *Collier on Bankruptcy* para. 547.18 at 547.62(15th ed. 1982). See also *Paper v. Stern*, 198 F. 642 (8th Cir. 1912) (a guarantor or surety is a creditor of the estate who may be preferred with the meaning of section 547 of the Code.)  Further, "although a surety usually is discharged by payment of a debt, he continues to be liable if the payment constitutes a preference under bankruptcy law. A preferential payment is deemed by law to be no payment at all." *Horner v. First National Bank*, 149 Va. 854, 141 S.E. 767, 770 (1928).

Extreme fails to recognize its  benefit and liability as a preference defendant under 547(b)(5) in that the Transfer made by BroadBand would enable it to receive "more than it would have been entitled to receive if the case were under Chapter 7, with the end result being a preference over other creditors of the estate.   In *In re Herman Cantor Corp*, 15. B.R. 747 (E.D. Va. 1981), the Court found that the debtor's repayment of the loan to a bank within ninety (90) days prior to the Chapter 11 filing, resulted in an indirect preference to the pledgor of certain investment certificates to secure  the loans to the debtor.   Id. at 749. The reasoning employed by the Court was that the debtor's repayment of the loan benefited the pledgor because it discharged the contingent debt. *Id. See Fenold v. Green*, 175 F.2d 247, 249 (2d Cir. 1949). If the bank's loan had not been

repaid by the debtor, the bank would have been entitled to the investment certificates pledged by pledgor and the pledgor would have been able to sue the debtor to recover her loss as a surety. The debtor, however, paid the bank the value of its loan and relinquished the certificates to the pledgor. By this action, the pledgor may have received more than she would have been entitled to receive if this case were under Chapter 7, with the end result being a preference over other creditors of the estate. 11 U.S.C. § 547(b)(5). Id.

Like the guarantor in *Herman*, Extreme "benefited" from the Transfer of Broadband because it was discharged of its contingent debt.  Accordingly, Extreme Networks is a proper party in this case.

Further, Extreme need not be the initial transferee of the Transfer in order to be liable under 547.  Section 550(a)(1) expressly states that the trustee may recover such transferred property (or its value) from either "the initial transferee of such transfer or the entity for whose benefit such transfer was made."  *Miller v. Steinbert,* 141 B.R. 587*Matter of T.B. Westex Foods, Inc*., 950 F.2d 1187 (5th Cir. 1992); *In re C-L Cartage Co.*, 899 F.2d at 1494; *In re Robinson Bros. Drilling, Inc.,* 97 Bankr. at 80; I*n re David Jones Builder, Inc.*, 129 Bankr. 682, 693 (Bankr. S.D. Fla. 1991); *In re Big Three Transp., Inc.*, 41 Bankr. 16, 20-21 (Bankr. W.D. Ark. 1983). Thus, Section 550 clearly permits BroadBand to seek recover of Transfers from either the initial transferee or from Extreme, the creditor "for whose benefit such transfer was made." 11 U.S.C. Section 550(a)(1).

## C.  The Plaintiff's Claim against Extreme is not Time-Barred

Extreme argues erroneously that "the Tolling Agreement [Stipulation] is not binding on Extreme Networks, Inc, as Mr. Davis did not have the authority, actual or

ostensible, to act on Extreme Network's behalf when he executed the Tolling Agreement." Opening Brief, paragraph 34.

Extreme's position is fatally flawed. In his Affidavit, Mr. Davis stated under oath "[a]t the time I executed said Stipulation, I understood I was doing do on behalf of <u>my client, Extreme Networks, Inc.</u>" Exhibit "M" of Appendix to Opening Brief,  paragraph 3, emphasis added. Extreme acknowledges in Section 20 of its Opening Brief that:

> The letter also attaches an affidavit of Jeffry Davis, stating that when Mr. Davis signed the Tolling Agreement with Broadband he thought Extreme Networks Credit Corporation was a division of Extreme Networks. Mr. Davis states further that he did not understand, at that time, that Extreme Networks Credit Corporation was a fictitious name for TCC.

