**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | |
| | Civil Action  No. 04-407 (GMS) |
| BROADBAND OFFICE, INC., | |
| | Bankruptcy Case No. 01-1720 (GMS) |
| Debtor. | |
| | Chapter 11 |

BROADBAND OFFICE, INC.,

Plaintiff,

vs.

TECHNOLOGY CREDIT
CORPORATION d/b/a EXTREME
NETWORKS CREDIT CORPORATION,
and
EXTREME NETWORKS, INC.,
and
KEY EQUIPMENT FINANCE, INC. f/k/a
KEY CORPORATE CAPITAL, INC. f/k/a
LEASETEC CORPORATION
                                          Defendants.

## APPENDIX

March 29, 2007

WERB & SULLIVAN

Brian A. Sullivan   (DE #2098)
Robert D. Wilcox  (DE #4321)
Amy D. Brown      (DE #4077)
300 Delaware Avenue, 13th Floor
P. O. Box 25046
Wilmington, DE   19899
Telephone:  (302) 652-1100

Attorneys for Broadband Office, Inc.

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Broadband Office, Inc. | ) | Bankruptcy Case No. 01-1720 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| Broadband Office, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Technology Credit Corp. | ) | |
| d/b/a Extreme Networks Credit Corp., | ) | C.A. No. 04-407 (GMS) |
| | ) | |
| Extreme Networks, Inc., and | ) | |
| | ) | |
| Key Equipment Finance, Inc. | ) | |
| f/k/a Key Corporate Capital, Inc. | ) | |
| f/k/a Leastec Corp., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ORDER

WHEREAS on December 23, 2003 Plaintiff Broadband Office, Inc. ("Broadband") filed the above-captioned action for avoidance and recovery, pursuant to 11 U.S.C. §§ 544, 547, 548, and 550;

WHEREAS the only named defendant at that time was Technology Credit Corp. ("TCC");

WHEREAS although the statute of limitations appears to have expired before the action was filed, Broadband and TCC allegedly entered into an agreement to toll and extend the statute of limitations until December 31, 2003 (D.I. 9 ¶ 19);

WHEREAS on December 1, 2005, the court granted Broadband leave to amend its complaint to add Extreme Networks, Inc. ("Extreme Networks") and Key Equipment Finance, Inc. ("Key Equipment") as defendants;

WHEREAS Key Equipment, a non-party to the tolling agreement, filed a motion to dismiss

based on the expiration of the statute of limitations;

WHEREAS the amended complaint alleges that Key Equipment's predecessor, Leasetec Corp., was allowed to act in the name of TCC in its dealings with Broadband (D.I. 9 ¶ 7);

WHEREAS the court holds that this is sufficient under the liberal pleading requirements of the Federal Rules of Civil Procedure to constitute an allegation that Key Equipment is bound by the tolling agreement;

WHEREAS the court further holds that, given the complex relationship among the defendants and their predecessors/aliases, it is plausible that Broadband will be able to prove the requirements of relation back in Rule 15(c) (*e.g.*, Broadband's failure to name Key Equipment was a mistake);

WHEREAS Key Equipment also argues that the recovery count is not ripe because there has not been an adjudication of the avoidance counts, which is a necessary condition to the viability of Broadband's recovery count;

WHEREAS the court holds that the recovery count is ripe because, to hold otherwise, would be akin to disallowing damages allegations in any complaint until the underlying liability has been adjudicated.

IT IS HEREBY ORDERED THAT:

Key Equipment's motion to dismiss (D.I. 15) be DENIED.

Dated: April 3 , 2006

UNITED STATES DISTRICT JUDGE

FILED

APR 3 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

2

# Exhibit B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | |
| BROADBAND OFFICE, INC., | Civil Action  No. 04-407 (GMS) |
| Debtor. | Bankruptcy Case No. 01-1720 (GMS) |
| | Chapter 11 |
| BROADBAND OFFICE, INC., | |
| Plaintiff, | |
| vs. | |
| TECHNOLOGY CREDIT CORPORATION d/b/a EXTREME NETWORKS CREDIT CORPORATION, and EXTREME NETWORKS, INC., and KEY EQUIPMENT FINANCE, INC. f/k/a KEY CORPORATE CAPITAL, INC. f/k/a LEASETEC CORPORATION | |
| Defendants. | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO KEY EQUIPMENT FINANCE INC.'S
MOTION TO DISMISS**

March 13, 2006

WERB & SULLIVAN

Brian A. Sullivan   (DE #2098)
Robert D. Wilcox   (DE #4321)
Amy D. Brown      (DE #4077)
300 Delaware Avenue, 13th Floor
P. O. Box 25046
Wilmington, DE    19899
Telephone:  (302)  652-1100

Attorneys for BroadBand Office, Inc.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................................3

PRELMINARY STATEMENT...........................................................5

STATEMENT OF FACTS................................................................6

ARGUMENT...............................................................................10

I.    DEFENDANT'S ARGUMENT CONCERNING THE STATUTE OF
LIMITATIONS INVOLVES FACTUAL ISSUES NOT SUSCEPTIBLE TO
A RULING UNDER FED. R. CIV. PRO. 12(B)(6)........................................ 10

    A. Technology Credit Had the Authority to Enter into the Tolling Agreement on
       Behalf of Key Equipment...........................................................11

    B. Key Equipment has not shown that there are no facts enabling the Court to
       conclude that it's limitations defense fails as result of tolling...................12

    C. Alternatively, the Doctrine of Equitable Tolling is Applicable..................13

II. THE AMENDED COMPLAINT SHOULD RELATE BACK TO THE FILING OF
THE ORIGINAL COMPLAINT..............................................................15

    A. Same "Conduct, Transaction or Occurrence......................................15

    B. Actual or Imputed Notice of the Lawsuit...........................................16

    B. Key Equipment's Knowledge of a Mistake in Naming the Defendant........18

III. COUNT THREE OF THE COMPLAINT STATES A
CAUSE OF ACTION UNDER § 550 OF THE BANKRUPTCY CODE..................21

CONCLUSION...............................................................................24

**TABLE OF AUTHORITIES**                                    **PAGE**

*ALA v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994)……………………………………..10

*Atchinson v. District of Columbia*, 73 F.3d 418, 421-22 (D.C. Cir. 1996)……………….21

*AT&T v. Winback & Conserve Program*, 42 F.3d 1421, 1440
    (3d Cir. 1994)……………………………………………………………………………12

*Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d. Cir. 2004)…………………………..17

*In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426
    (3d Cir.1997)………………………………………………………………………………20

*In re Butcher*, 72 B.R. 247, 250 (Bankr. E.D. Tenn 1987)………………………………......13

*In re Butcher*, 67 B.R. 102, 103 (Bankr. E.D. Tenn. 1986)………………………………......13

*Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)…………...10, 16

*E.I. duPont de Nemours & Co. v. Phillips Petroleum Co.*, 621 F.Supp. 310
    (D. Del. 1985)……………………………………………………………………………...19

*Foman v. Davis*. 371 U.S. 178, 182 (1962)…………………………………………15, 22

*Garvin v. City of Philadelphia*, 354 F.3d 215(3d Cir. 2003)…………………………...16, 18

*Gomez v. Toledo*, 446 U.S. 635, 640 (1980)……………………………………………..21

*In re H & S Transportation*, 939 F.2d 355 (6th Cir 1991)…………………………….22, 23

*JM Mechanical Corp. v. U.S. by U.S. Dept. of Housing and Urban Development*,
    716 F.2d 190, 197 (3d Cir. 1983)………………………………………………….10, 22

*Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994)……10

*Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir.1991)…………………………...20

*Levit v. Riddell Sports (In re MacGregor Sporting Goods)* 199 B.R. 502 (D. N.J.
    1995)……………………………………………………………………………...12

*Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d. Cir. 2000)………………………………10

*In re Metzeler*, 66 B.R. 977,981 (Bankr. S.D.N.Y 1986)……………………………13

*Olshiver v. Levin, Fishbein, Sedran & Berman*,

38 F.3d 1380, 1391 (3d Cir. 1994)…... ……………………………………………12, 14

*Oran v. Stafford,* 226 F.3d 275, 289 (3d Cir. 2000)…………………………....…20

*Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)…………..10

*Singletary v. Pennsylvania Dept. of Corrections*…………………………....15-16, 17

*Taliaferro v. Costello,* 467 F.Supp. 33, 36 (E.D. Pa.1979)……………………....19

*Tello v. Dean Witter Reynolds, Inc.* 410 F.3d 1275 (11th Cir. 2005)……………………15

*Urrutia v. Harrisburg County Police Dept.,* 91 F.3d 451(3d. Cir. 1996)……………16

*In re Warmus,* 276 B.R. 688 (S.D. Fla. 2002)…………………………………...23

*In re White v. Boston,* 104 B.R. 951, 957 (S.D.Ind.1989)………………………13

## FEDERAL STATUTES

11 U.S.C. § 1101………………………………………………………………21

11 U.S.C. § 547………………………………………………………...…8, 17, 22, 23

11 U.S.C. § 550……………………………………………………17, 20, 22, 23

11 U.S.C. §1107………………………………………………………………21

## RULES

F.R.C.P. 15…………………………………………………....15, 16, 17, 22

## OTHER AUTHORITIES

6(a) Wright, Miller, & Kane,
      *Federal Practice and Procedure* § 1497 (2d. ed. 2002)…………………………17

## PRELIMINARY STATEMENT

With leave of this Court pursuant to an Order dated December 1, 2005, Plaintiff BroadBand Office, Inc. (the "Debtor" or "BroadBand") filed the Amended Complaint in this action to avoid and recover under the Bankruptcy Code the same transfer it sought to avoid and recover in the original Complaint. The Amended Complaint sought to correct an error in the Complaint regarding the naming of the defendants. More specifically, the Amended Complaint added, inter alia, Defendant Key Equipment Finance, Inc. f/k/a Key Corporate Capital, Inc. f/k/a Leasetec Corporation based upon its role as a creditor of BroadBand who benefited from $771,875.07 BroadBand paid shortly before its bankruptcy filing. As in the original Complaint, BroadBand asserted in the Amended Complaint that the $771,875.07 must be returned to the Debtor's estate for subsequent distribution according to the priorites of the Bankruptcy Code.

Defendant Key Equipment Finance, Inc. f/k/a Key Corporate Capital, Inc. f/k/a Leasetec Corporation has filed a Motion to Dismiss the Amended Complaint as to it, pursuant to Federal Rule of Civil Procedure 12(b)(6), asserting that the allegations against it are time-barred. BroadBand asserts that the Motion is not well-founded, seeks to improperly introduce factual issues, and must be denied.

## STATEMENT OF FACTS

On May 9, 2001 (the "Petition Date"), BroadBand Office, Inc. filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. Sections 101 et seq.    On September 12, 2005, the Court entered an Order Confirming the First Amended Joint Liquidating Plan of the Debtor and the Official Committee of Unsecured Creditors, which had the effect of reserving this action for the Plaintiff.

BroadBand was in the business of providing communications infrastructures and delivery systems for office buildings.    As part of that business, BroadBand was interested in using networking equipment manufactured and sold by Extreme Networks, Inc.    The resulting transaction was structured as a financed lease, with BroadBand agreeing to make monthly payments for the use of the networking equipment (the "Equipment").

On or about March 9, 2000, and as part of its transaction with BroadBand, Extreme Networks, Inc. sold the Equipment to Technology Credit Corporation, which, under the name of "Extreme Networks Credit Corporation" immediately entered into a Master Lease Agreement with BroadBand. That Master Lease Agreement shows "Extreme Networks Credit Corporation" as lessor, and BroadBand as lessee. On the same day it purchased the Equipment, Technology Credit Corporation resold the Equipment to Leasetec Corporation (now "Key Equipment") and assigned at least a portion of Extreme Networks Credit Corporation's rights under the Master Lease Agreement to Key Equipment.

The effective result of the transactions described above was that Extreme Networks, Inc. and Key Equipment, acting by and through Technology Credit

Corporation, financed the Equipment for BroadBand to use. To facilitate this transaction and induce Key Equipment and Technology Credit Corporation to enter into the financing arrangement, Extreme Networks, Inc. guaranteed BroadBand's lease payment obligations to both Key Equipment and Extreme Networks Credit Corporation. Any amounts BroadBand paid under the Master Lease Agreement benefited Key Equipment.

Key Equipment's Opening Brief describes the facts as follows:

In early 2000, Extreme Networks, Inc., as part of the transaction with BroadBand, sold the Equipment to Technology Credit Corporation ("TCC") which, under the name of "Extreme Networks Credit Corporation," entered into a Master Lease Agreement with BroadBand. The Master Lease Agreement identifies "Extreme Networks Credit Corporation" as the lessor, and BroadBand as the lessee. Pursuant to an express or implied agreement, Extreme Networks, Inc. permitted TCC to do business with BroadBand as "Extreme Networks Credit Corporation" and "Extreme Networks." Many of the documents underlying the transfers at issue in this proceeding were signed by James F. Hartigan, who signed on behalf of both "Technology Credit Corporation" and "Extreme Networks Credit Corporation." Opening Brief ("OB") at 3.

After completing the lease transaction with BroadBand, TCC filed UCC-1 Financing Statements, with respect to the Lease and Equipment at issue in the name of "Extreme Networks Credit Corporation" showing a business address of "3585 Monroe Street, Santa Clara, California" bearing the signature of James F. Hartigan. OB at 4. On the same day it purchased the equipment, Technology Credit Corporation resold the Equipment to Leasetec Corporation ("Leasetec") (now Key Equipment) and assigned a portion of its rights under the Master Lease Agreement to Leasetec/Key Equipment.

7

Leasetec was subsequently acquired by Key Equipment. Key Equipment was permitted to act in the name of TCC in its dealings with BroadBand. OB at 4.

As a result of the transactions described above, Key, acting by and through Technology Credit Corporation, financed the Equipment for BroadBand to use. Following the initial transaction, Technology Credit Corporation, acting as "Extreme Networks" continued as the servicing agent on the lease. Within the ninety (90) day period before the Petition Date, and in response to demand letters from TCC, under the name "Extreme Networks" but purportedly acting (unknown to BroadBand at the time) on behalf of Key Equipment. BroadBand made lease payments totaling $771,875.07 to one or more of the Defendants (the "Transfers"). The Transfers were in payment of past due amounts under the Master Lease agreement and related leases. BroadBand believes these payments are recoverable or avoidable as either preferences or fraudulent conveyances under 11 U.S.C. §§ 544, 547 and 548. On June 29, 2001, Key filed a Proof of Claim in BroadBand's bankruptcy proceeding in the amount of $6,066,838.91, under the name "Key Equipment Finance, a division of Key Corporate Capital, Inc., f/k/a Leasetec Corporation." (Exhibit "B" to OB, at 4).

In April of 2003, BroadBand and TCC entered into a Stipulation Tolling Statute of Limitations dated as of April 10, 2003 ("Tolling Agreement") (Exhibit "A" to the Complaint and Exhibit "E" to the OB). Through the Tolling Agreement, TCC and BroadBand agreed to toll and extend until December 31, 2003, the Section 546 statute of limitations period within which BroadBand was required to file an action against TCC to recover the Transfers. OB at 5. There has been no argument by Key Equipment that

BroadBand failed to file the Complaint beyond the time allotted in the Tolling

Agreement.

**ARGUMENT**

## I. DEFENDANT'S ARGUMENT CONCERNING THE STATUTE OF LIMITATIONS INVOLVES FACTUAL ISSUES NOT SUSCEPTIBLE TO A RULING UNDER FED. R. CIV. PRO. 12(B)(6).

Key Equipment's Opening Brief in support of its argument that the Amended Complaint was filed outside of the statue of limitations raises questions of fact and is therefore improper for a motion to dismiss. Quite simply, the attempted introduction of those allegations of fact is grossly improper in the context of Rule 12(b)(6). See, *JM Mechanical Corp. v. U.S. by U.S. Dept. of Housing and Urban Development*, 716 F.2d 190, 197 (3d Cir. 1983). In considering a motion to dismiss under Rule 12(b)(6), a court is evaluating the legal sufficiency of the complaint. Id. Under Rule 12(b)(6), a complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). See also *Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d. Cir. 2000). In considering whether a complaint should be dismissed for failure to state a claim upon which relief can be granted, the Court must consider only those facts alleged in the complaint and accept all of the allegations as true, drawing all reasonable inferences in the plaintiff's favor. *ALA v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994)

The issue before this Court is whether BroadBand should be entitled to seek discovery from Key Equipment and other defendants in order to identify evidence on

which it can prevail against Key Equipment. Such discovery may reveal facts that show

Key Equipment's ultimate liability and negate its alleged limitations defense. So long as

those possibilities exist, the Motion to Dismiss must be denied.

### A. Technology Credit Had the Authority to Enter into the Tolling Agreement on Behalf of Key Equipment.

In this case BroadBand entered into a Tolling Agreement with Technology Credit

Corporation, which had been servicing the account for Key Equipment and who

BroadBand originally thought was the Defendant. In fact, and as alleged in detail in the

Amended Complaint, Technology Credit Corporation was acting pursuant to authority

from Key Equipment. Technology Credit Corporation was servicing the account on

behalf of Key Equipment, yet using the "d/b/a" name "Extreme Networks". It was only

after the Complaint was filed, responses to discovery were received, and other

information was provided to BroadBand by Technology Credit Corporation, that

BroadBand was able to unravel and decipher the complicated and misleading transactions

that were arranged by the three Defendants. Even though the Tolling Agreement was

ostensibly only executed by Technology Credit Corporation, Key Equipment should be

bound by the Tolling Agreement because Technology Credit Corporation had actual or

apparent authority to act on behalf of Key Equipment.

BroadBand's position that Technology Credit Corporation had the authority of

Key Equipment is acknowledged by Key Equipment in its Opening Brief wherein it

states that, "As a result of the transactions described above, <u>Key, acting by and through</u>

<u>Technology Credit Corporation,</u> financed the equipment for BroadBand to use.

Following the initial transaction, <u>Technology Credit Corporation, acting as "Extreme</u>

<u>Networks" continued as the servicing agent on the lease."</u> (Emphasis Added)  OB at 4.

11

An agency relationship can be created by the manifestations of the principal which would make the third party reasonably believe that the agent did have authority to act on behalf of the Principal. The Court must look to the principal's actions and third party's reasonable beliefs. See *AT&T v. Winback & Conserve Program*, 42 F.3d 1421, 1440 (3d Cir. 1994).

### B. Key Equipment has failed to demonstrate that there are not any facts that would enable the Court to conclude that Key Equipment's limitations defense should fail as result of tolling.

In order to prevail on a motion to dismiss based upon a statute of limitations argument, the "movant must show that the plaintiff can prove no set of facts which would toll the statute of limitations. *Levit v. Riddell Sports (In re MacGregor Sporting Goods)* 199 B.R. 502 (D. N.J. 1995). To prevail, Key Equipment must show that there is no set of facts that would enable the Court to conclude that Key Equipment's limitations defense fails as a result of tolling. The tolling of statute of limitations involves factual issues which cannot be resolved in the absence of discovery. *Id.* at 516. Tolling principles "involve questions of fact which can not be resolved as a matter of law on a motion to dismiss" and "factual issues which cannot be resolved in the absence of discovery." *Id.*, see also *Olshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1391 (3d Cir. 1994) ("Tolling issues relative to the statute of limitations involve factual issues which must be determined on a case-by-case basis, and cannot be decided in the context of a motion to dismiss.") In *Olshiver*, the court stated that the issue of whether a statute of limitations was tolled involves issues of fact which could not be resolved on the face of the complaint. 38 F.3d at 1391. "Simply, pleading the applicability of a tolling doctrine is sufficient to survive a motion to dismiss. " *Levit v. Riddell*, 199 B.R. 502 at

517. Key Equipment has failed to demonstrate that TCC cannot prove that the Statute of

Limitations should be tolled. Therefore, its Motion to Dismiss should be denied.

### C. Alternatively, the Doctrine of Equitable Tolling is Applicable.

In the unlikely event that the Court were to find after an evidentiary hearing, the

conduct of which is clearly not appropriate in the context of a Motion to Dismiss, that

Key Equipment is not bound by the Tolling Agreement, then the Court should apply the

doctrine of Equitable Tolling. This is also a question of fact that precludes the Court

from granting Key Equipment's Motion.

