# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Civil Action No. 04-407 (GMS) |
| BROADBAND OFFICE, INC., | Bankruptcy Case No. 01-172 (GMS) |
| Debtor. | Chapter 11 |
| | |
| BROADBAND OFFICE, INC., | |
| Plaintiff, | |
| vs. | |
| TECHNOLOGY CREDIT CORPORATION d/b/a EXTREME NETWORKS CREDIT CORPORATION, EXTREME NETWORKS, INC., and KEY EQUIPMENT FINANCE, INC. f/k/a KEY CORPORATE CAPITAL, INC. f/k/a LEASTEC CORPORATION | |
| Defendants. | |

## REPLY BRIEF IN SUPPORT OF
## DEFENDANT EXTREME NETWORKS INC.'S
## MOTION FOR SUMMARY JUDGMENT

Defendant Extreme Networks, Inc. ("Extreme Networks") hereby replies to Plaintiff Broadband Office, Inc.'s ("Broadband") Opposition to Extreme Networks' Motion for Summary Judgment (the "Motion").[1]

This Reply is based upon the attached points and authorities and the Supplemental Affidavit of Ricardo Palacio and Supplemental Appendix of Evidence ('Supplemental Appendix") filed contemporaneously herewith.  In further support of the Motion, Extreme Networks states as follows:

---

[1] Unless otherwise noted, defined terms shall have the meaning assigned in the Motion.

1.      The Opposition filed by Broadband to the Motion is not based upon supportable

facts but merely asserts its allegations in the Amended Complaint.  After ample opportunity to

seek discovery to corroborate it claims, Broadband is unable to fill the obvious holes in its case

against Extreme Networks.  The Motion should be granted.

### A.      TO PREVAIL ON SUMMARY JUDGMENT, EXTREME NETWORKS MUST ONLY POINT OUT AN ABSENCE OF EVIDENCE IN SUPPORT OF BROADBAND'S CLAIMS

2.      In its opposition, Broadband seeks to hold Extreme Networks to an unreasonable

and incorrect standard to obtain summary judgment in its favor.   Broadband charges that

Extreme Networks "must show 'beyond doubt' that there is no dispute as to material facts..."  DI

71, at p. 13.  Further, it states that Extreme Networks cannot prevail because its "mere assertion

of lack of evidence is unsupported by any affidavit or other evidence." DI 71, at p. 19.

3.      This supposed requirement that Extreme Networks somehow must "prove a

negative beyond doubt" by affidavit or other affirmative evidence misstates the burden of proof

on a summary judgment motion.  The United States Supreme Court explains in *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L.Ed. 2d 265 (1986):

> [W]e do not think the Adickes language... should be construed to
> mean that the burden is on the party moving for summary
> judgment to produce evidence showing the absence of a genuine
> issue of material fact, even with respect to an issue on which the
> nonmoving party bears the burden of proof.  Instead... the burden
> on the moving party may be discharged by "showing" — that is,
> pointing out to the district court — that there is an absence of
> evidence to support the nonmoving party's case.

*Celotex*, 477 U.S. at 325; see *also Cray Communications, Inc. v. Novatel Computer Sys., Inc.*, 33

F.3d 390 (4th Cir. 1994) (rejecting nonmovant's contention that the movant was required to

negate Novatel's fraud claim with affirmative evidence and, instead, found that movant has

discharged its burden by pointing out that plaintiff had no evidence to support its fraud claims); *Kauffman v. Puerto Rico Telephone Co.*, 841 F.2d 1169 (1st Cir. 1988) ("summary judgment is proper when, after adequate time for discovery, the party against whom judgment is sought fails to show sufficient basis for the establishment of an essential element of its case.").

4.    As the Motion correctly points out, despite months of discovery, Broadband has yet to produce any evidence to support its allegations that (1) the alleged transfers were made to or for the benefit of Extreme Networks, (2) the tolling agreement is binding upon Extreme Networks, and/or (3) Broadband's failure to name Extreme Networks in the Original Complaint was a mistake. As *Celotex* teaches, the burden now shifts to Broadband to come up with specific facts to establish that there are triable issues of material facts with respect to its claims against Extreme Networks. Absent such showing, summary judgment must be granted in favor of Extreme Networks.