*See* May 20, 2004 Letter (Appendix to Opening Brief, <u>Exhibit Q</u>, TCC00001-33).

As noted in Broadband's Brief in Opposition to Key Equipment Finance Inc.'s Motion to Dismiss (the "Prior Opening Brief"), Technology Credit Corporation was servicing the account on behalf of Key Equipment (and Extreme Networks, Inc.), yet using the "d/b/a" name "Extreme Networks". It was only after the complaint was filed, responses to discovery were received, and other information was provided to Broadband by Technology Credit Corporation, that Broadband was able to unravel and decipher the complicated and misleading transactions that were arranged by the three Defendants. Prior Opening Brief, page 11.

As also argued by Broadband in its Prior Opening Brief: Broadband submits that is has been "actively misled" into believing Technology Credit Corp. was solely liable for the avoidable payments due to the Defendants' convoluted, interwoven business practices. Therefore, the equitable tolling doctrine is appropriate. All three Defendants were closely involved in the lease transaction through a series of guarantees, purported

corporate affiliations and transfers, "d/b/a's" and interlocking relationships. For example, Extreme Networks, Inc. allowed Technology Credit Corporation to hold itself out as "Extreme Networks Corporation", and to enter into agreements with Broadband under that name, and to use Extreme Networks, Inc.'s business address and corporate logo. Extreme Networks, Inc. also allowed Key Equipment to hold itself out as "Extreme Networks Credit corporation and use Extreme Networks, Inc.'s corporate logo in dealing with Broadband. Key Equipment allowed Technology Credit Corporation to service the account and to use the name "Extreme Networks."

This evidence shows that at minimum there are disputed questions of fact concerning (a) Mr. Davis' representation of Extreme, (b) the scope if that representation, (c) the circumstances surrounding the communications between Mr. Davis and Extreme concerning the Stipulation, and (d) the reasons why the "Extreme" notation appears on the facsimile markings on both the Stipulation and correspondence between Mr. Hiller and Mr. Davis.  These disputed issues of material facts should preclude the granting of summary judgment in these instances.

**D.  The Plaintiff's Claim against Extreme in the Amended Complaint Relates Back to the Original Complaint**

Fed.R.Civ.P. 15, made applicable to this proceeding by Fed.R.Bankr.P. 7015, titled "Amended and Supplemental Pleadings", is grounded in a recognition that it is preferable for a case to be decided on its merits rather than on pleading technicalities. *Foman v. Davis,* 371 U.S. 178, 182 (1962). Rule 15 states in relevant part:

> (c)     Relation Back of Amendments. An amendment of a pleading relates back to the date of the original pleading when
> ...

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

(3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied, and within the period provided by Rule 4(j) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

The rule is written in the conjunctive, and courts interpret 15(c)(3) as imposing three conditions, all of which must be met for a successful relation back of an amended complaint that seeks to substitute newly named defendants. *Singletary v. Pennsylvania Dept. of Corrections,* 266 F.3d 186, 194 (3d. Cir. 2001), citing *Urrutia v. Harrisburg County Police Dept.*, 91 F.3d 451 (3d. Cir. 1996) ("three conditions in Rule 15(c)(3) must be satisfied" for relation back).

As applied to this case, those requirements are: (1) that the Amended Complaint be based upon the  same "conduct, transaction, or occurrence" as the Complaint; (2) that Extreme received notice of the filing of the action so that it will not be prejudiced, and (3) that Extreme "knew or should have known" that except for a mistake, it would have been named as a defendant.

These three requirements are clearly met. The Amended Complaint was based upon the same transaction (e.g. the Transfer of a payment from BroadBand which is the subject of the original Complaint). Extreme received notice of the filing of the action and can therefore not claim to be prejudiced. Lastly, with regard to "notice" one can reasonably induce from the Mr. Davis' Affidavit and the presence of the "Extreme" fax notation that Extreme did know or "should have known" about the Plaintiff's claims prior

to the expiration of the statute of limitations. Again, this disputed issue of material fact should preclude summary judgment.