The U.S. Supreme Court has stated that the doctrine of equitable tolling is "read

into every federal statute of limitations." *In re Lyons,* 130 B.R. 272, 279

(Bankr.N.D.Ill.1991) (citing *Holmberg v. Armbrecht,* 327 U.S. 392, 397 (1946)). The

doctrine of equitable tolling can be applied to toll the statute of limitations in bankruptcy

adversary proceedings. *Id.* at 281 (citing *In re White v. Boston,* 104 B.R. 951,957

(S.D.Ind.1989); *In re Butcher,* 72 B.R. 247, 250 (Bankr. E.D.Tenn 1987); *In re Butcher,*

67 B.R. 102, 103 (Bankr. E.D.Tenn. 1986); and *In re Metzeler,* 66 B.R. 977,981 (Bankr.

S.D.N.Y 1986)). The court in *In re Lyons* acknowledged the applicability of the doctrine

of equitable tolling to 11. U.S.C. § 546(a)'s two-year statute of limitations, but declined

to apply it to the particular facts of that case where the plaintiff learned the true facts of

the voidable transfers while there was still a year in which to file the actions. *In re Lyons,*

130 B.R. at 280. Therefore, because BroadBand's adversary proceeding against Key

Equipment is governed by 11 U.S.C. § 546(a)(1)(A)'s two year statute of limitations,

equitable tolling may be considered as well, and in these circumstances should be

applied.

13

The Third Circuit has repeatedly held that there are three principal, though not exclusive, situations in which equitable tolling might be appropriate: (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action: (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights: or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum. *Olshiver*, 38 F.3d at 1387.

BroadBand submits that it has been "actively misled" into believing TCC was solely liable for the avoidable payments due to the Defendants' convoluted, interwoven business practices. Therefore, the equitable tolling doctrine is appropriate. All three Defendants were closely involved in the lease transaction through a series of guarantees, purported corporate affiliations and transfers, "d/b/a's" and interlocking relationships. For example, Extreme Networks, Inc. allowed Technology Credit Corporation to hold itself out as "Extreme Networks Corporation", and to enter into agreements with BroadBand under that name, and to use Extreme Networks, Inc.'s business address and corporate logo. Extreme Networks, Inc. also allowed Key Equipment to hold itself out as "Extreme Networks Credit Corporation" and use Extreme Networks, Inc.'s corporate logo in dealing with BroadBand. Key Equipment allowed Technology Credit Corporation to service the account and to use the name "Extreme Networks."

As such, Key Equipment's Motion should be denied, since the applicability of a tolling doctrine has been asserted by Plaintiff and involves factual questions that are not appropriate in the context of a motion to dismiss. See, *Olshiver*, 38 F.3d at 1391.

14

## II. THE AMENDED COMPLAINT SHOULD RELATE BACK TO THE FILING OF THE ORIGINAL COMPLAINT.

Ordinarily, of course, limitations is a factual matter based upon when the events in question occurred. See, *Tello v. Dean Witter Reynolds, Inc.* 410 F.3d 1275, 1295 (11th Cir. 2005) (factual finding must be made before limitations issue can be determined in securities case).

Fed.R.Civ.P. 15, made applicable to this proceeding by Fed.R.Bankr.P. 7015, titled "Amended and Supplemental Pleadings", is grounded in a recognition that it is preferable for a case to be decided on its merits rather than on pleading technicalities. *Foman v. Davis,* 371 U.S. 178, 182 (1962). Rule 15 states in relevant part:

> (c)    Relation Back of Amendments. An amendment of a pleading relates back to the date of the original pleading when
> ...
>
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
>
> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied, and within the period provided by Rule 4(j) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

The Rule is written in the conjunctive, and courts interpret 15(c)(3) as imposing three conditions, all of which must be met for a successful relation back of an amended complaint that seeks to substitute newly named defendants. *Singletary v. Pennsylvania Dept. of Corrections,* 266 F.3d 186, 194 (3d. Cir. 2001), citing *Urrutia v. Harrisburg*

*County Police Dept.*, 91 F.3d 451(3d. Cir. 1996) ("three conditions in Rule 15(c)(3) must be satisfied" for relation back).[1]

As applied to this case, those requirements are: (1) that the Amended Complaint be based upon the "conduct, transaction, or occurrence" as the Complaint; (2) that Key Equipment received notice of the filing of the action so that it will not be prejudiced, and (3) that Key Equipment "knew or should have known" that except for a mistake, it would have been named as a defendant.

BroadBand believes that discovery will eventually show that its claims against Key Equipment satisfy all the requirements for "relation back" under Rule 15(c), but it also recognizes that these are factual issues it may be required to prove.

However, in the context of its Rule 12(b)(6) motion, the burden of persuasion as to what the evidence may eventually show must be borne by Key Equipment. Under the well-settled standard of a Rule 12(b)(6) motion, Key Equipment must demonstrate "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

To prevail, Key Equipment must show "beyond doubt" that there is <u>no set of facts</u> which BroadBand could prove that would allow "relation back". Key Equipment simply has not satisfied that burden.

### A. Same "Conduct, Transaction or Occurrence"

It is unquestionable that the Amended Complaint satisfies the requirement of Rule 15(c)(2) that the claim or defense asserted in the amended pleading "arose out of the

---

[1] Key Equipment asserts that there are "four conditions". Opening Brief, pp. 9, 10. It appears that Key equipment refers to the requirements of Rule 15(c)(3)(B) twice.

conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." The Amended Complaint seeks the avoidance of the exact same transfers as did the original Complaint. It is well established that a change in legal theory is of no consequence when the facts underlying in the two pleadings are the same. 6(a) Wright, Miller, & Kane, *Federal Practice and Procedure* § 1497 (2d. ed. 2002). Here, with regard to the avoidance claims under Sections 547 and 550 of the Bankruptcy Code, neither the underlying facts nor the legal theory has changed between the Complaint and the Amended Complaint. As such, both complaints are based upon the same "conduct, transaction or occurrence." See *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004) (even if amendment restates original claim with greater particularity or amplifies factual circumstances surrounding pertinent conduct, transaction or occurrence in preceding pleading relates back to date of original pleading).

### B. Actual or Imputed Notice of the Lawsuit

Rule 15(c)(3) notice does not require actual service of process on the party sought to be added; notice may be deemed to have occurred when a party who has some reason to expect his potential involvement as a defendant hears of the commencement of litigation through some informal means. *Singletary,* 266 F.3d at 195. Notice under Rule 15 may be "actual" or "imputed." *Garvin v. City of Philadelphia*, 354 F.3d 215, 222-23 (3d Cir.2003).

In the discussion of "actual notice" in its Opening Brief, Key Equipment shows exactly why the dismissal it seeks is inappropriate. In its section heading on page 10 of its Opening Brief, Key Equipment boldly states "**Key Did Not Receive Notice Of The Original Complaint …**". (emphasis in original). Further, it states "Key [Equipment] did

17

not receive actual notice within the period proscribed...". OB at 10. Key Equipment's defense on this issue is a purely underline_factual one, not a legal one. Key Equipment provides no proof of the allegations, either by affidavit or discovery material. Nor may Key Equipment properly do so in the context of a motion to dismiss under Rule 12(b)(6). Moreover, given the allegations concerning the extensive interrelationships among the defendants, and the obvious existence of multiple agency relationships, it is certainly a reasonable inference that Key Equipment may have received underline_actual notice of the lawsuit. The question before the Court in this context is whether there is a possible set of facts on which BroadBand can prevail, and the answer is undoubtedly "Yes". Because Key Equipment's defense on this issue is a factual one, not a legal one, the existence of this issue alone requires the denial of its Motion to Dismiss.

The Court of Appeals for the Third Circuit has held that even if there is no actual notice of the suit, notice may be "imputed", and has recognized two methods of imputing notice: (1) the "shared attorney" method; and (2) the "identity of interest" method. *Garvin*, 354 F.3d at 222-23.

The application of the "shared attorney" doctrine is based on the common sense idea that when the same attorney represents both the originally named party and the party sought to be added, "the attorney is likely to have communicated to the latter party that he may very well be joined in the action." *Id.* The obvious factual issue that arises in this context is whether, at or near the time of the filing of this lawsuit, the attorney for Defendant Technology Credit Corporation represented Key Equipment, acted on its behalf, or communicated with it regarding the lawsuit. There is no basis for the Court to decide that issue in the context of Key Equipment's Motion. Of course, the fact that Key

equipment's current attorneys represent only Key Equipment is not relevant to the determination of the facts at the relevant time. Again, the presence or absence of Key Equipment's defense is based upon a set of facts not before the Court.

Notice may also be imputed to a party which did not receive actual notice of that party has an "identity of interest" with a party that did receive actual notice. Key Equipment argues that "this Court cannot conclude that service of the Original Complaint..." satisfies the identity of interest test applies. OB at 11.

Key Equipment, once again, is asking the Court to reach a conclusion based upon the facts of its relationship with the original defendant. While that defendant and Key Equipment may not have an "identity of interest" for all purposes, they may have had that relationship with regard to the BroadBand lease transaction on which they were working together to collect the overdue amounts from BroadBand.  Further, given the existence of the multiple and overlapping agent-principal relationships, the facts of which are set forth in the Amended Complaint, service on the agent might fairly be imputed to the principal.

### C.  Key Equipment's Knowledge of a Mistake in Naming the Defendant

It is undeniable that the evidence may eventually show that Key Equipment "knew or should have known" that the action would named it as a defendant, except for a mistake. The "knew or should have known" requirement ensures that the defendant to be added knew or should have known all along that joinder was a possibility. *E.I. duPont de Nemours & Co. v. Phillips Petroleum Co.*, 621 F.Supp. 310. (D. Del. 1985) citing *Taliaferro v. Costello*, 467 F.Supp. 33, 36 (E.D.Pa.1979). The questions of what Key Equipment knew at any point in time and whether BroadBand made a "mistake" are fundamentally questions of fact. Key Equipment makes the bold assertion that

19

BroadBand "knew" that Key Equipment was the proper party.[2] While it might be able to tell this Court what it knew, it is certainly not competent to tell the Court what *BroadBand* knew.

Further its apparent attempt to "impute" notice to BroadBand that it was a proper party is legally and factually wrong. Key Equipment's Exhibits C and D are hearsay documents offered for the truth of their contents, not for their existence, and may not be considered. In the context of a motion to dismiss, a court in this circuit may not generally go beyond the "four corners' of the complaint. *In re Burlington Coat Factory Securities Litigation,* 114 F.3d 1410, 1426 (3d Cir. 1997). Limited exceptions permit the Court to consider a document "integral" to the complaint, or, a "public record" as a matter of judicial notice. See *Oran v. Stafford,* 226 F.3d 275, 289 (3d Cir. 2000).

Even if Key Equipment argued for the application of the exceptions, they would not be applicable here. Exhibit C is an alleged copy of a UCC Financing Statement, and Exhibit D is an alleged copy of a proof of claim. Neither of the exhibits is referred to or made a part of the Amended Complaint and therefore neither is "integral" to it. While the exhibits may be "public records", such documents may not be used to show the proof of their contents. *Id.* at 289, citing *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 774 (2d Cir.1991). Key Equipment is attempting to use them, not for their existence, but for the proof that Key Equipment (a) "held a security interest in the Equipment at issue", and (b) "was the assignee of TCC's rights". Neither of these alleged "facts" can be determined from the existence of the document, but necessarily involve questions of the accuracy of its contents. As such, Exhibit C is hearsay under the Federal Rules of Evidence. Further

---

[2] Apparently Key Equipment does not deny that it is a potentially liable party under 11 U.S.C. §§ 547 and 550.

Key Equipment remarkably asserts that the documents show what <u>BroadBand</u> as a post-petition Debtor-in-Possession knew[3], and, in a tremendous leap of logic, whether the naming of Technology Credit Corporation as the defendant in the original Complaint was (a) a mistake, or (b) a calculated litigation decision. As stated before, however, Key Equipment's argument proves too much--- if BroadBand had known that Key Equipment was the potentially responsible defendant, there is no reason to believe that it would not have directly sued Key Equipment in the first instance. Any explanation other than "mistake" is pure factual conjecture on Key Equipment's part.[4] In addition to its previous arguments about what Key Equipment knew, and when Key Equipment knew it, this defendant would have this Court decide in the context of a motion to dismiss what <u>BroadBand</u> knew, and when <u>BroadBand</u> knew it.

In essence, Key Equipment is asserting the unsupported proposition that BroadBand must demonstrate that relation back is appropriate on the face of the Amended Complaint. No such requirement exists. A complaint does not have to anticipate affirmative defenses to survive a motion to dismiss. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Key Equipment seeks to have this Court engage in further burden-shifting that is not authorized by Rule 12 or by applicable case law. "A complaint...need not allege all that a Plaintiff must eventually prove." *Atchinson v. District of Colombia*, 73 F.3d 418, 421-22 (D.C. Cir. 1996). Further, while BroadBand vigorously contends

---

[3] Whether a post-petition Debtor-In-Possession, such as BroadBand, may be bound by the alleged knowledge of the debtor prior to its bankruptcy filing is a highly complex question of bankruptcy law that the Court need not reach given the hearsay nature of Key Equipment's Exhibits C and D and the impropriety of their use in the context of a Rule 12(b)(6) motion.

[4] Aside from whether Exhibit D is "offered for the truth" of its contents, the argument Key Equipment makes is that BroadBand, as Debtor-in-Possession pursuant to 11 U.S.C. § 1101 with duties of a Trustee pursuant to 11 U.S.C. § 1107, should be charged with knowledge of a particular proof of claim out of the large number filed in this case. There is no basis for the Court to make that determination in this context.

that its Amended Complaint is legally sufficient and withstands scrutiny under Rule 12, in the event that this Court agrees with Key Equipment's contention that not all necessary allegations are present, the Court should permit BroadBand to make and support those allegations in a further amendment. Leave to amend must generally be granted unless equitable considerations render it otherwise unjust. *Foman*, 371 U.S. at 182.

In summary, the results of the discovery process will ultimately show what Key Equipment knew at various times, and whether its asserted limitations defense survives the relation back provisions of Rule 15. But the task before this Court is to determine whether there is a possible set of facts on which the Plaintiff could prevail, and that set of facts unquestionably exists. Because of the existence of that set of facts, Key Equipment's Motion must fail. As stated before, Key equipment's raw allegations of what it knew, when it knew it, what BroadBand knew, and when BroadBand knew it, are factual issues far beyond the permissible scope of a motion designed to test the "legal sufficiency" of the complaint. *JM Mechanical Corp.*, 716 F.2d at 197.

## III. COUNT THREE OF THE COMPLAINT STATES A CAUSE OF ACTION UNDER § 550 OF THE BANKRUPTCY CODE.

Section 550(a) of the Bankruptcy Code provides that the trustee may recover from the initial transferee or any immediate or mediate transferee "to the extent that a transfer is avoided under Section ... 547....". The Code specifically separates the identification of avoidable transfers, under provisions such as Section 547, from the identification under Section 550 of who must pay. See, *In re H & S Transportation,* 939 F.2d 355, 358 (6th Cir 1991). If it is determined that the transfer is a preference under Section 547, the Court then looks to Section 550(a) to determine to whom the plaintiff may look for recovery of the property. *Id.* Although more than one creditor may be held responsible for a single

22

avoidable transaction under Section 550(a), such a recovery is subject to the trustee's right to only a single satisfaction of each preference claim. *Id.*, citing 11 U.S.C. § 550(c). While it is true that the viability of a Section 550 count is dependent upon the existence of a viable avoidance count, even if Key Equipment were entitled to dismissal under the preference count, there would continue to be a viable preference count as to two other defendants. A Section 550 action may be commenced against an entity that was not a party to the underlying section 547 action. See, *In re Warmus*, 276 B.R. 688 (S.D. Fla. 2002). It is also premature for the Court to deal with the Section 550 issues, as the issue of the avoidability of the transfers themselves has not been determined by this Court.

## CONCLUSION

For all of the foregoing reasons, Plaintiff BroadBand Office, Inc. respectfully

requests that this Honorable Court deny Key Equipment's Motion to Dismiss.

Dated: March 13, 2006          Respectfully submitted,
       Wilmington, Delaware
                               WERB & SULLIVAN


                               /s/  Brian A. Sullivan
                               Brian A. Sullivan          (DE #2098)
                               Robert D. Wilcox          (DE #4321)
                               Amy D. Brown              (DE #4077)
                               300 Delaware Avenue, 13th Floor
                               P. O. Box 25046
                               Wilmington, DE   19899
                               Telephone: (302) 652-1100

                               Attorneys for Broadband Office, Inc., Plaintiff

# Exhibit C

| United States Bankruptcy Court **District of Delaware** | **PROOF OF CLAIM** |
|---|---|

| In re (Name of Debtor)<br><br>**Broadband Office, Inc.** | **Case Number  01-1720 (GMS)**<br>**Chapter 11** |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor<br>*(The person or other entity to whom the debtor owes money or property)*<br><br>**Key Equipment Finance, a division of Key Corporate**<br><br>**Capital, Inc., fka Leasetec Corporation** | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |
|---|---|

DISTRICT OF DELAWARE
BROADBAND OFFICE, INC.
01-1720 (GMS)
00129

| Name and Address Where Notices Should be Sent<br><br>**Key Equipment Finance**<br>**Attn:  Sal Boscia**<br>**1000 South McCaslin Boulevard**<br>**Louisville, CO  80027**<br><br>**Tel. (720) 304 – 1175 Fax: (720) 304 – 1716** | ☐ Check box if you have never received any notices from the bankruptcy court in this case.<br><br>☐ Check box if the address differs from the address on the envelope sent to you by the court. |
|---|---|

THIS SPACE IS FOR
COURT USE ONLY

| ACCOUNT OR OTHER NUMBER BY WHICH CREDITOR IDENTIFIES DEBTOR<br>**Lease # X163  Schedule #s 01, 02, 03, 04, 05 & 06** | Check here if this claim ☐ replaces a previously filed claim, dated ___.<br>☐ amends |
|---|---|

**1. BASIS FOR CLAIM:**

| | |
|---|---|
| ☐ Goods sold | ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a) |
| ☐ Services performed | ☐ Wages, salaries, and compensation (Fill out below) |
| ☐ Money loaned | Your social security number ___. |
| ☐ Personal injury/wrongful death | Unpaid compensation for services performed |
| ☐ Taxes | from _____ to _____ |
| ☒ Other (describe briefly) | date        date |
| **Computer Equipment – See Attached Schedule** | |

| 2. DATE DEBT WAS INCURRED:<br>**03/09/00** | 3. IF COURT JUDGMENT, DATE OBTAINED: |
|---|---|

**4. CLASSIFICATION OF CLAIM.** Under the Bankruptcy Code all claims are classified as one or more of the following: (1) Unsecured nonpriority, (2) Unsecured priority, (3) Secured. It is possible for part of a claim to be in one category and part in another.
CHECK THE APPROPRIATE BOX OR BOXES that best describe your claim and STATE THE AMOUNT OF THE CLAIM AT TIME CASE FILED.

| | |
|---|---|
| ☒ SECURED CLAIM $ **6,066,838.91**<br>Attach evidence of perfection of security interest<br>Brief Description of Collateral:<br>☐ Real Estate  ☐ Motor Vehicle  ☒ Other (Describe briefly)<br>**Computer Equipment – See Attached Schedule**<br>Amount of arrearage and other charges at time case filed included in Secured claim above, if any $ **877,772.27** | ☐ Wages, salaries, or commissions (up to $4000)*, earned not more than 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(3)<br>☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(4)<br>☐ Up to $1,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use -- 11 U.S.C. § 507(a)(6) |
| ☐ UNSECURED NONPRIORITY CLAIM $__.<br>A claim is unsecured if there is no collateral or lien on property of the debtor Securing the claim or to the extent that the value of such property is less than The amount of the claim. | ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child – 11 U.S.C. § 507(a)(7)<br>☐ Taxes or penalties of governmental units - 11 U.S.C. § 507(a)(8) |
| ☐ UNSECURED PRIORITY CLAIM $__.<br>Specify the priority of the claim. | ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a) ___.<br>*Amounts are subject to adjustment on 4/11/98 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. |

| 5. TOTAL AMOUNT OF CLAIM AT THE TIME | $_____ (Unsecured) | $ **6,066,838.91** (Secured) | $_____ (Priority) | $ **6,066,838.91** (Total) |
|---|---|---|---|---|

☐ Check this box if claim includes charges in addition to the principal amount of the claim. Attach itemized statement of all additional charges.

| | THIS SPACE IS FOR COURT USE ONLY |
|---|---|
| 6. CREDITS AND SETOFFS: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. In filing this claim, claimant has deducted all amounts that claimant owes to debtor.<br><br>7. SUPPORTING DOCUMENTS: *Attach copies of supporting documents*, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, or evidence of security interests. If the documents are not available, explain. If the documents are voluminous, attach a summary.<br>Attachment 1- Calculation, Attachment II - Lease & Schedule, Attachment III – Assignment, Attachment IV – Assignment<br><br>8. TIME-STAMPED COPY: To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim. | 2001 MAY 29  PM 2: 09<br>U.S. BANKRUPTCY COURT<br>DISTRICT OF DELAWARE |

| Date<br>**06/21/01** | Sign and print the name and title, if any, of the creditor or other person Authorized to file this claim (attach copy of power of attorney, if any)<br><br>Brian D. York – Director of Asset Recovery |
|---|---|

FILED

2001 JUN 29 PM 2: 09

CLERK
U.S. BANKRUPTCY COURT
DISTRICT OF DELAWARE



Key Equipment Finance
1000 S. McCaslin Blvd.
Superior, CO  80027

June 21, 2001

<u>CERTIFIED - Return Receipt Requested</u>

United States Bankruptcy Court
Attn:  David D. Bird - Clerk of the Court
824 Market Street, 5th Floor
Wilmington, DE  19801

Dear Mr. Bird:

SUBJECT:    **Broadband Office, Inc.**
            **Case # 01-1720 (GMS)**

Enclosed for filing in your office is the original Proof of Claim (with attachments) in the above-referenced cases.