5.    Instead of responding to the Motion with facts, Broadband merely restates its unsupported allegations in the Amended Complaint and in its opposition to Key's prior motion to dismiss. It accuses Extreme Networks of "rehashing" a failed argument and urges this Court to deny the Motion, as it did with Key's motion to dismiss. Broadband's argument is inappropriate. A motion to dismiss is different from a motion for summary judgment. In a motion to dismiss, courts must construe the complaint in the light most favorable to the plaintiff and accept all factual allegations in Broadband's complaint as true. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337 (9th Cir. 1996). The issue in a motion to dismiss is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. *Scheuver v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1963 (1974). In contrast, the issue in a summary judgment motion is whether the opponent, after an opportunity for discovery, could

SF:158802.1

come forward with sufficient evidence for its claims or defenses to create a genuine issue for trial. *Celotex*, 477 U.S. at 325. Thus, in response to the Motion, Broadband can no longer rely on the bare allegations in its pleadings, but must produce specific evidence to show that there are genuine issues of material fact with respect to its claims against Extreme Networks. *See Doty v. Illinois Cent. R. Co.*, 162 F.3d 460, 462 (7th Cir. 1998) (affirming summary judgment for defendant and asserting that nonmovant's "bare allegation in his complaint ... is insufficient to stave off" defendant's summary judgment motion); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994) ("[t]he non-moving party cannot rest on the pleadings alone, but must identify specific facts to establish that there is a genuine triable issue."); *Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990) (pleadings may not be considered as summary judgment evidence).

6.    Thus, summary judgment is proper when, after adequate time for discovery, the plaintiff fails to show sufficient basis for the establishment of an essential element of its case. *Id.* (citing *Celotex*, 106 S.Ct. at 2552-53)). After completing discovery in this matter, including requests for production of documents, interrogatories and depositions, Broadband cannot produce evidence to support crucial elements of its claims to justify sending this action against Extreme Networks to trial.[2]

## B.    EXTREME NETWORKS NEVER RECEIVED OR BENEFITED FROM THE ALLEGED VOIDABLE TRANSFERS

7.    Broadband failed to demonstrate that there is any genuine issue of fact as to whether Extreme Networks received or benefited from any of the Transfers. *See* 11 U.S.C. §§ 544, 547(b), and 548(b). Yet, Broadband bears the burden of proving at trial that Extreme Networks either received or benefited from the Transfers. *See* 11 U.S.C. § 547(g); *In re Jones*,

---

[2] Pursuant to this Court's Scheduling Order, factual discovery closed on December 15, 2006. *See* DI 57.

226 F.3d 917, 921 (7th Cir. 2000).  Broadband, however, does not offer any evidence that Extreme Networks was a recipient of the Transfers.  Moreover, Broadband fails to submit any evidence that Extreme Networks benefited from the Transfers.  Broadband merely asserts, without any support, that as a guarantor, "Extreme [Networks] 'benefited' from the Transfer[s] of Broadband because it was discharged of its contingent debt."  DI 71, at p. 15.

8.    Broadband cites to several cases where the courts found that a debtor's preferential payment to a creditor may also be preferential to the guarantor of the original debt to the creditor.  The reasoning employed in those cases is that the payment made to the creditor 'benefited' the guarantor as the payment reduced the guarantor's obligation under its guarantee. *See In re Art Shirt Ltd., Inc.*, 34 B.R. 918, 9221 (E.D. Pa. 1983); *In re Herman Cantor Corporation*, 15 B.R. 747, 750 (E.D. Va. 1981); *Fenold v. Green* 175 F.2d 247, 249 (2nd Cir. 1949) (the guarantor is 'benefited' by the payment since it discharges his contingent liability).