However, Extreme argues that there is no evidence to support a finding of "mistake" for the failure to name Extreme as a party to the original Complaint. Opening Brief, paragraph 47.    Extreme's argument stands the summary judgment standard on its head, because Extreme's mere assertion of lack of evidence is unsupported by any affidavit or other evidence.  The question of mistake concerning the relationship between Extreme Networks, Inc. and Extreme Networks Credit Corporation is subjective, and Extreme has done nothing to show what the state of mind of BroadBand was at the time it filed the original Complaint.

What is clear, however, is that the business relationships were so convoluted that even Extreme Networks' attorney Mr. Davis did not know whether "Extreme Networks Credit Corporation" was part of Extreme Networks. If Extreme's own attorney could not make this distinction, how is it "inexcusable" for BroadBand to likewise fail to differentiate the two almost identical entity names?  As noted above, Extreme Networks admits Mr. Davis' confusion in sections 20 and 37 of its Opening Brief.  Again, this is another substantial question of material fact which should preclude the entry of summary judgment.

Further, the decisions cited by Extreme concerning "mistake" under Rule 15 are inapposite. In *Shea v. Esensten*, the Plaintiff who sought to amend the pleadings merely asserted that she "lacked knowledge" of the relationship between the defendant named in her original complaint and the proposed additional defendant she sought to add through amendment pursuant to Rule 15.  The Court held that this asserted lack of knowledge did

not satisfy the Rule 15 requirement that the plaintiff show "an error concerning the identity of the proper party" or that the additional defendant "should have known that the suit would have been brought against it but for a mistake in identifying the proper party." *Shea v. Esensten* 208 F.3d 712, 720 (8th Cir. 2000). The Court determined that there was no "mistake" because Mrs. Shea did not bring the suit against the wrong parties, rather, she knew the identity of the proposed additional defendant before the expiration of the statute of limitations but chose not to bring it into the suit at that time. Id.

As set forth above and throughout this case, BroadBand's failure to name Extreme in the original Complaint was clearly due to mistake and error concerning the identity of the proper party. Further, Extreme should have known that BroadBand would have brought suit against it but for its mistake in identifying it as the proper party.

### E.   Extreme's Argument of Prejudice Must Fail

Extreme Networks baldly asserts that it has been prejudiced because it was not named in the original Complaint, and suggests that it has been unable to locate documents relating to the transaction and that personnel have left. Yet Extreme fails to provide an affidavit, a list of employees, the identification of documents that it alleges were lost, or any other evidence to support those allegations.   It provides no evidence as to its document retention policies, its attempts to recover documents or locate its former employees. In fact, Extreme Networks is well represented in this action, has been able to prepare and file its 17 page Motion for Summary Judgment, together with its list of 17 exhibits filed in its Appendix.   Additionally, the circumstances surrounding the Transfers themselves are well-documented and not complex. What is complex, however, is the

construct of Extreme's relationship with Extreme Networks Credit Corporation and Technology Credit Corporation, a complexity created by Extreme. The Court must not accept the unsupported allegations of prejudice.


**<u>CONCLUSION</u>**

This Court should not permit Extreme Networks to circumvent the Court's April 3, 2006 Order by it's rehash of virtually the same arguments presented previously by Key Equipment which were thoroughly denied by this Court. Further, it is glaringly obvious that each and every reason submitted by Extreme as a basis for it's Motion are disputed questions of material fact which are required to be submitted for resolution to the trier of fact. Accordingly, Plaintiff respectfully requests that this Honorable Court deny Extreme's Motion for Summary Judgment.


March 29, 2007                                Respectfully submitted,


                                WERB & SULLIVAN

                                /s/ Brian A. Sullivan
                                Brian A. Sullivan (2098)
                                Robert D. Wilcox (4123)
                                Amy D. Brown (4077)
                                300 Delaware Ave., 13th Floor
                                Wilmington, DE 19801
                                Telephone: (302) 652-1100
                                Facsimile: (302) 652-1111

                                Attorneys for Plaintiff,
                                BroadBand Office, Inc.