Also enclosed is one copy of the Proof of Claim (without attachments) to be docket-stamped and returned to us in the enclosed, self-addressed, stamped envelope.

Sincerely,

Elizabeth Guarino
Recovery Coordinator

Enclosures

# RIDER A

The secured status of this claim is based upon the fact that the Debtor is obligated to this lessor
pursuant to an unexpired true lease of equipment (as supported by the enclosed attachments) which
the Debtor may assume.  However, in the event that (i) the lease is rejected and the equipment is
returned to lessor, or (ii) the lease is deemed a lease intended as security; and the equipment value is
insufficient to satisfy lessor's entire claim, then lessor shall have an unsecured claim in an amount
equal to the difference between the entire secured claim and the value of the equipment.

06/21/2001

## ATTACHMENT 1

BROADBAND OFFICE, INC.

Amounts Due Key Equipment Finance - Bankruptcy #:    01-1720 (GMS)

Date of Filing:    05/09/01

### PRE-PETITION - PAGE 1

| INVOICE OR DESCRIPTION | INV DUE DATE | AS OF | RENT | TAX | SUB TOTAL | # DAYS O/S | CONTRACT LATE CHARGE | TOTAL |
|---|---|---|---|---|---|---|---|---|
| 1615296 | 12/28/00 | 05/08/01 | 3,787.27 | 921.73 | $ 4,709.00 | 132 | $ 414.39 | $ 5,123.39 |
| 1644386 | 01/28/01 | 05/08/01 | 3,787.27 | 921.73 | $ 4,709.00 | 101 | $ 317.07 | $ 5,026.07 |
| 1671935 | 02/28/01 | 05/08/01 | 3,787.27 | 921.73 | $ 4,709.00 | 70 | $ 219.75 | $ 4,928.75 |
| 1702709 | 03/28/01 | 05/08/01 | 20,482.81 | 921.73 | $ 21,404.54 | 42 | $ 599.33 | $ 22,003.87 |
| 1729842 | 04/28/01 | 05/08/01 | 7,510.36 | 337.97 | $ 7,848.33 | 11 | $ 57.55 | $ 7,905.88 |
| 1635622 | 01/11/01 | 05/08/01 | 8,042.04 | 2,041.05 | $ 10,083.09 | 118 | $ 793.20 | $ 10,876.29 |
| 1664372 | 02/11/01 | 05/08/01 | 8,222.04 | 2,041.05 | $ 10,263.09 | 87 | $ 595.26 | $ 10,858.35 |
| 1691107 | 03/11/01 | 05/08/01 | 44,467.52 | 2,041.05 | $ 46,508.57 | 59 | $ 1,829.34 | $ 48,337.91 |
| 1722082 | 04/11/01 | 05/08/01 | 41,503.02 | 1,867.65 | $ 43,370.67 | 28 | $ 809.59 | $ 44,180.26 |
| 1611818 | 12/20/00 | 05/08/01 | 14,974.75 | 3,717.39 | $ 18,692.14 | 140 | $ 1,744.60 | $ 20,436.74 |
| 1639003 | 01/20/01 | 05/08/01 | 14,974.75 | 3,717.39 | $ 18,692.14 | 109 | $ 1,358.30 | $ 20,050.44 |
| 1667916 | 02/20/01 | 05/08/01 | 14,974.75 | 3,657.97 | $ 18,632.72 | 78 | $ 968.90 | $ 19,601.62 |
| 1696281 | 03/20/01 | 05/08/01 | 80,988.45 | 3,717.39 | $ 84,705.84 | 50 | $ 2,823.53 | $ 87,529.37 |
| 1725363 | 04/20/01 | 05/08/01 | 51,292.68 | 2,308.18 | $ 53,600.86 | 19 | $ 678.94 | $ 54,279.80 |
| 1616184 | 12/29/00 | 05/08/01 | 3,484.11 | 864.93 | $ 4,349.04 | 131 | $ 379.82 | $ 4,728.86 |
| 1645324 | 01/29/01 | 05/08/01 | 3,484.11 | 864.93 | $ 4,349.04 | 100 | $ 289.94 | $ 4,638.98 |
| 1671936 | 02/28/01 | 05/08/01 | 3,484.11 | 851.10 | $ 4,335.21 | 70 | $ 202.31 | $ 4,537.52 |
| 1702714 | 03/29/01 | 05/08/01 | 18,843.25 | 864.93 | $ 19,708.18 | 41 | $ 538.69 | $ 20,246.87 |
| 1730670 | 04/29/01 | 05/08/01 | 6,281.08 | 282.65 | $ 6,563.73 | 10 | $ 43.76 | $ 6,607.49 |
| 1610229 | 12/17/00 | 05/08/01 | 11,149.48 | 2,767.78 | $ 13,917.26 | 143 | $ 1,326.78 | $ 15,244.04 |
| 1638107 | 01/17/01 | 05/08/01 | 11,149.48 | 2,767.78 | $ 13,917.26 | 112 | $ 1,039.16 | $ 14,956.42 |
| 1666324 | 02/17/01 | 05/08/01 | 11,149.48 | 2,723.54 | $ 13,873.02 | 81 | $ 749.14 | $ 14,622.16 |
| 1696282 | 03/17/01 | 05/08/01 | 60,300.10 | 2,767.78 | $ 63,067.88 | 53 | $ 2,228.40 | $ 65,296.28 |
| 1724827 | 04/17/01 | 05/08/01 | 44,220.07 | 1,989.91 | $ 46,209.98 | 22 | $ 677.75 | $ 46,887.73 |
| 1641725 | 01/26/01 | 05/08/01 | 29,122.66 | 7,290.26 | $ 36,412.92 | 103 | $ 2,500.35 | $ 38,913.27 |
| 1670357 | 02/26/01 | 05/08/01 | 29,125.36 | 7,172.07 | $ 36,297.43 | 72 | $ 1,742.28 | $ 38,039.71 |
| 1699604 | 03/26/01 | 05/08/01 | 157,724.14 | 7,286.80 | $165,010.94 | 44 | $ 4,840.32 | $ 169,851.26 |
| 1728379 | 04/26/01 | 05/08/01 | 68,347.13 | 3,096.64 | $ 71,443.77 | 13 | $ 619.18 | $ 72,062.95 |

| SUB TOTAL / PRE-PETITION AMOUNTS DUE UNDER LEASE: | | | | | | | | $ 877,772.27 |
| INTEREST ACCRUED SINCE PETITION DATE @ Contract Rate: | | | | | | | | $ 25,162.80 |

06/21/2001

| ATTACHMENT 1 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| BROADBAND OFFICE, INC. | | | | | | | | |
| Amounts Due Key Equipment Finance - Bankruptcy #: | | | | 01-1720 (GMS) | | | | |
| Date of Filing: | 05/09/01 | | | | | | | |
| *POST-PETITION - PAGE 2* | | | | | | | | |
| POST PETITION AMOUNTS ACCRUED TO DATE | | | | | | | | |
| INVOICE OR DESCRIPTION | INV DUE DATE | AS OF | RENT | TAX | SUB TOTAL | # DAYS O/S | POST PETITION INTEREST @ CONTRACT RATE | TOTAL |
| 1729642 | 04/28/01 | 06/21/01 | 12,972.45 | 583.76 | $ 13,556.21 | 54 | $ 488.02 | $ 14,044.23 |
| 1758506 | 05/28/01 | 06/21/01 | 20,482.81 | 921.73 | $ 21,404.54 | 24 | $ 342.47 | $ 21,747.01 |
| 1722082 | 04/11/01 | 06/21/01 | 2,964.50 | 133.40 | $ 3,097.90 | 71 | $ 146.63 | $ 3,244.53 |
| 1749851 | 05/11/01 | 06/21/01 | 44,467.52 | 2,041.05 | $ 46,508.57 | 41 | $ 1,271.23 | $ 47,779.80 |
| 1777170 | 06/11/01 | 06/21/01 | 44,467.52 | 2,001.05 | $ 46,468.57 | 10 | $ 309.79 | $ 46,778.36 |
| 1725363 | 04/20/01 | 06/21/01 | 29,695.77 | 1,336.32 | $ 31,032.09 | 62 | $ 1,282.66 | $ 32,314.75 |
| 1753007 | 05/20/01 | 06/21/01 | 80,988.45 | 3,644.50 | $ 84,632.95 | 32 | $ 1,805.50 | $ 86,438.45 |
| 1781390 | 06/20/01 | 06/21/01 | 80,988.45 | 3,644.50 | $ 84,632.95 | 1 | $ 56.42 | $ 84,689.37 |
| 1730670 | 04/29/01 | 06/21/01 | 12,562.17 | 565.31 | $ 13,127.48 | 53 | $ 463.84 | $ 13,591.32 |
| 1758515 | 05/29/01 | 06/21/01 | 18,843.25 | 847.96 | $ 19,691.21 | 23 | $ 301.93 | $ 19,993.14 |
| 1724827 | 04/17/01 | 06/21/01 | 16,080.03 | 723.60 | $ 16,803.63 | 65 | $ 728.16 | $ 17,531.79 |
| 1751950 | 05/17/01 | 06/21/01 | 60,300.10 | 2,713.51 | $ 63,013.61 | 35 | $ 1,470.32 | $ 64,483.93 |
| 1779984 | 06/17/01 | 06/21/01 | 60,300.10 | 2,713.51 | $ 63,013.61 | 4 | $ 168.04 | $ 63,181.65 |
| 1728379 | 04/26/01 | 06/21/01 | 89,377.01 | 4,049.45 | $ 93,426.46 | 56 | $ 3,487.92 | $ 96,914.38 |
| 1756114 | 05/26/01 | 06/21/01 | 157,724.14 | 7,146.09 | $164,870.23 | 26 | $ 2,857.75 | $ 167,727.98 |
| SUB TOTAL / POST PETITION AMOUNTS DUE ACCRUED TO DATE: | | | 732,214.27 | $ 33,065.74 | 765,280.01 | | $ 15,180.69 | 780,460.70 |

06/21/2001

| ATTACHMENT 1 | | | | | | | |
|---|---|---|---|---|---|---|---|
| BROADBAND OFFICE, INC. | | | | | | | |
| Amounts Due Key Equipment Finance - Bankruptcy #: | | | 01-1720 (GMS) | | | | |
| Date of Filing: | 05/09/01 | | | | | | |
| **_UNACCRUED FUTURE AMOUNTS DUE - POST PETITION - PAGE 3_** | | | | | | | |
| **LEASE # and RENTAL PERIOD** | **RENT** | **TAX** | | | | | **TOTAL** |
| Schedule No. X163-01<br>06/28/01 - 08/27/01<br>2 months @ $20,482.81/mo | 40,965.62 | 1,843.46 | | | | $ | 42,809.08 |
| Schedule No. X163-02<br>07/11/01 - 10/10/01<br>3 months @ $44,467.52/mo | 133,402.56 | 6,003.15 | | | | $ | 139,405.71 |
| Schedule No. X163-03<br>07/20/01 - 10/19/01<br>3 months @ $80,988.45/mo | 242,965.35 | 10,933.50 | | | | $ | 253,898.85 |
| Schedule No. X163-04<br>06/29/01 - 10/28/01<br>4 months @ $18,843.25/mo | 75,373.00 | 3,391.84 | | | | $ | 78,764.84 |
| Schedule No. X163-05<br>07/17/01 - 12/16/01<br>5 months @ $60,300.10/mo | 301,500.50 | 13,567.55 | | | | $ | 315,068.05 |
| Schedule No. X163-06<br>06/26/01 - 01/25/02<br>7 months @ $157,724.14/mo | 1,104,068.98 | 50,022.63 | | | | $ | 1,154,091.61 |
| X163-01 EST 2001 PPTX | 0.00 | 13,300.00 | | | | $ | 13,300.00 |
| X163-02 EST 2001 PPTX | 0.00 | 21,650.00 | | | | $ | 21,650.00 |
| X163-03 EST 2001 PPTX | 0.00 | 39,435.00 | | | | $ | 39,435.00 |
| X163-04 EST 2001 PPTX | 0.00 | 9,175.00 | | | | $ | 9,175.00 |
| X163-05 EST 2001 PPTX | 0.00 | 39,525.00 | | | | $ | 39,525.00 |
| X163-06 EST 2001 PPTX | 0.00 | 76,320.00 | | | | $ | 76,320.00 |
| **SUB TOTAL / POST PETITION UNACCRUED AMOUNTS DUE UNDER LEASE:** | | | | | | $ | 2,183,443.14 |
| **EQUIPMENT VALUE (for true leases):** | | | | | | $ | 2,200,000.00 |
| **TOTAL AMOUNT OF CLAIM\*** | | | | | | $ | 6,066,838.91 |
| *INTEREST ACCRUES ON ALL PRE- & POST-PETITION AMOUNTS AT LATE CHARGE RATE IN LEASE.* | | | | | | | |

# MASTER LEASE AGREEMENT

No. _____ X163 _____

This Master Lease Agreement (the "MLA") is entered into by and between Extreme Networks® Credit Corporation ("Lessor"), having its principal place of business at

3585 Monroe Street, Santa Clara, CA 95051 and     **Broadband Office, Inc.**     ("Lessee"),

having its principal place of business at     2070 Chain Bridge Road, Suite 350, Vienna, VA 22182

1. LEASE AGREEMENT. Lessor agrees to lease to Lessee, and Lessee agrees to lease from Lessor, the equipment (the "Equipment") referenced in each of the Schedules (the "Schedule" or "Schedules") which incorporate this MLA therein (the "Lease").

2. TERM. Each Lease shall be effective upon the execution of the MLA and the related Schedule by the Lessor and the Lessee. The lease term (the "Lease Term") of the Equipment referenced in each of the Schedules shall commence on the rent commencement date specified in each Schedule (the "Rent Commencement Date"). The Rent Commencement Date shall be the date 30 days from the date that the Equipment is shipped by the supplier (the "Ship Date") as evidenced by a shipping document provided by the supplier related to the Equipment (the "Shipping Document"). Lessor will provide Lessee with a copy of the Shipping Document evidencing the Ship Date.

3. RENT. The rent (the "Rent") for the Equipment referenced in any Schedule shall be as stated in such Schedule and shall be payable according to the provisions of such Schedule. If any amount payable under a Schedule is not received by Lessor within 10 days of the due date, Lessee agrees to pay an Overdue Charge, as defined herein, with respect to such amount.

4. SELECTION AND ASSIGNMENT. Lessee will select the type, quantity and Supplier of each item of Equipment designated in a Schedule, and Lessee hereby assigns to Lessor all of its right, title and interest in and to the related equipment purchase agreement, a copy of which has been provided to Lessor by Lessee (the "Agreement"). The Agreement may be amended with the consent of Lessor. Any such assignment with respect to Equipment shall become binding upon Lessor when Lessor shall have entered into a Lease with respect to such Equipment and as of the Rent Commencement Date referenced in such Lease. Upon such an assignment becoming effective, Lessor shall be obligated to purchase the Equipment from the Supplier in accordance with the provisions of the Agreement. It is expressly agreed that Lessee shall at all times remain liable to Supplier under the Agreement to perform all duties and obligations of Lessee thereunder, except for the obligation to purchase the Equipment to the extent expressly assumed by the Lessor hereunder, and that the Lessee shall be entitled to the same rights of the purchaser of the Equipment under the Agreement, except such right, title and interest in the Equipment retained exclusively by the Lessor as owner of the Equipment. Lessor shall have no liability for a Supplier's failure to meet the terms and conditions of the Agreement.

5. DELIVERY AND INSTALLATION. Lessee shall be responsible for payment of all transportation, packing, installation, testing and other charges associated with the delivery, installation or use of any Equipment which are not included in the Agreement with respect to such Equipment.

6. WARRANTIES. LESSOR MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, WITH RESPECT TO ANY OF THE EQUIPMENT, ITS MERCHANTABILITY, OR ITS FITNESS FOR A PARTICULAR PURPOSE. LESSOR SHALL NOT BE LIABLE TO LESSEE OR ANY OTHER PERSON FOR DIRECT, INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING FROM LESSEE'S USE OF THE EQUIPMENT, OR FOR DAMAGES BASED ON STRICT OR ABSOLUTE TORT LIABILITY OR LESSOR'S PASSIVE NEGLIGENCE. LESSEE HEREBY ACKNOWLEDGES THAT ANY MANUFACTURER'S OR SUPPLIER'S WARRANTIES WITH RESPECT TO THE EQUIPMENT ARE FOR THE BENEFIT OF BOTH LESSOR AND LESSEE. NOTWITHSTANDING THE FOREGOING, LESSEE'S OBLIGATIONS TO PAY EACH RENT PAYMENT SHALL CONTINUE IN FULL FORCE AND EFFECT, OR OTHERWISE PERFORM ITS OBLIGATIONS, UNDER THIS LEASE ARE ABSOLUTE AND UNCONDITIONAL.

7. TITLE TO AND LOCATION OF EQUIPMENT. Lessor shall retain title to each item of Equipment. Lessee, at its expense, shall protect Lessor's title and keep the Equipment free from all claims, liens, encumbrances and legal processes. The Equipment is personal property and is not to be regarded as part of the real estate on which it may be situated. If requested by Lessor, Lessee will, at Lessee's expense, furnish a landlord or mortgagee waiver with respect to the Equipment. The Equipment shall not be removed from the location specified in the Schedule without the written consent of Lessor. Lessee shall, upon Lessor's request, affix and maintain plates, tags or other identifying labels, showing Lessor's ownership of the Equipment in a prominent position on the Equipment.

8. USE OF EQUIPMENT, INSPECTION AND REPORTS. The use of the Equipment by Lessee shall conform with all applicable laws, insurance policies, and warranties of the manufacturer or Supplier of the Equipment. Lessor shall have the right to inspect the Equipment at the premises where the Equipment is located. Lessee shall notify Lessor promptly of any claims, liens, encumbrances or legal processes with respect to the Equipment.

9. FURTHER ASSURANCES. Lessee shall execute and deliver to Lessor such instruments as Lessor deems necessary for the confirmation of this Lease and Lessor's rights hereunder. Lessor is authorized to file financing statements signed only by the Lessor in accordance with the Uniform Commercial Code, or financing statements signed by Lessor as Lessee's attorney-in-fact. Any such filing with respect to the Equipment leased pursuant to a true lease shall not be deemed evidence of any intent to create a security interest under the Uniform Commercial Code.

10. MAINTENANCE AND REPAIRS. Lessee shall, at its expense, maintain each item of Equipment in good condition, normal wear and tear excepted. Lessee shall not make any addition, alteration, or attachment to the Equipment without Lessor's prior written consent. Lessee shall make no repair, addition, alteration or attachment to the Equipment which interferes with the normal operation or maintenance thereof, creates a safety hazard, or might result in the creation of a mechanic's or materialman's lien.

11. LESSOR'S PERFORMANCE OF LESSEE'S OBLIGATIONS. If Lessee fails to perform any of its obligations under a Lease, Lessor may perform any act or make any payment which Lessor deems necessary for the maintenance and preservation of the Equipment subject thereto and Lessor's title thereto. All sums so paid by Lessor (together with all related Overdue Charges), and reasonable attorneys' fees incurred by Lessor in connection therewith, shall be additional rent payable to Lessor on demand. The performance of any such act or the making of any such payment by Lessor shall not be deemed a waiver or release of any obligation or default on the part of Lessee.

12. INDEMNIFICATION. Lessee assumes liability for, and hereby agrees to indemnify, protect and hold harmless, Lessor, and its agents, employees, officers, directors, partners and successors and assigns, from and against, all liabilities, obligations, losses, damages, injuries, claims, demands, penalties, actions, costs and expenses, including, without limitation, reasonable attorneys' fees, of whatever kind and nature, in contract or in tort, arising out of the use, condition, operation, ownership, selection, delivery, leasing or return of any item of Equipment, regardless of when, how and by whom operated, or any failure on the part of Lessee to perform or comply with any of its obligations under a Lease, excluding, however, any of the foregoing which result from the gross negligence or wilful misconduct of Lessor. Such indemnities and assumptions of liabilities and obligations shall continue in full force and effect, notwithstanding the expiration or other termination of such Lease. Nothing contained in any Lease shall authorize Lessee to operate the Equipment subject thereto so as to incur or impose any liability on, or obligation for or on behalf of, Lessor.

13. NO OFF-SET. All Rents shall be paid by Lessee irrespective of any off-set, counterclaim, recoupment, defense or other right which Lessee may have against Lessor, the manufacturer or Supplier of the Equipment or any other party.