9.    Unlike the guarantees in the cases above, the Lease Guaranty was a limited guarantee.  As set forth in Extreme Networks' Opening Brief, as of the Petition Date, Broadband's outstanding financial obligations under the Lease were well above Extreme Networks' maximum liability under the Lease Guaranty.  The Transfers, therefore, did not 'benefit' Extreme Networks, as they did not reduce Extreme Networks liability under the Lease Guaranty.

## C.    BROADBAND HAS NO EVIDENCE TO SUPPORT ITS RELATION-BACK ARGUMENT

10.    Even assuming it had colorable claims against Extreme Networks, Broadband must still establish that its assertion of the claims in the Amended Complaint relates back to the time of the filing of the Original Complaint.  To do so, Broadband must establish, among other things, that (i) the failure to name Extreme Networks in the Original Complaint was the result of

a mistake <u>and</u> (ii) that Extreme Networks knew or should have known that it would have been named as a defendant in the Original Complaint but for the mistake. *See* Fed. R. Civ. P. 15. As discussed below, there is no evidence to establish either.

(I)     <u>Broadband Has No Evidence to Prove That Its Failure to Name</u>
        <u>Extreme Networks in the Original Complaint Was the Result of a</u>
        <u>Mistake</u>.

11.     Even though Broadband asserts that its failure to name Extreme Networks in the Original Complaint was "clearly due to mistake and error concerning the identity of the proper party" (DI 71, at p. 20), it offers no evidence whatsoever that it was ever confused about Extreme Networks' identify or its relationship with TCC. Instead, Broadband offers two arguments intended to obfuscate this issue.

12.     <u>First</u>, Broadband points the finger at Extreme Networks, asserting that Extreme Networks did not provide any affidavit or other evidence that its omission from the Original Complaint was **not** the result of a mistake. (DI 71, at p. 19) As discussed above, this attempt to require Extreme Networks to "prove a negative" misstates the burden of proof on summary judgment motions. To shift the burden of proof on a motion for summary judgment, Extreme Networks needs to point out only an absence of evidence supporting Broadband's claim. *Celotex*, 477 U.S. at 325; *Cray Communications, Inc.*, 33 F.3d 390; *Kauffman v. Puerto Rico Telephone Co.*, 841 F.2d 1169. It is Broadband, not Extreme Networks, that must offer specific evidence to substantiate its argument.

13.     <u>Second</u>, Broadband points to Mr. Jeffery Davis and argues that if even he was confused about the relationship between TCC and Extreme Networks, then Broadband must have also been equally confused. Mr. Davis's subjective misunderstanding, however, has no bearing on whether Broadband itself was confused. Indeed, the evidence in this case demonstrates

otherwise. Broadband's own schedules provide undisputed evidence that it understood "Extreme Networks" and "Extreme Networks Credit Corporation" were separate entities, with whom Broadband had entered into separate agreements. *See* Appendix, <u>Exhibit J</u>. Broadband's controller, Perry Fabi, who signed Broadband's schedules, also admitted to knowing about the Lease Guaranty in favor of Extreme Networks Credit Corp. *See* Supplemental Appendix, <u>Exhibits R & S</u>. Extreme Networks obviously did not guarantee Broadband's obligations under the Lease to itself. Broadband also knew Extreme Networks Credit Corporation was a fictitious business. See Appendix, <u>Exhibit Q</u>.

14. In short, Broadband's own schedules and interrogatory responses unequivocally establish that it knew Extreme Networks and TCC were separate entities and knew of their relationships under the Lease Guaranty when it filed the Original Complaint. Yet, despite this knowledge, Broadband chose to proceed solely against TCC in the Original Complaint. Exactly like the plaintiffs in *Shea* and *Nelson*, Broadband knew the identity of Extreme Networks and its relationships with TCC long before the expiration of the statute of limitations, but did not bring suit and therefore should not receive the benefit of Federal Rule of Civil Procedure 15(c)(3). *Shea v. Esensten*, 208 F.3d 712, 720 (8th Cir. 2000); *Nelson v. County of Allegheny*, 60 F.3d 1010, 1015 (3rd Cir. 1995).