14. ASSIGNMENT BY LESSEE. Lessee shall not, without Lessor's prior written consent, (a) sell, assign, transfer, pledge, hypothecate, or otherwise dispose of, encumber or suffer to exist a lien upon or against, any of the Equipment or any Lease or any interest therein, by operation of law or otherwise, or (b) sublease or lend any of the Equipment or permit any of the Equipment to be used by anyone other than Lessee.

15. ASSIGNMENT BY LESSOR. Lessor may assign, sell or encumber its interest in any of the Equipment and any Lease. Upon Lessor's written consent, Lessee shall pay directly to the assignee of any such interest all Rent and other sums due under an assigned Lease. THE RIGHTS OF ANY SUCH ASSIGNEE SHALL NOT BE SUBJECT TO ANY ABATEMENT, DEDUCTION, OFF-SET, COUNTERCLAIM, RECOUPMENT, DEFENSE OR OTHER RIGHT WHICH LESSEE MAY HAVE AGAINST LESSOR OR ANY OTHER PERSON OR ENTITY. Notwithstanding the foregoing, any such assignment (a) shall be subject to Lessee's right to possess and use the Equipment subject to a Lease so long as Lessee is not in default thereunder, and (b) shall not release any of Lessor's obligations hereunder.

16. RETURN OF EQUIPMENT. Unless Lessee has exercised its option, if any, to renew a lease or purchase the Equipment subject thereto, upon expiration of the then current Lease Term of such Lease, Lessee shall, at its expense, cause such Equipment to be removed, disassembled, and placed in the same condition as when delivered to Lessee (reasonable wear and tear excepted) and properly crate such Equipment for shipment and deliver it to a common carrier designated by Lessor. Lessee will ship such Equipment, F.O.B. destination, to any address specified in writing by Lessor within the continental United States. All additions, attachments, alterations and repairs made or placed upon any of the Equipment shall become part of such Equipment and shall be the property of Lessor.

17. EVENTS OF DEFAULT. The occurrence of any of the following shall be deemed to constitute an Event of Default hereunder: (a) Lessee fails to pay Rent, any other amount it is obligated to pay under a Lease or any other amount it is obligated to pay to Lessor and does not cure such failure within 10 days of such amount becoming due; (b) Lessee fails to perform or observe any obligation or covenant to be performed or observed by Lessee hereunder or under any Schedule, including, without limitation, supplying all requested documentation, and does not cure such failure within 10 days of receiving written notice thereof from Lessor; (c) any warranty, representation or statement made or furnished to Lessor by or on behalf of Lessee is proven to have been false in any material respect when made or furnished; (d) the attempted sale or encumbrance by Lessee of the Equipment, or the making of any levy, seizure or attachment thereof or thereon; or (e) the dissolution, termination of existence, discontinuance of business, insolvency, or appointment of a receiver of any part of the property of Lessee, assignment by Lessee for the benefit of creditors, the commencement of proceedings under any bankruptcy, reorganization or arrangement laws by or against Lessee, or any other act of bankruptcy on the part of Lessee.

18. REMEDIES OF LESSOR. At any time after the occurrence of any Event of Default, Lessor may exercise one or more of the following remedies: (a) Lessor may terminate any or all of the Leases with respect to any or all items of Equipment subject thereto; (b) Lessor may recover from Lessee all Rent and other amounts then due and to become due under any or all of the Leases; (c) Lessor may take possession of any or all items of Equipment, wherever the same may be located, without demand or notice, without any court order or other process of law and without liability to Lessee for any damages occasioned by such taking of possession, and any such taking of possession shall not constitute a termination of any Lease; (d) Lessor may demand that Lessee return any or all items of Equipment to Lessor in accordance with Paragraph 16; and (e) Lessor may pursue any other remedy available at law or in equity, including, without limitation, seeking damages, specific performance or an injunction.

Upon repossession or other disposition of any item of the Equipment, Lessor shall sell, lease or otherwise dispose of such item in a commercially reasonable manner, with or without notice and on public or private bid, and apply the net proceeds thereof (after deducting the estimated fair market value of such item at the expiration of the term of the applicable Lease, in the case of a sale, or the rents due for any period beyond the scheduled expiration of such Lease, in the case of any subsequent lease of such item, and all expenses, including, without limitation, reasonable attorneys' fees, incurred in connection therewith) towards the Rent and other amounts due under such Lease, with any excess net proceeds to be retained by Lessor.

Each of the remedies under this Lease shall be cumulative, and not exclusive, and in addition to any other remedy referred to herein or otherwise available to Lessor in law or in equity. Any repossession or subsequent sale or lease by Lessor of any item of Equipment shall not bar an action for a deficiency as herein provided, and the bringing of an action or the entry of judgment against Lessee shall not bar Lessor's right to repossess any or all items of Equipment.

19. CREDIT AND FINANCIAL INFORMATION. Within 90 days of the close of each of Lessee's fiscal years, Lessee shall deliver to Lessor a copy of Lessee's annual report, if any, and an audited balance sheet and profit and loss statement with respect to such year. If audited financial statements of Lessee for such year are not prepared, Lessee may provide financial statements certified by an officer of Lessee. At Lessor's request, Lessee shall deliver to Lessor a balance sheet and profit and loss statement for any of its fiscal quarters, certified by an officer of Lessee.

20. INSURANCE. As of the date that risk of loss for the Equipment passes from the Supplier to the Lessee under the terms of the Agreement, Lessee shall obtain and maintain through the end of the Lease Term of each Lease (and any renewal or extension thereof), at its own expense, property damage and personal liability insurance and insurance against loss or damage to the Equipment, including, without limitation, loss by fire (with extended coverage), theft and such other risks of loss as are customarily insured against with respect to the types of Equipment leased hereunder and by the types of businesses in which such Equipment will be used by Lessee. Such insurance shall be in such amounts, with such deductibles, in such form and with such insurers as shall be satisfactory to Lessor; provided, however, that the amount of the insurance against loss or damage to the Equipment shall not be less than the greater of the replacement value of the Equipment, from time to time, or the original purchase price of the Equipment. Each insurance policy shall name Lessee as an insured and Lessor as an additional insured or loss payee, and shall contain a clause requiring the insurer to give Lessor at least 30 days prior written notice of any alteration in the terms of such policy or of the cancellation thereof. Lessee shall furnish to Lessor a certificate of insurance or other evidence satisfactory to Lessor that such insurance coverage is in effect; provided, however, that Lessor shall be under no duty either to ascertain the existence of or to examine such insurance policy or to advise Lessee in the event such insurance coverage shall not comply with the requirements hereof. Lessee shall give Lessor prompt notice of any damage to, or loss of, any of the Equipment, or any part thereof, or any personal injury or property damage occasioned by the use of any of the Equipment.

21. TAXES. Lessee hereby assumes liability for, and shall pay when due, and, on a net after-tax basis, shall indemnify, protect and hold harmless Lessor against all fees, taxes and governmental charges (including, without limitation, interest and penalties) of any nature imposed on or in any way relating to Lessor, Lessee, any item of Equipment or any Lease, except state and local taxes on or measured by Lessor's net income (other than any such tax which is in substitution for or relieves Lessee from the payment of taxes it would otherwise be obligated to pay or reimburse to Lessor as herein provided) and federal taxes on Lessor's net income. Lessee shall, at its expense, file when due with the appropriate authorities any and all tax and similar returns, and reports required to be filed with respect thereto, for which it has indemnified Lessor hereunder or, if requested by Lessor, notify Lessor of such requirements and furnish Lessor with all information required for Lessor to effect such filings. Any fees, taxes or other charges paid by Lessor upon failure of Lessee to make such payments shall, at Lessor's option, become immediately due from Lessee to Lessor and shall be subject to the Overdue Charge from the date paid by Lessor until the date reimbursed by Lessee.

22. SEVERABILITY. If any provision of any Lease is held to be invalid by a court of competent jurisdiction, such invalidity shall not affect the other provisions of such Lease or any provision of any other Lease.

23. NOTICES. All notices hereunder shall be in writing and shall be deemed given when sent by certified mail, postage prepaid, return receipt requested, addressed to the party to which it is being sent at its address set forth herein or to such other address as such party may designate in writing to the other party.

24. AMENDMENTS, WAIVERS AND EXTENSIONS. This MLA and each Schedule constitute the entire agreement between Lessor and Lessee with respect to the lease of the Equipment subject to such Schedule, and supersede all previous communications, understandings, and agreements, whether oral or written, between the parties with respect to such subject matter. No provision of any Lease may be changed, waived, amended or terminated except by a written agreement, specifying such change, waiver, amendment or termination, signed by both Lessee and Lessor, except that Lessor may insert, on the appropriate schedule, the serial number of Equipment, after delivery of such Equipment, and the Rent Commencement Date for the Equipment. No waiver by Lessor of any Event of Default shall be construed as a waiver of any future Event of Default or any other Event of Default. At the expiration of the Lease Term with respect to a Lease, upon notice given by Lessee at least ninety (90) days prior thereto, (a) such Lease shall be renewed or the Equipment subject thereto shall be purchased under the terms and conditions set forth herein for a term and amount or purchase price, as the case may be, to be agreed upon, or (b) if no such agreement is reached prior to the expiration of such Lease Term or such notice specifies that Lessee intends to return the Equipment, then Lessee shall return the Equipment to Lessor in the manner prescribed in Paragraph 16 of this MLA. In the absence of Lessor's timely receipt of the notice contemplated by the preceding sentence, the Lease shall be automatically extended, on a month-to-month basis, until terminated (upon notice by either party given at least ninety (90) days prior to the end of the month on which the termination is to be effective) or until renewal of the Equipment subject thereto is purchased by agreement of the parties. Unless otherwise agreed, Lessee shall continue to pay Rent for each month following such Lease Term until the Equipment subject to such Lease is returned pursuant to Paragraph 16 of this MLA.

25. CONSTRUCTION. This MLA shall be governed by and construed in accordance with the internal laws, but not the choice of laws provisions, of the State of California. The titles of the sections of this MLA are for convenience only and shall not define or limit any of the terms or provisions hereof. Time is of the essence in each of the provisions hereof.

26. PARTIES. This MLA shall be binding upon, and inure to the benefit of, the permitted assigns, representatives and successors of the Lessor and Lessee. If there is more than one Lessee named in this MLA, the liability of each shall be joint and several.

27. COUNTERPARTS. Each Lease may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute but one and the same instrument.

28. OVERDUE CHARGE. Overdue Charge shall mean an amount equal to 2% per month of any payment under a Lease which is past due, including, without limitation, any amounts not included in any payment of Rent hereunder, or the highest charge permitted by law, whichever is lower.

The person executing this MLA on behalf of Lessee hereby certifies that he or she has read, and is duly authorized to execute, this MLA.

Accepted by:
Extreme Networks® Credit Corporation                    LESSEE:  Broadband Office, Inc.

BY: _____                             BY: X _____

NAME: Jesse E. Hartigan                                 NAME: Perry G. Fab
                                                              Print
TITLE: CFO                                              TITLE: Director of Finance & Controller

DATE: 3/7/00                                            DATE: 3/9/00

# LEASE SCHEDULE NO. __01__

This Schedule and its supplements incorporate by this reference the terms and conditions of the Master Lease Agreement, Number __X163__, between

Extreme Networks® Credit Corporation (Lessor) and __Broadband Office, Inc.__ _____ (Lessee).

1.  Supplier: __Extreme Networks__ _____

2.  Location of Equipment: __Broadband Office, Inc.  2070 Chain Bridge Road, Suite 350,  Vienna, VA 22182__ _____

3.  Equipment Value: $ ___349,416.75___ (exclusive of sales and/or use taxes).

4.  Lease Term: The Lease Term of the Equipment described in this Schedule shall begin on the Rent Commencement Date referenced below in Paragraph 6

    and its expiration date shall be __18__ months after such Rent Commencement Date.

5.  Rent: $ __20,482.81__ per month (exclusive of sales and/or use taxes) due and payable at the Rent Commencement Date and on the same date of each

    succeeding month of the Lease Term. The advance Rent payment shall be $ __40,965.62__ . This amount includes $ __20,482.81__ for the

    first month, and $ __20,482.81__ for the last __1__ month(s), of the Lease Term.

6.  Rent Commencement Date: __February 28__ 19 __2000__

7.  Purchase Option:

    Lessee shall have the option to purchase the Equipment for its fair market value for continued use ("FMV"), on the expiration of this Lease or any renewal term, provided Lessee is not in default of any of its obligations under this Lease on such expiration date. This purchase option may only be exercised by Lessee's written notice to Lessor not earlier than 180 days, nor later than 90 days, prior to the end of the Lease Term or any renewal term. The purchase price for such Equipment shall be payable upon the expiration date of such term. FMV shall be equal to the value of the Equipment installed and in use, with consideration given to the age, condition, utility and replacement costs for the Equipment. In the event that Lessor and Lessee are unable to agree upon the purchase price for the Equipment, such purchase price will be determined by an independent appraiser to be selected by Lessor. Lessee shall be responsible for all applicable sales and/or use taxes on the Equipment. Upon exercise of this purchase option and payment of the purchase price, Lessor shall execute and deliver to Lessee such documents as Lessee may reasonably request in order to vest in Lessee all right, title and interest in the Equipment.

8.  Renewal Option:

    Lessee shall have the option to renew this Lease, on the expiration date of this Lease or any renewal term, for the fair market rental for the continued use of the Equipment ("FMR") and on such other terms as may be agreed upon by Lessor and Lessee prior to such expiration date, provided Lessee is not in default of any of its obligations under this lease on such expiration date. This renewal option may only be exercised by Lessee's written notice to Lessor not earlier than 180 days, nor later than 90 days, prior to the end of the Lease Term or any renewal term. FMR shall be equal to the value of the monthly rental of the Equipment installed and in use, with consideration given to the age, condition, utility and replacement costs for the Equipment, for the renewal term.

9.  Tax Benefits:

    Lessee understands that Lessor intends to claim the "Tax Benefits", consisting of the maximum Modified Accelerated Cost Recovery System deductions for the minimum useful life applicable to each item of Equipment, as provided by Sections 168(b) and (c) of the Internal Revenue Code of 1986, and analogous benefits under state law, with respect to the Equipment. Lessee represents and warrants that: (i) Lessee has not been, is not now, and during the term of this Lease will not become, and will not allow the Equipment to be used by or leased to, a tax-exempt entity or government agency; and (ii) Lessee is not now, and during the term of this Lease will not become, a public utility. Without limitation by the preceding sentence, Lessee agrees not to take any action, fail to take any action, or misstate any fact which may result in any loss to Lessor of the Tax Benefits.

    Lessee agrees to pay promptly to Lessor an amount which will fully compensate Lessor, on an after-tax basis, for any loss of the Tax Benefits, plus interest, penalties and additions to tax, any loss in time value of the Tax Benefits, and any taxes imposed on any such compensation payment, resulting from Lessee's acts, omissions or misstatements, including, without limitation, with respect to the representations and warranties in the preceding paragraph. A loss of Tax Benefits occurs at the earliest of: (i) the happening of any event causing the loss; (ii) payment by Lessor of any additional tax resulting from the loss; or (iii) any adjustment to the tax return of Lessor. Lessor's right to recovery of a loss of Tax Benefits shall survive the expiration or termination of this Lease.

10. Description of Equipment:

    See Schedule A which is attached hereto and made a part hereof by this reference.

The person executing this Schedule on behalf of Lessee hereby certifies that he or she has read, and is duly authorized to execute, this Schedule

Accepted by: Extreme Networks® Credit Corporation          LESSEE: __Broadband Office, Inc.__

BY: _James E. Hartigan_                                     BY: _____

NAME: _James E. Hartigan_                                   NAME: _PERRY G. FABI_
              Print                                                        Print

TITLE: _CFO_                                                TITLE: _DIRECTOR OF FINANCE & CONTROLLER_

DATE: _3/9/00_                                              DATE: _3/9/00_

# ADDENDUM

This Addendum is to Schedule No. 01 (the "Schedule") to Master Lease Agreement No. X163, by and between Extreme Networks Credit Corporation ("Lessor") and Broadband Office, Inc. ("Lessee").

Paragraph **(7)** – In Paragraph **(7)** of the Lease Schedule, the following in replaced:

The words "its fair market value for continued use ("FMV") in the first line of Paragraph **(7)** are deleted and replaced with the following:  **"(20)**% of the Equipment Value not to exceed the Fair Market Value ("FMV").

Except as modified by this Addendum, the terms and conditions of the Schedule shall remain in full force and effect.

Accepted by:

| Extreme Networks Credit Corporation | Lessee: Broadband Office, Inc. |
|---|---|
| By: _____ | By: _____ |
| Name: _Jmms E. Hudson_ | Name: _Perry G. Fabi_ |
| Title: _CFO_ | Title: _Director of Finance & Controller_ |
| Date: _3/9/00_ | Date: _3/9/00_ |



February 9, 2000

Mr. Brian Blair
Broadband Office, Inc.
2070 Chain Bridge Road, Suite 350
Vienna, VA  22182

Re:  Master Lease Agreement No. X163, Schedule No. 01

Dear Mr. Blair:

Please sign below your agreement and acknowledgment that the Rent Commencement date
on the above referenced Schedule to Master Lease Agreement No. X163 will be

_Feb 28 2000_

This date supersedes section 3 of the Master Lease Agreement.

Except as modified by this letter, the terms and conditions of the Lease Schedule and Master
Lease Agreement shall remain in full force and effect.

Don't hesitate to call with any questions you may have.

Cordially,

Extreme Networks® Credit Corporation

_Richard Salhany_ V.P.

Richard Salhany

Agreed and Acknowledged by:

Broadband Office, Inc.

By: _____

Name: _Brian Blair_

Title: _Manager Purchasing + Contracts_

Date: _3/10/00_

3585 Monroe Street, Santa Clara, CA 95051
Phone 408.579.2800   Fax 408.579.3000
http://www.extremenetworks.com





## SCHEDULE A

2070 Chain Bridge Road, Suite 350                    MLA#  X163
Vienna, VA  22182                                     Schedule #01

| Serial Number | Description | Quantity | Unit Price | Total Price |
|---|---|---|---|---|
| 14001 | SUMMIT4-10/100TX | 21 | 6,997.50 | 146,947.50 |
| 11703 | S7i 1000BSX 4 GBIC | 5 | 15,672.25 | 78,361.25 |
| 15001 | SUMMIT48-BASIC LAYE | 20 | 3,677.70 | 73,554.00 |
| 13011 | SUMMIT24-BASIC LAYE | 20 | 2,527.70 | 50,554.00 |

**TOTAL COST:**          **$349,416.75**

PRINT OR TYPE ALL INFORMATION

THE SECURED PARTY DESIRES THIS FINANCING STATEMENT TO BE INDEXED AGAINST THE RECORD OWNER
OF THE REAL ESTATE   NO ( )   YES ( )   NAME OF RECORD OWNER_____

STATE CORPORATION COMMISSION
(Uniform Commercial Code Division, Box 1197, Richmond, Virginia 23209)
FORM FOR ORIGINAL FINANCING STATEMENT AND SUBSEQUENT STATEMENTS

| The Commission stamps the File Number on the Original Financing Statement. The secured party must place this same number on all subsequent statements. | |
|---|---|

Index numbers of subsequent statements  (For office use only)

| Name & mailing address of all debtors, trade styles, etc. No other name will be indexed. | Check the box indicating the kind of statement. Check only one box. |
|---|---|
| Broadband Office, Inc. 2070 Chain Bridge Road Vienna, VA 22162 | (X)   ORIGINAL FINANCING STATEMENT<br><br>( )   CONTINUATION-ORIGINAL STILL EFFECTIVE<br><br>( )   AMENDMENT<br><br>( )   ASSIGNMENT<br><br>( )   PARTIAL RELEASE OF COLLATERAL<br><br>( )   TERMINATION |
| **Name & address of Secured Party**<br><br>Extreme Networks® Credit Corporation 3585 Monroe Street Santa Clara, CA 95051 | **Name & address of Assignee**<br><br>Leasetec Corporation 1000 South McCaslin Blvd Superior, CO 80027 |
| Date of maturity if less than five years | Check if proceeds of collateral are covered ( ) |

Description of collateral covered by original financing statement

MLA# X163-01
See attached (VA, Fairfax)

TCC# 620  X163-01

Space to record an amendment, assignment, release of collateral or a statement to cover collateral brought into Virginia from another jurisdiction.