(II)     <u>Broadband Has No Evidence to Prove That Extreme Networks Knew or Should Have Known That It Would be Named in the Original Complaint</u>.

15. Furthermore, Broadband offers no evidence that Extreme Networks knew or should have known that it would have been named as a defendant in this action but for a mistake. All Broadband could offer was Mr. Davis's affidavit and certain "Extreme" fax notation as circumstantial evidence that Extreme received notice of the claims against TCC. But mere "notice" of the claims alone is not enough. Since it never received any of the Transfers or benefit

7

thereof, there is no reason why Extreme Networks would believe it should have been named as a defendant in the Original Complaint. This was never explained by Broadband. Again, the burden is on Broadband to come forward with specific evidence to put this allegation at issue for trial. Absent such evidence, Broadband cannot establish that the Amended Complaint may relate back to the filing of the Original Complaint.

**D.     BROAD HAS NO EVIDENCE TO SUPPORT THAT THE TOLLING AGREEMENT WAS BINDING ON EXTREME NETWORKS**

16.     Finally, Broadband offers no facts or evidence that the Tolling Agreement was binding upon Extreme Networks. The Tolling Agreement was entered into by and between Broadband and TCC, and is binding on its face upon Broadband and TCC only. Broadband offers no evidence, or even any legal argument, on how the Tolling Agreement can be construed beyond its express terms to extend the deadline to commence the claims asserted against Extreme Networks in the Amended Complaint.

17.     In addition, Broadband claims that Mr. Davis was acting as Extreme Networks' attorney when it signed the Tolling Agreement. It points to Mr. Davis' affidavit declaring his subjective belief that, at the time when he executed the Tolling Agreement, he understood he was doing so on behalf of Extreme Networks. Yet, as discussed in the Motion, Mr. Davis' subjective understanding is completely irrelevant. There is no evidence to support any actual authority, whether express or implied, for Mr. Davis to execute the Tolling Agreement on behalf of Extreme Networks. There is simply no evidence of any communications, whether oral or in writing, between Extreme Networks and Mr. Davis prior to his execution of the Tolling Agreement.

SF:158802.1

WHEREFORE, for all of the reasons set forth above, Extreme Networks respectfully requests that the Court enter an order granting summary judgment (i) dismissing the Amended Complaint with prejudice as against Extreme Networks, and (ii) granting such other relief as the Court deems just and proper.

Dated:  April 9, 2007                    ASHBY & GEDDES, P.A.

William P. Bowden (I.D. #2553)
Ricardo Palacio (I.D. #3765
500 Delaware Avenue
8th Floor
Wilmington, Delaware  19899
Telephone: (302) 654-1888
Facsimile: (302) 654-2067

-and-

WINSTON & STRAWN LLP

David A. Honig
Todd J. Dressel
101 California Street
San Francisco, California  94111
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

*Co-Counsel for Defendant Extreme Networks, Inc.*

9

## CERTIFICATE OF SERVICE

I, Ricardo Palacio, hereby certify that, on the 9th day of April, 2007, I caused a true and correct copy of the *REPLY BRIEF IN SUPPORT OF DEFENDANT EXTREME NETWORKS INC.'S MOTION FOR SUMMARY JUDGMENT* to be served upon the below listed counsel in the manner so indicated.

Ricardo Palacio (I.D. #3765)

**HAND DELIVERY**
Brian A. Sullivan, Esq.
Werb & Sullivan
300 Delaware Avenue, 10th Floor
Wilmington, DE 19899

**HAND DELIVERY**
Thomas W. Briggs, Jr., Esq.
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
Wilmington, DE 19899

**HAND DELIVERY**
Mark J. Packel, Esq.
Blank Rome LLP
1201 North Market Street, Suite 800
Wilmington, DE 19801

179560v1

1