Describe Real Estate if applicable:

| Broadband Office, Inc.<br>X_____ 3/9/00<br>Signature of Debtor if applicable (Date) | Extreme Networks® Credit Corporation<br>X_____<br>Signature of Secured Party if applicable (Date) |
|---|---|

Revised 7-1-82



PRINT OR TYPE ALL INFORMATION

THE SECURED PARTY DESIRES THIS FINANCING STATEMENT TO BE INDEXED AGAINST THE RECORD OWNER OF THE REAL ESTATE   NO ( )   YES ( )    NAME OF RECORD OWNER

**STATE CORPORATION COMMISSION**
(Uniform Commercial Code Division, Box 1197, Richmond, Virginia 23209)
FORM FOR ORIGINAL FINANCING STATEMENT AND SUBSEQUENT STATEMENTS

| The Commission stamps the File Number on the Original Financing Statement. The secured party must place this same number on all subsequent statements. | |
|---|---|
| Index numbers of subsequent statements (For office use only) | **000417 7259** |

| Name & mailing address of all debtors, trade styles, etc. No other name will be indexed. | Check the box indicating the kind of statement. Check only one box. |
|---|---|
| Broadband Office, Inc. 2070 Chain Bridge Road, Suite 350 Vienna, VA 22162 | (X)  ORIGINAL FINANCING STATEMENT<br><br>( )  CONTINUATION-ORIGINAL STILL EFFECTIVE<br><br>( )  AMENDMENT<br><br>( )  ASSIGNMENT<br><br>( )  PARTIAL RELEASE OF COLLATERAL<br><br>( )  TERMINATION |

| Name & address of Secured Party | Name & address of Assignee |
|---|---|
| Extreme Networks® Credit Corporation 3585 Monroe Street Santa Clara, CA 95051 | Leasetec Corporation 1000 South McCaslin Blvd Superior, CO. 80027 |

| Date of maturity if less than five years | Check if proceeds of collateral are covered  ( ) |
|---|---|

Description of collateral covered by original financing statement

MLA# X163-01
See attached  (VA)

TCC#620  X163-01

Space to record an amendment, assignment, release of collateral or a statement to cover collateral brought into Virginia from another jurisdiction.

Describe Real Estate if applicable:

| Broadband Office, Inc. | Extreme Networks® Credit Corporation |
|---|---|
| X | |

# LEASE SCHEDULE NO. __02__

This Schedule and its supplements incorporate by this reference the terms and conditions of the Master Lease Agreement, Number __X163__, between

Extreme Networks® Credit Corporation (Lessor) and __Broadband Office, Inc.__ (Lessee).

1.  Supplier: __Extreme Networks__

2.  Location of Equipment: __2070 Chain Bridge Road, Suite 350, Vienna, VA 22182__

3.  Equipment Value: $ __758,572.50__ (exclusive of sales and/or use taxes).

4.  Lease Term: The Lease Term of the Equipment described in this Schedule shall begin on the Rent Commencement Date referenced below in Paragraph 6 and its expiration date shall be __18__ months after such Rent Commencement Date.

5.  Rent: $ __44,467.52__ per month (exclusive of sales and/or use taxes) due and payable at the Rent Commencement Date and on the same date of each succeeding month of the Lease Term. The advance Rent payment shall be $ __88,935.04__. This amount includes $ __44,467.52__ for the first month, and $ __44,467.52__ for the last __1__ month(s), of the Lease Term.

6.  Rent Commencement Date: _____, 20_____.

7.  Purchase Option:

    Lessee shall have the option to purchase the Equipment for its fair market value for continued use ("FMV"), on the expiration of this Lease or any renewal term, provided Lessee is not in default of any of its obligations under this Lease on such expiration date. This purchase option may only be exercised by Lessee's written notice to Lessor not earlier than 180 days, nor later than 90 days, prior to the end of the Lease Term or any renewal term. The purchase price for such Equipment shall be payable upon the expiration date of such term. FMV shall be equal to the value of the Equipment installed and in use, with consideration given to the age, condition, utility and replacement costs for the Equipment. In the event that Lessor and Lessee are unable to agree upon the purchase price for the Equipment, such purchase price will be determined by an independent appraiser to be selected by Lessor. Lessee shall be responsible for all applicable sales and/or use taxes on the Equipment. Upon exercise of this purchase option and payment of the purchase price, Lessor shall execute and deliver to Lessee such documents as Lessee may reasonably request in order to vest in Lessee all right, title and interest in the Equipment.

8.  Renewal Option:

    Lessee shall have the option to renew this Lease, on the expiration date of this Lease or any renewal term, for the fair market rental for the continued use of the Equipment ("FMR") and on such other terms as may be agreed upon by Lessor and Lessee prior to such expiration date, provided Lessee is not in default of any of its obligations under this lease on such expiration date. This renewal option may only be exercised by Lessee's written notice to Lessor not earlier than 180 days, nor later than 90 days, prior to the end of the Lease Term or any renewal term. FMR shall be equal to the value of the monthly rental of the Equipment installed and in use, with consideration given to the age, condition, utility and replacement costs for the Equipment, for the renewal term.

9.  Tax Benefits:

    Lessee understands that Lessor intends to claim the "Tax Benefits", consisting of the maximum Modified Accelerated Cost Recovery System deductions for the minimum useful life applicable to each item of Equipment, as provided by Sections 168(b) and (c) of the Internal Revenue Code of 1986, and analogous benefits under state law, with respect to the Equipment. Lessee represents and warrants that: (i) Lessee has not been, is not now, and during the term of this Lease will not become, and will not allow the Equipment to be used by or leased to, a tax-exempt entity or government agency; and (ii) Lessee is not now, and during the term of this Lease will not become, a public utility. Without limitation by the preceding sentence, Lessee agrees not to take any action, fail to take any action, or misstate any fact which may result in any loss to Lessor of the Tax Benefits.

    Lessee agrees to pay promptly to Lessor an amount which will fully compensate Lessor, on an after-tax basis, for any loss of the Tax Benefits, plus interest, penalties and additions to tax, any loss in time value of the Tax Benefits, and any taxes imposed on any such compensation payment, resulting from Lessee's acts, omissions or misstatements, including, without limitation, with respect to the representations and warranties in the preceding paragraph. A loss of Tax Benefits occurs at the earliest of: (i) the happening of any event causing the loss; (ii) payment by Lessor of any additional tax resulting from the loss; or (iii) any adjustment to the tax return of Lessor. Lessor's right to recovery of a loss of Tax Benefits shall survive the expiration or termination of this Lease.

10. Description of Equipment:

    See Schedule A which is attached hereto and made a part hereof by this reference.

The person executing this Schedule on behalf of Lessee Hereby certifies that he or she has read, and is duly authorized to execute, this Schedule

Accepted by: Extreme Networks® Credit Corporation

BY: _James E. Hartigan_

NAME: _James E. Hartigan_
Print

TITLE: _CFO_

DATE: _3/17/00_

LESSEE: __Broadband Office, Inc.__

BY: _Perry Fabi_

NAME: _PERRY FABI_
Print

TITLE: _DIRECTOR OF FINANCE & CONTROLLER_

DATE: _3/17/00_

## ADDENDUM

This Addendum is to Schedule No. 02 (the "Schedule") to Master Lease Agreement No. X163, by and between Extreme Networks Credit Corporation ("Lessor") and Broadband Office, Inc. ("Lessee").

Paragraph 7 -- In Paragraph 7 of the Lease Schedule, the following in replaced:

The words "its fair market value for continued use ("FMV")" in the first line of Paragraph 7 are deleted and replaced with the following: "20% of the Equipment Value not to exceed the Fair Market Value ("FMV").

Except as modified by this Addendum, the terms and conditions of the Schedule shall remain in full force and effect.

Accepted by:

Extreme Networks Credit Corporation

By: _____

Name: _J___ E. H_____

Title: _____ CFO _____

Date: _3/17/00_

Lessee: Broadband Office, Inc.

By: X _____

Name: _PERRY FA01_

Title: _DIRECTOR OF FINANCE & CONTROLLER_

Date: _3/17/00_





## SCHEDULE A

Broadband Office, Inc.                                         MLA#     X163
2070 Chain Bridge Road, Suite 350                             Schedule # 02
Vienna, VA  22182

| Serial Number | Description | Quantity | Unit Price | Total Price |
|---|---|---|---|---|
| 14001 | SUMMIT4-10/100TX | 71 | 6,997.50 | 496,822.50 |
| 15010 | 48 10/100 TX, NO GBIC | 18 | 2,997.50 | 53,955.00 |
| 15001 | SUMMIT48-BASIC LAYE | 30 | 3,997.50 | 119,925.00 |
| 13011 | SUMMIT24-BASIC LAYE | 30 | 2,747.50 | 82,425.00 |
| 10011 | SX GBIC MODULE | 20 | 272.25 | 5,445.00 |

**TOTAL COST:**                    **$758,572.50**

3585 Monroe Street, Santa Clara, CA 95051
Phone 408.579.2800   Fax 408.579.3000
http://www.extremenetworks.com



March 16, 2000

Mr. Perry Fabi
Broadband Office, Inc.
2070 Chain Bridge Road, Suite 350
Vienna, VA 22182

RE: Master Lease Agreement No. X163, Schedule No. 02

Dear Mr. Fabi:

We have attached a copy of the Shipping Document or Suppliers Invoice evidencing the
Ship Date of     March 13, 2000 as provided under Section 2 of the above referenced
Master Lease Agreement. Accordingly, your lease payments for the above referenced
schedule shall commence on April 11, 2000.

Our billing department will send out invoices shortly reflecting payments due. Please
remit all other payments to the address at the top of this letter or to the address on the
invoices, which our billing department will send out.

Regards,

EXTREME NETWORKS® CREDIT CORPORATION

Richard Salhany

cc: Billing Department

3585 Monroe Street, Santa Clara, CA 95051
Phone 408.579.2800   Fax 408.579.3000
http://www.extremenetworks.com

*2423184 CC VA FAIRFAX*

*#13* ✓

PRINT OR TYPE ALL INFORMATION

THE SECURED PARTY DESIRES THIS FINANCING STATEMENT TO BE INDEXED AGAINST THE RECORD OWNER

OF THE REAL ESTATE   NO ( )  YES ( )   NAME OF RECORD OWNER_____

STATE CORPORATION COMMISSION
(Uniform Commercial Code Division, Box 1197, Richmond, Virginia 23209)
FORM FOR ORIGINAL FINANCING STATEMENT AND SUBSEQUENT STATEMENTS

| | |
|---|---|
| The Commission stamps the File Number on the Original Financing Statement. The secured party must place this same number on all subsequent statements. | |

Index numbers of subsequent statements  (For office use only)

| Name & mailing address of all debtors, trade styles, etc. No other name will be indexed.<br><br>Broadband Office, Inc.<br>2070 Chain Bridge Road, Suite 350<br>Vienna, CA 22182 | Check the box indicating the kind of statement. Check only one box.<br><br>(X) ORIGINAL FINANCING STATEMENT<br><br>( ) CONTINUATION-ORIGINAL STILL EFFECTIVE<br><br>( ) AMENDMENT<br><br>( ) ASSIGNMENT<br><br>( ) PARTIAL RELEASE OF COLLATERAL<br><br>( ) TERMINATION |
| Name & address of Secured Party<br><br>Extreme Networks ® Credit Corporation<br>3583 Monroe XXXX Street<br>Santa Clara, CA 95051 | Name & address of Assignee<br><br>Leasetec Corporation<br>1000 South McCaslin Blvd<br>Superior, CO. 80027 |
| Date of maturity if less than five years | Check if proceeds of collateral are covered ( ) |

Description of collateral covered by original financing statement

MLA# X163-02    (Fairfax, VA)
See attached

TCC 627  X163-02

Space to record an amendment, assignment, release of collateral or a statement to cover collateral brought into Virginia from another jurisdiction.

Describe Real Estate if applicable:

RETURN ACK. TO:
UCC DIRECT SERVICES
P.O. BOX 29071
GLENDALE, CA 91209-9071

Broadband Office, Inc.

X _____ 3/17/00
Signature of Debtor if applicable (Date)

Extreme Networks® Credit XX Corporation

_____
Signature of Secured Party if applicable (Date)



2318'    SS VA

PRINT OR TYPE ALL INFORMATION

THE SECURED PARTY DESIRES THIS FINANCING STATEMENT TO BE INDEXED AGAINST THE RECORD OWNER

OF THE REAL ESTATE   NO ( )   YES ( )   NAME OF RECORD OWNER_____

STATE CORPORATION COMMISSION
(Uniform Commercial Code Division, Box 1197, Richmond, Virginia 23209)
FORM FOR ORIGINAL FINANCING STATEMENT AND SUBSEQUENT STATEMENTS

| The Commission stamps the File Number on the Original Financing Statement. The secured party must place this same number on all subsequent statements. | |
|---|---|
| Index numbers of subsequent statements  (For office use only) | **000612  7390** |

| Name & mailing address of all debtors, trade styles, etc. No other name will be indexed. | Check the box indicating the kind of statement. Check only one box. |
|---|---|
| Broadband Office, Inc.<br>2070 Chain Bridge Road, Suite 350<br>Vienna, VA 22182    #13 | (X)  ORIGINAL FINANCING STATEMENT<br>( )  CONTINUATION-ORIGINAL STILL EFFECTIVE<br>( )  AMENDMENT<br>( )  ASSIGNMENT<br>( )  PARTIAL RELEASE OF COLLATERAL<br>( )  TERMINATION |
| Name & address of Secured Party | Name & address of Assignee |
| Extreme Networks® Credit Corporation<br>3583 Monroe Street<br>Santa Clara, CA 95051 | Leasetec Corporation<br>1000 South McCaslin Blvd<br>Superior, CO. 80027 |
| Date of maturity if less than five years | Check if proceeds of collateral are covered  ( ) |

Description of collateral covered by original financing statement
MLA# X163-02    (VA)
See attached

TCC 627  X163-02

SCC - CLERK'S OFFICE

Space to record an amendment, assignment, release of collateral or a statement to cover collateral brought into Virginia from another jurisdiction.

Describe Real Estate if applicable:

RETURN ACK. TO:
UCC DIRECT SERVICES
P.O. BOX 29071
GLENDALE, CA 91209-9071

Broadband Office, Inc.                    Extreme Networks® Credit Corporation

X _____ 3/17/00

Signature of Debtor if applicable (Date)          Signature of Secured Party if applicable (Date)

# LEASE SCHEDULE NO. __03__

This Schedule and its supplements incorporate by this reference the terms and conditions of the Master Lease Agreement, Number __X163__, between

Extreme Networks® Credit Corporation (Lessor) and __Broadband Office, Inc.__ _____ (Lessee).

1. Supplier: __Extreme Networks__

2. Location of Equipment: __2070 Chain Bridge Road, Suite 350, Vienna, VA 22182__

3. Equipment Value: $ __1,381,584.00__ (exclusive of sales and/or use taxes).

4. Lease Term: The Lease Term of the Equipment described in this Schedule shall begin on the Rent Commencement Date referenced below in Paragraph 6 and its expiration date shall be __18__ months after such Rent Commencement Date.

5. Rent $ __80,988.45__ per month (exclusive of sales and/or use taxes) due and payable at the Rent Commencement Date and on the same date of each succeeding month of the Lease Term. The advance Rent payment shall be $ __161,976.90__. This amount includes $ __80,988.45__ for the first month, and $ __80,988.45__ for the last __1__ month(s), of the Lease Term.

6. Rent Commencement Date: _____, 19 _____.

7. Purchase Option:

Lessee shall have the option to purchase the Equipment for its fair market value for continued use ("FMV"), on the expiration of this Lease or any renewal term, provided Lessee is not in default of any of its obligations under this Lease on such expiration date. This purchase option may only be exercised by Lessee's written notice to Lessor not earlier than 180 days, nor later than 90 days, prior to the end of the Lease Term or any renewal term. The purchase price for such Equipment shall be payable upon the expiration date of such term. FMV shall be equal to the value of the Equipment installed and in use, with consideration given to the age, condition, utility and replacement costs for the Equipment. In the event that Lessor and Lessee are unable to agree upon the purchase price for the Equipment, such purchase price will be determined by an independent appraiser to be selected by Lessor. Lessee shall be responsible for all applicable sales and/or use taxes on the Equipment. Upon exercise of this purchase option and payment of the purchase price, Lessor shall execute and deliver to Lessee such documents as Lessee may reasonably request in order to vest in Lessee all right, title and interest in the Equipment.

8. Renewal Option:

Lessee shall have the option to renew this Lease, on the expiration date of this Lease or any renewal term, for the fair market rental for the continued use of the Equipment ("FMR") and on such other terms as may be agreed upon by Lessor and Lessee prior to such expiration date, provided Lessee is not in default of any of its obligations under this lease on such expiration date. This renewal option may only be exercised by Lessee's written notice to Lessor not earlier than 180 days, nor later than 90 days, prior to the end of the Lease Term or any renewal term. FMR shall be equal to the value of the monthly rental of the Equipment installed and in use, with consideration given to the age, condition, utility and replacement costs for the Equipment, for the renewal term.

9. Tax Benefits:

Lessee understands that Lessor intends to claim the "Tax Benefits", consisting of the maximum Modified Accelerated Cost Recovery System deductions for the minimum useful life applicable to each item of Equipment, as provided by Sections 168(b) and (c) of the Internal Revenue Code of 1986, and analogous benefits under state law, with respect to the Equipment. Lessee represents and warrants that: (i) Lessee has not been, is not now, and during the term of this Lease will not become, and will not allow the Equipment to be used by or leased to, a tax-exempt entity or government agency; and (ii) Lessee is not now, and during the term of this Lease will not become, a public utility. Without limitation by the preceding sentence, Lessee agrees not to take any action, fail to take any action, or misstate any fact which may result in any loss to Lessor of the Tax Benefits.

Lessee agrees to pay promptly to Lessor an amount which will fully compensate Lessor, on an after-tax basis, for any loss of the Tax Benefits, plus interest, penalties and additions to tax, any loss in time value of the Tax Benefits, and any taxes imposed on any such compensation payment, resulting from Lessee's acts, omissions or misstatements, including, without limitation, with respect to the representations and warranties in the preceding paragraph. A loss of Tax Benefits occurs at the earliest of: (i) the happening of any event causing the loss; (ii) payment by Lessor of any additional tax resulting from the loss; or (iii) any adjustment to the tax return of Lessor. Lessor's right to recovery of a loss of Tax Benefits shall survive the expiration or termination of this Lease.

10. Description of Equipment:

See Schedule A which is attached hereto and made a part hereof by this reference.

The person executing this Schedule on behalf of Lessee Hereby certifies that he or she has read, and is duly authorized to execute, this Schedule

Accepted by: Extreme Networks® Credit Corporation

BY: _Jame P Hartgin_

NAME: _James F. Hartigan_
            Print

TITLE: _CFO_

DATE: _3/28/00_

LESSEE: _Broadband Office, Inc._

BY: _____

NAME: _Perry Fabi_
            Print

TITLE: _Director of Finance & Controller_

DATE: _8/24/00_

## ADDENDUM

This Addendum is to Schedule No. 03 (the "Schedule") to Master Lease Agreement No. X163, by and between Extreme Networks Credit Corporation ("Lessor") and Broadband Office, Inc. ("Lessee").

Paragraph (x) -- In Paragraph (x) of the Lease Schedule, the following in replaced:

The words "its fair market value for continued use ("FMV") in the first line of Paragraph **7 (x)** are deleted and replaced with the following: "20% of the Equipment Value not to exceed the Fair Market Value ("FMV")".

Except as modified by this Addendum, the terms and conditions of the Schedule shall remain in full force and effect.

Accepted by:

Extreme Networks ® Credit Corporation

By: _James P Hartigan_

Name: _James F. Hartigan_

Title: _CFO_

Date: _3/28/00_

Lessee: Broadband Office, Inc.

By: _____

Name: _Peter Frei_

Title: _Director of Finance & Controller_

Date: _3/24/00_





**SCHEDULE A**

Broadband Office, Inc.                                    MLA#      X163
2070 Chain Bridge Road, Suite 350                        Schedule#  03
Vienna, VA  22182

| Quantity | Description |
| --- | --- |
| 70 | Summit4 - 10/100TX |
| 50 | S7F,28 100BSX.4 GBIC |
| 23 | 48 10/100 TX, No GBIC |
| 144 | SX GBIC Module |

**TOTAL COST:**          **$1,381,584.00**

3585 Monroe Street, Santa Clara, CA 95051
Phone 408.579.2800   Fax 408.579.3000
http://www.extremenetworks.com





March 24, 2000


Mr. Peter Fabi
Broadband Office, Inc.
2070 Chain Bridge Road, Suite 350
Vienna, VA  22182

RE:  Master Lease Agreement No. X163, Schedule No. 03

Dear Mr. Fabi:

We have attached a copy of the Shipping Document or Suppliers Invoice evidencing the Ship Date of March 22, 2000 as provided under Section 2 of the above referenced Master Lease Agreement.  Accordingly, your lease payments for the above referenced schedule shall commence on April 20, 2000.

Our billing department will send out invoices shortly reflecting payments due.  Please remit all other payments to the address at the top of this letter or to the address on the invoices, which our billing department will send out.

Regards,

EXTREME NETWORKS® CREDIT CORPORATION

Richard Salhany



cc: Billing Department

3585 Monroe Street, Santa Clara, CA 95051
Phone 408.579.2800   Fax 408.579.3000
http://www.extremenetworks.com

Case 1:04-cv-00407-GMS   Document 69-7   Filed 03/15/2007   Page 26 of 48

000642  7301

Broadband Office, Inc.
2970 Chain Bridge Road, Suite 350
Vienna VA 22182

Extreme Networks Credit Corporation
3585 Monroe Street
Santa Clara CA 95051

Leasetec Corporation
1080 Sauter McGarity Blvd
Superior, CO  80021

MEAP X161 - 03 (VA)
See Attached

FCC 629  X161-03

Broadband Office, Inc.

RETURN ACK TO:
DOCUMENT SERVICES  Extreme Networks Credit Corporation
P.O. Box 29071
Glendale CA 91209-9071

Revised 7-1-82



242 3/90    CC VII FAIRFAX

**PRINT OR TYPE ALL INFORMATION**

THE SECURED PARTY DESIRES THIS FINANCING STATEMENT TO BE INDEXED AGAINST THE RECORD OWNER OF THE REAL ESTATE   NO ( )   YES ( )   NAME OF RECORD OWNER

### STATE CORPORATION COMMISSION
(Uniform Commercial Code Division, Box 1197, Richmond, Virginia 23209)
**FORM FOR ORIGINAL FINANCING STATEMENT AND SUBSEQUENT STATEMENTS**

The Commission stamps the File Number on the Original Financing Statement. The secured party must place this same number on all subsequent statements.

Index numbers of subsequent statements (For office use only)   # 142

| Name & mailing address of all debtors, trade styles, etc. No other name will be indexed. | Check the box indicating the kind of statement. Check only one box. |
|---|---|
| | (X) ORIGINAL FINANCING STATEMENT |
| | ( ) CONTINUATION-ORIGINAL STILL EFFECTIV |
| Broadband Office, Inc. | ( ) AMENDMENT |
| 2070 Chain Bridge Road, Suite 350 | ( ) ASSIGNMENT |
| Vienna VA 22182 | ( ) PARTIAL RELEASE OF COLLATERAL |
| | ( ) TERMINATION |

| Name & address of Secured Party | Name & address of Assignee |
|---|---|
| Extreme Networks Credit Corporation | Lessetec Corporation |
| 3585 Monroe Street | 1000 South McCaslin Blvd |
| Santa Clara, CA 95051 | Superior, Co. 80027 |

Date of maturity if less than five years   |   Check if proceeds of collateral are covered

Description of collateral covered by original financing statement

MLA# X163 - 03 (Fairfax, VA)
See Attached

TCC 629  X163-03

Space to record an amendment, assignment, release of collateral or a statement to cover collateral brought into Virginia from another jurisdiction.

Describe Real Estate if applicable:

URN ACK TO
RETURN ASK TO
UCC DIRECT SERVICES
P.O. BOX 29071
GLENDALE, CA 91209-9071

Broadband Office, Inc.        Extreme Networks Credit Corporation

3/24/00

Signature of Debtor if applicable (Date)        Signature of Secured Party if applicable (Date)

# LEASE SCHEDULE NO. ___04___

This Schedule and its supplements incorporate by this reference the terms and conditions of the Master Lease Agreement, Number ___X163___, between

Extreme Networks® Credit Corporation (Lessor) and __Broadband Office, Inc._____ (Lessee).

1.  Supplier: ___Extreme Networks_____

2.  Location of Equipment: ___2070 Chain Bridge Road, Suite 350, Vienna, VA 22182_____

3.  Equipment Value: $ ___321,447.50___ (exclusive of sales and/or use taxes).

4.  Lease Term: The Lease Term of the Equipment described in this Schedule shall begin on the Rent Commencement Date referenced below in Paragraph 6 and its expiration date shall be ___18___ months after such Rent Commencement Date.

5.  Rent: $ __18,843.25__ per month (exclusive of sales and/or use taxes) due and payable at the Rent Commencement Date and on the same date of each succeeding month of the Lease Term. The advance Rent payment shall be $ __37,686.50__. This amount includes $ __18,843.25__ for the first month, and $ ___18,843.25___ for the last ___1___ month(s), of the Lease Term.

6.  Rent Commencement Date: _____, 20 _____.

7.  Purchase Option:

    Lessee shall have the option to purchase the Equipment for its fair market value for continued use ("FMV"), on the expiration of this Lease or any renewal term, provided Lessee is not in default of any of its obligations under this Lease on such expiration date. This purchase option may only be exercised by Lessee's written notice to Lessor not earlier than 180 days, nor later than 90 days, prior to the end of the Lease Term or any renewal term. The purchase price for such Equipment shall be payable upon the expiration date of such term. FMV shall be equal to the value of the Equipment installed and in use, with consideration given to the age, condition, utility and replacement costs for the Equipment. In the event that Lessor and Lessee are unable to agree upon the purchase price for the Equipment, such purchase price will be determined by an independent appraiser to be selected by Lessor. Lessee shall be responsible for all applicable sales and/or use taxes on the Equipment. Upon exercise of this purchase option and payment of the purchase price, Lessor shall execute and deliver to Lessee such documents as Lessee may reasonably request in order to vest in Lessee all right, title and interest in the Equipment.

8.  Renewal Option:

    Lessee shall have the option to renew this Lease, on the expiration date of this Lease or any renewal term, for the fair market rental for the continued use of the Equipment ("FMR") and on such other terms as may be agreed upon by Lessor and Lessee from such expiration date, provided Lessee is not in default of any of its obligations under this lease on such expiration date. This renewal option may only be exercised by Lessee's written notice to Lessor not earlier than 180 days, nor later than 90 days, prior to the end of the Lease Term or any renewal term. FMR shall be equal to the value of the monthly rental of the Equipment installed and in use, with consideration given to the age, condition, utility and replacement costs for the Equipment, for the renewal term.

9.  Tax Benefits:

    Lessee understands that Lessor intends to claim the "Tax Benefits", consisting of the maximum Modified Accelerated Cost Recovery System deductions for the minimum useful life applicable to each item of Equipment, as provided by Sections 168(b) and (c) of the Internal Revenue Code of 1986, and analogous benefits under state law, with respect to the Equipment. Lessee represents and warrants that: (i) Lessee has not been, is not now, and during the term of this Lease will not become, and will not allow the Equipment to be used by or leased to, a tax-exempt entity or government agency; and (ii) Lessee is not now, and during the term of this Lease will not become, a public utility. Without limitation by the preceding sentence, Lessee agrees not to take any action, fail to take any action, or misstate any fact which may result in any loss to Lessor of the Tax Benefits.

    Lessee agrees to pay promptly to Lessor an amount which will fully compensate Lessor, on an after-tax basis, for any loss of the Tax Benefits, plus interest, penalties and additions to tax, any loss in time value of the Tax Benefits, and any taxes imposed on any such compensation payment, resulting from Lessee's acts, omissions or misstatements, including, without limitation, with respect to the representations and warranties in the preceding paragraph. A loss of Tax Benefits occurs at the earliest of: (i) the happening of any event causing the loss; (ii) payment by Lessor of any additional tax resulting from the loss; or (iii) any adjustment to the tax return of Lessor. Lessor's right to recovery of a loss of Tax Benefits shall survive the expiration or termination of this Lease.

10. Description of Equipment:

    See Schedule A which is attached hereto and made a part hereof by this reference.

The person executing this Schedule on behalf of Lessee Hereby certifies that he or she has read, and is duly authorized to execute, this Schedule

Accepted by: Extreme Networks® Credit Corporation

BY: _James E. Hartigan_____

NAME: _James E. Hartigan_____
            Print

TITLE: ___CFO_____

DATE: ___4/4/00_____

LESSEE: Broadband Office, Inc.

BY: _____

NAME: _PERRY FABI_____
            Print

TITLE: _DIRECTOR OF FINANCE & CONTROLLER_

DATE: __4/4/00_____

## ADDENDUM

This Addendum is to Schedule No. 04 (the "Schedule") to Master Lease Agreement No. X163, by and between Extreme Networks Credit Corporation ("Lessor") and Broadband Office, Inc. ("Lessee").

Paragraph 7 – In Paragraph 7 of the Lease Schedule, the following in replaced:

The words "its fair market value for continued use ("FMV") in the first line of Paragraph 7 are deleted and replaced with the following: "20% of the Equipment Value not to exceed the Fair Market Value ("FMV").

Except as modified by this Addendum, the terms and conditions of the Schedule shall remain in full force and effect.

Accepted by:

Extreme Networks® Credit Corporation

By: _James E Hartigan_

Name: _James E. Hartigan_

Title: _CFO_

Date: _4/4/03_

Lessee: Broadband Office, Inc.

By: _Perry Fab_

Name: _PERRY FAB I_

Title: _DIRECTOR OF FINANCE & CONTROLLER_

Date: _4/4/00_



**SCHEDULE A**

Broadband Office, Inc.
2070 Chain Bridge Road, Suite 350
Vienna, VA 22182

MLA#     X163
Schedule #  04

| Quantity | Description |
|----------|-------------|
| 44 | SUMMIT4-10/100TX |
| 2 | BLACKDIAMOND 6800 CHASSIS |
| 3 | BD 6800 A/C POWER SUPPLY |
| 7 | BD 6800 BLANK MODULE |

**TOTAL COST:**          $321,447.50

3585 Monroe Street, Santa Clara, CA 95051
Phone 408.579.2800    Fax 408.579.3000
http://www.extremenetworks.com





April 3, 2000

Mr. Perry Fabi
Broadband Office, Inc.
2070 Chain Bridge Road, Suite 350
Vienna, VA  22182

RE:  Master Lease Agreement No. X163, Schedule No. 04

Dear Mr. Fabi:

We have attached a copy of the Shipping Document or Suppliers Invoice evidencing the
Ship Date of    March 29, 2000 as provided under Section 2 of the above referenced
Master Lease Agreement.  Accordingly, your lease payments for the above referenced
schedule shall commence on April 29, 2000.

Our billing department will send out invoices shortly reflecting payments due.  Please
remit all other payments to the address at the top of this letter or to the address on the
invoices, which our billing department will send out.

Regards,

EXTREME NETWORKS® CREDIT CORPORATION

Richard Salhany

cc: Billing Department

3585 Monroe Street, Santa Clara, CA 95051
Phone 408.579.2800   Fax 408.579.3000
http://www.extremenetworks.com

C.C. Fairfax   2 422 471

#22

PRINT OR TYPE ALL INFORMATION

THE SECURED PARTY DESIRES THIS FINANCING STATEMENT TO BE INDEXED AGAINST THE RECORD OWNER

OF THE REAL ESTATE   NO ( )   YES ( )   NAME OF RECORD OWNER _____

STATE CORPORATION COMMISSION
(Uniform Commercial Code Division, Box 1197, Richmond, Virginia 23209)
FORM FOR ORIGINAL FINANCING STATEMENT AND SUBSEQUENT STATEMENTS

| | |
|---|---|
| The Commission stamps the File Number on the Original Financing Statement. The secured party must place this same number on all subsequent statements. | |

Index numbers of subsequent statements  (For office use only)

| Name & mailing address of all debtors, trade styles, etc. No other name will be indexed. | Check the box indicating the kind of statement. Check only one box. |
|---|---|
| Broadband Office, Inc. 2070 Chain ~~Kextzxx~~ Bridge Road, Suite 350 Vienna, VA 22182 | (X) ORIGINAL FINANCING STATEMENT |
| | ( ) CONTINUATION-ORIGINAL STILL EFFECTIVE |
| | ( ) AMENDMENT |
| | ( ) ASSIGNMENT |
| | ( ) PARTIAL RELEASE OF COLLATERAL |
| | ( ) TERMINATION |
| Name & address of Secured Party

Extreme Networks® Credit Corporation
3583 Monroe Street
Santa Clara, CA 95051 | Name & address of Assignee

Leasetec Corporation
1000 McCaslin Blvd
Superior, Colorado
80027 |
| Date of maturity if less than five years | Check if proceeds of collateral are covered  ( ) |

Description of collateral covered by original financing statement

MLA# X163-04  (XX)  (FAIRFAX)
See attached

TCC# 631

Space to record an amendment, assignment, release of collateral or a statement to cover collateral brought into Virginia from another jurisdiction.

Describe Real Estate if applicable:

| | |
|---|---|
| Broadband Office, Inc.

X _____  4/4/00
Signature of Debtor if applicable (Date) | Extreme Networks® Credit Corporation

X _____
Signature of Secured Party if applicable (Date) |

RETURN ACK. TO:
UCC DIRECT SERVICES
P.O. BOX 29071
GLENDALE, CA 91209-9071

PRINT OR TYPE ALL INFORMATION

THE SECURED PARTY DESIRES THIS FINANCING STATEMENT TO BE INDEXED AGAINST THE RECORD OWNER
OF THE REAL ESTATE   NO ( )   YES ( )   NAME OF RECORD OWNER_____

STATE CORPORATION COMMISSION
(Uniform Commercial Code Division, Box 1197, Richmond, Virginia 23209)
FORM FOR ORIGINAL FINANCING STATEMENT AND SUBSEQUENT STATEMENTS

| | |
|---|---|
| The Commission stamps the File Number on the Original Financing Statement. The secured party must place this same number on all subsequent statements. | |

Index numbers of subsequent statements (For office use only)   **000623 7091**   **000609 7216**

| Name & mailing address of all debtors, trade styles, etc. No other name will be indexed. | Check the box indicating the kind of statement. Check only one box. |
|---|---|
| Broadband Office, Inc. 2070 Chain Bridge Road, Suite 350 Vienna, VA 22182 | ( )  ORIGINAL FINANCING STATEMENT  ( )  CONTINUATION-ORIGINAL STILL EFFECTIVE  ( )  AMENDMENT  ( )  ASSIGNMENT  ( )  PARTIAL RELEASE OF COLLATERAL  ( )  TERMINATION |
| Name & address of Secured Party  Extreme Networks® Credit Corporation 3585 Monroe Street Santa EXX Clara, CA 95051 | Name & address of Assignee  Leasetec Corporation 1000 McCaslin Blvd. Superior, COlorado 80027 |
| Date of maturity if less than five years | Check if proceeds of collateral are covered  ( ) |
| Description of collateral covered by original financing statement  MLA# X163-04 See attached   (VA) | TCC#631 |
| Space to record an amendment, assignment, release of collateral or a statement to cover collateral brought into Virginia from another jurisdiction. | |
| Describe Real Estate if applicable: | |

| | |
|---|---|
| Broadband Office, Inc.  _____ 4/4/00 Signature of Debtor if applicable (Date) | Extreme Networks® Credit Corporation  _____ Signature of Secured Party if applicable (Date) |
| RETURN ACK. TO: UCC DIRECT SERVICES P.O. BOX 29071 GLENDALE, CA 91209-9071 | |

# LEASE SCHEDULE NO. 05

This Schedule and its supplements incorporate by this reference the terms and conditions of the Master Lease Agreement, Number  X163 , between

Extreme Networks® Credit Corporation (Lessor) and  Broadband Office, Inc. 

(Lessee)

1.  Supplier:  **Extreme Networks**

2.  Location of Equipment:  2070 Chain Bridge Road, Suite 350, Vienna, VA 22182 

3.  Equipment Value: $  1,377,973.00  (exclusive of sales and/or use taxes).

4.  Lease Term: The Lease Term of the Equipment described in this Schedule shall begin on the Rent Commencement Date referenced below in Paragraph 6 and its expiration date shall be  18  months after such Rent Commencement Date.

5.  xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

    xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

    xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx  See Addendum

6.  Rent Commencement Date:  June 17  , 2000

7.  Purchase Option:

    Lessee shall have the option to purchase the Equipment for its fair market value for continued use ("FMV"), on the expiration of this Lease or any renewal term, provided Lessee is not in default of any of its obligations under this Lease on such expiration date. This purchase option may only be exercised by Lessee's written notice to Lessor not earlier than 180 days, nor later than 90 days, prior to the end of the Lease Term or any renewal term. The purchase price for such Equipment shall be payable upon the expiration date of such term. FMV shall be equal to the value of the Equipment installed and in use, with consideration given to the age, condition, utility and replacement costs for the Equipment. In the event that Lessor and Lessee are unable to agree upon the purchase price for the Equipment, such purchase price will be determined by an independent appraiser to be selected by Lessor. Lessee shall be responsible for all applicable sales and/or use taxes on the Equipment. Upon exercise of this purchase option and payment of the purchase price, Lessor shall execute and deliver to Lessee such documents as Lessee may reasonably request in order to vest in Lessee all right, title and interest in the Equipment.

8.  Renewal Option:

    Lessee shall have the option to renew this Lease, on the expiration date of this Lease or any renewal term, for the fair market rental for the continued use of the Equipment ("FMR") and on such other terms as may be agreed upon by Lessor and Lessee prior to such expiration date, provided Lessee is not in default of any of its obligations under this lease on such expiration date. This renewal option may only be exercised by Lessee's written notice to Lessor not earlier than 180 days, nor later than 90 days, prior to the end of the Lease Term or any renewal term. FMR shall be equal to the value of the monthly rental of the Equipment installed and in use, with consideration given to the age, condition, utility and replacement costs for the Equipment, for the renewal term.

9.  Tax Benefits:

    Lessee understands that Lessor intends to claim the "Tax Benefits", consisting of the maximum Modified Accelerated Cost Recovery System deductions for the minimum useful life applicable to each item of Equipment, as provided by Sections 168(b) and (c) of the Internal Revenue Code of 1986, and analogous benefits under state law, with respect to the Equipment. Lessee represents and warrants that: (i) Lessee has not been, is not now, and during the term of this Lease will not become, and will not allow the Equipment to be used by or leased to, a tax-exempt entity or government agency; and (ii) Lessee is not now, and during the term of this Lease will not become, a public utility. Without limitation by the preceding sentence, Lessee agrees not to take any action, fail to take any action, or misstate any fact which may result in any loss to Lessor of the Tax Benefits.

    Lessee agrees to pay promptly to Lessor an amount which will fully compensate Lessor, on an after-tax basis, for any loss of the Tax Benefits, plus interest, penalties and additions to tax, any loss in time value of the Tax Benefits, and any taxes imposed on any such compensation payment, resulting from Lessee's acts, omissions or misstatements, including, without limitation, with respect to the representations and warranties in the preceding paragraph. A loss of Tax Benefits occurs at the earliest of: (i) the happening of any event causing the loss; (ii) payment by Lessor of any additional tax resulting from the loss; or (iii) any adjustment to the tax return of Lessor. Lessor's right to recovery of a loss of Tax Benefits shall survive the expiration or termination of this Lease.

10. Description of Equipment:

    See Schedule A which is attached hereto and made a part hereof by this reference.

The person executing this Schedule on behalf of Lessee Hereby certifies that he or she has read, and is duly authorized to execute, this Schedule

Accepted by: Extreme Networks® Credit Corporation

BY:  _James E. Hartigan_ 

NAME:  James E. Hartigan 
                  Print

TITLE:  CFO 

DATE:  6/27/00 

LESSEE:  Broadband Office, Inc. 

BY:  _[signature]_ 

NAME:  PERRY FABI 
                  Print

TITLE:  CONTROLLER 

DATE:  6/27/00

# ADDENDUM

This Addendum is to Schedule No. 05 (the "Schedule") to Master Lease Agreement No. X163, by and between Extreme Networks Credit Corporation ("Lessor") and Broadband Office, Inc. ("Lessee").

Paragraph **5** - Paragraph **5** is deleted and replaced by the following:

"Rent: $413,391.90 for the first month (exclusive of sales and/or use taxes), $60,300.10 for the next **seventeen** months (exclusive of sales and/or use taxes). The advance rental payment shall be $413,391.90. This amount includes $413,391.90 for the first month."

Paragraph **7** – In Paragraph 7 of the Lease Schedule, the following is replaced:

The words "its fair market value for the continued use ("FMV") in the first line of Paragraph 7 are deleted and replaced with 20% of the Equipment Value not to exceed the Fair Market Value ("FMV").

Except as modified by this Addendum, the terms and conditions of the Schedule shall remain in full force and effect.

Accepted by:

Extreme Networks Credit Corporation

By: _James P. Hartigan_

Name: _James E. Hartigan_

Title: _CFO_

Date: _6/27/00_

Lessee: Broadband Office, Inc.

By: _[signature]_

Name: _PERRY FABI_

Title: _CONTROLLER_

Date: _6/27/00_





### SCHEDULE A

Broadband Office, Inc.
2070 Chain Bridge Road, Suite 350
Vienna, VA 22182

MLA#    X163
Schedule#  05

| Quantity | Description |
|----------|-------------|
| 9 | 48 10/100 TX, No GBIC |
| 178 | Summit4 - 10/100TX |
| 3 | BD 48 Port 10/100Base |
| 6 | LX GBIC Module |
| 20 | SX GBIC Module |
| 3 | BD 6800 MSM 64 |
| 7 | BD, G8X Blade Shippin |
| 2 | S7i, 28 100BSX, 4 GBIC |

**TOTAL COST:**        **$1,377,973.00**

3585 Monroe Street, Santa Clara, CA 95051
Phone 408.579.2800  Fax 408.579.3000
http://www.extremenetworks.com



June 23, 2000

Mr. Perry Fabi
Broadband Office, Inc.
2070 Chain Bridge Road, Suite 350
Vienna, VA 22182

RE: Master Lease Agreement No. X163, Schedule No. 05

Dear Mr. Fabi:

We have attached a copy of the Shipping Document or Suppliers Invoice evidencing the Ship Date of May 19, 2000 as provided under Section 2 of the above referenced Master Lease Agreement. Accordingly, your lease payments for the above referenced schedule shall commence on June 17, 2000.

Our billing department will send out invoices shortly reflecting payments due. Please remit all other payments to the address at the top of this letter or to the address on the invoices, which our billing department will send out.

Regards,

EXTREME NETWORKS® CREDIT CORPORATION

*Richard Salhany*

Richard Salhany

cc: Billing Department

3585 Monroe Street, Santa Clara, CA 95051
Phone 408.579.2800   Fax 408.579.3000
http://www.extremenetworks.com

248 239C    CC VA FAIRFAX

PRINT OR TYPE ALL INFORMATION

THE SECURED PARTY DESIRES THIS FINANCING STATEMENT TO BE INDEXED AGAINST THE RECORD OWNER
OF THE REAL ESTATE  NO ( )  YES ( )  NAME OF RECORD OWNER _____

STATE CORPORATION COMMISSION
(Uniform Commercial Code Division, Box 1197, Richmond, Virginia 23209)
FORM FOR ORIGINAL FINANCING STATEMENT AND SUBSEQUENT STATEMENTS

The Commission stamps the File Number on the Original Financing Statement. The secured
party must place this same number on all subsequent statements.

Index numbers of subsequent statements  (For office use only)

| Name & mailing address of all debtors, trade styles, etc. No other name will be indexed. | Check the box indicating the kind of statement. Check only one box. |
|---|---|
| Broadband Office, Inc. 2070 Chain Bridge Road, Suite 350 Vienna VA 22182 | (X)  ORIGINAL FINANCING STATEMENT<br><br>( )  CONTINUATION-ORIGINAL STILL EFFECTIVE<br><br>( )  AMENDMENT<br><br>( )  ASSIGNMENT<br><br>( )  PARTIAL RELEASE OF COLLATERAL<br><br>( )  TERMINATION |

| Name & address of Secured Party | Name & address of Assignee |
|---|---|
| Extreme Networks Credit Corporation 3585 Monroe Street Santa Clara CA 95051 | Leasetec Corporation 1000 South McCaslin Blvd Superior, CO. 80027 |

| Date of maturity if less than five years | Check if proceeds of collateral are covered  ( ) |
|---|---|

Description of collateral covered by original financing statement

MLA# X163 - 05 (VA, Fairfax)
See Attached

TCC 646    X163-05

Space to record an amendment, assignment, release of collateral or a statement to cover collateral brought into Virginia
from another jurisdiction.

Describe Real Estate if applicable:

RETURN ACK. TO:
UCC DIRECT SERVICES
P.O. BOX 29071
GLENDALE, CA 91209-9071

Broadband Office, Inc.                    Extreme Networks Credit Corporation

Perry Fabi
6/27/oc Controller

Signature of Debtor if applicable (Date)            Signature of Secured Party if applicable (Date)

OFFICER COPY

*2482390  SS VA*

PRINT OR TYPE ALL INFORMATION

THE SECURED PARTY DESIRES THIS FINANCING STATEMENT TO BE INDEXED AGAINST THE RECORD OWNER OF THE REAL ESTATE  NO ( )  YES ( )  NAME OF RECORD OWNER _____

STATE CORPORATION COMMISSION
(Uniform Commercial Code Division, Box 1197, Richmond, Virginia 23209)
FORM FOR ORIGINAL FINANCING STATEMENT AND SUBSEQUENT STATEMENTS

| The Commission stamps the File Number on the Original Financing Statement. The secured party must place this same number on all subsequent statements. | **000725 7075** |
|---|---|

Index numbers of subsequent statements  (For office use only)

| Name & mailing address of all debtors, trade styles, etc. No other name will be indexed. | Check the box indicating the kind of statement. Check only one box. |
|---|---|
| Broadband Office, Inc. 2070 Chain Bridge Road, Suite 350 Vienna VA 22182 | (X)  ORIGINAL FINANCING STATEMENT<br>( )  CONTINUATION-ORIGINAL STILL EFFECTIVE<br>( )  AMENDMENT<br>( )  ASSIGNMENT<br>( )  PARTIAL RELEASE OF COLLATERAL<br>( )  TERMINATION |

| Name & address of Secured Party | Name & address of Assignee |
|---|---|
| Extreme Networks Credit Corporation 3585 Monroe Street Santa Clara CA 95051 | Leasetec Corporation 1000 South McCaslin Blvd Superior, CO.  80027 |

| Date of maturity if less than five years | Check if proceeds of collateral are covered  ( ) |
|---|---|

Description of collateral covered by original financing statement

MLA# X163 - 05  (VA)
See Attached

TCC 646  X163-05

Space to record an amendment, assignment, release of collateral or a statement to cover collateral brought into Virginia from another jurisdiction.

Describe Real Estate if applicable:

| Broadband Office, Inc. Perry Fabi Controller | Extreme Networks Credit Corporation |
|---|---|
| X _____ 6/27/00 | X _____ |
| Signature of Debtor if applicable (Date) | Signature of Secured Party if applicable (Date) |

RETURN ACK. TO:
UCC DIRECT SERVICE

SCC CLERK'S OFFICE

# LEASE SCHEDULE NO. __06__

This Schedule and its supplements incorporate by this reference the terms and conditions of the Master Lease Agreement, Number __X163__ , between

Extreme Networks® Credit Corporation (Lessor) and __Broadband Office, Inc.__ _____ (Lessee).

1.  Supplier: __Extreme Networks__

2.  Location of Equipment: __See Attachement A__

3.  Equipment Value: $ ___2,690,820.00___ (exclusive of sales and/or use taxes).

4.  Lease Term: The Lease Term of the Equipment described in this Schedule shall begin on the Rent Commencement Date referenced below in Paragraph 6 and its expiration date shall be ___18___ months after such Rent Commencement Date.

5.  Rent: $ __157,724.14__ per month (exclusive of sales and/or use taxes) due and payable at the Rent Commencement Date and on the same date of each succeeding month of the Lease Term. The advance Rent payment shall be $ __315,448.29__ . This amount includes $ __157,724.14__ for the first month, and $ ___157,724.14___ for the last ___1___ month(s), of the Lease Term.

6.  Rent Commencement Date: _____, 20 _____.

7.  Purchase Option:

    Lessee shall have the option to purchase the Equipment for its fair market value for continued use ("FMV"), on the expiration of this Lease or any renewal term, provided Lessee is not in default of any of its obligations under this Lease on such expiration date. This purchase option may only be exercised by Lessee's written notice to Lessor not earlier than 180 days, nor later than 90 days, prior to the end of the Lease Term or renewal term. The purchase price for such Equipment shall be payable upon the expiration date of such term. FMV shall be equal to the value of the Equipment installed and in use, with consideration given to the age, condition, utility and replacement costs for the Equipment. In the event that Lessor and Lessee are unable to agree upon the purchase price for the Equipment, such purchase price will be determined by an independent appraiser to be selected by Lessor. Lessee shall be responsible for all applicable sales and/or use taxes on the Equipment. Upon exercise of this purchase option and payment of the purchase price, Lessor shall execute and deliver to Lessee such documents as Lessee may reasonably request in order to vest in Lessee all right, title and interest in the Equipment.

8.  Renewal Option:

    Lessee shall have the option to renew this Lease, on the expiration date of this Lease or any renewal term, for the fair market rental for the continued use of the Equipment ("FMR") and on such other terms as may be agreed upon by Lessor and Lessee prior to such expiration date, provided Lessee is not in default of any of its obligations under this Lease on such expiration date. This renewal option may only be exercised by Lessee's written notice to Lessor not earlier than 180 days, nor later than 90 days, prior to the end of the Lease Term or any renewal term. FMR shall be equal to the value of the monthly rental of the Equipment installed and in use, with consideration given to the age, condition, utility and replacement costs for the Equipment, for the renewal term.

9.  Tax Benefits:

    Lessee understands that Lessor intends to claim the "Tax Benefits", consisting of the maximum Modified Accelerated Cost Recovery System deductions for the minimum useful life applicable to each item of Equipment, as provided by Sections 168(b) and (c) of the Internal Revenue Code of 1986, and analogous benefits under state law, with respect to the Equipment. Lessee represents and warrants that: (i) Lessee has not been, is not now, and during the term of this Lease will not become, and will not allow the Equipment to be used by or leased to, a tax-exempt entity or government agency; and (ii) Lessee is not now, and during the term of this Lease will not become, a public utility. Without limitation by the preceding sentence, Lessee agrees not to take any action, fail to take any action, or misstate any fact which may result in any loss to Lessor of the Tax Benefits.

    Lessee agrees to pay promptly to Lessor an amount which will fully compensate Lessor, on an after-tax basis, for any loss of the Tax Benefits, plus interest, penalties and additions to tax, any loss in time value of the Tax Benefits, and any taxes imposed on any such compensation payment, resulting from Lessee's acts, omissions or misstatements, including, without limitation, with respect to the representations and warranties in the preceding paragraph. A loss of Tax Benefits occurs at the earliest of: (i) the happening of any event causing the loss; (ii) payment by Lessor of any additional tax resulting from the loss; or (iii) any adjustment to the tax return of Lessor. Lessor's right to recovery of a loss of Tax Benefits shall survive the expiration or termination of this Lease.

10. Description of Equipment:

    See Schedule A which is attached hereto and made a part hereof by this reference.

The person executing this Schedule on behalf of Lessee Hereby certifies that he or she has read, and is duly authorized to execute, this Schedule

Accepted by: Extreme Networks® Credit Corporation

BY: _Laurence M Cowl_

NAME: _____
              Print

TITLE: _____

DATE: _____

LESSEE: _Broadband Office, Inc._

BY: X _____

NAME: __PERRY FABI__
                Print

TITLE: _DIR, FINANCE + CONTROLLER_

DATE: _7/20/00_

# ADDENDUM

This Addendum is to Schedule No. 06 (the "Schedule") to Master Lease Agreement No. X163, by and between Extreme Networks Credit Corporation ("Lessor") and Broadband Office, Inc. ("Lessee").

Paragraph 7 – In Paragraph 7 of the Lease Schedule, the following in replaced:

The words "its fair market value for continued use ("FMV") in the first line of Paragraph 7 are deleted and replaced with the following: "20% of the Equipment Value not to exceed the Fair Market Value ("FMV").

Except as modified by this Addendum, the terms and conditions of the Schedule shall remain in full force and effect.

Accepted by:

Extreme Networks® Credit Corporation          Lessee: Broadband Office, Inc.

By:_____          By:_X_____

Name:_____          Name:_PERRY FABI_____

Title:_____          Title:_DIR, FINANCE & CONTROLLER_

Date:_____          Date:_7/20/00_____

_Sign_
_Send_
_TCC_

ATTACHMENT A FOR SCHEDULE NO. 06 TO MASTER LEASE AGREEMENT NO.X163

Lessee:  Broadband Office, Inc.
2070 Chain Bridge Road
Vienna, VA 22182

| Schedule No. | Equipment Location | | Equipment Value | Lease Rate | RENT |
|---|---|---|---|---|---|
| 06-01 | 95 Mariners Island Blvd. San Mateo, CA 94404 | Equipment | $ 10,897.25 | 0.05862 | $ 644.65 |
| 06-02 | 2950 Gallow Road Falls Church, VA 22042 | Equipment | $ 74,648.75 | 0.05862 | $ 4,375.90 |
| 06-03 | 2950 Telestar Ct Falls Church, VA 22042 | Equipment | $ 1,110,925.00 | 0.05862 | $ 65,122.44 |
| 06-04 | 2070 Chain Bridge Road Vienna, VA 22182 | Equipment | $ 1,494,049.00 | 0.05862 | $ 87,581.15 |
| | **Total for Schedule No. 06** | | $ 2,690,520.00 | | $ 157,724.14 |



## SCHEDULE A

Broadband Office, Inc.                          MLA#  X163
951 Mariner's Island Blvd.                      Schedule# 06-01
San Mateo, CA 94404

| Serial Number | Description | Quantity | Unit Price | Total Price |
|---|---|---|---|---|
| 11701 | S7I;28 1000BT,4 GBIC | 1 | 10,997.25 | 10,997.25 |

**TOTAL COST:**          **$10,997.25**

3585 Monroe Street, Santa Clara, CA 95051
Phone 408.579.2800   Fax 408.579.3000
http://www.extremenetworks.com



### SCHEDULE A

Broadband Office, Inc.
2950 Gallow Road
Falls Church, VA 22042

MLA#  X163
Schedule# 06-02

| Serial Number | Description | Quantity | Unit Price | Total Price |
|---|---|---|---|---|
| 10013 | LX GBIC MODULE | 20 | 822.25 | 16,445.00 |
| 45080 | ALP3808 CHASSIS | 1 | 7,147.25 | 7,147.25 |
| 45012 | ALP3800 AC PSU | 2 | 1,097.25 | 2,194.50 |
| 45112 | ALP3800 1000B-X MODULE | 3 | 1,372.25 | 4,116.75 |
| 45210 | ALP3800 10/100B-T MOD | 1 | 877.25 | 877.25 |
| 45024 | ALP3800 SMMI | 1 | 8,244.50 | 8,244.50 |
| 11704 | S7I;28 1000BSX, 4 GBIC | 6 | 5,937.25 | 35,623.50 |

**TOTAL COST:**          **$74,648.75**

3585 Monroe Street, Santa Clara, CA 95051
Phone 408.579.2800   Fax 408.579.3000
http://www.extremenetworks.com



## SCHEDULE A

Broadband Office, Inc.
2950 Telestar Ct.
Falls Church, VA 22042

MLA#  X163
Schedule# 06-03

| Serial Number | Description | Quantity | Unit Price | Total Price |
|---|---|---|---|---|
| 50015 | BD 6800 MSM 64 | 20 | 5,997.50 | 119,950.00 |
| 10011 | SX GBIC MODULE | 148 | 247.50 | 36,630.00 |
| 50011 | BLACKDIAMOND 6800 CAHSSIS | 37 | 2,997.50 | 110,907.50 |
| 50015 | BD 6800 MSM 64 | 54 | 5,997.50 | 323,865.00 |
| 52011 | BD 48 PORT 10/100BASE | 74 | 4,747.50 | 351,315.00 |
| 51032 | BD, G8X SHIPPING | 37 | 4,497.50 | 166,407.50 |
| 50005 | BD 6800 BLANK MODULE | 185 | 10.00 | 1,850.00 |

**TOTAL COST:**          **$1,110,915.00**

3585 Monroe Street, Santa Clara, CA 95051
Phone 408.579.2800   Fax 408.579.3000
http://www.extremenetworks.com



## SCHEDULE A

Broadband Office, Inc.                      MLA#  X163
2070 Chain Bridge Road                      Schedule# 06-04
Vienna, VA 22182

| Serial Number | Description | Quantity | Unit Price | Total Price |
|---|---|---|---|---|
| 14001 | SUMMIT4- 10/100TX | 212 | 6,997.50 | 1,483,470.00 |
| 15010 | 48 10/100 TX, NO GBIC | 2 | 2,997.50 | 5,995.00 |
| 13010 | 24 10/100 TX, NO GBIC | 2 | 1,747.50 | 3,495.00 |
| 10011 | SX GBIC MODULE | 4 | 272.25 | 1,089.00 |

TOTAL COST:              $1,494,049.00

3585 Monroe Street, Santa Clara, CA 95051
Phone 408.579.2800   Fax 408.579.3000
http://www.extremenetworks.com

PRINT OR TYPE ALL INFORMATION

THE SECURED PARTY DESIRES THIS FINANCING STATEMENT TO BE INDEXED AGAINST THE RECORD OWNER
OF THE REAL ESTATE. NO ( )   YES ( )   NAME OF RECORD OWNER

STATE CORPORATION COMMISSION
(Uniform Commercial Code Division / Box 1197, Richmond, Virginia 23209)
FORM FOR ORIGINAL FINANCING STATEMENT AND SUBSEQUENT STATEMENTS

| The Commission places the loan number on the Original Financing Statement. The secured party must place this loan number on all subsequent statements. | 010108  7116 |
| --- | --- |

Name & mailing address of all debtors, trade styles, etc.

( ) CONTINUATION ORIGINAL STILL EFFECTIVE

Check the box indicating the kind of statement.
Check only one box.

(X) ORIGINAL FINANCING STATEMENT
( ) CONTINUATION ORIGINAL STILL EFFECTIVE
( ) AMENDMENT
( ) ASSIGNMENT
( ) PARTIAL RELEASE OF COLLATERAL
( ) TERMINATION

Name & address of Secured Party

Name & address of Assignee

( ) Check if proceeds of collateral are covered. ( )

Space to record an amendment, assignment, release of collateral or a statement to cover collateral brought into Virginia
from another jurisdiction.

Describe Real Estate if applicable.

RETURN FILE TO:

PRINT OR TYPE ALL INFORMATION

THE SECURED PARTY DESIRES THIS FINANCING STATEMENT TO BE INDEXED AGAINST THE RECORD OWNER
OF THE REAL ESTATE  NO ( )  YES ( )  NAME OF RECORD OWNER _____

STATE CORPORATION COMMISSION
(Uniform Commercial Code Division, Box 1197, Richmond, Virginia 23209)
FORM FOR ORIGINAL FINANCING STATEMENT AND SUBSEQUENT STATEMENTS

The Commission stamps the File Number on the Original Financing Statement. The secured
party must place this same number on all subsequent statements.

Index numbers of subsequent statements (For office use only)

| Name & mailing address of all debtors, trade styles, etc. No other name will be indexed. | Check the box indicating the kind of statement. Check only one box. |
|---|---|
| Broadland Office, Inc. 2070 Chain Bridge Road, Suite 350 Vienna VA 22182 | (X) ORIGINAL FINANCING STATEMENT ( ) CONTINUATION-ORIGINAL STILL EFFECTIVE ( ) AMENDMENT ( ) ASSIGNMENT ( ) PARTIAL RELEASE OF COLLATERAL ( ) TERMINATION |

| Name & address of Secured Party | Name & address of Assignee |
|---|---|
| Extreme Networks Credit Corporation 3585 Monroe Street Santa Clara CA 95051 | Leasetec Corporation 1000 South McCaslin Blvd Superior, CO. 80027 |

| Date of maturity if less than five years | Check if proceeds of collateral are covered ( ) |
|---|---|

Description of collateral covered by original financing statement

MLA# X163 - 06-02, 06-03 & 06-04   (VA,  Falls Church)
See Attached

Space to record an amendment, assignment, release of collateral or a statement to cover collateral brought into Virginia
from another jurisdiction.

Describe Real Estate if applicable.

RETURN ACK. TO:
UCC DIRECT SERVICES
P.O. BOX 29071
GLENDALE, CA 91209-9071

| Broadland Office, Inc. | Extreme Networks Credit Corporation |
|---|---|
| Signature of Debtor if applicable (Date) | Signature of Secured Party if applicable (Date) |

FILING OFFICER COPY - ACKNOWLEDGEMENT

Revised 7-1-82

# Exhibit D

SENT BY: EXTREME;                    408 579 2861;          APR-21-03 10:11AM;        PAGE 4/6

*Technologus*
*Management Credit*
*Corporation d/b/a*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | : Chapter 11 |
| BROADBAND OFFICE, INC., | : Case No. 01-1720 (GMS) |
| Debtor. | : |

## STIPULATION TOLLING STATUTE OF LIMITATIONS

THIS STIPULATION TOLLING STATUTE OF LIMITATIONS (the "Stipulation"), dated as of April 10, 2003 by and between BroadBand Office, Inc. (the "Debtor") and Extreme Networks Credit Co ("Alleged Transferee") (collectively, the Debtor and Respondent constitute the "Parties").

WHEREAS, on May 9, 2001 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware, and since the Petition Date has managed its affairs and remained in possession of its assets as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108; and

WHEREAS, pursuant to §§ 108 and 546(a)(1)(A) of the Bankruptcy Code, the time by which the Debtor must commence actions, if any, arising under sections 544, 555, 547, 548, 550, and/or 553 of the Bankruptcy Code ("Avoidance Actions") was originally due to expire on May 9, 2003; and

WHEREAS, the Parties have agreed to the tolling and extension of the deadline to file Avoidance Actions, subject to the terms and conditions set forth below.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein contained, the Parties hereby agree as follows:

WP, # 11220 v1 (WP4n# EDOC)

04/21/03  MON 10:18  [TX/RX NO 5793]

1.      The Parties hereby agree to toll the running of the statute of limitations period

prescribed by sections 108 and 546(a)(1)(A) of the Bankruptcy Code and irrevocably extend the

deadline by which the Debtor, or any party acting on behalf of the Debtor or its estate, must

commence any Avoidance Action against Alleged Transferee under sections 544, 545, 547, 548,

550, and/or 553 of the Bankruptcy Code (including but not limited to related actions under state

law) through and including the later of (A) December 31, 2003, and (B) 1 year after the

appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 302 of the

Bankruptcy Code in the Debtor's case; *but only if such appointment or election occurs prior to May 9, 2003* provided, however, that (i) nothing herein shall prejudice

or be deemed to constitute a waiver of, the right of Alleged Transferee to assert any and all

defenses Alleged Transferee may have with respect to any Avoidance Actions filed by or on

behalf of the Debtor or its estate, except that Alleged Transferee shall not be entitled to assert a

defense based upon the statute of limitations set forth in sections 108 and/or 546(a)(1)(A) of the

Bankruptcy Code, or the doctrine of laches, if any such Avoidance Action is commenced on or

before the above-described deadline, and (ii) this Stipulation shall not be construed in any way as

an admission or denial by either of the Parties regarding any fact or circumstance.

2.      This Stipulation contains the entire agreement of the Parties with respect to the

subject matter hereof and there are no representations or agreements other than those expressly

set forth herein. This Stipulation may not be modified or amended except by a writing signed by

each of the Parties hereto.

3.      This Stipulation shall be subject to and governed by the laws of the State of

Delaware.

4.      The terms of this Stipulation shall be binding upon the Parties and their respective

successors and assigns. Each person signing this Stipulation represents that such person has the

-2-

SENT BY: EXTREME;     408 579 2881;     APR-21-03 10:12AM;     PAGE 6/6

power and authority to execute this Stipulation on behalf of, and bind, the party such person purports to represent.

    5.    This Stipulation may be executed in multiple counterparts as if the Parties hereto had signed a single instrument, all of which together shall constitute one agreement. Facsimile signatures will be treated as original for purposes of this Stipulation.

    IN WITNESS WHEREOF, the parties hereto have caused this Stipulation to be executed as of the date first written above.

BROADBAND OFFICE, INC.

by: _____
David M. Fournier (DE No. 2812)
Adam Hiller (DE No. 4105)
PEPPER HAMILTON LLP
Suite 1600
1201 Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
(302) 777-6500

*Subject to addition in paragraph 1*

EXTREME NETWORKS CREDIT CO

By: _____
Print Name: *JEFFRY A. DAVIS*
Title: *ATTORNEY*
Address: *4365 EXECUTIVE DRIVE, SUITE 1100*
Phone Number: *SAN DIEGO, CA 92121*

*(858) 638 - 6810*

-3-

# Exhibit E

## LEASE GUARANTY

FOR VALUE RECEIVED, receipt whereof is hereby acknowledged, and to induce Extreme Networks® Credit Corporation (hereinafter called the "Assignee") to accept assignment of a lease of personal property under Master Lease No. X163, dated _____ March 9, 2000 _____, which, together with all existing and future equipment lease schedules and related, supplements, riders and addenda thereto, are herein collectively called the "Lease" between Extreme Networks® Credit Corporation and Broadband Office, Inc. ("Lessee"), the undersigned (and each of them if more than one, hereinafter collectively called the "Guarantor") hereby jointly and severally unconditionally guarantees and promises to Assignee as follows:

### 1. PAYMENT AND PERFORMANCE.

The Guarantor guarantees and promises to Assignee that Lessee will promptly perform and comply with each of its agreements contained in the Lease, and that all sums payable by the Lessee under such Lease will be promptly paid when due in accordance with the provisions thereof and, in case of extension of time of payment, in whole or in part, of any such sums, that all such sums will be promptly paid when due in accordance with the terms of such extension provided. Guarantor hereby waives any right to require Assignee to apply any payments or proceeds received in any particular order against the indebtedness, including any right to require Assignee to apply payments first to principal.

### 2. WAIVER OF NOTICE OR MODIFICATION OF LEASE.

The Guarantor hereby consents that at any time or from time to time without notice to the Guarantor, the time for the Lessee's performance of or compliance with any of its obligations contained in such Lease may be extended or such performance or compliance may be waived by the Assignee; such Lease may from time to time be amended for the purpose of adding any provision thereto, including additional indebtedness, or changing in any manner the rights of Assignee or of Lessee thereunder; payment of any sums due or to become due under such Lease may be extended, in whole or in part; and the terms of such Lease may be waived by the Assignee in its sole discretion; all without affecting the liability of the Guarantor hereunder.

### 3. ASSIGNEE'S REMEDIES.

Assignee may pursue its rights and remedies under this Guaranty and shall be entitled to payment hereunder and to enforce all of its other rights hereunder notwithstanding any other guaranty of, or security for, all or any part of the obligations of Lessee under such Lease and notwithstanding any action taken or omitted to be taken by Assignee to enforce any of its rights or remedies under the Lease, under such other guaranty or with respect to any other security, or any payment received thereunder; and the Guarantor shall not be subrogated, in whole or in part, to the rights of Assignee against Lessee under such Lease until Assignee shall have been paid in full all such sums as are at any time payable by Lessee under such Lease.

### 4. ASSIGNMENT OF GUARANTY.

Assignee may assign this instrument or any rights and powers hereunder with any assignment of such Lease or any sums due or to become due, or any rights, claims, powers and remedies thereunder and, in the event of such assignment, such assignee shall have the same rights and remedies as if originally named herein.

### 5. WAIVER OF PRESENTMENT, DEMAND AND PROTEST.

Guarantor hereby waives diligence, presentment of any instrument, demand for payment, protest and notice of non-payment or protest and the performance of each and every condition precedent to which Guarantor might otherwise be entitled by law. Guarantor also waives notice of any action or non-action taken by Lessee, Assignee or any other guarantor, notice of the creation or accrual of any of the obligations of Lessee to Assignee under such Lease, and all demands whatsoever.

### 6. WAIVER OF DEFENSES.

Guarantor hereby waives any right it may have arising from any disability or defense of Lessee.

### 7. INDEPENDENT OBLIGATION.

Lessee's obligations, and each of them, shall conclusively be deemed to have been created, contracted or incurred in reliance upon this Guaranty. The obligations of the undersigned hereunder are joint and several, and are independent of the obligations of Lessee. Guarantor waives any right to require Assignee to proceed first against any collateral or any other person. A separate action or actions may be brought and prosecuted against Guarantor, or any of them, whether or not an action is brought against Lessee or whether Lessee be joined in any such action or actions; and Guarantor waives the benefit of any statute of limitations affecting its liability hereunder or the enforcement thereof.

### 8. UNCONDITIONAL GUARANTY.

This Guaranty shall be construed as a continuing, absolute and unconditional guaranty of payment and performance of Lessee's obligations under the Lease, irrespective of the validity or enforceability of (i) any of the obligations of Lessee to Assignee as aforesaid, or (ii) any security therefor, and notwithstanding any present or future law or order of any government (de jure or de facto) or of any agency thereof purporting to reduce, amend or otherwise affect any obligation of Lessee or other obligor or to vary any terms of payment, and irrespective of any other circumstance which might otherwise constitute a legal or equitable discharge of a surety or a guarantor. Notwithstanding the above, the maximum liability of Guarantor to Assignee shall be 35% of the aggregate equipment value as shown on the lease.

### 9. SEVERABILITY.

Should any provision of this Guaranty be held invalid or unenforceable by a court of competent jurisdiction, the remaining provisions of this Guaranty shall remain in full force and effect.

### 10. WAIVER OF JURY.

Guarantor hereby waives any and all right to a trial by jury in any action or proceeding based hereon.

### 11. MISCELLANEOUS.

Without the written consent of Assignee, this Guaranty cannot be changed, terminated or assigned by Guarantor. This Guaranty shall be governed by and construed according to the laws of the State of Colorado, shall be binding upon the heirs, executors, administrators, successors, and assigns of the Guarantor and shall inure to the benefit of the Assignee, its successors and assigns.

Guarantor

Extreme Networks, Inc.

By: _____

Title: CFO

Date: 3/24/00

Witness: _____

If additional individual Guarantor:

By: _____

Title: _____

Date: _____

Witness: _____

Guarantor's address: 3585 MONROE STREET

SANTA CLARA, CA. 95051

Guarantor's address: _____

**BBO-111**

MLA X163
VS
+

## LEASE GUARANTY

FOR VALUE RECEIVED, receipt whereof is hereby acknowledged, and to induce LEASETEC CORPORATION (hereinafter called the "Assignee") to accept assignment of a lease of personal property from Extreme Networks, Inc. under Master Lease No. 01, dated _____, which, together with all existing and future equipment lease schedules and related, supplements, riders and addenda thereto, are herein collectively called the "Lease" between Extreme Networks® Credit Corporation and Broadband Office, Inc. ("Lessee"), the undersigned (and each of them if more than one, hereinafter collectively called the "Guarantor") hereby jointly and severally unconditionally guaranties and promises to Assignee as follows:

### 1. PAYMENT AND PERFORMANCE.

The Guarantor guarantees and promises to Assignee that Lessee will promptly perform and comply with each of its agreements contained in the Lease, and that all sums payable by the Lessee under such Lease will be promptly paid when due in accordance with the provisions thereof and, in case of extension of time of payment, in whole or in part, of any such sums, that all such sums will be promptly paid when due in accordance with the terms of such extension provided. Guarantor hereby waives any right to require Assignee to apply any payments or proceeds received in any particular order against the indebtedness, including any right to require Assignee to apply payments first to principal.

### 2. WAIVER OF NOTICE OF MODIFICATION OF LEASE.

The Guarantor hereby consents that at any time or from time to time without notice to the Guarantor, the time for the Lessee's performance of or compliance with any of its obligations contained in such Lease may be extended or such performance or compliance may be waived by the Assignee; such Lease may from time to time be amended for the purpose of adding any provision thereto, including additional indebtedness, or changing in any manner the rights of Assignee or of Lessee thereunder; payment of any sums due or to become due under such Lease may be extended, in whole or in part and the terms of such Lease may be waived by Assignee in its sole discretion; all without affecting the liability of the Guarantor hereunder.

### 3. ASSIGNEE'S REMEDIES.

Assignee may pursue its rights and remedies under this Guaranty and shall be entitled to payment hereunder and to enforce all of its other rights hereunder notwithstanding any other guaranty of, or security for, all or any part of the obligations of Lessee under such Lease and notwithstanding any action taken or omitted to be taken by Assignee to enforce any of its rights or remedies under the Lease, under such other guaranty or with respect to any other security, or any payment received thereunder and may be subrogated, in whole or in part, to the rights of Assignee against Lessee under such Lease until Assignee shall have been paid in full all such sums as are at any time payable by Lessee under such Lease.

### 4. ASSIGNMENT OF GUARANTY.

Assignee may assign this instrument or any rights and powers hereunder with any assignment of such Lease or any sums due or to become due, or any rights, claims, powers and remedies thereunder and, in the event of such assignment, such assignee shall have the same rights and remedies as if originally named herein.

Guarantor

Extreme Networks, Inc.

By: _H. Palermo_

Title: _CFO_

Date: _3/23/00_

Witness: _____

If additional individual Guarantor:

By: _____

Title: _____

Date: _____

Witness: _____

### 5. WAIVER OF PRESENTMENT, DEMAND AND PROTEST.

Guarantor hereby waives diligence, presentment of any instrument, demand for payment, protest and notice of non-payment or protest and the performance of each and every condition precedent to which Guarantor might otherwise be entitled by law. Guarantor also waives notice of any action or non-action taken by Lessee, Assignee or any other guarantor, notice of the creation or accrual of any of the obligations of Lessee to Assignee under such Lease, and all demands whatsoever.

### 6. WAIVER OF DEFENSES.

Guarantor hereby waives any right it may have against Assignee arising from any disability or defense of Lessee.

### 7. INDEPENDENT OBLIGATION.

Lessee's obligations, and each of them, shall conclusively be deemed to have been created, contracted or incurred in reliance upon this Guaranty. The obligations of the undersigned hereunder are joint and several, and are independent of the obligations of Lessee. Guarantor waives any right to require Assignee to proceed first against any collateral or any other person. A separate action or actions may be brought and prosecuted against Guarantor, or any of them, whether an action is brought against Lessee or whether Lessee be joined in any such action or actions.

### 8. UNCONDITIONAL GUARANTY.

This Guaranty shall be construed as a continuing, absolute and unconditional guaranty of payment and performance of Lessee's obligations under the Lease, irrespective of the validity or enforceability of (i) any of the obligations of Lessee to Assignee as aforesaid, or (ii) the Lease, or (iii) any security therefore, and notwithstanding any present or future law or order of any government (de jure or de facto) or of any agency thereof purporting to reduce, amend or otherwise affect any obligation of Lessee or other obligor or to vary any terms of payment, and irrespective of any other circumstance which might otherwise constitute a legal or equitable discharge of a surety or a guarantor. Notwithstanding the above, the maximum liability of Guarantor to Assignee shall be 35% of the aggregate equipment value as shown on the lease.

### 9. SEVERABILITY.

Should any provision of this Guaranty be held invalid or unenforceable by a court of competent jurisdiction, the remaining provisions of this Guaranty shall remain in full force and effect.

### 10. WAIVER OF JURY.

Guarantor hereby waives any and all right to a trial by jury in any action or proceeding based hereon.

### 11. MISCELLANEOUS.

Without the written consent of all parties, this Guaranty cannot be changed, terminated or assigned by Guarantor. This Guaranty shall be governed by and construed according to the laws of the State of Colorado and be binding upon the heirs, executors, administrators, successors, and assigns of the Guarantor and shall inure to the benefit of the Assignee, its successors and assigns.

Guarantor's address: _Extreme Networks_
_3585 Monroe St._
_Santa Clara, Ca. 95051_

Guarantor's address: _____
_____
_____

**BBO-110**

# Exhibit F

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>BROADBAND OFFICE, INC.,<br><br>Debtor. | Chapter 11<br><br>Case No. 01-1720 (GMS) |
| BROADBAND OFFICE, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>TECHNOLOGY CREDIT CORPORATION dba<br>EXTREME NETWORKS CREDIT<br>CORPORATION<br><br>Defendant. | Adversary No. 03-60208 |

## AFFIDAVIT OF JEFFRY A. DAVIS

|  |  |  |
|---|---|---|
| State of California | ) | |
| | ) | SS |
| County of San Diego | ) | |

I, Jeffry A. Davis, say:

1.    I am an attorney at law, licensed to practice law in the State of California and am a partner with the law firm of Gray, Cary, Ware, Friedenrich in San Diego, California.

2.    On or about April 10, 2003, I executed the Stipulation Tolling Statute of Limitations attached hereto as Exhibit 1.

3.    At the time I executed said Stipulation, I understood that I was doing so in representation of my client, Extreme Networks, Inc.  I did not understand, at that point, that Extreme Networks Credit Corporation was a name under which Technology Credit Corporation did business.  I thought Extreme Networks Credit Corporation was instead a division or

TCC00004

subsidiary of Extreme Networks, Inc.

      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and of my own personal knowledge.  I am competent to testify thereto.



_____
Jeffry A. Davis

    SWORN TO AND SUBSCRIBED before me this 18 day of May, 2004.

_____
Notary Public

My Commission Expires: __4-4-2007__

408819

LINDA M. BAKER
COMM. #1409057
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
My Commission Expires
APRIL 4, 2007

2

TCC00005

# Exhibit G





**OVERNIGHT MAIL - AIRBORNE EXPRESS**

February 20, 2001

Perry Sabi
Broadband Office
2900 Telstar Court
Falls Church, VA 22042

     **RE:  Master Lease Agreement Schedule No. X163-01, 02,03,04,05,06 between
     Extreme Networks "Lessor" and Broadband Office "Lessee".**

Dear Mr. Sabi:

Extreme Networks records indicate your account, concerning the above referenced Lease
and Schedule, is significantly past due.  Although Broadband Office is considered a
valued customer, Extreme Networks can not continue to overlook the chronic pattern of
late payments that have developed.

Broadband Office was provided this lease based on the promise that you would be paying
when the lease is due (which, in your case is on the first day of each month).  The lease
was not priced on the basis that it could be paid 60 days or more late.  Failure to make
rental payments is a material breach of your Master Lease Agreement and has resulted in
**the decision to declare Broadband Office in default with respect to the referenced
Lease and Schedule.**

In order to bring the account to a current status curing this default, Broadband Office
**must remit payment in the amount of $995,703.57 (includes late fees of $8,113.95) to
be received by Extreme Networks by the close of business on March 2, 2001.**

919 The Alameda, San Jose, CA 95126
Phone: 800-945-7569    Fax: 888-677-0608

Broadband Office

February 20, 2001
Page 2

Payment should be expedited via overnight mail to the following address:

Extreme Networks
Attn: Brian Espinoza
919 The Alameda
San Jose, CA 95126

If payment is not received by this date, Extreme Networks will exercise all remedies available under the terms and conditions as set forth in your Master Lease Agreement including the possibility of repossessing the equipment.

If you would like to discuss this account, contact me at 720-304-1164.

Sincerely,

Brian Espinoza
Customer Service Specialist

CC:     Sandy Schuler, Asset Recovery Manager
        Bob Silvers

26111, 27083, 27415

# Exhibit H

SENT BY: EXTREME;          408 579 2861;          APR-21-0? 10:11AM;          PAGE 2

**Pepper Hamilton LLP**
Attorneys at Law

Richard
Salomone
408 579-
3178

Suite 1600
1201 Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
302.777.6500
Fax 302.656.8865

302.777.6582
hillers@pepperlaw.com

April 10, 2003

<u>VIA FACSIMILE 408.579.3000 AND FIRST-CLASS MAIL</u>

EXTREME NETWORKS CREDIT CO
ATTN: GORDON STITT, PRESIDENT & CEO
3585 MONROE ST.
SANTA CLARA, CA 95051

Re:     In re BroadBand Office, Inc., Case No. 01-1720-GMS (Chap. 11)

Dear Mr. Stitt:

This office represents the debtor BroadBand Office, Inc. (the "Debtor") in the above-referenced Chapter 11 case filed on May 9, 2001 (the "Petition Date").

The Debtor's records reflect that EXTREME NETWORKS CREDIT CO received one or more payments from the Debtor within 90 days prior to the Petition Date (the "Preference Payments") totaling at least $1,158,520.74. Under various sections of the United States Bankruptcy Code and related statutes under state law, the Debtor is entitled to the return of all such payments as a preference and/or fraudulent conveyance.   EXTREME NETWORKS CREDIT CO has been identified as a potential defendant in a lawsuit under the Bankruptcy Code to recover Preference Payments, and demand is hereby made upon EXTREME NETWORKS CREDIT CO for the return of the full amount of the Preference Payments.[1]

Given the number of potential defendants, we believe it would serve the interests of both EXTREME NETWORKS CREDIT CO and the Debtor if we were able to analyze all available data and possibly negotiate a settlement before initiating litigation if EXTREME NETWORKS CREDIT CO has valid defenses. If EXTREME NETWORKS CREDIT CO believes that it has valid defenses, or if you wish to discuss a possible settlement of this matter, we will require that you execute and return to us the enclosed Tolling Agreement <u>no later than April 30, 2003</u>. **THE TOLLING AGREEMENT DOES NOT SERVE AS AN ADMISSION OF LIABILITY, BUT MERELY EXTENDS THE TIME BY WHICH A COMPLAINT MAY BE BROUGHT IF THE**

---

[1] The contents of this letter are based upon the records presently available to the undersigned.  In the event additional amounts were received within the applicable avoidance periods, demand is hereby made for the return of the full amount of such additional amounts, and the Debtor's request for an extension of time to commence Avoidance Actions should be construed to include Avoidance Actions with respect to such additional amounts.

| Philadelphia | Washington, D.C. | Detroit | New York | Pittsburgh |
|---|---|---|---|---|
| Berwyn | Cherry Hill | Harrisburg | Princeton | Tysons Corner | Wilmington |

www.pepperlaw.com

04/21/03  MON 10:18  [TX/RX NO 5793]

BBO-354

SENT BY: EXTREME;                400 579 2861;          APR-21-0' '0:11AM;          PAGE 3/6

## Pepper Hamilton LLP

April 10, 2003
Page 2

**PARTIES CANNOT REACH AN UNDERSTANDING AS TO THE AMOUNT OF EXTREME NETWORKS CREDIT CO'S LIABILITY, IF ANY.**

If we have not received from you by April 30, 2003, either a return of the Preference Payments or an executed Tolling Agreement, the Debtor, may be forced to commence immediate litigation to recover the Preference Payments, together with all other amounts to which it may be entitled under applicable law, including interest.

Please do not hesitate to contact me if you wish to discuss this matter further.

Sincerely,

Adam Hiller
PS

cc:    David M. Fournier, Esquire
       BroadBand Office, Inc.

04/21/03  MON 10:18  [TX/RX NO 5793]

BBO-355